IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES AND MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, DECEASED; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY; THEMMAY GIORGIA PINEDA MORALES; EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |

# FORD MOTOR COMPANY'S MOTION TO APPLY VENEZUELAN LAW

In the event that this case remains in this forum, defendant Ford Motor Company ("Ford") requests that the Plaintiffs' claims against Ford be governed by and decided under the substantive law of Venezuela.1 Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Ford asks the Court to make a determination of the law of Venezuela and apply them to this case.

---

1 However, should this court reject Ford's request to apply Venezuelan law to all issues, Ford hereby asserts that all claims for exemplary or punitive damages against it be decided under the substantive law of Michigan. Nothing in this Motion should be construed as a waiver of that contention. Ford continues to maintain that the analysis of choice of law for issues of liability and compensatory damages involves different considerations than the analysis of choice of law for issues of punitive or exemplary damages. *See Kelly v. Ford Motor Co.*, 933 F.Supp. 465 (E.D. Pa. 1996). Only if the Court overrules Ford on its contention that the issues of punitive or exemplary damages are governed by the law of Venezuela, and only in the alternative, does Ford contend that those issues should in that event be governed by the law of Michigan. In the final analysis, however, the result will be the same since neither the law of Michigan nor the law of Venezuela would permit these plaintiffs to recover punitive or exemplary damages. *See* Affidavit of Professor Enrique Lagrange.

In support of this Motion, Ford relies upon the declaration of Professor Enrique Lagrange, which was previously filed with Ford's "Brief in Support of its Motion to Dismiss for *Forum Non Conveniens.*" *See* FED. R. CIV. P. 10(c).

I.  **INTRODUCTION**

Texas has absolutely no connection to this case. It arose out of a single-vehicle accident that occurred in Venezuela.[2] All of the Plaintiffs are citizens of Venezuela.[3] The sole occupant of the vehicle was a Venezuelan citizen and resident who received medical treatment only in Venezuela.[4] The vehicle at issue was manufactured in Venezuela.[5] It was originally sold in Venezuela.[6] It was owned by a Venezuelan resident and citizen.[7] The accident was investigated by Venezuelan authorities.[8]

Despite the overwhelming connection to Venezuela, Plaintiffs want a Texas jury to decide their case under Texas law. Why? Because, "[a] Texas-style claim is big business." *Castanho v. Brown & Root (U.K.) Ltd.*, 1 W.L.R. 833, 849 (1980), *aff'd*, 1981 A.C. 557. "The benefit to the plaintiffs in suing in Texas should be obvious: more money." *Dow Chemical Co. v. Alfaro*, 786 S.W.2d 674, 706 (Tex. 1990) (Hecht, J., dissenting). "Substantive law in the United

---

[2] *See* Appendix Exhibit 3: Plaintiffs' Original Petition, p. 3 ¶5; *see also* Appendix Exhibit 4: Translated Accident Report Produced by Plaintiffs, p. 3. All of the exhibits referenced in this motion are attached to Ford's Brief in Support of Its Motion to Dismiss on *Forum Non Conveniens* Grounds and are adopted and incorporated herewith by reference. FED. R. CIV. P. 10(c).

[3] *See* Appendix Exhibit 3: Plaintiffs' Original Petition, p. 2 ¶2.

[4] *Id.* at p. 8.

[5] *See* Exhibit 5: Affidavit of Roger Chen.

[6] *Id.*; *see also* Appendix Exhibit 3: Plaintiffs' Original Petition, p. 3 ¶4.

[7] *See* Appendix Exhibit 3: Plaintiffs' Original Petition, pp. 2 ¶2 and 3 ¶5; *see also* Appendix Exhibit 4: Translated Accident Report Produced by Plaintiffs, p. 4.

[8] *See* Appendix Exhibit 4: Translated Accident Report Produced by Plaintiffs.

States will often be more favorable to plaintiffs than in many other parts of the world, and there are procedural advantages in this country also that attract litigants here when there is any possibility of doing so." 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3828, at 284 (2d ed. 1986).

The Fifth Circuit rejected this forum shopping tactic and applied foreign law to a case with virtually identical facts. *Vasquez v. Bridgestone/Firestone*, 325 F.3rd 665, 674-75 (5th Cir.) (". . . the aggregate of other specific contacts favors application of Mexican law. As the court recognized, all the decedents and plaintiffs are citizens of Mexico, the accident and subsequent investigation took place in Mexico, and the vehicle an tires were manufactured and purchased there"). Given the overwhelming relationship this case has to Venezuela, this case merits the same result.

II.   **STANDARD OF REVIEW**

This is a diversity action. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Vasquez*, 325 F.3rd at 674. Texas has adopted the "most significant relationship" approach of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971). *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979), see also *Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2001)("Texas uses the *Restatement's* 'most significant relationship' test to decide choice-of-law issues."). In determining which state has the most significant interest, Texas courts consider the factors in § 6 and the contacts in § 145 of the Restatement (Second) of Conflict of Laws in light of the "purpose sought to be achieved by the relevant tort rules of the interested states, and the relation of these states to the occurrence and the parties." *Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2001); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmts. c and e.

