UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 6 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| And MAYTHEM GIORGINA PINEDA | § | |
| MORALES, INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE ESTATE | § | |
| OF JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| CARVAJAL, Deceased; BEATRIZ DEL | § | |
| VALLE PINEDA, INDIVIDUALLY, | § | |
| GIORGIA PINEDA MORALES, | § | |
| EDWARD ENRIQUE PINEDA | § | |
| MORALES, INDIVIDUALLY; | § | |
| | § | |
| DOLORES CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE  LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| Vs. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| Defendant | § | |

demonstrate which law should apply based on state contacts to the asserted claims. *Weatherly v.*

*Deloitte & Touche*, 905 S.W.2d 642, 650 ((Tex. App. – Houston [14th Dist.] 1995, dis. w.o.j.).

In 1979, the Texas Supreme Court abandoned *lex loci delicti,* the principle that the

substantive law of the place of injury controls. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.

1979). Since that time, Texas courts have followed the "most significant relationship" test as set

forth in Sections 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS because:

> [t]his methodology offers a rational yet flexible approach to conflicts problems. It offers
> the courts some guidelines without being too vague or too restrictive. It represents a
> collection of the best thinking on this subject and does indeed include "most of the
> substance" of all the modern theories.

*Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979).

Under Restatement of Conflict of Laws §145 "The rights and liabilities of the parties with

respect to an issue in tort are determined by the local law of the state, which, with respect to that

issue, has the most significant relationship to the occurrence and the parties under the principles

stated in § 6." Unless the choice of law is governed by statute, the Court must then determine the

law to be applied based on policy, considering the following factors set out in section 6 of the

Second Restatement of Conflict of Laws:

(1)     The needs of the interstate and international systems;

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6, comment c. Section 145 of the Restatement then instructs that, in applying the principles of Section 6 to determine the law applicable to a case, the contacts to be taken into account include:

(1)    The place where the injury occurred;

(2)    The place where the conduct causing the injury occurred;

(3)    The domicile, residence, nationality, place of incorporation and place of business of the parties; and

(4)    The place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

### B.    Defendants' Motion Presents a Classic "False Conflict."

Texas courts have routinely recognized that the first step in a conflict of law analysis is to determine whether a "false conflict" exists. A "false conflict" exists where only one forum has an interest at stake. *Duncan v. Cessna Aircraft Co.*, 414 S.W. 2d 414, n.6 (Tex. 1984). When a false conflict is presented, courts must apply Texas law.

In *Ford Motor Company vs. Aguiniga,* a case that involved facts analogous to the case at bar, the San Antonio Courts of Appeals determined that a "false conflict" existed. *Ford Motor Company vs. Aguiniga,* 9 S.W.3d 252 (Tex. App.--San Antonio 2000, pet. denied). In *Aguiniga,* the plaintiffs asserted personal injury, survival and wrongful death claims against Ford arising from an accident that occurred in Mexico. Ford claimed there that the substantive law of Mexico should have governed the case. The *Aguiniga* court concluded that Mexico had no interest in enforcing its damage-limiting legislation in product liability cases wherein no Mexican citizen would benefit from its application and that "the only interest which exists is that of Texas... in controlling corporate action." *Ford Motor Company vs. Aguiniga,* 9 S.W.3d at 261 n.6 (noting

that a false conflict exists when only one legitimate interest is in play). In the case at bar, none of the Defendants are Venezuelan citizens. As such, Venezuela does not have an interest in the application of its law and the Court should apply Texas law.

Further, with regard to the respective local interests of the United States and Venezuela, the court in *In re Bridgestone/Firestone Inc.,* noted that Venezuela is willing to cede some of its interest in these cases in favor of trial in the United States. *In re Bridgestone/Firestone Inc.,* 190 F. Supp. 2d at 1154. Colonel Jose Rafael Quero Vallecillos, National Director of the Department of Technical Transportation Surveillance (Cuerpo Tecnico de Vigilancia del Transito Terrestre), which is part of the Ministry of Infrastructure of [1] indicated Venezuela would cede to the United States. *Id.* Venezuela's willingness to cede some of its interest to the United States in cases similar to the one bar is reiterated in *Firestone FNC,* wherein the court determined that Venezuela does not have a strong interest in this litigation. *Firestone FNC.* 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002). Venezuela's willingness to cede its interest in this litigation to American courts tilts the balance toward applying Texas law.

### C.    Even if there is an Actual Conflict, the Most Significant Relationship Test Points to the Application of Texas Law.

Texas follows the "governmental interest analysis", which measures the "significance' element of the most significant relationship against the respective governmental interest at stake for the states whose laws are implicated. Specific contacts to be taken into account in tort cases

---

[1]  Colonel Vallecillos also stated that the Department was willing to place the officers who investigated certain accidents in Venezuela "at the disposal of the appropriate United States individuals in order to provide testimony through deposition and/or at trial regarding the events of the accidents" and will authorize and order their deployment for this purpose.

to determine the state of most significant relationship include (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.

In *Gutierrez v. Collins, the* court emphasized that "application of the 'most significant relationship' analysis should not turn on the number of contacts with a particular state, but more importantly on the qualitative nature of those contacts as affected by the policy factors which are set out in section 6 of the Restatement." *Gutierrez v. Collins,* 583 S.W.2d at 319; *Perry v. Aggregate Plant Products Co.,* 786 S.W.2d at 24. As set forth below, the most significant interest in play is Texas' interest in ensuring that unreasonably dangerous defective products are not sold within its borders. Here the subject tires are of the precise type and design as those sold in Texas and Texas residents and citizens.

### 1.    Emphasizing The Place of Injury Would Constitute an Inappropriate Regression to the Principle of Lex Loci Delicti.

In the instant case, the persons killed and injured as a result of the defendants' negligence and/or product failure, occurred in Venezuela.    The fortuity that the negligent acts of the Defendants and/or that a defective product failed maimed and killed people in Venezuela, should not act to frustrate Texas' interest in protecting consumers from Defendants' negligent acts and/or dangerous products. If the Court were to follow the Defendants' wishes and focus primarily on the place of the injury, such would constitute nothing more than a regression back to the outdated principles of *lex loci delicti.* The Restatement itself instructs us that. "...where location of injury is fortuitous, the place where the Defendant's conduct occurred will usually be given particular

weight in determining the state of the applicable law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §145, Comment on Subsection (2): e. Even in a case involving pure negligence, "...when additional considerations favor one state or the other, the place of injury is no longer the controlling factor. The next task is to determine the relative significance of the state's interest to the particular case and issues. *Trailways. Inc. v. Clark,* 794 S.W.2d 479, 485 (Tex. App.- Corpus Christi 1990, writ den'd).

### 2. The Location Where the Defendants' Conduct Caused the Injury Favors Application of Texas Law.

Despite the happenstance that Plaintiffs in the instant case were either maimed or killed in Venezuela, there is state and federal authority, including this Court, that recognizes it is the *product,* and not only the conduct of the parties, that is the focus of a choice of law analysis in a product liability lawsuit. *Melton v. Borg-Warner Con.,* 467 F.Supp. 983, 986 (W.D. Tex. 1979). As such, it is not the place where the accident occurred which determines where the wrongful conduct occurred, rather it is the country where the product enters the stream of commerce or services and is substantially designed and substantially manufactured and are where the services are supplied. *Crisman v. Cooper Industries,* 748 S.W.2d 273, 277 (Tex. App.-Dallas 1988, no writ). The *Crisman* court recognized that, "the mere design or manufacture of a defective product is not actionable. To invoke the doctrine of strict liability in tort, the product producing injury or damages must enter the stream of commerce." *Crisman v. Cooper Industries,* 748 S.W.2d at 277 (citing *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex. 1978)). In *Crisman,* the court attributed great weight to the fact the allegedly negligent services emanated from the State with the most interest in deciding to apply its law. In fact, almost every court, including this

Court, that has considered choice of law questions in liability cases, has attributed great weight to where the product and/or services enters the stream of commerce. *See e.g.. Perry v. Aggregate Plant Products Company,* 786 S.W.2d 21, 24 (Tex. App.-San Antonio 1990, writ den'd); *Mitchell v. Lonestar Ammunition. Inc.,* 913 F.2d 242, 250 (5th Cir. 1990); *Melton v, Borg-Warner Con.,* 467 F.Supp. 983, 986 (W.D. Tex. 1979).

In the case at bar, it is uncontested that the basis of Plaintiffs' claims, specifically negligence in design production, manufacture, and/or marketing, occurred in the United States. This uncontested fact does not suggest the application of Venezuelan law but rather that of Texas. Venezuela is simply not "the place where the conduct causing the injury occurred" with respect to Defendants' conduct in designing, producing, manufacturing and marketing the product. *Perry v. Aggregate Plant Products Co.,* 786 S.W.2d 21, 25 (Tex.App. - San Antonio 1990, writ denied); *Crisman v. Cooper Industries, supra,* 748 S.W.2d at 277. As such, because of the acts occurring outside of Venezuela, such factors weigh against the application of Venezuelan law.

### 3.    The Domicile, Residence, Nationality, Place of Incorporation and Principal Place of Business Within the United States of the Defendants Does not Favor the Application of Venezuela's Law.

Clearly, in applying Restatement of Conflict of Laws § 145 to the facts of the case at bar, contacts weighing in favor of the application of Venezuelan law do not predominate and the Court should apply Texas law. Certainly, Texas has a strong interest in the resolving the liability of multinational corporations that place these self same products into the stream of companies of this state and expose Texas citizens and residents to the very same risk of harm or death.

### D. Application of Restatement of Conflict of Laws § 6 Principles Does Not Warrant the Use of Venezuelan Law.

Of the principles set forth in Section 6, the most important in tort cases, such as the case at bar are (1) the needs of he interstate and international systems, (2) the relevant policies of the forum, (3) the relevant polices of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and (4) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 comment b.

