19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 6 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| And MAYTHEM GIORGINA PINEDA | § | |
| MORALES, INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE ESTATE | § | |
| OF JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| CARVAJAL, Deceased; BEATRIZ DEL | § | |
| VALLE PINEDA, INDIVIDUALLY, | § | |
| GIORGIA PINEDA MORALES, | § | |
| EDWARD ENRIQUE PINEDA | § | |
| MORALES, INDIVIDUALLY; | § | |
| | § | |
| DOLORES CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| Vs. | § | **HEARING AND ORAL ARGUMENT** |
| | § | **REQUESTED** |
| FORD MOTOR COMPANY | § | |
| Defendant | § | |

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs JORGE ENRIQUE PINEDA MORALES And MAYTHEM

GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF

THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL

VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE

PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON DE PINEDA,

INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON, and file this

their Response to Defendants' Motion to Dismiss for Forum Non Conveniens and would show
the Court as follows:

## TABLE OF CONTENTS

I.  INTRODUCTION...................................................................... 5

II. ARGUMENTS AND AUTHORITIES.............................................. 6

    A.    *Prima facie* **it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States**................................................................... 6

    B.    **Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Venezuelan law**.................................. 7

        1.    *A Venezuelan court would not exercise jurisdiction of this case under Art. 40(2) because the "facts verified" support jurisdiction in the United State*................................................................... 8

        2.    *A Venezuelan court will not exercise jurisdiction under Art. 40(4) unless both parties expressly and unequivocally submit to jurisdiction*........... 9

    C.    **The balance of private factors as enunciated by the Supreme Court in** *Gulf Oil v. Gilbert***, favor Plaintiffs' choice of forum in Texas**........................10

        1.    *The deference accorded to Plaintiff choice of forum requires the Defendant to show that the private and public factors clearly point towards the alternate forum*................................................. 9

        2.    *In considering the relative importance and availability of various types of evidence and keeping in mind that liability will be the most crucial issue in this case, retaining jurisdiction in the United States is favored*....................................................................... 11

        3.    *Inadmissibility of certain evidence in Venezuelan courts favors maintaining jurisdiction in the United States*............................. 13

        4.    *Where a view of premises is unlikely, this private factor merits little consideration in a forum non conveniens analysis*....................... 14

        5.    *Where no potential third parties exist, this private factor merits no consideration*....................................................................... 14

        6.    *The volatile Venezuelan political situation compromises any convenience of trying this case in a Venezuelan court*................................... 15

        7.    *Plaintiffs' choice of forum does not unduly oppress or vexate the Defendant*.................................................................. 16

D.      The balance of public factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert,* favor Plaintiffs' choice of forum in Texas...........................…. 16

      1.     *The U.S. interest in the resolution of this case favors maintaining jurisdiction*...................................................................…... 16

      2.     *Venezuela's willingness to cede some of its interest in cases such as this favors maintaining jurisdiction*...............................…...................... 19

      3.     *Texas choice of law favors retaining jurisdiction*.............................. 19

III.      CONCLUSION AND PRAYER.................................................................…... 20

## I. INTRODUCTION

An unreasonably dangerous design defect in the stability and handling of a 2001 Ford Explorer killed Jorge Enrique Pineda Carvajal. On February 25, 2001, some eleven years after the Defendant first became aware of the fatal safety-related defect, the vehicle tipped up off an asphalted road in good condition, rolled over for approximately 20 meters and brought about the death of Jorge Enrique Carvajal – a physician, a husband, and a father.

Jurisdiction is proper in this Court. At its heart, this case is based on strict liability. The Plaintiffs will be called upon at trial to prove: (1) that the 2001 Ford Explorer is defective; (2) that the Ford Explorer reached the decedent without substantial change in its condition from the time it was originally sold; (3) that the defect rendered the Ford Explorer unreasonably dangerous; and (4) that the defect caused injury to the user.

In the case at bar, the Defendant's principal place of business is in the United States. The Defendant is authorized to conduct business in Texas and derives substantial economic profits from this state. The critical evidence needed to prosecute this claim against the Defendant is not situated in Venezuela. Volumes of documentary evidence, written in English, and the testimony of Ford corporate representatives, design engineers, testing engineers, and experts, are situated in the United States. This evidence will recount the design development of the Ford Explorer and its predecessor the Bronco II here in the United States. This evidence will reveal the testing of the Ford Explorer prototype at Ford's testing site in Arizona. This evidence will show that the prototype repeatedly tipped up off the ground during the handling test, indicating that it had the same stability problems as the Bronco II. This evidence will show that, according to federal crash statistics, the Bronco II was one of the three most deadly SUVs then on the road and was rated the most deadly by the Insurance Institute for Highway Safety. This evidence will outline

the subsequent testing and recommendations by Ford engineers to correct the fatal design flaw, and depict the calculated decision by Ford executives to proceed with the release of the fatally designed Ford Explorer for the reason that delaying release would have been extremely costly. In sum, the sheer volume of evidence that is situated in the United States will weave a tapestry revealing how this fatal design flaw came into existence, how it was unreasonably dangerous and how it caused the death of Dr. Jorge Enrique Pineda Carvajal.

## II.    ARGUMENTS AND AUTHORITIES

**A. *Prima facie,* it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States.**

The doctrine of *forum non conveniens* furnishes criteria for a choice between two or more forums in which the defendant is amenable to process. At least two such forums must be available to the plaintiff before the doctrine comes into play; and *they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law. Veba - Chemie A. G. v. M/V* Getafix, 711 F.2d 1248 n.7 (5th Cir. 1983) (citing *Trivoli Realty v. Interstate Circuit,* 167 F.2d 155 (5th Cir.) (emphasis added). While it has been concluded that such language is dicta, it is nevertheless persuasive and should be considered here, as the balancing analysis must be applied with sensitivity to the specific circumstances of each case.

The doctrine of *forum non conveniens* proceeds from the premise that in *rare* circumstances, one court can relinquish its jurisdiction in favor of another court. *Quakenbush v. Allstate,* 517 U.S. 706 (1996) (emphasis added). Under this doctrine, the central focus of a *forum non conveniens* analysis is where the trial will be convenient to both parties and to serve the interest of justice. *Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799, 802 (7th Cir. 1997). The Defendant has the burden of

demonstrating *forum non conveniens. Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 501, 521-22 (1947).

In the case at bar, it is uncontested that the Defendant is domiciled in the United States with its principal place of business located in Dearborn, Michigan and that it is authorized to conduct business in the state of Texas. It is a fair and reasonable inference that, ordinarily, one's domicile is not an inconvenient place for one to be sued. *Prima facie* therefore, it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States.

**B.      Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Venezuelan law.**

Plaintiffs' expert, Tatiana B. deMaekelt, head of the Private International Law Department at Universidad Central de Venezuela, regarding the jurisdiction of Venezuelan courts in these cases explains, "The fundamental principle of jurisdiction under Venezuelan law is that a defendant be sued in his place of domicile inasmuch as it seeks to facilitate due process as a constitutional principle." deMaekelt Aff. II. ¶ 2. According to Dr. deMaekelt, this principle is codified in Article 39 of the Statute of Private International Law, providing that the first forum for bringing suit against a nondomiciliary defendant is the country where the defendant is domiciled. deMaekelt Aff. II. ¶ 2. As such, Plaintiff's choice of forum in this case is appropriate under Venezuelan legal principle.

Dr. deMaekelt, in partial agreement with Defendants' experts, identifies two potentially applicable exceptions to this principle, set forth in Article 40(2) and Article 40(4) of the Statute on Private International Law that would allow a Venezuelan court to exercise jurisdiction over the case at bar.

### 1. A Venezuelan court would not exercise jurisdiction of this case under Art. 40(2) because the "facts verified" support jurisdiction in the United States.

In order for a Venezuelan court to exercise jurisdiction under Art. 40(2) over the actions at issue here, it must be shown that the actions derive from "facts verified" in Venezuela. STATUTE ON PRIVATE INTERNATIONAL LAW Art. 40(2); EXHIBIT B. Dr. deMaekelt states that the language of Article 40(2) requires the equivalent of a "most significant contact" analysis. deMaekelt Aff. II ¶ 8. Because of the nature of the actions at issue in the case at bar, Dr. deMaekelt opines that "the places where the facts are verified and of the facts show some difficulty for two reasons: (1) their qualification and the fact that the product liability is so complex that it does not allow for a simple qualification of these elements; and (2) liability is the consequence of a chain of actions that may arise within a State's territory, continuing in another one and produce the tort in another one." deMaekelt Aff. II ¶ 7. As such, continues deMaekelt, the doctrine supports flexible qualification of these criteria, based on the links they may have with the case at issue, *bearing in mind the victims' justified expectations. Id.* (emphasis added).

In the case at bar, the action at issue is the killing of Dr. Jorge Enrique Pineda Carvajal as the result of the safety-related design defect in the Defendant's vehicle. Thus, the facts verified here are that the vehicle was designed in the United States; the vehicle was tested in the United States, the corporate decisions to produce the defectively designed vehicle were made in the United States; information pertaining to accident and failure rates caused by the fatal design defect is situated in the United States; and the management decisions to ignore engineering recommendations and proceed with the production of the defectively designed vehicle were made and documented in the United States. Under Dr. deMaekelt's analysis, the actions at issue here would likely result in the determination that Venezuelan courts would not have jurisdiction over the cases on this basis.

It is anticipated that the Defendant will refer the Court to the case of *Gonzalez v. Chrysler* for the proposition that the facts verified, as they pertain to design defect, are too attenuated to support maintaining jurisdiction here. *Gonzalez v. Chrysler,* 301 F.3d 377 (5th Cir. 2002). This case is distinguishable from *Gonzalez* in two ways: (1) the Plaintiffs herein do not agree or concede that Venezuela is an amenable forum as the plaintiffs did regarding Mexico in *Gonzalez*; and (2) the product in *Gonzalez*, a Chrysler air bag, does not share the same multi-year and multi-national history of failure and causing death and injury. More specifically, the action at issue here is a fatal design defect, in existence since the advent of the Bronco II in 1983, that results in vehicles tipping off the ground, rolling over and killing, maiming, or seriously injuring drivers and passengers. The facts verified as they pertain to the design defect in this case are not attenuated by any degree to the actions at issue rather, there are the very heart and soul of the actions presented.