The § 6 factors include:

(1) the needs of the interstate and international systems,

(2) the relevant policies of the forum,

(3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(4) the protection of justified expectations,

(5) the basic policies underlying the particular field of law,

(6) certainty, predictability and uniformity of result, and

(7) ease in the determination and application of the law to be applied.

Section 145 provides specific contacts to consider in tort actions, including:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(4) the place where the relationship, if any, between the parties is centered.

RESTATEMENT § 145 (1971). The district court's determination is subject to *de novo* review. *Vasquez*, 325 F.3d at 674 n. 11.

III.  **ARGUMENTS AND AUTHORITY**

   A.  **The factual considerations of RESTATEMENT § 145 point to Venezuelan law.**

It is readily apparent that in this case the factual contacts the RESTATEMENT lists for consideration overwhelmingly point to Venezuela. It is equally apparent that none of them point to Texas.

1.   *The injuries occurred in Venezuela.*

The accident at issue here, and all resulting injuries, occurred entirely in Venezuela. This is a starting point of great importance. Texas courts have recognized that the RESTATEMENT normally places significant weight on the place where the injury occurred. *See Torrington v. Stutzman*, 46 S.W.3d at 848; *CPS Int'l, Inc. v. Dresser Indust.., Inc.*, 911 S.W.2d 18, 29 (Tex. App.—El Paso 1995, pet'n denied); *Trailways, Inc. v. Clark*, 794 S.W.2d 479. 485 (Tex. App.– Corpus Christi 1990, pet'n denied).

The development of the law so that the location of the injury is no longer the *only* fact that matters has hardly made that fact irrelevant. As Judge Posner has observed, even under the more flexible choice of law approach described in the RESTATEMENT, the location of the plaintiff's injury is still "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship test'." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 ( 7th Cir. 1999). And this makes good sense:

> For that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. . . . [T]he law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents -- can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

174 F.3d at 845.

The RESTATEMENT itself agrees. In fact, in a personal injury case, the RESTATEMENT says that the location of the injury is *dispositive* in deciding the choice of law unless there is some good reason why it should not be:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the

principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 146, Personal Injuries. *See also* § 145 cmt f ("[T]he place of injury is of particular importance in the case of personal injuries and of injuries to tangible things.").

The rule is exactly the same in an action for wrongful death:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id.* at § 175, Right of Action for Death.

Indeed, this is a consistent theme straight through the RESTATEMENT. The appropriate law "will usually be the local law of the state where the injury occurred" to decide: whether the defendant's conduct was tortious, § 156(2); the standard of care, § 157(2); the interests entitled to legal protection, § 158(2); whether the actor owed a duty that was violated, § 159(2); legal cause, § 160(2), and the measure of damages in a claim for wrongful death, § 178.

Here, the accident and all resulting injuries occurred in Venezuela, and there is no good reason whatever to change to the law of any other jurisdiction.

    2.    *The conduct allegedly causing the injuries did not occur in Texas*

The plaintiffs contend that this accident was caused by defects in a vehicle that was designed in Michigan, manufactured in Venezuela, and sold in Venezuela. Even the plaintiffs do not contend that anything *related to this vehicle or this accident occurred in the State of Texas*. But even were this Court to consider the sole U.S. contact, the Venezuelan contacts dominate. As the Fifth Circuit recently stated:

> Even if the design of the tires and vehicles is characterized as the conduct causing injury, the aggregate of other specific contacts favors application of Mexican law.

*Vasquez.*, 325 F.3d. at 674.

By contrast, Ford contends that the accident was caused by driver error, improper maintenance and repair, dangerous road conditions, or other factors. These events occurred entirely in Venezuela.

      3.    *None of the parties reside in Texas.*

Every person injured in this accident, and every plaintiff in this case, is a Venezuelan national living in Venezuela. Ford is a Delaware corporation with its principal place of business in Michigan.

      4.    *The relationship between the parties, if relevant at all, is centered in Venezuela*

The only relationship between any of the plaintiffs and Ford is based on this particular vehicle and this specific accident. The vehicle was sold in Venezuela. It was owned in Venezuela, licensed in Venezuela, operated in Venezuela, and presumably serviced in Venezuela. At the time of the accident, it was being driven on a road in Venezuela by a Venezuelan national. That is where these injuries occurred and where these claims arose. If there is any relationship at all between these parties, it is centered in Venezuela.

    B.    **The policy considerations of RESTATEMENT § 6 point to Venezuelan law.** *Venezuela has the strongest policy interest in this controversy.*

Venezuela has an undeniable interest in regulating the conduct of its citizens and residents when they buy vehicles in Venezuela and then operate them on Venezuelan highways. It has a corresponding interest in regulating the conduct of those who build the vehicles that are sold to its citizens and residents, and in protecting the interests of those citizens and residents

when they are injured by allegedly defective products. *See, e.g., Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d at 673 ("Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there."); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000)(the countries from which the plaintiffs were from and where they were injured "obviously have an interest in protecting the rights and welfare of their citizens.").