#### 1.    The Needs of the Interstate and International Systems Favor Application of Texas Law.

The needs of the interstate and international systems favor application of the law of the forum state. In no way does this factor suggest that Venezuelan law should apply. The Defendants service and sell their defective products in Texas and do so with the specific understanding that they are subjecting themselves to the jurisdiction of this state. This specific understanding is reinforced by defendants affirmative step in registering itself to do business in the State of Texas, and appointing a registered agent for service of process:

Firestone's agent for service is CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

Ford's agent for service is CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

Applying Texas law to these Defendants with respect to the services and/or products provided and/or delivered in Texas does not burden either the interstate or international systems in any significant way.

### 2.    The Relevant Policies of the Forum

In the context of conflict of laws, the "relevant policies of the forum" are "the most critical consideration." *Seth v. Seth,* 694 S.W.2d 459, 463 (Tex. App.- Fort Worth 1985, no writ).[1] Several Texas policies require the application of Texas law.

### a.    Texas' Public Policy Expressly Opens Texas Courts for the Vindication of Causes of Action for Wrongful Death and Personal Injury.

Section 71.031 of the Civil Practice and Remedies Code contains a choice of law provision for personal injury or wrongful death occurring outside the state of Texas C.P.R.C. § 71.031. Under the statute, an action for damages for death or personal injury may be brought in Texas courts, even though the wrongful act takes place outside Texas, if (1) a law of the foreign jurisdiction or of Texas gives a right to maintain an action for damages for the death or injury; (2) the action is begun within the time provided by Texas law; (3) for a resident of a foreign state o country, the action is also begun within the time provided by the laws of the jurisdiction where the wrongful act took place; and (4) in the case of a citizen of a foreign country, the country has equal treaty rights with the Untied States on behalf of its citizens. C.P.R.C. § 71.031(a). Furthermore, the law of Texas governs all matters pertaining to procedure in the prosecution or maintenance of the action in the Texas courts.

Plaintiffs herein maintain that they are entitled to bring their claim for damages into this Texas Court on the basis of treaty obligations existing between the United States and Venezuela

---

[1] "Our review of the record convinces us that the most critical consideration is 'b the relevant policies of the forum…. Nor do we see how any of the other sec. 6 factors might outweigh factor

under a Treaty of Peace, Friendship, Navigation and Commerce signed on January 20, 1836. Article 13 of t treaty provides that the courts of both countries shall be "open and free" to the other's citizens "on the same terms which are usual and customary with natives or citizens of the country in which they may be..." 8 Stat. 466 WL 3643.

### 3. Texas has an Interest in Punishing Conduct Occurring Outside Its BordersHaving a Substantial Effect Within its Borders.

Texas courts have recognized that the Lone Star State "has the right and the power to punish conduct occurring outside its borders" and "especially when some of those acts emanated and originated within its borders" *Swanson v. Schlumberger Technology Corp.*, 895 S.W.2d 719, 733 (Tex. App. - Texarkana 1994, no writ), (*citing Hartford Fire In. Co. v. California*, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)). In the case at bar, the products provided by Defendants in Venezuela are the products of very same type and design that have caused injury and death to Texas citizens. This circumstance clearly implicates Texas' interests.

Texas' strong interest in deterring or controlling the sale or provision of negligent services or defectively designed or manufactured products to consumers is universally acknowledged. Plaintiff's expert, Tatiana de Maekelt, head of the private international law department of Universidad Central de Venezuela, in the attached affidavit expressly states that, "One is bound to conclude that any Venezuelan jurisdiction that may be asserted through operation of formal legal criteria, should be waived in favor of the respective foreign courts, in view of the clear inconvenience of judging the matter in Venezuela." de Maekelt, "Different Aspects of Jurisdiction and Products Liability in Venezuela's Private International Law" pg. 11. It follows that the United States has the paramount interest in application of its laws in a determination of

'b." *Id.*, at 463

this case.

Further justification for the application of Texas and/or other American states law is that under Venezuelan law, the victim has the right to move for application of the law of the state where the cause generating the tort. *Id.* pg. 14. In contrast, Texas has a substantial interest in the resolution of the parties' claims and defenses. The Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers and the regulation of the conduct of manufactures that have business operations in the state. *See Dow Chemical ComDanv v. Alfaro,* 786 S.W.2d 674 (Tex. 1990). The expansive Texas system of tort liability for defective products serves as an incentive to encourage safer design and to induce corporations to control more carefully their manufacturing process. *Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129, 1141 (NED. Tex. 1980).

### 4.   *The Relevant Policies of Other Interested States and the Relative Interests of those States in the Determination of the Particular Issue Favors Texas Law.*

A foreign state has no governmental interest whatsoever in applying its laws in a foreign court to reduce its citizens' rights of recovery, except to protect one of its own citizens. *Ford Motor Company vs. Aguiniga,* 9 S.W.3d 252; *Hurtado v. Superior Court,* 11 Cal.3d 574, 580, 114 Cal. Rptr. 106, 522 P.2d 666 (1974); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984). In analyzing the most significant relationship factors in *Hurtado,* the California Supreme Court carefully explained that a nonforum state has no interest in having its laws applied to limit or prevent its citizens from achieving a recovery elsewhere. In the case at bar, Venezuela's policies are in no way furthered by preventing plaintiffs from achieving a just recovery against these moving defendants. Further, Venezuela has been found to be willing to

cede its interest in Ford and Firestone cases in favor of trial in the United States. *In re Bridgestone/Firestone Inc.*, 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002).

### 5.    The Basic Policies Underlying the Particular Field of Law Favors - Application of Texas Law.

The Texas Supreme Court has held that the purpose of the wrongful death act is "provid[ing] a remedy for injuries resulting in death." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 n. 8 (1990), *quoting* Leon Green, "The Texas Death Act," 26 Tex. L.Rev. 133, 136 (1947). The wrongful death statute is "remedial in nature and must be liberally construed." *Witty v. American General Capital Distributors, Inc.*, 727 S.W.2d 503, 504 (Tex. 1987). Personal injury causes of action serve similar purposes and are likewise frustrated by gratuitous application of Venezuelan damage limitations in Texas courts. Similarly, applying **Mexican** Venezuelan law to a U.S. defendant does not further any legitimate Venezuelan governmental interest in protecting its defendants.

### 6.    Certainty, Predictability and Uniformity of Result Favor Application of Texas Law.

Plaintiff asserts that, with regard to the damage limitation question, the Restatement's presumptive rule coincides with the substance/procedure solution and generally provides for application of the forum's statute of limitation. Restatement (Second) Conflict of Laws § 142 (1986 Revisions) The rule that the forum state's damages law should apply is one that provides certainty to the litigants, and is not subject to misinterpretation Further, it allows for all parties to be able to predict their liability with uniformity so that unjust results do not occur. Finally, moving defendants' theories, that a forums' damage law are subject to change, depending on the outcome of a complicated balancing act that leads to different results among different persons

injured or killed in the same accident, certainly defeats the interest of predictability and uniformity of result.

Texas negligence and product liability law has been governed by its common laws and by Section 40ZA of the Restatement (Second) of Torts since 1967. *See McKisson v. Sales Affiliates. Inc.* 416 S.W.2d 787 (Tex. 1967). Texas law regarding liability, causation and damages to a user or consumer of a defective product and/or receipt of negligent services is thoroughly and comprehensively developed. A manufacturer, designer, seller, retailer or anyone in the marketing chain who introduces a defective product into the stream of commerce or negligently provides services has a certain, predictable and uniform body of law as to what liability, causation and damages it will be subject to for damages caused by its defective product and/or negligent act. Texas law will be easier to apply and better protects the expectations of the parties. *See Moorehead v. Mitsubishi Aircraft,* 639 F.Supp 385, 391 (E.D. Tex. 1986).

### 7. *Ease in the Determination and Application of the Law to be Applied Favors Application of Texas Law.*

Lastly, and as a practical matter, this Court should apply Texas law for reasons of convenience and efficiency because this Court is greater familiar with the local rules. In the alternative, the law of other states in the United States, including Michigan, New Jersey or North Carolina should be applied to the case at bar before any serious consideration is given to applying Venezuelan law. Risinger, "Substance" and "Procedure" Revisited, 30 UCLA L. REV. 189 (1982).

## II.  CONCLUSION AND PRAYER

A careful analysis of the facts in this case under Restatement (Second) of the Conflict of Laws Sections 6 and 145 application of the Section 6 principles to the Section 145 factors leads to the conclusion that this Court should apply Texas common law, negligence law, and/or product liability law, and overrule moving Defendants' motion with respect to the application of Venezuelan law.

In the alternative, should the Court somehow be persuaded that Venezuelan law should apply, then the analysis of it should be in conformity with the opinions expressed by Tatiana deMaekelt (Exhibit A) and James Otis Rodner (Exhibit B).

Additionally, Plaintiffs request additional time to more fully analyze and brief Venezuelan law in the event the court determines that Venezuela law should apply.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court apply Texas common law, negligence law, and/or product liability law and deny Defendant's motion. Alternatively, should the Court determine that Venezuelan law will apply, Plaintiffs pray that the Court determine that such application be in conformity with the opinions and conclusions made by Dr. deMaekelt and allow Plaintiffs additional time to more fully analyze and brief the Court regarding applicable Venezuelan law.

Respectfully submitted,

By: _____
     Juan A. Gonzalez
     Texas State Bar No. 08129310
     Federal ID 3472

14

By: _____

Ricardo G. Benavides
Texas State Bar No. 24031735
Federal ID 32205

1300 North 10th Street, Ste. 400
McAllen, Texas 78501
Telephone: (956) 687-8181
Fax: (956) 687-8868

**ATTORNEYS IN CHARGE FOR PLANTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded via regular mail, certified mail return receipt requested, and/or telefax to the following counsel of record on this the _____ day of September 2003.

Ronald D. Wamstead
BROWN McCARROLL, L.L.P.
1111 Congress Avenue, Suite 1400
Austin, Texas 78701
*Counsel for Defendant, Ford Motor Company*

JUAN A. GONZALEZ
RICARDO G. BENAVIDES

VALERA • MAEKELT & ASOCIADOS
ABOGADOS

AVENIDA VENEZUELA, EL ROSAL
EDIFICIO "VALFER" PH II.CARACAS,
1 0 6 0 ,  V E N E Z U E L A .
TELEFONOS 952.50.36 - 951.51.64 - 951.05.96
FAX: 951.42.14. E-mail·vaimaben@cantv.net



## AFFIDAVIT OF TATIANA B. DE MAEKELT

I.       Tatiana B. de Maekelt, deposes and says as follows:

1.       I am a graduate of the Universidad Central de Venezuela in Caracas, Venezuela
         where I received my legal degree in 1959 (Summa Cum Laude). I have been
         authorized to practice law in the Venezuelan Republic since that year. Presently, I
         am a senior partner of the firm Valera, Maekelt & Asociados in Caracas,
         Venezuela.

2.       I carried out postgraduate studies in University of Goethe – Frankfurt, Germany
         and received Doctor of Law in 1961 (Cum Laude). I am also Doctor of Juridical
         Science from the Universidad Central de Venezuela in 1978 with honors. And I
         have a Superior Diploma in Comparative Law, at the International University of
         Comparative Sciences, Luxemburg. I am invited speaker at various universities
         and forums.

3.       I have been Secretary of Legal Affairs at the OAS Counsel (1978-1984). In
         addition, I have served in various other administrative capacities including being
         the legal advisor to the Venezuelan Ministry of Education (1970-1975) and for the
         Ecuadorian National Counsel for Modernization (CONAM) (1995-1996), advisor
         and litigator in civil, commercial, and business law. I am fluent in Spanish,
         English, German, French, Russian and Polish.

4.       I am Professor of Law at both the Universidad Central de Venezuela an the
         Universidad Católica Andrés Bello, Caracas, Venezuela. I teach Private
         International Law and Commercial Law. I am a Professor at the graduated
         program for the Masters Degree of Private International Law and Comparative



**PLAINTIFF'S
EXHIBIT**

tabbies®

**"A"**

Law. I have also taught comparative law and conflict of laws as an associate professor at American University Washington College of Law in Washington, D.C.

5. I have published numerous law review articles, commentaries and books in the area of Private international law. I am the author of a textbook on international law entitled "Material de Clases para Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition (1986); Third Edition (1995) and Fourth Edition (2000). I am also the author of "Guías para el Estudio de Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1997) and Second Edition (2000). Finally, I am author of Normas Generales de Derecho Internacional Privado en America (1984). Attached as Exhibit "A" is a copy of my curriculum vitae.

6. I served as President of the Commission charged with the responsibility of drafting the final version of the Private International Law Statute, which was presented to the Venezuelan National Assembly in 1996. I participated in parliamentary discussions of the statute and drafted commentary and interpretive legislative history regarding some of the most relevant articles of the statute. Upon the adoption of the statute, I authored several commentaries on the statute, as well as numerous notes, essays and articles in both Venezuelan and international publications regarding the statute. Finally, I have participated in numerous conferences and forums both domestically and internationally to discuss the new statute.

7. At the present time, I am authoring a comprehensives textbook on the Venezuela Statute on Private International Law. In 2002, I was elected as Member of the Academy of Political and Social Sciences (Academia de Ciencias Políticas y Sociales).

8. I have been qualified as an expert and rendered opinions in the United States Courts, specifically, In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373, wherein I rendered an opinion regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis. In Re Bridgestone/Firestone, 190 F. Supp. 2d 1123 (S.D. Ind. 2002)

There, the Court accepted my credentials and stated:

> ...de Maekelt has much experience on which to base her knowledge of the law. De Maekelt served as President of the Commission charged with drafting the final version of the statute prior to its presentation to the Venezuelan National Assembly...She also has published extensively on the Venezuelan Statute on Private International Law...Such credentials understandably contribute to our willingness to rely on the Maekelt´s statements regarding the statute.[1]

9.    My opinion is based upon my review of the following materials:

a) In Case N° 03-03-17590-CVR: Elsa Beatriz Lopez Guedez, Individually and as Administratrix of the Estate of Antonio José Manrique López, Deceased; Juan Pedro Manrique López as Administrator of the State of Dana Lys Tey Maldonado de Manrique; Juan Pedro Manrique López as next friend of Betsabel Dayan Manrique Maldonado, a minor and Antonio José Manrique Maldonado, a minor; Tadeo Maldonado, individually and Isabel Sanchéz Santa Cruz, individually; Juan Pedro Manrique López, as next friend of María José Manrique Velazquez, a minor; Juan Pedro manrique López, as next friend of Firllyth Francheska Manrique Molina, a minor, vs. Bridgestone/Firestone, Inc.; Bridgestone Corporation; Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.; Del Rio Test Center Inc. AND Ford Motor Company:

  ᵓ  Plaintiffs Original Petition;

  ᵓ  Defendants Bridgestone Corporation's Special Appearance, Motion to Dismiss and/or Quash for Insufficiency of Service of Process and Motion to Transfer Venue;

  ᵓ  Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of Forum Non Conveniens, original Answer and Jury Demand of Defendant, Bridgestone/Firestone, North American Tire, L.L.C., individually

---

[1] 190 F. Supp. 2d al 1132.

and as successor to both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.;

- Defendants Ford Motor Company's Motion to Transfer Venue and Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Pleas against capacity, Original Answer and Reliance and Jury Demand; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.'s Motion to Transfer Venue and Original Answer Subject Thereto.



b) In Case N° 03-03-17602-CVR: Aida Elatrach Hange, Individually and as Representative of the Estate of Louaiy Alatrach, Deceased and as next friend of Omar Elatrach Alatrach and Charif Elatrach Alatrach, minors; Sourech Alatrach, Individually and Youssof Alatrach, Individually vs. Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center, A/K/A Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center Inc. and Ford Motor Company:

- Plaintiffs Original Petition;

- Defendants Ford Motor Company's Motion to Transfer Venue and, Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Plea Against Capacity, Original Answer, and Reliance and Jury Demand;

- Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of *Forum Non Conveniens*, Original Answer and Jury Demand of Defendant Bridgestone/Firestone North American Tire, L.L.C., Individually and as Successor to Both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.'s Motion to Transfer Venue and Original Answer Subject Thereto.

c) Venezuelan Private International Law Statute (Ley de Derecho Internacional Privado), Official Gazette N° 36.511 dated August 6, 1998.

II.     I make this Declaration based upon my personal knowledge and legal research of Venezuelan law, and in my capacity as a Venezuelan lawyer and Professor of Venezuelan law:

1.     The Venezuelan Statute on Private International Law, adopted on August 6, 1998[2] defines the circumstances under which a Venezuelan court will have jurisdiction. The Article 63 includes, a general derogation drafted under the following terms: "All norms regulating the subject matter of this statute are hereby derogated". Prior to the adoption of the Private International Law Statue, the rules governing jurisdiction were part of the Code of Civil Procedure (1986) under the heading of "Of International Procedural competent" (Section IV, Chapter 1, Title 1 of Book One), especially those governing the international procedural competent jurisdiction (known as jurisdiction in the Statute), articles 53 to 58, as well as a rule on lack of jurisdiction (first part of article 59) and the article 2 (exclusive jurisdiction).

2.     The fundamental principle of jurisdiction under Venezuelan law is that a defendant should be sued in his place of domicile,[3] inasmuch as it seeks to facilitate due process as a constitutional principle.[4] This principle is currently codified in Article 39 of the Statute of Private International Law, which provides that the first forum for bringing suit against a non-domiciliary defendant is the country where the defendant is domiciled.

3.     When dealing with persons non-domiciled in the Republic, the criteria for the

---

[2] Official Gazette N° 36,511 of 08-06-1998.

[3] Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 1950 of 12/21/1999. See in Tatiana Maekelt y otros, Materiales de Estudio para el Derecho Internacional Privado, 4th Edition, Universidad Central de Venezuela, Caracas, 2000.

[4] Constitution of the B. Republic of Venezuela: Article 49, heading: "Due process shall apply to all judicial and administrative actions, as a consequence: 1. Defense and legal assistance are inviolable rights at each stage and degree of the investigation and of process" This principle has been widely developed by the decisions of the Supreme Tribunal of Justice, in Constitutional Chamber, case of action for annulment by reason of unconstitutionality of article 197 of the Code of Civil Procedure, of 02/01/2001, see text at

attribution of jurisdiction may be found in articles 40, 41 and 42 of the Private International Law Statute.

4.    In this case the criteria for the attribution of jurisdiction may be found in Article 40 of the Private International Law Statute. Articles 41 and 42 are not applicable to this case because Articles 41 refers to controversies involving actions related to universal assets and Article 42 refers to cases involving actions on the status of persons or on family relationships.

5.    The indicating criteria of article 40 of the Venezuelan Statute of the Private International Law define the conditions under which the Venezuelan courts shall make use of their power to decide disputes with the strength of "res judicata".[5] In other words, the criteria for the attribution of jurisdiction "should establish which of the States with whom a specific legal relationship is connected, is competent to resolve the controversy".[6]

6.    Article 40 defines four sets of circumstances which may create jurisdiction in Venezuela over a non-domiciliary defendant, and are: the place where the personal or real property is located; the place where the obligation is performed; the place where the agreement is entered; the place where the facts are verified; and personal service of a defendant found within Venezuelan territorial boundaries (even if domiciled abroad) or cases of express or implied submission.

7.    The places where the facts are verified and of the facts show some difficulties. First, their qualification, and the fact that the product liability is so complex that it does not allow for a simple qualification of these elements. Liability is the consequence of a chain of actions that may arise within a State's territory, continuing in another one and produce the tort in another one. In view of these

---

[5] Eugenio Hernández Bretón: Derecho Procesal Civil Internacional Jurisdicción Competencia, Falta de Jurisdicción y Litispendencia Internacional, Biblioteca de la Academia de Ciencias Políticas y Sociales, Caracas, 1998, pp. 95-97.

[6] Tatiana Maekelt: Las disposiciones del Derecho Procesal Internacional en el Código de Procedimiento Civil venezolano vigente. In Libro homenaje a Werner Goldschmidt, Caracas, 1997, particularly p. 165 and the therein quoted judgment of the Supreme Court of Justice.

opinions, the doctrine supports flexible qualification of these criteria, based on the links they may have with the case at issue, bearing in mind the victims' justified expectations. It is also hard to establish the wide range of cases constituting their premises.

8. In my opinion, the referenced language of subparagraph 2 pf article 40 requires the judge evaluating the possibility of exercising Venezuelan jurisdiction to engage in the equivalent of a "most significant contact" analysis. In cases like this one where important elements of the case occurred in more than one jurisdiction and witnesses and evidence related to those facts is similarly not concentrated in one jurisdiction alone, the Court should weigh which of the competing jurisdictions has the "most significant contact" to the controversy to be decided in determining whether jurisdiction exists in Venezuela over a non-domiciliary defendant. It is not enough that one or more facts occurred in Venezuela; the most significant contacts to the underlying tortious conducts will determine whether jurisdiction will exist in any particular case.[7]

9. The Private International Law Statute provides for the possibility that the parties submit expressly or tacitly to the jurisdiction of Venezuelan courts (article 40, paragraph 4th).

10. In cases of express submission, the same must be in writing (art. 44), that is to say, both parties must have expressly and unequivocally stated, in writing, their will to submit themselves to the jurisdiction of Venezuelan courts. Express submission requires, however, the agreement of both parties. That is, in order to confer jurisdiction on a Venezuelan court through express submission, there must be an agreement by both parties to a dispute or controversy to accept Venezuela

---

-Aristides Rengel Romberg: La Competencia Procesal Internacional en el Derecho Venezolano. Libro Homenaje a la Memoria de Lorenzo Herrera Mendoza. T.I., Universidad Central de Venezuela, Caracas, 1970, pp.65 y ss., particularly p .67.
[7] Tatiana Maekelt : Codificación Interamericana sobre Derecho Internacional Privado y su rol en la integración universal. In Revista de Estudios Latinoamericanos, Mundo Nuevo, # 83-84, Instituto de Altos Estudios de América Latina, Universidad Simón Bolívar, Caracas, 1999.

as the proper forum to hear the dispute. In the absence of such agreement by one side or the other, jurisdiction cannot be created by unilateral submission.

11. There is tacit submission when the following actions concur: a) for the plaintiff, by the simple fact of filing the complaint before a Venezuelan court. This prevents that the plaintiff may pretend to object to the jurisdiction of the Venezuelan courts in the event of a counterclaim by the defendant; and, b) for the defendant, after having appeared in trial, by the mere fact of taking any step other than filing a preliminary motion alleging lack of jurisdiction, or objecting to a cautionary measure (art. 45).[8] With regard to express or tacit submission, the precedents of the Supreme Court of Justice (now Supreme Tribunal of Justice) have been establishing that in international law the principle of the extension of jurisdiction by reason of the territory is accepted, when grounded on the principle of the litigating parties autonomy.[9]

12. I am not aware of any reported decision in Venezuelan jurisprudence where jurisdiction over a civil dispute involving tort liability of a non-domiciliary defendant was confirmed in a Venezuelan court by express submission by mutual agreement of both parties. Unilateral submission is not effective to create jurisdiction.

13. Submission is excluded in the field of actions affecting the creation, modification or extinction of in rem rights on real property (art. 46) —located abroad— in spite of the fact that the law does not provide it expressly, save when allowed by the law of their location. Venezuelan law does not accept the submission because it

---

[8] See, for instance, Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 646 of 10-16-1997.

[9] Aristides Rengel Romberg: Tratado de Derecho Procesal Civil, Tomo I, Octava edición, Organización Gráficos Capriles, C.A., Caracas, 1992, p. 385.
-See also Judgment by the Supreme Court of Justice, Political and Administrative Chamber, 20-10-1988; # 540-92, 05-11-1992; # 472, 14-07-1994. See in Tatiana Maekelt: Material de Clase para Derecho Internacional Privado, Universidad Central de Venezuela, Caracas, 1995, pp. 428-429.

acknowledges exclusive condition to Venezuelan courts when the real property is located in Venezuela.[10]

14.    The determination of the Venezuelan courts' jurisdiction must be made not only on the basis of the jurisdiction attributing criteria but also on that of the exceptions thereto as provided by the Private International Law Statute. In the event that one of the jurisdiction criteria may be held as possibly operating, one should also find out whether the attributed jurisdiction is exclusive or not. In the event of exclusive jurisdiction, there would not be any waiver thereof, since the Private International Law Statute (art. 58) expressly prohibits waiver. Yet, when dealing with concurrent jurisdiction, it should be waived not only in view of the exception of international *lis pendens* and/or international *res judicata,* provided in article 58, but also by reason of justice, procedural economy and international harmony of solutions.

15.    Exclusivity of jurisdiction operates only in consideration of express legal regulation or due to a conclusive technical reason[11] and it may be qualified in two ways: a priori, by means of an express legal formula, or subsequently, as a consequence of the specific case's analysis. Both formulas have a common denominator: the protection of the State's interests.[12] Article 47 of the Private International Law Statute, without defining these subject matters, moves us closer to them, when acknowledging what pertains to the fact that they may not be conventionally derogated "...in cases where the issue should refer to disputes related to rights in rem on real property situated in the territory of the Republic, or when dealing with issues not admitting settlement or affecting essential principles of Venezuelan public policy".

---

[10] Eugenio Hernández-Bretón: Algunas cuestiones de Derecho Procesal Civil en la Ley de Derecho Internacional Privado. In Revista de la Facultad de Ciencias Jurídicas y Políticas, N° 117, Caracas, 2000, pp. 92-93.
[11] Joaquín Sánchez Covisa: Anotaciones sobre la Competencia Procesal Internacional Indirecta. In Obra Jurídica, Ediciones de la Contraloría General de la República, Caracas, 1976, p. 298.
[12] Ibidem... pp. 398-400.



16.   It is clear that the lawmaker's intention was to point out the three assumptions expressly provided in article 47, as possible exceptions to the rule of the conventional waiver of jurisdiction, and to allow exclusive jurisdiction of Venezuelan courts. From a congruent construction of said article's text, one may draw that the exclusivity of jurisdiction, under the assumption of disputes related to rights on real property, is automatic or direct. One may draw also, under the two other assumptions (subject matters on which there may not be any covenant, and essential principles of Venezuelan public policy), each specific case requires its own review. As a consequence, in these last two cases, the judge should weigh the circumstances of each case, in order to determine whether there is exclusive jurisdiction or not. Hence, exclusivity would be determined subsequently.[13] In going through this test, the Judge should also evaluate the convenience of judging the matter at issue, considering practical circumstances and the possibility of satisfying the plaintiff's pretensions.

17.   By default of exclusive jurisdiction, there could be concurrent. If such were the case, the decision to make use of another jurisdiction is the plaintiff's privilege; this does not exclude the possibility of the efficacy of the judgment entered by another State having concurrent jurisdiction. If plaintiff should not decide, the preference among concurrent jurisdictions is the judge's choice, based on the degree of connection of the cause with a specific jurisdiction. The judge should bear in mind also both litigating parties public and private interest, the availability of evidence, the cost of the witnesses, the congestion of courts and the convenience of the litigation of foreign judicial disputes in local courts.

18.   The Private International Law Statute, when admitting the exception of "international lis pendens" and the "exception for international connection of causes", formally derogates the decadent principle of the preference of Venezuelan jurisdiction when opposed to foreign jurisdiction.[1] The currently

---

[13] Gaetano Morelli: Derecho Procesal Civil Internacional. Translation by Santiago Sentis Melendo, Ediciones Jurídicas Europa-América, Buenos Aires, 1953, pp. 177 et seq.
-Eugenio Hernández-Bretón: Algunas Cuestiones...op. cit., p. 95.

governing criterion acknowledges the reality of an interdependent international community whereby it pretends to make it easier for the individual to choose jurisdiction, and this does not affect sovereignty at all, it adapts it rather to the requirements of each case. · · ·

19. Once the principle of preference of our jurisdiction has been derogated and service of the non-domiciled defendant has been introduced as a criterion for the attribution of jurisdiction —and this originated the "forum non conveniens" doctrine in Common Law countries—, nothing objects to its application, especially in two situations: when jurisdiction hardly shows any link with the case or when submission to Venezuelan courts leads to a clearly unfair outcome. In this last case it should be applied with all its strength. I am not aware of any reported decision in Venezuelan jurisprudence where the doctrin of forum non conveniens was confirmed.

20. In the matter of the law applicable to tort liability, the Private International Law Statute did not derogate any rule, since there was no regulation on this respect in domestic legislation and it is the example of a new set of rules in this subject matter, included in article 32, referring to the law applicable to torts and to the management of affairs.[14]

21. The Venezuelan doctrine has commented on the article, indicating that the same will apply to all cases of tort, even the assumptions of products liability.[15]

22. The article 32 subjects the tort to the legal system of the place where the effects of the damage are produced. It is difficult to determine such place, especially when the tort is related to several countries. As to the "place where the effects were produced" connecting factors qualification, in matters of conflict of laws, the modern doctrine is of the opinion that the connecting factor should be construed

---

[14] " Article 32: Torts are governed by the Law of the place where their effects have been produced. The victim, however, may move for application of the Law of the State where the cause generating the tort was produced."

[15] Fabiola Romero. Las personas jurídicas y las obligaciones en la Ley de Derecho Internacional Privado venezolana, In Revista # 117 Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, Caracas 2000, pp. 78-79.

flexibly depending on the links said facts may have with the case at issue and the objectives sought.

23.   Another important element is the place of the damage-generating cause, that is to say, the place where the tort is totally or partially made. The generating cause may consist in the manufacturer's unlawful conduct, by means of which it violates the duty of diligent manufacturing, in other words, that of the best head of family.[16]

24.   A positive action by the agent has been defined also as the generating cause of damages, such as when doing something against the law or against what has been expressly agreed in a contract, or a negative action or an abstention, as not doing what one was legally and validly bound to do.[17]

25.   Last, we must refer to the victim's action; the victim may choose between the Law of the place where the effects of the tort were produced and the place of their generating cause. This choice will be made bearing two elements in mind: the closest links shown by the situation with the facts linking the tort to a specific place, since the beginning of the unlawful conduct until the harm is materialised[18]

26.   If the Venezuelan court asserts its jurisdiction to know of and decide a tort case with foreign elements, the Venezuelan Judge shall apply his sources in order to establish what law should govern the case.

TATIANA BOGDANOWSKY de MAEKELT
Cédula de Identidad V-960.640

---

[16] James Otis Rodner La Responsabilidad Civil del Fabricante en el Derecho Venezciano and the monography by Angel Rojo. In Revista # 23 de la Facultad de Derecho, Universidad Católica Andrés Bello, academic year of 1976-1977 pp. 236-258, especially, p 243

[17] Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/10/61, Jurisprudencia Ramírez & Garay, T. IV, p. 474.
    - Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/14/96, Jurisprudencia Pierre Tapia Corte Suprema de Justicia, August/September 1996, p. 141.

[18] Resolution on delictual obligations in Private International Law adoopted by the Institut de Droit International during its Edinburgh session, on September 11, 1979 (dispositive part).

OPTIONAL FORM 175
(FORMERLY FS-88)
MARCH 1975
DEPT. OF STATE
50175-101

# Certificate of Acknowledgment of Execution of an Instrument

BOLIVARIAN REPUBLIC OF
VENEZUELA
(Country)

CITY OF CARACAS
(County and/or other political division)

EMBASSY OF THE
(County and/or other political division)

UNITED STATES OF AMERICA
(Name of foreign service office)

}  SS.

I,  MATTHEW A. COTTRELL

of the United States of America at  CARACAS, VENEZUELA

duly commissioned and qualified, do hereby certify that on this

day of          08-21-03                    , before me personally appeared
              (DATE (mm-dd-yyyy))

------------------------------------TATIANA  BOGDANOWSKY de MAEKELT--------------------

----------------------------------------------------------------

to me personally known, and known to me to be the individual-described in, whose name    is      subscribed to,

and who executed the annexed instrument, and being informed by me of the contents of said instrument    she

duly acknowledged to me that    she      executed the same freely and voluntarily for the uses and purposes therein

mentioned.

[SEAL]

In witness whereof I have hereunto set my hand and
official seal the day and year last above written.

MATTHEW A. COTTRELL

VICE-CONSUL        of the United States of America.

NOTE. -Wherever practicable all signatures to a document should be included in one certificate. *U.S GPO:1980-0-311-153/5279

**Exhibit "A"**

## CURRICULUM VITAE

### I.-    PERSONAL-DATA

| | |
|---|---|
| First Name | TATIANA |
| Surname: | BOGDANOWSKY  DE  MAEKELT |
| Nationality: | Venezuelan |
| Address in Venezuela: | VALERA, MAEKELT, & ASOCIADOS |
| | Avda. Venezuela, Edificio Val-Fer, PH2, El Rosal, Caracas 1060 |
| Telefax number: | (58212) 9514214 - 9515164 - 9510596 |
| E-mail address: | maekelt@cantv.net |

### II    EDUCATION AND DEGREES OBTAINED

- Central University of Venezuela, Caracas. Law Degree (1959) Honors. Summa Cum Laude.
- University of Goethe - Frankfurt, Germany. Doctor of Law (1961) Cum Laude.
- Central University of Venezuela. Doctor of Juridical Science (1978).
- Course in Private International Law. The Hague Academy of International Law (1960).
- Courses in Comparative Law. International University of Comparative Sciences. Luxembourg (1960-1961). Superior Diploma in Comparative Law

### III    STANDING IN RANK

- Professor of Private International Law, Commercial and Comparative
- Law Practicing Lawyer
- Member of the Venezuelan Academy of Political and Social Science.

### IV    PROFESSIONAL EXPERIENCE

- VALERA, MAEKELT & ASOCIADOS  Partner  Advisor and litigator in civil, commercial and business law, conflict of laws, International procedure, domestic and International contracts, including specially internacional purchase of goods, transfer of technology, distribution agreements, leasing, employment contracts, setting up of new ventures, including

corporations, partnerships and not-for profit organizations, and compliance thereof with domestic and international regulations; judicial international cooperation; procedure involving rogatory letters, applications of international law, procedure for the recognition of foreign judicial decisions and other acts issued by foreign authorities; as external counsel for corporations. International Arbitration.

* Expert and rendered opinions in the United States courts (Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373). An opinión regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis.

* Arbiter of the Venezuelan Chambre of Commerce (Cámara de Comercio de Caracas) since 1998.

* Arbitrator to the International Centre for Settlement of Investment Disputes (ICSID) since 2002.

* PRIVATIZATIONS:

* Consejo Nacional de Modernización (CONAM) Ecuador (1995-1996). Restructuring of the Telecommunications Sector and its subsequent privatization.

* Other Privatization projects.

V   POSITIONS HELD

• Chairperson, Private International Law and Comparative Law Section of Institute of Private Law, Central University of Venezuela (1974 to date).

• Secretary for Legal Affairs, General Counsel, Organization of American States, Washington, D.C. (1978-1984).

• Director and Founder of the Legal Research Center. Andrés Bello Catholic University, Caracas, Venezuela (1977-1978).

VI   TEACHING ACTIVITIES.

• **Central University of Venezuela.**

• Faculty of Law and Political Science.
   Founder and general coordinator of the Graduate Program for the Master's Degree of Private Internacional Law and Comparative law.
   Private International Law Chairperson (1962 to date).
   Commercial Law Chairperson.
   Commercial Law Chairperson, practical works and seminars.
   Postgraduated Courses in Law. Among others:
   Effectiveness and updating of Private International Law.
   Legal system of international corporations.
   New aspects in Private International Law
   International Arbitration (Several courses)
   International Contracts. Conflict of Laws and Jurisdictions.
   Comparative Law. Institutional aspects and practical application.
   New aspects of International Procedure Law.

2

- **Andrés Bello Catholic University**.
  Postgraduated courses.
  Private International Law Chairperson. (since 1986)

- **American University, Washington College of Law**. Washington, D.C.
  Adjunct Professor of Law. Courses on International Conflict of Laws (1982-1984).

- **Inter-American Juridical Commitee**
  Rio de Janeiro, Brazil.
  Director of the courses on International Law (1979-1984).

- **The Hague Academy of International Law.**
  Course on General Rules of Private International law.

## VII    PUBLICATIONS

### BOOKS.

- "Material on Conflict of Laws", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition(1986), Third Edition (1995), 4th edition, (2000)
- "Normas Generales de Derecho Internacional Privado en América" Central University of Venezuela. 1984. Academy of Legal and Political Sciences Award, 1985.
- "General Rules of Private International Law in the Americas. New Approach", Recueil des Cours, Volume N° 177, 1982 IV.
- "Specialized Conference on Conflict of Laws" (CIDIP I). Universidad Central de Venezuela, Caracas, 1979.
- "Estatuto Autónomo en el Derecho Internacional Privado" Thesis submitted for Doctor Degree at the Central University of Venezuela. 1978.
- "Das Kindschaftsstatut im Internationalen Unehelichenrecht" Thesis submitted for Doctoral Degree at the University of Goethe-Frankfurt, Federal Republic of Germany 1962.
- "Independent Statute on Conflict of Laws" Graduation essay for the doctor's degree Universidad Central de Venezuela, 1978
- "Das Kindschaftsstatut im internationalen Unehelicnenrecht" Graduation essay for the doctor's degree of Goethe University. Frankfurt, Germany 1961

### MOST IMPORTANT ARTICLES, 1998-2003

* Publications in several venezuelan and foreign law reviews. Numerous articles on topics related to Conflict of Laws, American Integration, Public International Law and Inter American System, Inter American Codification on transnational and multinational companies, international contracts, especially:

3

* Regulación de la Jurisdicción en el Sistema Venezolano de Derecho internacional Privado. In Libro Homenaje a Juan María Rouvier, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2003.
* Al rescate del Arbitraje en Venezuela. In Libro Homenaje al Dr. Gustavo Planchart Manrique, Caracas, 2003.
* Ley de Derecho internacional privado. Tres años de Vigencia. Trabajo de Incorporación a la Academia de Ciencias Políticas y Sociales, Caracas, 2002.
* Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras. In Libro Homenaje a Gonzalo Parra –Aranguren., Addedum 2001, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2002.
* Eficacia de las Sentencias Extranjeras en el Sistema Venezolano. In Liber Amicorum a Jünrgen Samtleben. Instituto Max Planck de Derecho Extranjero y Derecho Internacional Privado, Hamburgo, Alemania, 2002.
* Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras en Venezuela con especial referencia al Sistema Mexicano. Ponencia presentada en el XXV Seminario de Derecho Internacional Privado y Comparado, México. In: Jurídica. Anuario del Departamento de Derecho de la Universidad Iberoamericana. N° 31, México, 2001.
* Nacionalidad y Ciudadanía en la Constitución de 1999  Academia de Ciencias Políticas y Sociales, Serie Eventos, 2000.
* Futuro del Derecho Internacional Privado venezolano. In: Revista Mexicana de Derecho Internacional Privado, México, mayo 2000.
* Das Neue venezolanische Gesetz über Internationales Privatrecht. In: Rabels Zeitschrift Vol. 64, 2000, Max Planck Institut, Hamburg, Germany.
* Flexibilización del Contrato Internacional en la Convención Interamericana sobre Derecho Aplicable a los Contratos Internacionales. In: Libro Homenaje a Nascimento e Silva Dimensão Internacional do Direito, Sao Paulo, Brasil, 2000.
* Private International Law in Venezuela. In: Private International Law at the end of the 20th Century: Progress or Regress? International Academy of Comparative Law, Kluwer Law International, The Hague, 2000.
* Ley de Derecho Internacional Privado. Comentarios Generales. In: Revista de la Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, N° 117, 2000.
* Aportes Jurídicos de la OEA. Balance y Perspectivas. Instituto de Altos Estudios Diplomáticos "Pedro Gual", Serie Investigación N° 5, 2000.
* Ley de Derecho Internacional Privado. Breves Comentarios Concordancias y Derogatorias Biblioteca de la Academia de Ciencias Políticas y Sociales. Serie Eventos, Primera edición 1999, Segunda edición 2001.
* Arbitraje Comercial Internacional en el Sistema Venezolano In: Seminario sobre la Ley de Arbitraje Comercial, Biblioteca de la Academia de Ciencias Políticas y Sociales. Serie Eventos, 1999.
* El Rol de la Codificación Interamericana en el Mundo Globalizado. XXV Curso de Derecho Internacional. Comité Jurídico Interamericano, Secretaria General, OEA, Wahington D C, 1999.

* Derecho Internacional Privado a finales del siglo XX. In: El Derecho venezolano a finales del siglo XX, ponencia venezolana para el XV Congreso de Derecho Comparado, Bristol, Inglaterra, Academia de Ciencias Políticas y Sociales, Caracas, 1998.
* Antecedentes, Metodología y Parte General del Proyecto de Ley de DIP. In Comentarios sobre Proyecto de Ley de DIP. Academia de Ciencias Políticas y Sociales, 1998.
* Tráfico Internacional de Menores. In: "Adopción Internacional", Universidad Central de Venezuela, Caracas, 1998.

VIII    Memberships:

* Venezuelan Bar Association
* Venezuelan Interuniversity Asociation of Comparative Law  (Founding Member)
* Venezuelan Asociation of International Law (Founding Member)
* Hispanic-Portuguese-American Institute of International Law  (HILADI).
* International Academy of Comparative Law, The Hague, Netherland.
* Gesellschaft für Rechtsvergleichung, Germany
* Société de Législation Comparée, Paris, France.
* American Bar Association. Washington D.C.
* Inter-American Bar Association. Washington D.C.
* American Society of International Law. Washington D.C.
* Uruguayan Asociation  of International Law.
* Peruvian Society  of International Law
* Mexican Academy of Conflict and Comparative Laws.

IX    HONORS

∋ Member of the Academy of Political and Social Sciences (Individuo de Número de la Academia de Ciencias Políticas y Sociales), 2002.
∋ "Orden Libertador" received on July 4th, 1973.
∋ "Orden 27 de junio" dated January 8, 1973. For contributions to the teaching activities
∋ Diploma for "Outstanding contribution to International Legal Studies" Washington College of Law of The American University, 1984.
∋ "José María Vargas" Medal, for outstanding contribution to the Central University of Venezuela.
∋ Honor's Diploma, Venezuelan Bar Association.
∋ "Luis Sanojo" Medal.

X    LANGUAGES

Spanish, German, French, English, Russian and Polish.

Agosto, 2003

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: BRIDGESTONE/FIRESTONE, INC.
PRODUCTS LIABILITY LITIGATION

Master File No. IP 00-9374-C-B/S
MDL No. 1373
(centralized before Hon.
Sara Evans Barker, Judge)

This Document Relates to the Following
Venezuelan Cases:

| IP 00-5022-C-B/S | IP 01-5266-C-B/S |
| IP 01-5287-C-B/S | IP 01-5288-C-B/S |
| IP 01-5315-C-B/S | IP 01-5434-C-B/S |
| IP 02-5571-C-B/S | IP 02-5584-C-B/S |
| IP 02-5685-C-B/S | IP 02-5686-C-B/S |
| IP 02-5709-C-B/S | IP 00-5078-C-B/S |
| IP 00-5079-C-B/S | IP 03-5747-C-B/S |
| | IP 03-5746-C-B/S |

## FOREIGN LAW AFFIDAVIT OF JAMES OTIS RODNER

Plaintiffs, by and through the undersigned member of the Plaintiffs' Executive Committee, pursuant to the applicable Court orders, hereby serve the foreign law Affidavit of James Otis Rodner in the above-styled foreign accident cases. Plaintiffs reserve their right to supplement and amend this Affidavit.

WE HEREBY CERTIFY that a true copy of the foregoing was faxed this 8th day of August, 2003 to all counsel listed on the attorney distribution list.

PODHURST, ORSECK, P.A.
On behalf of the Plaintiffs' Executive
Committee
City National Bank Building, Suite 800
25 West Flagler Street
Miami, Florida 33130

By _____
Victor M. Diaz, Jr.
Fla. Bar No. 503800

**PLAINTIFF'S EXHIBIT**

"B"

## AFFIDAVIT OF JAMES OTIS RODNER

I, James O. Rodner, being duly sworn, state as follows:

## I.    INTRODUCTION

1.    I am a Venezuelan citizen and partner of the law firm Rodner, Martinez and
Asociados with offices in Avenida Venezuela, El Rosal, Caracas, Venezuela. I
hold a law degree from the Universidad Católica Andrés Bello and a Juris Doctor
from Harvard University. I also have an MBA from Harvard University, a
Specialist in Political Economy from the Universidad Católica Andrés Bello and a
Masters in Economics from the Universidad Católica Andrés Bello. I am an
attorney licensed to practice law in the Republic of Venezuela. I am admitted to
and in good standing before the Bar of the Federal District of the Republic of
Venezuela (*Colegio de Abogados del Distrito Federal*). In addition, I am
admitted to practice in the Commonwealth of Massachusetts, in the District of
Columbia and before the United States Supreme Court.

2.    I have been a professor of *Obligaciones* (Contracts and Torts) at the Universidad
Católica Andrés Bello, Caracas, Venezuela. I have also been a professor of
International Finance and Financial Law at the *Instituto de Estudios Superiores de
Administración*, Caracas (I.E.S.A.). I am presently a professor of Monetary
Policy at the Graduate School of Economics of the Universidad Católica Andrés
Bello, and of The Legal Theory of Money at the graduate school of the
Universidad Central de Venezuela.

3.    I have written over thirty-nine law review articles, mostly published in Venezuela,
some published in the United Kingdom, Holland, France and Peru. I have written
nine books on different topics of law and finance. In addition, I am a member of
the International Court of Arbitration I.C.C. (International Chamber of

Commerce), Paris, and an elected member of the Venezuelan Academy of Political and Social Sciences. Attached as Appendix "A" herewith, my curriculum.

4.    I am the author of three law review articles in Venezuela on the subject of products liability. In 1977, I published *La Responsabilidad Civil del Fabricante en el Derecho Venezolano y la Monografía de Ángel Rojo* [Civil Liability of the Manufacturer in Venezuelan Law, and the Monograph of Angel Rojo][1]. The following year I published a paper on the same subject which I presented to the 10th International Congress of Comparative Law held in Budapest, Hungary in 1978[2]. In 2002, I wrote *La Responsabilidad del Fabricante en el Derecho Venezolano* [Manufacturer's Liability in Venezuelan Law], published in a book in honor of José Luis Aguilar Gorrondona by the Supreme Court of Venezuela (Tribunal Supremo de Justicia)[3]. In addition, in 2002 Victor Hugo Guerra published a book entitled *La Responsabilidad Extracontractual por Productos en el Derecho Internacional Privado* [Conflict of Law Rules and Tort Liability for Products][4], Caracas 2002, and the Venezuelan Academy of Political Sciences published an article by José Melich Orsini entitled *La Responsabilidad Civil por Daños Causados por Productos o Servicios Defectuosos* [Liability for Damage Caused by Defective Products or Services] (papers presented in Brisbane – Australia 2002)[5]. To my knowledge, my three articles, the book of Victor Hugo

---

[1] JAMES OTIS RODNER, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano y la Monografía de Ángel Rojo* [The Manufacturer's Civil Liability under Venezuelan Law and the Monograph of Angel Rojo], in 23 Revista de la Facultad de Derecho, Universidad Católica Andrés Bello, p. 235 (Caracas, 1977).

[2] JAMES OTIS RODNER, *La Responsabilidad del Fabricante, Esquema para su Fundamento en el Código Civil Venezolano* [Manufacturer's Liability and its Ground under the Venezuelan Civil Code], II Ponencias Venezolanas al Décimo Congreso Internacional de Derecho Comparado pp. 109-129 (Caracas, 1978).

[3] JAMES OTIS RODNER, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano* [The Manufacturer's Civil Liability under Venezuelan Law], II Estudio de Derecho Civil, Libro Homenaje a José Luis Aguilar Gorrondona. pp. 406 to 451 (Caracas, 2002).

[4] VICTOR HUGO GUERRA, *La Responsabilidad Extracontractual por Productos en el Derecho Internacional Privado* [Tort Liability for Products and Conflict of Law Rules], (Caracas, 2002).

[5] JOSE MELICH ORSINI, *La Responsabilidad Civil por Daños Causados por Productos o Servicios Defectuosos* [Civil Liability for Damages Caused by Defective Products or Services], 139 Boletín de la Academia de Ciencias Políticas y Sociales, pp. 143 to 152 (Caracas, 2002).

Guerra and the article by José Melich Orsini are the only studies that have been published regarding product liability in Venezuela.

5.   I have been asked to provide an opinion on several matters regarding the awarding of damages in case of physical injury and/or death arising out of defective products under Venezuelan law.

## II.   RULE OF INTERPRETATION OF THE LAW

6.   The Civil Code has a very general incomplete provision regarding interpretation of the law. In effect, the Civil Code expressly establishes that "the law shall be interpreted according to the meaning of the words, taking into account the connection between them and the intent of the legislator" (Civil Code, Article 4). However, it also establishes that "when there is no exact provision in the law, the provisions regulating similar or analogous cases must be considered; and, if there is still any doubt, then general principles of law must be applied" (Civil Code, Article 4).   Contrary to the assertions made in the affidavit filed by the defendants, Article 4 of the Civil Code does not provide that statutes have to be strictly construed according to the plain language of the Civil Code, but rather that, when the Civil Code has a particular provision, then that provision has to be applied according to the meaning attributed to its language. Furthermore, the Venezuelan Supreme Court has held that, in addition to the elements contained in Article 4 of the Venezuelan Civil Code used for the purpose of interpreting the law, a judge must also use historical, comparative, and any other external elements that help to clarify the meaning and scope of the formula (meaning the actual legal rule)[6]. This explains why Venezuelan courts frequently quote French, Italian and Spanish cases and authorities as the basis for a given decision.

---

[4] Decision of November 7, 1962, Sala Político Administrativa, Corte Suprema de Justicia [Administrative Political Chamber, Supreme Court of Justice], Gaceta Forense [GF] 2nd ed., pp. 110 to 113, No. 38. (Ven).

3

09/09/2003    13:50    PODHURST    SECK LAW → 4404#25700#13179206405#    NO.144    P005

Venezuelan case law has also held that, when there is no particular provision of law that regulates the specific matter before the court, then analogy can be used[7].

## III.    COLLECTIVE LIABILITY

### Joint Liability under the Civil Code.

7.    Article 1195 of the Civil Code provides that, when the wrongful act or omission is imputable to several parties, these parties are jointly liable to repair the damage that has been caused.  Thus, under Article 1195 of the Code, in the case of torts for defective products, the victim of the tort can bring an action against any one of the potentially liable persons in the chain of sales, distribution, production, fabrication or design of the product.  This joint liability allows the victim to claim the total amount of the damages against any one of the potentially liable persons. As expressed below, this concept has been long recognized in continental doctrine and jurisprudence.

### Corporate Groups.

8.    The rule of joint liability mentioned above (Article 1195) applies to unrelated individuals or corporations as well as to corporations belonging to the same group.  Venezuelan legislation, doctrine and case law have recognized the idea of corporate groups and attribute certain legal effects to corporations acting as groups.  In effect, the Venezuelan Banking Act (*Ley General de Bancos*) recognizes and attributes legal effects to financial groups (Venezuelan Banking Act, Article 161).    The Law to Promote and Protect Free Competition acknowledges that an economic activity may be carried out by one person or groups of inter-related persons (Law to Promote and Protect Free Competition, Article 14).  Companies acting as a group are at times referred to as acting as an "enterprise", "enterprise" (*empresa*), in turn, being defined in Venezuela as one or

---

[7] Decision of July, 28 1955, Jurisprudencia Tribunales de la República [JTR], p. 712, No. 4, Tome I (Ven).

4

more commercial activities that are carried out collectively by different legal entities[8]. Recent case law has further affirmed that "the development of business has brought into existence persons (individuals or corporations) that direct or carry out a series of economic activities via various companies or enterprises, these being formally distinct from their principal but joined to it not only by economic ties but also by common links of management and economic purpose..."[9].

9.    Collective liability for torts, whether in the case of corporate groups or unrelated persons, may arise if an activity is performed collectively, or in a concerted or coordinated manner such that it becomes difficult or impossible to identify the person causing the damage. In the case of torts for defective products, the concerted action or activity would involve all corporations participating in the complete chain of production, that is, design, production, manufacturing and sales.

10.    The idea of collective liability appears in German doctrine, which makes reference to common causation and the involvement in a collective activity that results in damage to a particular victim. When several parties act collectively, albeit in different capacities, "each one of these persons is liable for the totality of the damages produced in the course of their activity in cooperation with others"[10],

---

[8] See ALFREDO MORLES HERNÁNDEZ, *Curso de Derecho Mercantil*, 4th ed., Volume I, p. 117 (Caracas, 1998).
[9] Decision of April, 2001 (Cañafe v. María Isabel Silva and others), Sala Constitucional, Corte Suprema de Justicia [Constitutional Chamber, Supreme Court of Justice], JTSJ (BG), pp 117 – 156, Vol. III, (Vza).
[10] A. VON TUHR, ed. Reus, *Resarcimiento de Daños*, Tratado de Obligaciones (Spanish version), p. 57 et seq. (Madrid, 1984). This affirmation in German doctrine is simply a confirmation of the principles of collective liability contained in the German Civil Code. In effect, Article 830 of the German Civil Code (Bürgerliches Gesetzbuch) provides that "when several parties acting as a group have caused a damage arising out of tort, each one of them is liable for the tort. This rule applies even when it is not possible to determine which of the conducts among the joint tort feasors actually caused the damage." Translation into English taken from the French version of the BGB, translated from German to French by William Garcin, with Fritz Sturm, Paris. Dalloz, 1967.

5

This idea has been further developed recently in Spain[11], France[12], and other European continental countries.

11.  There are no reported Venezuelan cases recognizing the extension of the group theory to collective liability[13]. Nevertheless, the arguments used in continental Europe (France and Spain) for the theory of collective liability are founded on legal principles similar to those found in the Venezuelan Civil Code (Art. 1195) and special statutes (such as the Banking Act and the Law to Protect Free Competition).

## IV.   DAMAGES IN AN ACTION FOR PERSONAL INJURY.

### Who Can Recover Damages in an Action for Personal Injury

12.  In Venezuela, damages in an action for personal injury, when the injured party has not passed away, belong exclusively to the victim of the damages, unless there has been an injury to the property of another party. In effect, Venezuelan

---

[11] In Spain, the development of the collective liability principle is the result of case law and doctrine. In effect, according to Spanish doctrine, to "obtain today a rule by which, when damage has been caused or has originated from the activities of a group or an amalgamation of persons, the responsibility for damages corresponds to all of them in solidum, unless any one of them can exonerate itself by proving that there is no cause relationship or that there is liability without fault that could be attributed to him", LUIS DIEZ PICAZO Y PONCE DE LEÓN, *Derecho de Daños*, p. 167 (Madrid, 1999).

[12] In France, cases have been reported on collective fault for over fifty years. The concept of collective fault, as indicated in French doctrine, is a concept "that permits more naturally to justify the assimilation of the members of a group from which damage arises, as co-authors of the damage", GENEVIÈVE VINEY AND PATRICE JOURDAIN, *La Condition de la Responsabilité*, § 378, p. 207 (Paris, 1998). The idea of collective fault has now been adopted in France under the Civil Code for the case of liability of the manufacturer of defective products, French Civil Code, Article 1386-3.

[13] However, the Venezuelan Supreme Court in the case of F. Desanges and other v. Instituto Nacional de la Vivienda (Inavi) and others, judgment of February 14, 1991, Corte Suprema de Justicia (Supreme Court), CXVI JRG (Case Nº 221-91) 519 (Ven.), found that there was a joint liability of the promoter and the contractor in a case of a defective railing. In a nutshell, this case refers to the death of a child that occurred because the child went through the railings that were used to protect the common walkways in an apartment building owned and built by defendants Inavi and other (the Contractor of the building). The plaintiffs claimed that the railings were built in such a way that a small child could fall through them if he/she leaned on them, which is in effect what happened. The Supreme Court held that Inavi (the promoter) and the Contractor were liable because they built the apartment building. The promoter designed the building and the Contractor executed the design. They were acting together and they both had to supervise the building. The liability was based on the General Liability Rule of the Civil Code (Civil Code, Article 1185) and on the special Joint Liability Rule also included in the Civil Code (Civil Code, Article 1195).

6

case law holds that the action for damages is of a personal nature and corresponds directly to the person that had suffered or is suffering the damages, both in his/her net worth as well as moral damages[14].

13.  The fact that the action for damages is of a personal nature does not mean that (i) the injured party cannot assign to a third party its rights of action[15] or (ii) there are persons, other than the victim of the personal injury, that may have also suffered personal damages (i.e. any person financially dependent on the injured party and/ or relative)[16].

Extent of Damages in the Case of Personal Injury.

14.  Under Venezuelan law, the victim of a personal injury may recover two distinct kind of damages, which may be classed as material or patrimonial damages (daños materiales) and moral damages (daños morales) respectively. In effect, Article 1196 of the Civil Code, which is taken from Article 85 of the French-Italian project of a law of obligations[17], expressly states that:

"The obligation to repair (damages) extends to all material and moral damages arising out of a tort. The judge (trier of the facts) may specifically award an indemnification to the victim of the tort in cases of bodily harm, violation of his honor or reputation or the honor or reputation of his family, violation of his personal liberty,

---

[14] See decision of the Supreme Court of Justice dated August 19, 1961 quoted by JOSÉ MÉLICH ORSINI in La Responsabilidad Civil por Hechos Ilícitos, [Civil Liability for Torts], 2nd ed., pp. 610-611 (Caracas 2001).

[15] Among others, where an insurer has paid under an indemnity policy the loss suffered by the injured party, the insurer has the right to be subrogated to the latter's rights for material damages.

[16] However, in this later case, any damages recovered by the dependants (i.e. any financial loss suffered by the cessation or maintenance payments) can not be duplicated or otherwise awarded to the victim of the personal injury and is limited to material damages suffered. See JOSÉ MÉLICH ORSINI, supra item 14, p. 36.

[17] See Progetto di Codice delle Obbligazioni e dei Contratti. (Commissione Reale per la Reforma del Codice, Commission Française D' Études de IL'Union Legislative entre Les Nations Alliées, et Amies), p. 39, (Roma, 1928).

7

as well in cases of violation of domicile or of a secret (*confidential matter*) that belongs to the victim.

The judge (*trier of the facts*) may also grant an indemnification to the relatives of the victim, whether by blood or marriage, as reparation for the pain suffered as a result of the death of the victim."

15.   Material damages cover all direct, foreseeable and non-foreseeable damages, which are susceptible of direct translation into money (Civil Code, Articles 1185, 1196, 1273 and 1275). In other words, material or patrimonial damages "consist in those that produce a loss or diminishment (reduction) of an economic nature"[18]. These includes (i) loss of earnings (*lucro cesante*), actual and prospective, such as loss of wages, salaries, professional fees and, in general, any type of future earnings; and, (ii) out-of-pocket expenses, such as medical or similar expenses which the victim has incurred as a result of his/her injury together with those that may be incurred in the future (*daño emergente*).

16.   Venezuelan doctrine has held that moral damages, on the other hand, "relate to all damages that do not affect a patrimonial interest of the victim, and thus refer to all damages that have no material (direct economic) consequence"[19]. This means all damages that cannot be measured in economic terms and include such inestimable elements as pain and suffering.

Statutory Limitations on Damages in the Case of Personal Injury.

17.   Under the Civil Code, there is no limit on the amount (quantum) that can be awarded as damages, including amounts that may be awarded as moral damages.

---

[18] ELOY MADURO LUYANDO, *Curso de Obligaciones, Derecho Civil III*, 7th ed., § 327 (Caracas, 1989).

[19] JOSÉ MÉLICH ORSINI, *supra* note 14, p. 45.

8

18.    Venezuelan doctrine and case law recognize that the fixing of the amount of moral damages is discretionary for the trier of the facts[20]. In effect, the Civil Code, when granting the trier of the facts the power to grant moral damages, expressly states that the trier of the facts may (*puede*) grant an indemnification to the relatives of the victim, meaning that the fixing of the amount of moral damages is left to the discretion of the trier of the facts. Venezuelan doctrine, however, does clarify that the meaning of Article 1196 is that the trier of the facts will fix according to his or her own criteria the amount to be awarded as moral damages. Thus, if moral damages are proven and have been requested, the trier of the facts is bound to make an award. The amount of the award is a matter for his/her discretion[21].

19.    A recent Venezuelan decisions have held that for "the fixing of moral damages, the trier of the facts should take into account the importance of the damages, the degree of fault of the author of the damage (the tort-feasor), the conduct of the victim (that is, the existence of some form of contributory negligence), and some sort of scale of moral suffering"[22]. This holding was later followed by the Supreme Court of Justice in a case of June 10, 1998[23]. More recently, in a February 1999 decision in the case E. García and others against C.A. Energía Eléctrica de Venezuela (ENELVEN), an action for damages arising out of the death of several children of the plaintiff due to electrocution caused by a faulty electrical wire, the Venezuelan Supreme Court held that one of the elements to be taken into account in the determination of moral damages was the gravity of the fault committed by the agent (the Electric Light Company). In effect, the Court held that the Electric Light Company was under an obligation to properly

---

[20] ELOY MADURO LUYANDO, EMILIO PITTER SUCRE, *Curso de Obligaciones, Derecho Civil IX*, 11ᵗʰ ed., § 235 (Caracas, 1999).
[21] *Id.* § 235.
[22] Decision of July 7, 1993 (Daniel Arenas v. C.A. Bananera Venezolana), Corte Suprema de Justicia [Supreme Court of Justice], Oscar R. Pierre Tapia, Jurisprudencia de la Corte Suprema de Justicia [JPT], p. 192, Vol. July 1993 (Ven).
[23] Decision of June 10, 1998 (Víctor José Colinas Arenas v. Raúl Aldemar Salas Rodríguez), Corte Suprema de Justicia [Supreme Court of Justice], JPT, pp. 143-144. Vol. June 1998 (Ven).

maintain the electrical wires, especially taking into account that these were close to the seashore and therefore exposed to environmental conditions that could give rise to exceptional risks and which, in effect, resulted in the accident for which the action was brought[24]. In 2002, the Venezuelan Supreme Court held that the trier of the facts in an action for moral damages must make a thorough examination: "in the particular case, analyzing the following aspects: (a) the importance of the damage, both physical and psychological (as well as the scale of moral sufferings); (b) the degree of fault of the defendant or its participation in the accident or the tort that has caused the damage (according to whether the tort arises from objective or subjective liability)[25]; (c) the conduct of the victim; (d) the degree of education and culture of the plaintiff; (e) the social and economic position of the plaintiff; (f) the economic capacity of the defendant; (g) the possible extenuating circumstances in favor of the responsible party; (h) the type of satisfactory retribution necessary to restore the victim to a similar situation to that which he enjoyed before the accident or illness; and lastly, (i) money references estimated by the judge (the trier of the facts) to fix the indemnification that it considers equitable and just for the particular case"[26].

V.     DAMAGES IN AN ACTION FOR WRONGFUL DEATH.

Who Can Recover Damages in an Action for Death and Extent of Recoverable Damages.

20.     Article 1196 of the Civil Code allows relatives, including those by marriage, to bring an action for moral damages suffered by them for the death of the relative. Article 1196 refers to a broad category of relatives and, therefore, does not

---

[24] Decision of February 18, 1999 (E. García y otros v. C.A. Energía Eléctrica de Venezuela (ENELVEN)), Sala Político-Administrativa, Corte Suprema de Justicia [Administrative Political Chamber, Supreme Court of Justice], Jurisprudencia Ramírez & Garay [JRG], pp. 534-542, Vol. CLI (Ven).
[25] An objective liability is liability without fault, a subjective liability is liability with fault.
[26] Decision of March 7, 2002 (José Francisco Tesorero Yánez v. Hilados Flexicon), Sala de Casación Civil, Tribunal Supremo de Justicia [Social Cassation Chamber, Supreme Court of Justice], reported in the website of the Supreme Court of Justice (www.tsj.gov.ve/decisiones-scs-marzo) (Ven).

impose a limitation on the category of relatives (whether by affinity or by consanguinity) who can bring a moral damages claim in their own name.

21.　　Additionally, under the general principle mentioned in Section II.6 above, any person, other than the deceased (i.e. any person financially dependent on the deceased or relative), could claim any direct material damages suffered as a consequence of the victim's death to the extent such damages are personal and the person claiming them has a legitimate interest.

22.　　Venezuelan legislation, however, does not specifically regulate the survival of causes of action following the death of the victim for the benefit of his/her estate. Venezuelan doctrine and case law have recognized that the cause of action survives for the benefit of the deceased person's estate[27]. However, there is no unanimous criterion with respect to the kind of damages recoverable on behalf of the estate of the deceased (whether material, moral or both)[28]. The development of Venezuelan case law in this regard indicates that all material damages suffered by the victim as a consequence of the victim's death become a part of the victim's patrimony and, therefore, may be recovered as part of any cause of action initiated by the deceased person's estate. In this case, the material damages recoverable on behalf of the estate of the deceased person would be same as the damages which would have been recoverable by the deceased had he survived. In the case of a claim for moral damages, it belongs exclusively to the individual victims of such damages (the deceased's relatives) and does not survive for the benefit of the estate.

---

[27] Decision of May 5, 1988 (M. Prato y otros v. Seguros Venezuela. C.A.), Sala de Casación Civil, Corte Suprema de Justicia [Social Cassation Chamber, Supreme Court of Justice], JRG, p. 461, Vol. CIV (Ven); and, Decision of December 13, 1989 (W. Fumero y otros v. Instituto Autónomo Ferrocarriles del Estado), Sala Político Administrativa, Corte Suprema de Justicia [Political Administrative Chamber, Supreme Court of Justice], JRG, p. 752, Volume CX (Ven).

[28] JOSÉ MÉLICH ORSINI, supra note 14, pp. 87-90.

11

<u>Statutory Limitations on Damages in the Case of Death</u>.

23.   As mentioned in Paragraphs to 17 to 19 above, the Civil Code does not establish a
      limit on the amount (quantum) that can be awarded as damages, including
      amounts that may be awarded as moral damages.

## VI.   THE EFFECTS OF CONTRIBUTORY NEGLIGENCE

24.   Article 1189 of the Civil Code establishes that, when a victim has contributed to
      the damage he has sustained, the obligation to repair it will be reduced to the
      extent of the victim's own contribution to the same (Civil Code, Article 1189).

25.   Venezuelan doctrine, following universally accepted continental doctrine, has
      further recognized that the victim's conduct to which Article 1189 refers (that is,
      his actions contributing to the damage he sustains) must amount to negligence[29].
      Therefore, under Venezuelan law the negligence of a victim can effectively