### 2. A Venezuelan court will not exercise jurisdiction under Art. 40(4) unless both parties expressly and unequivocally submit to jurisdiction.

Article 40(4) of the Statute of Private International Law provides that "Venezuelan Courts shall have jurisdiction to hear trials resulting from the filing of actions in property when the *parties* should expressly or tacitly submit to their jurisdiction." EXHIBIT B (emphasis added). Dr. deMaekelt states that, a plain reading of Article 40(4) in conjunction with the provision of Article 44 which provides that express submission shall be evidenced in writing, means that a Venezuelan court would not exercise jurisdiction over the actions at issue here unless the Plaintiffs and the Defendant submit a writing executed by *both* parties that *expressly* submits to the jurisdiction of a Venezuelan court. deMaekelt Aff. II ¶¶ 9-10. For purposes of *forum non conveniens* analysis, a Venezuelan court will not be available as an alternative forum unless both parties submit to their jurisdiction. deMaekelt Aff. II ¶¶ 9-10. In the case at bar, because

Plaintiffs brought their case in the United States, they are not expressly submitting to the jurisdiction of Venezuelan courts.

Defendant claims that its unilateral submission to Venezuelan jurisdiction is sufficient to render that forum available for purposes of *forum non conveniens*. Def. Mot. at 6. As the Supreme Court noted in *Piper Aircraft*, the availability of an alternative forum is *ordinarily* established when the defendant is "amenable to process" in the other jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254 n.22 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 506-07) (emphasis added). *Piper Aircraft* does not however stand for the proposition that the unilateral submission of a defendant to the other jurisdiction will establish the availability of an alternative forum in every case. Nevertheless, this is exactly the claim being pushed forward by the Defendant herein. Def. Mot. at 6-7. Were the Court to accept the Defendant's argument, it would create a rule such that the availability of an alternate forum will depend solely upon the will or grace of the defendant and turn a blind eye to the jurisdictional provisions of that alternate forum. Under the case law cited by the Defendant in support of its supposition [Def. Mot. at 6-7], the jurisdictional provisions of the alternate forum allow the exercise of jurisdiction where the defendant unilaterally submitted itself to that jurisdiction. Unlike the alternate jurisdictions in those cases, Venezuelan jurisdictional provisions require the submission of both parties to that jurisdiction and the mere unilateral submission of the Defendant herein to Venezuelan jurisdiction is insufficient to create jurisdiction. deMaekelt Aff. II ¶ 12.

**C. The balance of private factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas.**

> *1. The deference accorded to Plaintiff choice of forum requires the Defendant to show that the private and public factors <u>clearly point</u> towards the alternate forum.*

Article XIII of the <u>Treaty of Peace, Friendship, Commerce and Navigation</u> between the

United States and Venezuela provides that the courts of both countries shall be "open and free" to the other's citizens "on the same terms which are usual and customary with the natives or citizens of the country in which they may be ....." 8 Stat. 466, 1836 WL 3643, January 20, 1836.

> [w]hen a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts. ...Because such treaty exists between the United States and Venezuela, see Treaty of Peace, Friendship, Navigation and Commerce, January 20, 1836, US-Venez. Art. 13, 8 Stat. 466. 472, no discount may be imposed upon the plaintiff's choice of forum..." *Blanco v. Banco Industrial of Venezuela, S.A.*, 9978 F.2d 974, 981 (2nd Cir. 1993).

The treaty referred to by the court in *Blanco* is the same treaty on which Plaintiffs herein are relying to have their choice of forum accepted by this Court. The Plaintiffs' choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer. *Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (1981). A court's failure to afford equal treatment under the Treaty constitutes reversible error. *Irish Nat. Ins. Co., Ltd., v. Aer Lingus Teoranta*, 739 F2d 90, 92 (2nd Cir 1984). Further, the existence of this Treaty makes it reasonable to assume that the forum choice of the Plaintiffs herein is convenient in spite of the fact that they are foreigners. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 255, 256 (1981). As such, the Defendant must still show the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of Plaintiffs' choice.

> 2. *In considering the relative importance and availability of various types of evidence and keeping in mind that liability will be the most crucial issue in this case, retaining jurisdiction in the United States is favored.*

The application of factors set out in *Gulf Oil* varies between cases and the final outcome is heavily dependent on the unique facts of particular cases. *Hodson v. A.H. Robins Co., Inc.*, 528

F.Supp. 809, 819 (citing 15 Wright Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE, §3828 (1976)). In applying the *Gulf Oil* factors, the Court scrutinizes the substance of the dispute between the parties, what proof is required, the causes of action and the potential defenses. *Cauwenberghe v. Baird*, 486 U.S. 517 (1988). As such, in order that the Court may properly consider these factors, the Defendant must provide enough information to enable the Court to balance the parties' interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

*Fundamentally this case involves a determination of the circumstances surrounding the design of the Ford Explorer, the reasons for the failure of the vehicle, and the damages associated therewith and all of the evidence originates in the United States.* The defective vehicle was designed in the United States, tested in the United States, and built in accordance to U.S. government standards.

It is uncontested that documents related to the development, design, testing summaries, evaluation, failure rates, fatal vehicle rates, inspections, NHTSA reports, Critical Concerns Review Group Reports, and analysis (reports and graphs) of the vehicle and the safety-related design flaw at issue here are situated in the United States. It is uncontested that design and engineering articles and manuals used by Ford engineers are situated in the United States. It is uncontested that documents related to safer alternative design recommendations by Ford engineers are situated in the United States. It is uncontested that documents reflecting Ford management and executive decisions against implementing safer design alternatives are situated in the United States. This overwhelming mass of liability documents from Ford is critical to a complete and accurate understanding of the events that led to the death of Dr. Carvajal. Indeed, the Defendant has produced *millions* of documents concerning liability into the document depositories for the multi-district litigation involving Ford and Bridgestone/Firestone. All of

these documents are authored in English and will need to be translated into Spanish, a lengthy and expensive process, if this case were to be tried in a Venezuelan court. In contrast, there exist a mere handful of Venezuelan documents that are relevant to the actions in this case: an accident report, a death certificate, a marriage certificate, and the birth certificates of the dependents. The accident report has already been translated and exchanged with Defendants at Plaintiff's expense. Def. Mot. EXHIBIT 4. The Plaintiffs will translate and provide to the Defendants, at Plaintiff's expense, the remaining documents, including the subject vehicle's service records not already in the Defendants' possession.

Further, many of the potential witnesses including; design engineers, testing engineers, Ford management, executives, and other corporate representatives, reside in the United States. Transporting these individuals to Venezuela would be expensive and time consuming. Interpreters and translators will be required to interpret the testimony. The probable length and cost of the trial will be increased and such cost considerations dictate that a trial in the United States would be more expedient. In contrast, the potential Venezuelan witnesses, aside from the Plaintiffs themselves, include Sgt. Elias Pena, the officer who investigated the accident, and Dr. Torres Macho, the attending physician of Clinica San Jose. Both of these potential witnesses, under penalty of perjury, have declared their willingness to present themselves and provide testimony regarding this case in either Venezuela or Aruba. EXHIBIT C. These declarations should allay the Defendant's concern with regard to compelling key witnesses to testify at trial.

### 3. *Inadmissibility of certain evidence in Venezuelan courts favors maintaining jurisdiction in the United States.*

*It appears that certain types of evidence may not be admissible in Venezuelan courts.* Based on his experience as a former Justice of the Supreme Court of Justice in Venezuela, current university professor Anibal Jose Rueda explains that, under Articles 813-818 of the Code of

Civil Procedure, "witness testimony obtained abroad shall have no value whatsoever if it was not taken under order issued by the Venezuelan judge hearing the case." *In re Bridgestone/Firestone*, 190 F. Supp. 1125, 1149-50 (S.D. Ind. 2002). Defendant claims that any and all evidence generated in the United States would be admissible in a Venezuelan court based upon the affidavit of Victor Hugo Guerra Hernandez, a proposed expert in Venezuelan however, Mr. Hernandez fails to address Dr. Rueda's analysis of Articles 813-818.

### 4. *Where a view of premises is unlikely, this private factor merits little consideration in a forum non conveniens analysis.*

Defendant presupposes that viewing the accident site is a foregone and a paramount necessity and as such, were this case tried in Texas, there would be no practical means of transporting the jury to Venezuela. As a practical matter, it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident. It remains the burden of the parties, in the prosecution and defense of a case, to examine and present such information in such a manner so as to assist the jury in addressing disputed issues. Certainly, the parties' experts in the instant case can, as they have in other similar litigation, visit, examine, videotape, and visually reconstruct the highway scene where the defective vehicle tipped off the asphalted ground and rolled over so as to sufficiently aid the jury. Further, while the Defendant may be correct in opining that the natural beauty of Yellowstone's Old Faithful might be enhanced by being physically present, Defendant presents no evidence to support its supposition, and it is highly unlikely, that a visit to Highway Banas will illicit any additional insight relevant to the disputed issues surrounding the fatally defective vehicle.

### 5. *Where no potential third parties exist, this private factor merits no consideration.*

While the Defendant is correct in claiming that a defendant's inability to implead potential liable third parties is a consideration in a *forum non conveniens* analysis, Defendant's

mere bald faced assertion herein, without any evidentiary support, merits no consideration whatsoever. Def. Mot. at 11. This Court allowed the parties to conduct discovery as to the merits of *forum non conveniens.* If the Defendant did not conduct any discovery to ascertain the existence of any potential third party defendants, it has essentially waived any argument as to the merits of this factor. Alternatively, if the Defendant has conducted such discovery, one can only conclude that no potential third parties were unearthed and therefore, this factor does not tend to support dismissal.

### 6. *The volatile Venezuelan political situation compromises any convenience of trying this case in a Venezuelan court.*

The Venezuelan judicial system has come under universal attack as being antiquated, inefficient, unfair, and corrupt, and the convenience of trying this case in a Venezuelan court would be compromised by the long delays plaguing the Venezuelan judicial system. As noted by former Justice of the Supreme Court of Justice Rueda, in August 1999, a judiciary emergency was declared and, by November 1999, "more than two hundred judges had been removed from their positions, supposedly for corrupt practices." *In re Bridgestone/Firestone*, 190 F. Supp. at 1154. The instant action would only exacerbate the backlog of cases in the Venezuelan lower courts, which the World Bank estimated in 1997 had 2 to 3 million cases pending. WORLD BANK PROJECT APPRAISAL, REPORT NO. 17212-VE, Dec. 9, 1997 at 9. On May 31, 2001, Omar Mora, acting president of the Venezuelan Supreme Court declared, "that we have still not been able to solve the judicial crisis" following the 1999 purging of the judicial system. Senior Judge Criticizes Courts in Venezuela, N.Y. Times, May 31, 2001. Rueda additionally noted that, on June 18, 2001, the Caracas courts reduced the number of business days per week in order to relieve some of the overcrowding and repair problems. *In re Bridgestone/Firestone*, 190 F. Supp. at 1153. Most recently, it was reported in the United Nations Program for Development

that confidence in the Venezuelan judicial system is 59%, amid accusations by the private media that the court follows government orders. Embassy of Venezuela Press, July 28, 2003. This suggests that Venezuelan courts are less convenient for this trial. *Brazilian Investment Advisory Services, Ltda. v. United Merchants & Mfg., Inc.*, 667 F. Supp. 136, 138 (S.D.N.Y. 1987) (considering delay as one balancing factor).

### 7. *Plaintiffs' choice of forum does not unduly oppress or vexate the Defendant.*

Finally, this Court should consider that Texas is a forum with which Defendant's attorneys are thoroughly familiar. Defendant is also operating under legal, procedural, and evidentiary rules that are likewise familiar to its counsel and it cannot credibly be claimed to work oppression and vexation to the Defendant so as to far outweigh the Plaintiffs' convenience.

### D. The balance of public factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas.

### 1. *The U.S. interest in the resolution of this case favors maintaining jurisdiction.*

The public factors that need to be taken into consideration by this Court, assuming *arguendo* that Plaintiffs have an alternative forum for this litigation, deal with the burden this case will place on the federal court system and the citizens of Texas who may be called upon to serve as jurors. The central question is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. There is little question that all the public factors will weigh against dismissal under the *forum non conveniens* doctrine.

The Defendant in this case has extracted large sums of money annually from the sale of its defectively designed vehicle to Venezuelan citizens. The sale of these fatally flawed vehicles brings enormous extra profits to the Defendant because the Defendant chose not to delay the production of the Ford Explorer when more than $500 million dollars had been invested in the

Explorer prototype. The profits derived by Ford from the sale of Explorers in Venezuela went to the benefit of shareholders in the United States and the federal government as taxes, and to the salaries of U.S. employees.

U.S. residents are free to go abroad and bring enormous profits home to the United States by selling products designed and tested in the U.S. This ability must be, at a minimum, balanced by the willingness of the United States to allow injured foreigners to seek redress in its courts against such local citizens when their profits came back to the United States especially when those profits were in great part generated by intentional, negligent, reckless and criminal acts of such citizen in the U.S. Allowing multinational corporations to bring profits back to the U.S. at the expense of foreign life can, as one commentator noted, be viewed as compromising the integrity of the United States' reputation for democracy, the condemnation of human rights, and the protection of certain inalienable rights. Jacqueline Duval-Major, *One-Way Ticket Home: The Federal Doctrine of Forum Non Conveniens and the International Plaintiff*, 77 CORNELL L. REV. 650, 675 (1992) (recognizing that, if United States has interest in protecting inalienable rights, then it has powerful interest in guaranteeing that multinational corporations are responsible for any violations). The public interests viewed in this light favors holding trial in Texas.

Clearly, the U.S. has a regulatory interest in the designing, manufacturing, distributing, and selling of products in the United States and sending those products to other countries. The Court in *Piper* recognized that the United States has an interest in deterring harmful conduct abroad. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 260-61 (1981). Most immediate is the U.S. interest in preventing similar accidents from occurring in the United States which mirrors Texas interest in preventing similar accidents in Texas. The plaintiffs in *Union Carbide* noted that

Union Carbide operated a plant in West Virginia of a similar design to the one in India, which killed more than 3500 people and injured 200,000 others. *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 634 F. Supp. 842, 858 (S.D.N.Y. 1986), *modified*, 809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871 (1987). Similarly, the Defendant's vehicle, of similar design to the vehicle that killed Dr. Carvajal, has been sold to and caused the deaths and maiming of U.S. and Texas citizens. Furthermore, as one commentator has noted, the United States has an interest in preventing the appearance that the United States is involved in such harmful conduct. Jacqueline Duval-Major, at 675 (1992). Dismissal on *forum non conveniens* grounds may appear to contradict these ideals and interests. Duval-Major, at 675 (noting that U.S. government, to safeguard its reputation as supportive of human rights, has interest in integrity of its businesses).

Further, *the pursuit of justice is not a burden*. As a practical matter, and aside from Defendant's floodgate rhetoric, the case at bar involves the claims of a handful of individuals against a single large multinational corporation, will require no more of the Court's time and resources than would any other civil case, and would not be an unfair to burden Texas citizens with jury duty for a trial. Our citizenry recognizes that a wrong does not fade quietly into the night simply because its immediate consequences are felt and endured far away. Further, the subject matter presented by the Plaintiffs' claims is one familiar to Texans. Dozens of Texas citizens have been injured or killed by the Ford Explorer and the Defendant has been held accountable in Texas courts for those injuries and deaths. The refusal of the Defendant in this case, to confront a Texas judge and jury, is not really about convenience or fairness. It is a transparent connivance to avoid accountability.

### 2. *Venezuela's willingness to cede some of its interest in cases such as this favors maintaining jurisdiction.*

The court in *In re Bridgestone/Firestone Inc.,* noted that Venezuela is willing to cede some of its interest in cases of this type in favor of trial in the United States. *In re Bridgestone/Firestone Inc.,* 190 F. Supp. 2d at 1154. Colonel Jose Rafael Quero Vallecillos, National Director of the Department of Technical Transportation Surveillance (Cuerpo Tecnico de Vigilancia del Transito Terrestre), which is part of the Ministry of Infrastructure[1] indicated Venezuela would cede to the United States. *Id.* Venezuela's willingness to cede some of its interest to the United States in cases similar to the one bar is reiterated in *Firestone FNC,* wherein the court determined that Venezuela does not have a strong interest in this litigation. *Firestone FNC,* 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002). Venezuela's willingness to cede its interest in trying the cases to American courts tilts the balance toward retaining jurisdiction.

### 3. *Texas choice of law favors retaining jurisdiction.*

In further consideration of public factors, Texas choice of law follows the Restatement (Second) of Conflicts of Law, Sections 6 and 145. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979). The Restatement, Section 6, requires the Court consider:

1.    the needs of the interstate and international systems

2.    the relevant policies of the forum

3.    the relevant policies of the interested states and the relevant interests of those states in the determination of the particular issue

---

[1] Colonel Vallecillos also stated that the Department was willing to place the officers who investigated certain accidents in Venezuela "at the disposal of the appropriate United States individuals in order to provide testimony through deposition and/or at trial regarding the events of the accidents" and will authorize and order their deployment for this purpose.

4.    the protection of justified expectations

5.    the basic policies underlying the particular field of law,

6.    certainty, predictability and a uniformity of result, and

7.    the ease of determination of application of the law to be applied.

*Id.* at 318.  the Restatement, section 6, provides that, with respect to tort claims, the law of the state with the most significant relationship to the occurrence and the parties should control. *Id.* at 319.  The contacts to be considered are:

1.    The place where the injury occurred,

2.    The place where the conduct causing the injury occurred,

3.    The domicile, residence, nationality, etc. of the parties, and

4.    The places where the relationship, if any, between the parties is centered. *Id.* at 319.  This does not turn on the number of the contacts but on their qualitative nature. *Id.*

Lastly, it is uncontested that Venezuela has no strict products liability law, which is the principal substantive claim asserted against Ford. Clearly, it is for this reason, as well as the limitation on recoverable damages, that fuels the Defendants' desire to have Venezuelan law apply. The true outcome of a *forum non conveniens* dismissal would be to allow the Defendant to never be held accountable for their wrongful conduct.

### III.    CONCLUSION AND PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs respectfully request and pray that this Honorable Court determine that the Defendant fails to meet its burden of persuasion in showing the existence of an adequate alternative forum, or that the private and public factors enunciated in *Gulf Oil v. Gilbert* clearly point towards the alternate forum if it is deemed to exist,

and deny Defendants' Motion to Dismiss for Forum Non Conveniens.

This Court should deny Defendant's motion for all of the above reasons including:

(1)    There does not exist an adequate alternative forum under either Article 40(2) or 40(4) of the Statute of Private International law because respectively, the facts verified critical to the actions of this case lie in the United States and because Art. 40(4) requires both parties to expressly and unequivocally submit to Venezuelan jurisdiction.

(2)    No discount should be imposed upon the Plaintiffs' choice of forum.

(3)    The private factors as enunciated by Gulf Oil v. Gilbert favor maintaining jurisdiction in the United States.

(4)    The public factors as enunciated by Gulf Oil v. Gilbert favor maintaining jurisdiction in the United States.

In the alternative, if Defendant's Forum Non Conveniens Motion is granted, the Court should include a return of jurisdiction clause to an order including:

- that defendants agree to submit to the foreign jurisdiction and process in foreign courts;

- that the defendant waive limitations defenses;

- that the defendant agree to submit to discovery in the foreign forum;

- that the defendant agree that discovery in the U.s. suit may be used in the foreign suit;

- that the defendant agree to make his witness and evidence available in the foreign jurisdiction;

- that the defendant agree that the foreign judgment may be enforced against it in the United States.

- That if the defendant obstructs suit in the alternative or a court in Mexico does not accept the case, plaintiff may return to the America forum.

Respectfully submitted,

**LAW OFFICE OF MARK A CANTU**
THE ATRIUM
1300 N. 10th St., Suite 400
McAllen, Texas  78501
Tel:  956/687-8181
Fax:  956/687-8868


By: _____
     Juan A. Gonzalez
     Texas State Bar No. 08129310
     Federal ID 3472

By: _____
     Ricardo G. Benavides
     Texas State Bar No. 24031735
     Federal ID 32205

**ATTORNEYS FOR PLAINTIFFS**


**HEARING AND ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the _____ day of September , 2003.

Ronald D. Wamstead
John W. Chambless, II
Jaime A. Saenz
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**

JUAN A. GONZALEZ
RICARDO G. BENAVIDES

VALERA•MAEKELT & ASOCIADO
ABOGADOS

AVENIDA VENEZUELA, EL ROSAL
EDIFICIO "VALFER" PH II.CARACAS,
1 0 6 0 ,   V E N E Z U E L A
TELEFONOS. 952.50.36 - 951.51.64 - 951 05.96
FAX. 951.42.14. E-mail·valmaben@cantv.net



## AFFIDAVIT OF TATIANA B. DE MAEKELT

I.      Tatiana B. de Maekelt, deposes and says as follows:

1.      I am a graduate of the Universidad Central de Venezuela in Caracas, Venezuela where I received my legal degree in 1959 (Summa Cum Laude). I have been authorized to practice law in the Venezuelan Republic since that year. Presently, I am a senior partner of the firm Valera, Maekelt & Asociados in Caracas, Venezuela.

2.      I carried out postgraduate studies in University of Goethe – Frankfurt, Germany and received Doctor of Law in 1961 (Cum Laude). I am also Doctor of Juridical Science from the Universidad Central de Venezuela in 1978 with honors. And I have a Superior Diploma in Comparative Law, at the International University of Comparative Sciences, Luxemburg. I am invited speaker at various universities and forums.

3.      I have been Secretary of Legal Affairs at the OAS Counsel (1978-1984). In addition, I have served in various other administrative capacities including being the legal advisor to the Venezuelan Ministry of Education (1970-1975) and for the Ecuadorian National Counsel for Modernization (CONAM) (1995-1996), advisor and litigator in civil, commercial, and business law. I am fluent in Spanish, English, German, French, Russian and Polish.

4.      I am Professor of Law at both the Universidad Central de Venezuela an the Universidad Católica Andrés Bello, Caracas, Venezuela. I teach Private International Law and Commercial Law. I am a Professor at the graduated program for the Masters Degree of Private International Law and Comparative



Law. I have also taught comparative law and conflict of laws as an associate professor at American University Washington College of Law in Washington, D.C.

5.    I have published numerous law review articles, commentaries and books in the area of Private international law. I am the author of a textbook on international law entitled "Material de Clases para Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition (1986); Third Edition (1995) and Fourth Edition (2000). I am also the author of "Guías para el Estudio de Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1997) and Second Edition (2000). Finally, I am author of Normas Generales de Derecho Internacional Privado en America (1984). Attached as Exhibit "A" is a copy of my curriculum vitae.

6.    I served as President of the Commission charged with the responsibility of drafting the final version of the Private International Law Statute, which was presented to the Venezuelan National Assembly in 1996. I participated in parliamentary discussions of the statute and drafted commentary and interpretive legislative history regarding some of the most relevant articles of the statute. Upon the adoption of the statute, I authored several commentaries on the statute, as well as numerous notes, essays and articles in both Venezuelan and international publications regarding the statute. Finally, I have participated in numerous conferences and forums both domestically and internationally to discuss the new statute.

7.    At the present time, I am authoring a comprehensives textbook on the Venezuela Statute on Private International Law. In 2002, I was elected as Member of the Academy of Political and Social Sciences (Academia de Ciencias Políticas y Sociales).

8.    I have been qualified as an expert and rendered opinions in the United States Courts, specifically, In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373, wherein I rendered an opinion regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis. In Re Bridgestone/Firestone, 190 F. Supp. 2d 1123 (S.D. Ind. 2002)

There, the Court accepted my credentials and stated:

> ...de Maekelt has much experience on which to base her knowledge of the law. De Maekelt served as President of the Commission charged with drafting the final version of the statute prior to its presentation to the Venezuelan National Assembly...She also has published extensively on the Venezuelan Statute on Private International Law...Such credentials understandably contribute to our willingness to rely on the Maekelt's statements regarding the statute.[1]

9.    My opinion is based upon my review of the following materials:



a) In Case N° 03-03-17590-CVR: Elsa Beatriz Lopez Guedez, Individually and as Administratrix of the Estate of Antonio José Manrique López, Deceased; Juan Pedro Manrique López as Administrator of the State of Dana Lys Tey Maldonado de Manrique; Juan Pedro Manrique López as next friend of Betsabel Dayan Manrique Maldonado, a minor and Antonio José Manrique Maldonado, a minor; Tadeo Maldonado, individually and Isabel Sanchéz Santa Cruz, individually; Juan Pedro Manrique López, as next friend of María José Manrique Velazquez, a minor; Juan Pedro manrique López, as next friend of Firllyth Francheska Manrique Molina, a minor, vs. Bridgestone/Firestone, Inc.; Bridgestone Corporation; Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.; Del Rio Test Center Inc. AND Ford Motor Company:

  �miⁿ Plaintiffs Original Petition;

  ⎕ Defendants Bridgestone Corporation's Special Appearance, Motion to Dismiss and/or Quash for Insufficiency of Service of Process and Motion to Transfer Venue;

  ⎕ Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of Forum Non Conveniens, original Answer and Jury Demand of Defendant, Bridgestone/Firestone, North American Tire, L.L.C., individually

---

[1] 190 F. Supp. 2d al 1132.

4

and as successor to both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.;

- Defendants Ford Motor Company's Motion to Transfer Venue and Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Pleas against capacity, Original Answer and Reliance and Jury Demand; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.'s Motion to Transfer Venue and Original Answer Subject Thereto.

b) In Case N° 03-03-17602-CVR: Aida Elatrach Hange, Individually and as Representative of the Estate of Louaiy Alatrach, Deceased and as next friend of Omar Elatrach Alatrach and Charif Elatrach Alatrach, minors; Sourech Alatrach, Individually and Youssof Alatrach, Individually vs. Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center, A/K/A Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center Inc. and Ford Motor Company:

- Plaintiffs Original Petition;

- Defendants Ford Motor Company's Motion to Transfer Venue and, Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Plea Against Capacity, Original Answer, and Reliance and Jury Demand;

- Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of *Forum Non Conveniens*, Original Answer and Jury Demand of Defendant Bridgestone/Firestone North American Tire, L.L.C., Individually and as Successor to Both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.'s Motion to Transfer Venue and Original Answer Subject Thereto.

c) Venezuelan Private International Law Statute (Ley de Derecho Internacional Privado), Official Gazette N° 36.511 dated August 6, 1998.



II.    I make this Declaration based upon my personal knowledge and legal research of Venezuelan law, and in my capacity as a Venezuelan lawyer and Professor of Venezuelan law:

1.    The Venezuelan Statute on Private International Law, adopted on August 6, 1998[2] defines the circumstances under which a Venezuelan court will have jurisdiction. The Article 63 includes, a general derogation drafted under the following terms: "All norms regulating the subject matter of this statute are hereby derogated". Prior to the adoption of the Private International Law Statue, the rules governing jurisdiction were part of the Code of Civil Procedure (1986) under the heading of "Of International Procedural competent" (Section IV, Chapter 1, Title 1 of Book One), especially those governing the international procedural competent jurisdiction (known as jurisdiction in the Statute), articles 53 to 58, as well as a rule on lack of jurisdiction (first part of article 59) and the article 2 (exclusive jurisdiction).

2.    The fundamental principle of jurisdiction under Venezuelan law is that a defendant should be sued in his place of domicile,[3] inasmuch as it seeks to facilitate due process as a constitutional principle.[4] This principle is currently codified in Article 39 of the Statute of Private International Law, which provides that the first forum for bringing suit against a non-domiciliary defendant is the country where the defendant is domiciled.

3.    When dealing with persons non-domiciled in the Republic, the criteria for the

---

[2] Official Gazette N° 36,511 of 08-06-1998.

[3] Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 1950 of 12/21/1999. See in Tatiana Maekelt y otros, Materiales de Estudio para el Derecho Internacional Privado, 4th Edition, Universidad Central de Venezuela, Caracas, 2000.

[4] Constitution of the B. Republic of Venezuela: Article 49, heading: "Due process shall apply to all judicial and administrative actions, as a consequence: 1. Defense and legal assistance are inviolable rights at each stage and degree of the investigation and of process" This principle has been widely developed by the decisions of the Supreme Tribunal of Justice, in Constitutional Chamber, case of action for annulment by reason of unconstitutionality of article 197 of the Code of Civil Procedure. of 02/01/2001, see text at

attribution of jurisdiction may be found in articles 40, 41 and 42 of the Private International Law Statute.

4. In this case the criteria for the attribution of jurisdiction may be found in Article 40 of the Private International Law Statute. Articles 41 and 42 are not applicable to this case because Articles 41 refers to controversies involving actions related to universal assets and Article 42 refers to cases involving actions on the status of persons or on family relationships.

5. The indicating criteria of article 40 of the Venezuelan Statute of the Private International Law define the conditions under which the Venezuelan courts shall make use of their power to decide disputes with the strength of "res judicata".[5] In other words, the criteria for the attribution of jurisdiction "should establish which of the States with whom a specific legal relationship is connected, is competent to resolve the controversy".[6]

6. Article 40 defines four sets of circumstances which may create jurisdiction in Venezuela over a non-domiciliary defendant, and are: the place where the personal or real property is located; the place where the obligation is performed; the place where the agreement is entered; the place where the facts are verified; and personal service of a defendant found within Venezuelan territorial boundaries (even if domiciled abroad) or cases of express or implied submission.

7. The places where the facts are verified and of the facts show some difficulties. First, their qualification, and the fact that the product liability is so complex that it does not allow for a simple qualification of these elements. Liability is the consequence of a chain of actions that may arise within a State's territory, continuing in another one and produce the tort in another one. In view of these

---

[5] Eugenio Hernández Bretón: Derecho Procesal Civil Internacional Jurisdicción Competencia, Falta de Jurisdicción y Litispendencia Internacional, Biblioteca de la Academia de Ciencias Políticas y Sociales, Caracas, 1998, pp. 95-97.

[6] Tatiana Maekelt: Las disposiciones del Derecho Procesal Internacional en el Código de Procedimiento Civil venezolano vigente. In Libro homenaje a Werner Goldschmidt, Caracas, 1997, particularly p. 165 and the therein quoted judgment of the Supreme Court of Justice.

opinions, the doctrine supports flexible qualification of these criteria, based on the links they may have with the case at issue, bearing in mind the victims' justified expectations. It is also hard to establish the wide range of cases constituting their premises.

8.   In my opinion, the referenced language of subparagraph 2 pf article 40 requires the judge evaluating the possibility of exercising Venezuelan jurisdiction to engage in the equivalent of a "most significant contact" analysis. In cases like this one where important elements of the case occurred in more than one jurisdiction and witnesses and evidence related to those facts is similarly not concentrated in one jurisdiction alone, the Court should weigh which of the competing jurisdictions has the "most significant contact" to the controversy to be decided in determining whether jurisdiction exists in Venezuela over a non-domiciliary defendant. It is not enough that one or more facts occurred in Venezuela; the most significant contacts to the underlying tortious conducts will determine whether jurisdiction will exist in any particular case.[7]

9.   The Private International Law Statute provides for the possibility that the parties submit expressly or tacitly to the jurisdiction of Venezuelan courts (article 40, paragraph 4th).

10.   In cases of express submission, the same must be in writing (art. 44), that is to say, both parties must have expressly and unequivocally stated, in writing, their will to submit themselves to the jurisdiction of Venezuelan courts. Express submission requires, however, the agreement of both parties. That is, in order to confer jurisdiction on a Venezuelan court through express submission, there must be an agreement by both parties to a dispute or controversy to accept Venezuela

---

-Arístides Rengel Romberg: La Competencia Procesal Internacional en el Derecho Venezolano. Libro Homenaje a la Memoria de Lorenzo Herrera Mendoza, T.I., Universidad Central de Venezuela, Caracas, 1970, pp.65 y ss., particularly p .67.
[7] Tatiana Maekelt : Codificación Interamericana sobre Derecho Internacional Privado y su rol en la integración universal. In Revista de Estudios Latinoamericanos, Mundo Nuevo, # 83-84, Instituto de Altos Estudios de América Latina, Universidad Simón Bolívar, Caracas, 1999.

as the proper forum to hear the dispute. In the absence of such agreement by one side or the other, jurisdiction cannot be created by unilateral submission.

11.    There is tacit submission when the following actions concur: a) for the plaintiff, by the simple fact of filing the complaint before a Venezuelan court. This prevents that the plaintiff may pretend to object to the jurisdiction of the Venezuelan courts in the event of a counterclaim by the defendant; and, b) for the defendant, after having appeared in trial, by the mere fact of taking any step other than filing a preliminary motion alleging lack of jurisdiction, or objecting to a cautionary measure (art. 45).[8] With regard to express or tacit submission, the precedents of the Supreme Court of Justice (now Supreme Tribunal of Justice) have been establishing that in international law the principle of the extension of jurisdiction by reason of the territory is accepted, when grounded on the principle of the litigating parties autonomy.[9]

12.    I am not aware of any reported decision in Venezuelan jurisprudence where jurisdiction over a civil dispute involving tort liability of a non-domiciliary defendant was confirmed in a Venezuelan court by express submission by mutual agreement of both parties. Unilateral submission is not effective to create jurisdiction.

13.    Submission is excluded in the field of actions affecting the creation, modification or extinction of in rem rights on real property (art. 46) —located abroad— in spite of the fact that the law does not provide it expressly, save when allowed by the law of their location. Venezuelan law does not accept the submission because it

---

[8] See, for instance, Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 646 of 10-16-1997.

[9] Aristides Rengel Romberg: Tratado de Derecho Procesal Civil, Tomo I, Octava edición, Organización Gráficos Capriles, C.A., Caracas, 1992, p. 385.
-See also Judgment by the Supreme Court of Justice, Political and Administrative Chamber, 20-10-1988; # 540-92, 05-11-1992; # 472, 14-07-1994. See in Tatiana Maekelt: Material de Clase para Derecho Internacional Privado, Universidad Central de Venezuela, Caracas, 1995, pp. 428-429.

acknowledges exclusive condition to Venezuelan courts when the real property is located in Venezuela.[10]

14.    The determination of the Venezuelan courts' jurisdiction must be made not only on the basis of the jurisdiction attributing criteria but also on that of the exceptions thereto as provided by the Private International Law Statute. In the event that one of the jurisdiction criteria may be held as possibly operating, one should also find out whether the attributed jurisdiction is exclusive or not. In the event of exclusive jurisdiction, there would not be any waiver thereof, since the Private International Law Statute (art. 58) expressly prohibits waiver. Yet, when dealing with concurrent jurisdiction, it should be waived not only in view of the exception of international *lis pendens* and/or international *res judicata,* provided in article 58, but also by reason of justice, procedural economy and international harmony of solutions.

15.    Exclusivity of jurisdiction operates only in consideration of express legal regulation or due to a conclusive technical reason[11] and it may be qualified in two ways: a priori, by means of an express legal formula, or subsequently, as a consequence of the specific case's analysis. Both formulas have a common denominator: the protection of the State's interests.[12] Article 47 of the Private International Law Statute, without defining these subject matters, moves us closer to them, when acknowledging what pertains to the fact that they may not be conventionally derogated "...in cases where the issue should refer to disputes related to rights in rem on real property situated in the territory of the Republic, or when dealing with issues not admitting settlement or affecting essential principles of Venezuelan public policy".

---

[10] Eugenio Hernández-Bretón: Algunas cuestiones de Derecho Procesal Civil en la Ley de Derecho Internacional Privado. In Revista de la Facultad de Ciencias Jurídicas y Políticas, N° 117, Caracas, 2000, pp. 92-93.
[11] Joaquín Sánchez Covisa: Anotaciones sobre la Competencia Procesal Internacional Indirecta. In Obra Jurídica, Ediciones de la Contraloría General de la República, Caracas, 1976, p. 298.
[12] Ibidem... pp. 398-400.

16.     It is clear that the lawmaker's intention was to point out the three assumptions expressly provided in article 47, as possible exceptions to the rule of the conventional waiver of jurisdiction, and to allow exclusive jurisdiction of Venezuelan courts. From a congruent construction of said article's text, one may draw that the exclusivity of jurisdiction, under the assumption of disputes related to rights on real property, is automatic or direct. One may draw also, under the two other assumptions (subject matters on which there may not be any covenant, and essential principles of Venezuelan public policy), each specific case requires its own review. As a consequence, in these last two cases, the judge should weigh the circumstances of each case, in order to determine whether there is exclusive jurisdiction or not. Hence, exclusivity would be determined subsequently.[13] In going through this test, the Judge should also evaluate the convenience of judging the matter at issue, considering practical circumstances and the possibility of satisfying the plaintiff's pretensions.



17.     By default of exclusive jurisdiction, there could be concurrent. If such were the case, the decision to make use of another jurisdiction is the plaintiff's privilege; this does not exclude the possibility of the efficacy of the judgment entered by another State having concurrent jurisdiction. If plaintiff should not decide, the preference among concurrent jurisdictions is the judge's choice, based on the degree of connection of the cause with a specific jurisdiction. The judge should bear in mind also both litigating parties public and private interest, the availability of evidence, the cost of the witnesses, the congestion of courts and the convenience of the litigation of foreign judicial disputes in local courts.

18.     The Private International Law Statute, when admitting the exception of "international lis pendens" and the "exception for international connection of causes", formally derogates the decadent principle of the preference of Venezuelan jurisdiction when opposed to foreign jurisdiction.[1] The currently

---

[13] Gaetano Morelli: Derecho Procesal Civil Internacional. Translation by Santiago Sentis Melendo, Ediciones Jurídicas Europa-América, Buenos Aires, 1953, pp. 177 et seq.
-Eugenio Hernández-Bretón: Algunas Cuestiones...op. cit., p. 95.

governing criterion acknowledges the reality of an interdependent international community whereby it pretends to make it easier for the individual to choose jurisdiction, and this does not affect sovereignty at all, it adapts it rather to the requirements of each case.

19.  Once the principle of preference of our jurisdiction has been derogated and service of the non-domiciled defendant has been introduced as a criterion for the attribution of jurisdiction —and this originated the "forum non conveniens" doctrine in Common Law countries—, nothing objects to its application, especially in two situations: when jurisdiction hardly shows any link with the case or when submission to Venezuelan courts leads to a clearly unfair outcome. In this last case it should be applied with all its strength. I am not aware of any reported decision in Venezuelan jurisprudence where the doctrin of forum non conveniens was confirmed.

20.  In the matter of the law applicable to tort liability, the Private International Law Statute did not derogate any rule, since there was no regulation on this respect in domestic legislation and it is the example of a new set of rules in this subject matter, included in article 32, referring to the law applicable to torts and to the management of affairs.[14]

21.  The Venezuelan doctrine has commented on the article, indicating that the same will apply to all cases of tort, even the assumptions of products liability.[15]

22.  The article 32 subjects the tort to the legal system of the place where the effects of the damage are produced. It is difficult to determine such place, especially when the tort is related to several countries. As to the "place where the effects were produced" connecting factors qualification, in matters of conflict of laws, the modern doctrine is of the opinion that the connecting factor should be construed

---

[14] " Article 32: Torts are governed by the Law of the place where their effects have been produced. The victim, however, may move for application of the Law of the State where the cause generating the tort was produced."

[15] Fabiola Romero. Las personas jurídicas y las obligaciones en la Ley de Derecho Internacional Privado venezolana, In Revista # 117 Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, Caracas 2000, pp. 78-79.

flexibly depending on the links said facts may have with the case at issue and the objectives sought.

23. Another important element is the place of the damage-generating cause, that is to say, the place where the tort is totally or partially made. The generating cause may consist in the manufacturer's unlawful conduct, by means of which it violates the duty of diligent manufacturing, in other words, that of the best head of family.[16]

24. A positive action by the agent has been defined also as the generating cause of damages, such as when doing something against the law or against what has been expressly agreed in a contract, or a negative action or an abstention, as not doing what one was legally and validly bound to do.[17]

25. Last, we must refer to the victim's action: the victim may choose between the Law of the place where the effects of the tort were produced and the place of their generating cause. This choice will be made bearing two elements in mind: the closest links shown by the situation with the facts linking the tort to a specific place, since the beginning of the unlawful conduct until the harm is materialised[18]

26 If the Venezuelan court asserts its jurisdiction to know of and decide a tort case with foreign elements, the Venezuelan Judge shall apply his sources in order to establish what law should govern the case.

TATIANA BOGDANOWSKY de MAEKELT
Cédula de Identidad V-962.640

[16] James Otis Rodner: La Responsabilidad Civil del Fabricante en el Derecho Venezolano and the monography by Angel Rojo. In Revista # 23 de la Facultad de Derecho, Universidad Católica Andrés Bello, academic year of 1976-1977, pp. 236-258, especially, p. 243.

[17] Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/10/61, Jurisprudencia Ramírez & Garay, T. IV, p. 474.
- Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/14/96, Jurisprudencia Pierre Tapia Corte Suprema de Justicia, August/September 1996, p. 141

[18] Resolution on delictual obligations in Private International Law adopted by the Institut de Droit International during its Edinburgh session, on September 11, 1979 (dispositive part).

OPTIONAL FORM 175
(FORMERLY FS-88)
MARCH 1975
DEPT. OF STATE
50175-101

# Certificate of Acknowledgment of Execution of an Instrument

BOLIVARIAN REPUBLIC OF
VENEZUELA
(Country)

CITY OF CARACAS
(County and/or other political division)

EMBASSY OF THE
(County and/or other political division)

}  SS:

UNITED STATES OF AMERICA
(Name of foreign service office)

I, MATTHEW A. COTTRELL

*of the United States of America at* CARACAS, VENEZUELA

*duly commissioned and qualified, do hereby certify that on this*

*day of* 08-21-03 *, before me personally appeared*
(DATE (mm-dd-yyyy))

————————————————————TATIANA  BOGDANOWSKY de MAEKELT————————————

————————————————————————————————————

*to me personally known, and known to me to be the individual described in, whose name* is *subscribed to,*

*and who executed the annexed instrument, and being informed by me of the contents of said instrument* she

*duly acknowledged to me that* she *executed the same freely and voluntarily for the uses and purposes therein*

*mentioned.*

[SEAL]

*In witness whereof I have hereunto set my hand and*
*official seal the day and year last above written.*

MATTHEW A. COTTRELL

VICE-CONSUL *of the United States of America.*

NOTE. -Wherever practicable all signatures to a document should be included in one certificate. *U.S.GPO:1980-0-311-155/5279

**Exhibit "A"**

## CURRICULUM VITAE

### I.- PERSONAL DATA

| | |
|---|---|
| First Name | TATIANA |
| Surname: | BOGDANOWSKY DE MAEKELT |
| Nationality: | Venezuelan |
| Address in Venezuela: | VALERA, MAEKELT, & ASOCIADOS |
| | Avda. Venezuela, Edificio Val-Fer, PH2, El Rosal, Caracas 1060 |
| Telefax number: | (58212) 9514214 - 9515164 - 9510596 |
| E-mail address. | tmaekelt@cantv.net |

### II EDUCATION AND DEGREES OBTAINED

- Central University of Venezuela, Caracas. Law Degree (1959). Honors: Summa Cum Laude
- University of Goethe - Frankfurt. Germany. Doctor of Law (1961). Cum Laude.
- Central University of Venezuela. Doctor of Juridical Science (1978).
- Course in Private International Law. The Hague. Academy of International Law (1960).
- Course in Comparative Law. International University of Comparative Sciences. Luxembourg (1960-1961). Superior Diploma in Comparative Law.

### III STANDING IN RANK

- Professor of Private International Law, Commercial and Comparative Law. Presiding Partner
- Member of the Venezuelan Academy of Political and Social Science.

### IV PROFESSIONAL EXPERIENCE

- VALERA, MAEKELT & ASOCIADOS Partner. Advisor and litigator in civil, commercial and business law, conflict of laws; international procedure, domestic and international contracts, including specially international purchase of goods, transfer of technology, distribution agreements, leasing, employment contracts, setting up of new ventures, including

corporations, partnerships and not-for profit organizations, and compliance thereof with domestic and international regulations; judicial international cooperation; procedure involving rogatory letters, applications of international law, procedure for the recognition of foreign judicial decisions and other acts issued by foreign authorities; as external counsel for corporations. International Arbitration.

* Expert and rendered opinions in the United States courts (Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373). An opinión regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis.

* Arbiter of the Venezuelan Chambre of Commerce (Cámara de Comercio de Caracas) since 1998.

* Arbitrator to the International Centre for Settlement of Investment Disputes (ICSID) since 2002.

* PRIVATIZATIONS:

* Consejo Nacional de Modernización (CONAM) Ecuador (1995-1996). Restructuring of the Telecommunications Sector and its subsequent privatization.

* Other Privatization projects.

## V    POSITIONS HELD

* Chairperson, Private International Law and Comparative Law Section of Institute of Private Law, Central University of Venezuela (1974 to date).

* Secretary for Legal Affairs, General Counsel, Organization of American States, Washington, D.C. (1978-1984).

* Director and Founder of the Legal Research Center. Andrés Bello Catholic University, Caracas, Venezuela (1977-1978).

## VI    TEACHING ACTIVITIES.

* **Central University of Venezuela.**

* Faculty of Law and Political Science.
Founder and general coordinator of the Graduate Program for the Master's Degree of Private Internacional Law and Comparative law
Private International Law Chairperson (1962 to date).
Commercial Law Chairperson.
Commercial Law Chairperson, practical works and seminars.
Postgraduated Courses in Law Among others:
Effectiveness and updating of Private International Law
Legal system of international corporations.
New aspects in Private International Law.
International Arbitration (Several courses)
International Contracts. Conflict of Laws and Jurisdictions.
Comparative Law. Institutional aspects and practical application.
New aspects of International Procedure Law.

- **Andrés Bello Catholic University**.
  Postgraduated courses.
  Private International Law Chairperson. (since 1986)

- **American University, Washington College of Law**. Washington, D.C.
  Adjunct Professor of Law. Courses on International Conflict of Laws (1982-1984).

- **Inter-American Juridical Commitee**
  Rio de Janeiro, Brazil.
  Director of the courses on International Law (1979-1984).

- **The Hague Academy of International Law.**
  Course on General Rules of Private International law.


VII    PUBLICATIONS

BOOKS.

- "Material on Conflict of Laws", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition(1986), Third Edition (1995), 4th edition, (2000)
- "Normas Generales de Derecho Internacional Privado en América" Central University of Venezuela. 1984. Academy of Legal and Political Sciences Award, 1985.
- "General Rules of Private International Law in the Americas. New Approach", Recueil des Cours, Volume N° 177, 1982 IV.
- "Specialized Conference on Conflict of Laws". (CIDIP I). Universidad Central de Venezuela, Caracas, 1979.
- "Estatuto Autónomo en el Derecho Internacional Privado" Thesis submitted for Doctor Degree at the Central University of Venezuela. 1978.
- "Das Kindschaftsstatut im Internationalen Unehelichenrecht" Thesis submitted for Doctoral Degree at the University of Goethe-Frankfurt, Federal Republic of Germany 1962.
- "Independent Statute on Conflict of Laws". Graduation essay for the doctor's degree. Universidad Central de Venezuela, 1978.
- "Das Kindschaftsstatut im internationalen Unehelichenrecht" Graduation essay for the doctor's degree of Goethe University. Frankfurt, Germany 1961


MOST IMPORTANT ARTICLES, 1998-2003

* Publications in several venezuelan and foreign law reviews. Numerous articles on topics related to Conflict of Laws, American Integration. Public International Law and Inter American System, Inter American Codification on transnational and multinational companies, international contracts, especially:

3

- Regulación de la Jurisdicción en el Sistema Venezolano de Derecho internacional Privado. In Libro Homenaje a Juan María Rouvier, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2003.
- Al rescate del Arbitraje en Venezuela. In Libro Homenaje al Dr. Gustavo Planchart Manrique, Caracas, 2003.
- Ley de Derecho internacional privado. Tres años de Vigencia. Trabajo de Incorporación a la Academia de Ciencias Políticas y Sociales, Caracas, 2002.
- Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras. In Libro Homenaje a Gonzalo Parra –Aranguren., Addedum 2001, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2002.
- Eficacia de las Sentencias Extranjeras en el Sistema Venezolano. In Liber Amicorum a Jünrgen Samtleben. Instituto Max Planck de Derecho Extranjero y Derecho Internacional Privado, Hamburgo, Alemania, 2002.
- Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras en Venezuela con especial referencia al Sistema Mexicano. Ponencia presentada en el XXV Seminario de Derecho Internacional Privado y Comparado, México. In: Jurídica. Anuario del Departamento de Derecho de la Universidad Iberoamericana. N° 31, México, 2001
- Nacionalidad y Ciudadanía en la Constitución de 1999. Academia de Ciencias Políticas y Sociales, Serie Eventos, 2000.
- Futuro del Derecho Internacional Privado venezolano. In: Revista Mexicana de Derecho Internacional Privado, México, mayo 2000.
- Das Neue venezolanische Gesetz über Internationales Privatrecht. In: Rabels Zeitschrift Vol. 64, 2000, Max Planck Institut, Hamburg, Germany.
- Flexibilización del Contrato Internacional en la Convención Interamericana sobre Derecho Aplicable a los Contratos Internacionales. In: Libro Homenaje a Nascimento e Silva. Dimensão Internacional do Direito, Sao Paulo, Brasil, 2000.
- Private International Law in Venezuela. In: Private International Law at the end of the 20th Century: Progress or Regress? International Academy of Comparative Law, Kluwer Law International, The Hague, 2000.
- Ley de Derecho Internacional Privado. Comentarios Generales. In: Revista de la Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, N° 117, 2000
- Aportes Jurídicos de la OEA. Balance y Perspectivas. Instituto de Altos Estudios Diplomáticos "Pedro Gual", Serie Investigación N° 5, 2000.
- Ley de Derecho Internacional Privado. Breves Comentarios. Concordancias y Derogatorias Biblioteca de la Academia de Ciencias Políticas y Sociales Serie Eventos, Primera edición 1999, Segunda edición 2001.
- Arbitraje Comercial Internacional en el Sistema Venezolano In: Seminario sobre la Ley de Arbitraje Comercial, Biblioteca de la Academia de Ciencias Políticas y Sociales. Serie Eventos, 1999.
- El Rol de la Codificación Interamericana en el Mundo Globalizado. XXV Curso de Derecho Internacional Comité Jurídico Interamericano, Secretaria General, OEA, Wahington D C, 1999.

4

* Derecho Internacional Privado a finales del siglo XX. In: El Derecho venezolano a finales del siglo XX, ponencia venezolana para el XV Congreso de Derecho Comparado, Bristol, Inglaterra, Academia de Ciencias Políticas y Sociales, Caracas, 1998.
* Antecedentes, Metodología y Parte General del Proyecto de Ley de DIP. In Comentarios sobre Proyecto de Ley de DIP. Academia de Ciencias Políticas y Sociales, 1998.
* Tráfico Internacional de Menores. In: "Adopción Internacional", Universidad Central de Venezuela, Caracas, 1998.

VIII    Memberships:

* Venezuelan Bar Association
* Venezuelan Interuniversity Asociation of Comparative Law  (Founding Member)
* Venezuelan Asociation of International Law (Founding Member)
* Hispanic-Portuguese-American Institute of International Law  (HILADI).
* International Academy of Comparative Law, The Hague, Netherland.
* Gesellschaft für Rechtsvergleichung, Germany
* Société de Législation Comparée, Paris, France.
* American Bar Association. Washington D.C.
* Inter-American Bar Association. Washington D.C.
* American Society of International Law. Washington D.C.
* Uruguayan Asociation  of International Law.
* Peruvian Society  of International Law
* Mexican Academy of Conflict and Comparative Laws.

IX    HONORS

* Member of the Academy of Political and Social Sciences (Individuo de Número de la Academia de Ciencias Politicas y Sociales), 2002.
* "Orden Libertador" received on July 4th, 1973.
* "Orden 27 de junio" dated January 8, 1973. For contributions to the teaching activities.
* Diploma for "Outstanding contribution to International Legal Studies" Washington College of Law of The American University, 1984.
* "José Maria Vargas" Medal, for outstanding contribution to the Central University of Venezuela.
* Honor's Diploma, Venezuelan Bar Association.
* "Luis Sanojo" Medal.

X    LANGUAGES

Spanish, German, French, English, Russian and Polish.

Agosto, 2003.

5

# PRIVATE INTERNATIONAL LAW STATUTE

## CHAPTER I
## GENERAL PROVISIONS

**Article 1.**- Issues of fact related to foreign legal systems shall be governed by the rules of Public International Law on the issue, in particular those established in international treaties in force in Venezuela; in lack thereof, Venezuelan rules of Private International Law shall be applied; in lack thereof, use shall be made of analogy and, finally, generally accepted principles of Private International Law shall govern.

**Article 2.**- Foreign law proving to be competent shall be applied in accordance with the principles governing in the respective foreign country, so as to allow the objectives sought by the Venezuelan rules of conflict should be met.

**Article 3.**- When different legal systems coexist in the foreign law proving to be competent, the conflict of law arising between those systems shall be solved in accordance with the principles being in force in the corresponding foreign Law.

**Article 4.**- When the competent foreign Law should provide that the Law of a third State is applicable, and this third State, on its turn, should provide that it is competent, this third State's domestic law shall be applicable.
When the foreign Law should provide that Venezuelan law is applicable, this Law shall be applied.

**Article 5.**- Issues of law having been created in accordance with a foreign Law attributing its own competence under international admissible criteria shall produce effect in the republic, provided they are not in contradiction with Venezuelan rules of conflict, that the Venezuelan law should claim exclusive competence over the respective matter, or that they should be clearly incompatible with general principles of Venezuelan public policy.

**Article 6.**- Previous, preliminary or incidental issues that may arise from a principal issues, need not necessarily be resolved in accordance with the law that governs the principal issue.

**Article 7.**- The different laws that may be applicable to various aspects of one and the same juridical relationship shall be applied harmoniously in order to attain the purposes pursued by each of such laws. Any difficulties that may be caused by their simultaneous application shall be resolved in the light of the requirements of justice in each specific case.



**Article 8**.- Provisions of foreign Law to be applied in accordance with this statute, shall only be excluded when their application should produce results being clearly incompatible with the essential principles of Venezuelan public policy.

**Article 9**.- When the foreign Law having been declared applicable to the issue should establish essential institutions or proceedings for adequate application thereof not being contemplated by the Venezuelan legal system, applications of said foreign Law may be denied provided that Venezuelan Law should not have analogous institutions or proceedings.

**Article 10**.- Notwithstanding the provisions of this statute, imperative rules of Venezuelan law having been adopted to regulate issues of fact connected to several juridical systems shall necessarily apply.

## CHAPTER II
## OF DOMICILE

**Article 11**.- An individual's domicile is in the territory of the State where he [she] has his [her] regular residence.

**Article 12**.- The married woman has her own domicile different from her husband's if it has been acquired in accordance of what is provided in the former article.

**Article 13**.- The domicile of minors and incompetent persons being subject to parental power, to guardianship or curatorship, is found in the territory of the State where they have their regular residence.

**Article 14**.- When the regular residence in the territory of a State should be the exclusive results of functions conferred by a national, foreign or international public body, such will not produce the effects provided in the former articles.

**Article 15**.- Provisions of this chapter apply as long as this statute refers to the domicile of an individual and, generally, when the domicile constitutes a mean to determine the applicable Law or the Courts' jurisdiction.

## CHAPTER III
## OF PERSONS

**Article 16**.- The existence, status and capacity of persons are governed by the Law of their domicile.

**Article 17**.- The change of domicile does not restrict any acquired capacity.

**Article 18**.- A person being incapable under the former provisions acts validly if deemed capable by the Law governing the act's contents.

**Article 19**.- Limitations of capacity established in the Law of the domicile, based on racial, nationality, religion or rank differences shall not produce effects in Venezuela.

**Article 20**.- The existence, capacity, operation and dissolution of bodies corporate of a private nature are governed by the Law of the place of their creation.
Place of their creation means that where the formal and substantial requirements for the creation of such bodies corporate are met.

## CHAPTER IV
## OF THE FAMILY

**Article 21**.- The capacity to enter into matrimony and the substantial requirements of matrimony are governed, for each of the spouse's, by the Law of their respective domicile.

**Article 22**.- The personal and property effects of matrimony are governed by the Law of the spouse's joint domicile. Should they have different domiciles, then the last joint domicile shall apply.
    Prenuptial agreements being valid under a competent foreign Law may be recorded at any time with the corresponding Venezuelan Main Public Records Office, when pretending that the may produce effects as to third bona fide persons, over real property located in the territory of the Republic.

**Article 23**.- Divorce and separation are governed by the Law of the domicile of the plaintiff spouse.
    The plaintiff spouse's change of domicile produces its effects only one year after having entered into the territory of a State with the purpose of establishing regular residence therein.

**Article 24**.- The establishment of filiation, as well as the relations between parents and their children, are governed by the Law of the child's domicile

**Article 25**.- The Law of their domicile shall apply to the adopting parent and the adopted child as to all related to substantial requirements being necessary for the adoption's validity.

**Article 26**.- Guardianship and other institutions aimed at protecting the incapable persons are governed by the law of the incapable person's domicile.

## CHAPTER V
## OF PROPERTY

**Article 27**.- The creation, contents and extension of in rem rights over property, are governed by the Law of the place of their situation.

**Article 28**.- The moving of personal property has no influence on the rights that may have been validly created under the rule of the former Law. Such rights, however, may only be opposed to third parties, after fulfillment of the requirements being provided therefore by the Law of the new situation.

## CHAPTER VI
## OF OBLIGATIONS

**Article 29**.- Conventional obligations are governed by the Law agreed to by the parties.

**Article 30**.- Lacking a valid indication, conventional obligations are governed by the Law with which it has the closest ties. The Court will take into account all the objective and subjective elements of the contract in order to determine such Law. It shall also take into account the General Principles of International Commercial Law recognized by international organizations.

**Article 31**.- In addition to the provisions of the former articles, whenever it should so result, application shall be made of rules, customs and principles of International Commercial Law, as well of generally accepted trade uses and practices, with the purpose of reifying the requirements imposed by justice and aquity in the particular case.

**Article 32**.- Torts are governed by the Law of the place where its effects have been produced. The victim, however, may move for application of the Law of the State where the cause generating the tort was produced.

**Article 33**.- Management of affairs, payment of what is undue and enrichment without consideration are governed by the Law of the place where the fact generating the obligation was realized.

## CHAPTER VII
## OF SUCCESSIONS

**Article 34**.- Successions are governed by the Law of the principal's domicile.

**Article 35**.- Descendants, ascendants and the surviving spouse not being legally separated as to property, may, in all cases, make the right to the legally mandatory inheritance portion provided by venezuelan Law, effective as to property situated in the Republic.

**Article 36**.- In the event that, under the competent Law, the succession rights may correspond to the State, or if there were no heirs or if their existence should be ignored, property situated in the Republic shall pass to the Venezuelan Nation's patrimony.

## CHAPTER VIII
## OF THE FORM AND PROOF OF ACTS

**Article 37**.- Juridical acts are valid, as to the form, if they meet the requirements of any of the following juridical systems.
1) That of the place of the act's execution,
2) That governing the act's contents, or
3) That of the domicile of the executing party or of the executing parties' joint domicile.

**Article 38**.- The means of evidence, their efficacy and the determination of the burden of the proof are governed by the Law governing the corresponding juridical relation, without prejudice to the fact that its procedural forwarding may adjust to the Law of the Court or of the officer before whom it is produced.

## CHAPTER IX
## OF JURISDICTION AND COMPETENCE

**Article 39**.- Additionally to the jurisdiction being vested by law on the Venezuelan Courts in actions filed against persons with domicile in the national territory, the Courts of the Republic shall have jurisdiction in actions filed against persons having their domicile abroad in cases contemplated in articles 40, 41 and 42.

**Article 40**.- Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions in property:

1) When the actions at issue should relate to the disposition or holding of personal or real property situated in the territory of the Republic.

2) When the actions at issue should relate to obligations to be complied within the territory of the Republic or deriving from contracts entered or facts verified in said territory.

3) When the defendant should have been personally served within the territory of the Republic.

4) When the parties should expressly or tacitly submit to their jurisdiction.

**Article 41**.- Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions related to universal assets:

1) When Venezuelan Law should be competent, under the provisions hereof to govern the substance of the litigation;

2) When property being an integral part of the universal assets should be situated in the territory of the Republic

**Article 42.-** Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions on the status of persons or on family relationships:

1) When Venezuelan Law should be competent, under the provisions hereof to govern the substance of the litigation;

2) When the parties should expressly or tacitly submit to their jurisdiction, provided the cause should have some effective link.

**Article 43.-** Venezuelan Courts shall have jurisdiction to adopt provisional measures to protect the persons being in the territory of the Republic, even when in want of jurisdiction to hear on the substance of the litigation.

**Article 44.-** Express submission shall be evidenced in writing.

**Article 45.-** Tacit submission shall result, for plaintiff, from the fact of filing the complaint and, for defendant, from the fact of performing during the trial, personally or through counsel, any action other than moving for dismissal for want of jurisdiction or to oppose a preventive measure.

**Article 46.-** Submission is not valid in the issue of actions affecting the creation, amendment or extinction of rights in rem on real property, save when the Law of the real property's situation should so allow it.

**Article 47** - Jurisdiction corresponding to Venezuelan Courts, under the former provisions may not be waived conventionally in favor of foreign Courts or of arbitrators deciding abroad, in cases where the issue should refer to disputes related to rights in rem on real property situated in the territory of the Republic, or when dealing with issues not admitting settlement or affecting essential principles of Venezuelan public policy.

**Article 48** - Whenever Venezuelan Courts should have jurisdiction under this Chapter's provisions, territorial internal competence shall be governed by provisions in articles 49 through 51 hereof.

**Article 49.-** As to competence to hear on trials originated by the filing of actions of a property related nature:

1) When forwarding actions related to the disposition or holding of personal or real property situated in the territory of the Republic, it shall pertain to the Court of the place where the property is located;

2) When forwarding actions related to obligations to be performed in the territory of the Republic or deriving from contracts entered or facts verified in said territory, it shall pertain to the Court of the location where the obligation should be performed or where the contract should have been entered or where the fact originating the obligation should have been verified;

3) When the defendant should have been personally served in the territory of the Republic, the Court of the place where service occurred;

4) When the parties should have expressly and generically submitted to the Courts of the Republic, to that turning to be competent by virtue of any of the criteria indicated in the three former paragraphs and, by default, to the Court of the capital of the Republic.

**Article 50**.- As to competence to hear on trials originated by the filing of actions related to universal set of property:

1) When Venezuelan Law should be competent, under the provisions hereof, to govern the substance of the litigation, it shall pertain to the Court where the person through whom competence is attributed to Venezuelan Law should have domicile.

2) When property being an integral part of universal set of property should be situated in the territory of the Republic, it shall pertain to the Court of the place where most of the property being part of the universal set of property is situated.

**Article 51**.- As to competence to hear on trials originated by the filing of actions related to the status of persons or to family relations:

1) When Venezuelan Law should be competent, under provisions hereof, to govern the substance of the litigation, it shall pertain to the Court where the person through whom competence is attributed to Venezuelan Law should have domicile.

2) When the parties should expressly or tacitly submit to its jurisdiction, it shall pertain to the Court of the place where the cause should be linked to the territory of the Republic.

**Article 52**.- The norms established in articles 49, 50 and 51 do not exclude the competence of different Courts, when it should be attributed to them by other laws of the Republic.

## CHAPTER X
## OF THE EFFICACY OF FOREIGN JUDGMENTS

**Article 53**.- Foreign judgments shall be effective in Venezuela provided they meet the following requirements:

1) That they should have been issued in civil or commercial matters, or, generally, in matters related to private juridical relationships;

2) That they should force of *res judicata* under the Law of the State where they were pronounced;

3) That they should not relate to *in rem* rights on real property situated in the Republic or that exclusive jurisdiction to know of the affair should not have been taken away from Venezuela;

4) That the sentencing State's Courts should have jurisdiction to hear the cause, under the general principles on jurisdiction established by Chapter IX hereof;

5) That the defendant should have been duly served, with sufficient time to appear, and that, generally, procedural guarantees should have been afforded to ensure a reasonable possibility of defense;

6) That they should not be incompatible with a previous judgment having authority of *res judicata*; and that there should not be pending, before Venezuelan Courts, a trial with the same object and between the same parties having commenced before the foreign judgment should have been issued.

**Article 54**.- If a foreign judgment should not be able to display full efficacy, its partial efficacy may be admitted.

**Article 55**.- In order to proceed with the enforcement of a foreign judgment, domestic enforcement thereof should have been awarded in accordance with the procedure provided by law and after previous verification that it meets the requirements of article 53 hereof.

## CHAPTER XI
## OF PROCEDURE

**Article 56**.- The competence and form of procedure shall be governed by the Law of the officer before it is forwarded.

**Article 57**.- The Venezuelan judge's want of jurisdiction with regard to the foreign Judge shall be declared ex officio, or at the request of party, at any stage or degree of process.

Any motion for a ruling on jurisdiction suspends the proceedings until the respective should have been made.

In the event that jurisdiction of Venezuelan should be upheld, the cause shall go on as from the stage where it should be found when the ruling is made; however, the decision denying it shall be brought to the Supreme Court of Justice, at Political and Administrative Chamber, for which purpose the record shall be forthwith remitted to it and if such ruling should be upheld, the cause being thus closed.

**Article 58**.- Exclusive Venezuelan jurisdiction is not excluded by the pendency before a foreign Judge of the same cause or of any other linked to it.

**Article 59**.- The Courts of the Republic may address themselves to any competent foreign authority, by means of letters rogatory, for the performance of services, evidence related proceedings or any other judicial action turning to be necessary for good development of the process. They shall also process, as briefly as possible, the letters rogatory coming from foreign Courts adjusted to the principles of International Law applicable to the matter.

**Article 60**.- Foreign Law shall be applied *ex officio*. The parties may bring information related to the applicable foreign Law and the Courts and authorities may issue orders tending to better knowledge thereof.

**Article 61**.- Recourses provided by the law shall be admissible under any juridical system which should have been applied in the decision being subject to such recourses.

**Article 62** - Save for provisions in article 47 hereof, everything related to international commercial arbitration shall be governed by special norms regulating the matter.

## CHAPTER XII
## FINAL PROVISIONS

**Article 63**.- All norms regulating the subject matter of this statute are hereby derogated.

**Article 64**.- This statute shall be in force six months after its publication in the Official Gazette, of the Republic of Venezuela.

Official Gazette N° 36,511 of 08-06-1998. Translation.

MAT HEW GIORGINA PINEDA §
MORALES, INDIVIDUALMENTE Y COMO §
ALBACEA DE LOS  ENES RELICTOS §
DE JORGE ENRIQUE PINEDA § ACCIÓN CIVIL NO. B-03-061
CARVAJAL, Fallecido; BEATRIZ DEL §
VALLE PINEDA, INDIVIDUALMENTE, §
GIORGIA PINEDA MORALES, §
EDWARD ENRIQUE PINEDA §
MORALES, INDIVIDUALMENTE; §
§
DOLORES CHACON DE PINEDA, §
INDIVIDUALMENTE Y COMO REPRESEN- §
TANTE DE NEGOCIOS DE JORGE LUIS §
PINEDA CHACON §
§
Demandantes §
§
§
Vs. §
§
FORD MOTOR COMPANY §
Demandado §

## DECLARACIÓN BAJO PENA DE PERJURIO

Yo, Torres Macho, Doctor en Medicina, un médico de la Clínica San José ubicada en Socopo-Estado Barinas, soy una persona que tiene conocimiento personal y es posible que yo tenga información importante que pueda ser descubierta para la causa de acción arriba mencionada.

Yo soy el médico quien recibió y proporcionó tratamiento a los individuos que estuvieron involucrados en un accidente automovilístico que es el objeto de la causa de acción arriba mencionada,

Declaro que estoy dispuesto voluntariamente a presentarme y a comparecer para el testimonio judicial juramentado en Venezuela o en Aruba sin la necesidad de una citación y pediría solamente que me sean cubiertos los gastos de aquel viaje, las comidas y el alojamiento.

1



"Declaro bajo pena de perjurio, de conformidad con las leyes de los Estados Unidos de Norteamérica, que lo que antecede es verdadero y correcto."

FORMALIZADO en la fecha *25.09 -* _____, 2003

Dr. Hector D. Torres Macho
Médico Cirujano

TORRES MACHO, Doctor en Medicina

MORALES, INDIVIDUALMENTE Y COMO                 §
ALBACEA DE LOS ~ ~NES RELICTOS                  §
DE JORGE ENRIQUE PINEDA                          § ACCIÓN CIVIL NO. B-03-061
CARVAJAL, Fallecido; BEATRIZ DEL                 §
VALLE PINEDA, INDIVIDUALMENTE,                   §
GIORGIA PINEDA MORALES,                          §
EDWARD ENRIQUE PINEDA                            §
MORALES, INDIVIDUALMENTE;                        §
                                                 §
DOLORES CHACON DE PINEDA,                         §
INDIVIDUALMENTE Y COMO REPRESEN-                 §
TANTE DE NEGOCIOS DE JORGE LUIS                  §
PINEDA CHACON                                    §
                                                 §
                Demandantes                      §
                                                 §
                                                 §
Vs.                                              §
                                                 §
FORD MOTOR CCMPANY                               §
                Demandado                        §


## DECLARACIÓN BAJO PENA DE PERJURIO

Yo, Elias Pena, Policia Sargento 2do de la Republica Bolivariana de Venezuela, Ministerio De Infraestructura Servicio Autónomo De Transporte Y Tránsito Terrestre Dirección De Vigilancia U.E.V.T.T. No. 53 "Barinas", soy un individuo que tiene conocimiento personal y es posible que yo tenga información que pueda ser descubierta e importante para la causa de acción arriba mencionada.

Yo soy el oficial que investigó y completó un reporte de accidente para el accidente de tránsito que es el objeto de la causa de acción arriba mencionada.

Declaro que estoy dispuesto voluntariamente a presentarme y a comparecer para el testimonio judicial juramentado en Venezuela o en Aruba sin la necesidad de una citación y pediría solamente que me sean cubiertos los gastos de aquel viaje, las comidas y el alojamiento.

"Declaro bajo pena de perjurio, de conformidad con las leyes de los Estados

1

Unidos de Norteamé ica, que lo que antecede es verdadero y correcto."

FORMALIZADO en la fecha 26 - 09 - , 2003

ELIAS PEÑA

2

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUR DE TEXAS
DIVISIÓN DE BROWNSVILLE

JORGE ENRIQUE PINEDA MORALES                    §

2

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUR DE TEXAS
DIVISIÓN DE BROWNSVILLE

JORGE ENRIQUE [illegible]EDA MORALES §

Case 1:03-cv-00061 Document 19 Filed in TXSD on 09/26/2003 Page 56 of 56