In civil matters, the detailed Venezuelan code reflects the balance that Venezuela has chosen to protect the interests of its citizens and residents in light of Venezuelan legal principles, culture, and economy. That nation's choices should not be lightly dismissed. As the Fifth Circuit observed concerning similar claims from an accident in Mexico:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate--even patronizing--for us to denounce this legitimate policy choice.
> . . .

*Gonzalez, et al v. Chrysler Corporation, et al.*, 301 F.3d 377, 381-82 (5th Cir. 2002).

Of course, the same is true here for Venezuela. In adopting laws to govern claims such as these, the Venezuelan government made deliberate choices to resolve trade-offs among the competing objectives and costs of tort law. Where its values, its vehicles, its highways, and its residents and citizens are concerned, Venezuela is entitled to have that balance and its laws respected. By contrast, Texas has no discernible interest in the claims of these non-resident foreign nationals injured in another country who are suing for alleged defects in products that were neither designed, nor manufactured, nor sold, nor used in this State. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d at 675 ("Given that all decedents and plaintiffs are

Mexican . . . there is little justification for applying Texas law, which seeks to protect the rights of its *citizens* to adequate compensation.")(emphasis by the court, internal quotations and citation omitted).

Indeed, applying Texas law to claims against Ford under these circumstances would be an unconstitutional exercise of extraterritorial jurisdiction to control and regulate conduct occurring wholly outside the borders of this State. *See State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. ___, 123 S.Ct. 1513 (2003); *Phillips Petroleum Co. v. Shunts*, 472 U.S. 797 (1985); *BMW v. Gore*, 517 U.S. 559 (1996).

    2.    *The expectations of the parties point to the law of Venezuela.*

None of these plaintiffs could reasonably have expected to avail themselves of Texas law for an accident in Venezuela involving a vehicle that was purchased, owned, and operated there. All of the people involved in this accident were Venezuelan nationals who simply got into a vehicle for a trip in Venezuela. The vehicle was purchased in Venezuela, owned in Venezuela, serviced in Venezuela, used in Venezuela, and at the time of the accident were being driven on a Venezuelan highway by a Venezuelan resident. If the justified expectations of the parties are relevant here, this factor points to the law of Venezuela. To quote Justice Holmes: "[It should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts." *Cuba Railroad Co. v. Crosby*, 222 U.S. 473, 479 (1912).

    4.    *Certainty, predictability, and uniformity of result point to Venezuela.*

The only sensible way to achieve certainty, predictability, and uniformity of result is to decide this case under the law of Venezuela. Considering the alternative drives the point home. If cases involving vehicular accidents in foreign countries were decided under the local laws wherever the cases were filed in the United States, there would be multiple standards of recovery

applied to the claims of similar plaintiffs suing the same defendants -- even when the accidents occurred in the same foreign country, involved the same product, and allegedly happened in the same way. For accidents such at this one that occurred in Venezuela, one substantive law would apply to the plaintiffs who sue in Venezuela, another law would apply to those who sue in Florida, a third to those who sue in Texas, a fourth to those who sue in Mississippi, and yet other law to those who sue elsewhere. The results will be uncertain, unpredictable, and far from uniform. This cannot be right. These policy considerations do not present a close question either.

IV.   **Prayer.**

Accordingly, Defendant Ford Motor Company requests that the plaintiffs' claims in this case be governed by and decided under the substantive law of Venezuela.[9] Ford also requests that the Court determine and take judicial notice of the law of Venezuela.

---

[9] Except for any claims for punitive or exemplary damages. *See* note 1, *supra*.

Respectfully submitted,

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 Fax

By: *Ronald D. Wamsted* [Signed w/ permission by Juan M. Alcala SB.#24002652]
Ronald D. Wamsted
Attorney-In-Charge
State Bar No. 20832000
Southern District Admissions No. 17108
John W. Chambless, II
Southern District Admissions No. 20674
State Bar No. 00796334
Jaime A. Saenz
Federal I.D. No. 7630
State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via telefax and regular mail, to all counsel of record on this 28th day of August, 2003.

Mark A. Cantu
Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th, Suite 400
McAllen, Texas 78501

*Ronald D. Wamsted*
Ronald D. Wamsted

FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES AND MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, DECEASED; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY; THEMMAY GIORGIA PINEDA MORALES; EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON<br><br>　　　　　Plaintiffs,<br>vs.<br><br>FORD MOTOR COMPANY<br><br>　　　　　Defendant. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |

# ORDER

Before the Court is Defendant Ford Motor Company's Motion to Apply Venezuelan Law. After considering the Motion, Plaintiff's Response, arguments of counsel, the evidence, and applicable law, the Court is of the opinion that the Motion should be GRANTED. It is therefore:

ORDERED that all of Plaintiffs' claims are hereby governed by the substantive law of Venezuela as is described in the Declaration of Enrique Lagrange, which is referenced in Ford Motor Company's Motion to Apply Venezuelan Law.

　　　　SIGNED this _____ day of _____, 2003.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE