IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 3 2003

Michael N. Milby
Clerk of Court

JORGE ENRIQUE PINEDA MORALES          §
AND MAYTHEM GIORGINA PINEDA           §
MORALES, INDIVIDUALLY AND AS          §
ADMINISTRATOR/IX OF THE ESTATE        §
OF JORGE ENRIQUE PINEDA CARVAJAL,     §
DECEASED; BEATRIZ DEL VALLE PINEDA,   §    CIVIL ACTION NO. B-03-061
INDIVIDUALLY; THEMMAY GIORGIA         §
PINEDA MORALES; EDWARD ENRIQUE        §
PINEDA MORALES, INDIVIDUALLY;         §
DOLORES CHACON PINEDA,                §
INDIVIDUALLY AND AS NEXT FRIEND OF    §
JORGE LUIS PINEDA CHACON              §
                                      §
              Plaintiffs,             §
vs.                                   §
                                      §
FORD MOTOR COMPANY                    §
                                      §
              Defendant.              §

---

## FORD MOTOR COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS

---

Having just had a number of Venezuelan cases with virtually identical facts dismissed on

*forum non conveniens* grounds by the Western District of Texas,[1] Plaintiffs' counsel is at it

again, now in a different venue. Ford Motor Company respectfully requests that this Court

follow the precedent set by the Fifth Circuit and the Western District of Texas and dismiss the

present case.

---

[1] *See Elsa Beatriz Lopez Guedez, et al v. Ford Motor Company, et al*, Action No. P-03-CA-032 slip op. (W.D. Tex. September 23, 2003) (attached hereto as Exhibit 1); *see also Ciriaco Gonzalez v. Ford Motor Company*, Action No. P-02-CA-137 (W.D. Tex. September 23, 2003) (attached hereto as Exhibit 2).

**FORD MOTOR COMPANY'S REPLY BRIEF IN**
**SUPPORT OF ITS MOTION TO DISMISS ON**
***FORUM NON CONVENIENS* GROUNDS**

AUS:2070924.1
13486.95555

I.    **SUMMARY OF PLAINTIFFS' RESPONSE**

Plaintiffs' Response is filled with flawed and dangerous logic that contradicts well-established precedent.  First, unable to find a single connection between this case and Texas, Plaintiffs' entire Response is riddled with the following contention:  that because Texas has an "interest in preventing similar accidents in Texas" and because Ford does business in Texas, Texans ought to be the world's jurors.  *See* Plaintiffs' Response at pp. 5 and 17-18.  Second, Plaintiffs ask this Court to ignore established precedent and find that Venezuela is an "unavailable" forum either because Plaintiffs will not consent to jurisdiction in Venezuela or because Texas has the "most significant contacts" to this case.  Third, Plaintiffs misread the Treaty of Peace, Friendship, Commerce and Navigation and suggest (contrary to Supreme Court precedent) that foreign plaintiffs ought to be afforded the same level of deference in their choice of forum as United States residents.  Fourth, in evaluating the public and private interest factors, Plaintiffs ask this Court to ignore Fifth Circuit precedent and focus entirely on the fact that the vehicle at issue was designed in Michigan.  Plaintiffs' contentions are wrong and must be rejected.

II.    **FORD'S REPLY**

A.    **Texas has absolutely no connection to this case**.

At the outset, neither Plaintiffs nor this Court can ignore the fact that the state of Texas has no connection whatsoever to this accident, these plaintiffs, or the product at issue.  Plaintiffs' Response itself makes this point abundantly clear.  On at least sixteen occasions, Plaintiffs highlight the connections this case has to the "the United States," including: (1) the fact that Ford's principal place of business is in Michigan, (2) the fact that the vehicle at issue was

2

designed in Michigan, (3) allegations that decisions regarding the vehicle were made in Michigan, and (4) allegations that the United States government and United States citizens derive economic benefits from the sale of products assembled in Venezuela.  Plaintiffs also make one reference to a testing site in Arizona.  They even mention that two of their witnesses are willing to appear for depositions in Venezuela or Aruba.

Nowhere in Plaintiffs' Response is there a single allegation of any connection to Texas.

B.    **Plaintiffs' suggestion that Texas citizens be burdened with this foreign-accident, foreign-plaintiff case simply because Ford does business in Texas is dangerous and contrary to precedent.**

Were this Court to adopt Plaintiffs' suggested standard for evaluating dismissal of foreign accident cases, no court would ever dismiss a case against a product designer that does business in Texas no matter where the incident arose, whether the plaintiffs had ever set foot in Texas, or whether the product had never been in Texas.  Every product designer would be hailed into a south Texas courtroom by citizens from all over the world on the unprecedented assertion that "Texas has an interest in preventing similar incidents in Texas."  Texas courts would become the courtrooms of the world and Texans the world's jurors.

The United States Supreme Court has rejected this type of standard.  A state has no legitimate interest in regulating conduct that occurs entirely outside its borders.  *See State Farm v. Campbell*, 538 U.S. ____, 123 S.Ct. 1523 (2003) and *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996).  As the Supreme Court put it:

> [a state's] power to impose burdens on the interstate market for automobiles is not only subordinate to the federal powers over interstate commerce . . . but is also constrained by the need to respect the interests of the other states.

*Gore*, 517 U.S. at 574.  After all, as the Court added, a basic tenet of federalism is that:

3

each State may make its own reasoned judgment about what conduct is permitted as proscribed within its borders, and each State alone can determine what measure of punishment if any, to impose on a defendant who acts within its jurisdiction.

*State Farm*, 123 S.Ct. at 1523.

If Texas cannot regulate the conduct of other states within the Union, it surely cannot regulate the conduct of and standards established by other nations. As the Fifth Circuit recently put it in a similar case involving another foreign nation:

> [Mexico], as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the [Mexican] government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate--even patronizing--for us to denounce this legitimate policy choice.
> . . .

*Gonzalez, et al v. Chrysler Corporation, et al.*, 301 F.3d 377, 381-82 (5th Cir. 2002). This case should be tried in Venezuela where the accident occurred, where the accident was investigated, where the vehicle was assembled, sold and maintained, where Dr. Pineda was from, where the plaintiffs are from, and where Dr. Pineda was provided medical treatment.

C.    **Fifth Circuit precedent makes clear that Venezuela is an "available" forum.**

In its recent dismissal of three Venezuelan accident cases, the Western District of Texas reiterated that **"a defendant's submission to jurisdiction of [the] alternative forum renders that forum available for purposes of [the] *forum non conveniens* analysis."** *See Elsa Beatriz Lopez Guedez, et al v. Ford Motor Company, et al*, Action No. P-03-CA-032 slip op. at pages 4-5 (W.D. Tex. September 23, 2003) (attached hereto as Exhibit 1) and *Ciriaco Gonzalez v. Ford Motor Company*, Action No. P-02-CA-137 at page 4 (W.D. Tex. September 23, 2003) (attached

4

hereto as Exhibit 2) both citing *Veba-Chemie, A.G. v. M/V/ Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983).

Here, Ford consented to the jurisdiction of the Venezuelan courts to decide this case and agreed to abide by any judgment entered by those courts. *See* Ford's Brief in Support of Motion to Dismiss, §III, p. 25. This consent is all that is required in the context of the *forum non conveniens* analysis.

Plaintiffs suggest, however, that this Court ignore established precedent and find that Venezuela is an "unavailable" forum either because Plaintiffs will not consent to jurisdiction in Venezuela or because Texas has the "most significant contacts" to this case. Ford addressed Plaintiffs' first suggested standard in its *forum non conveniens* brief (*see* §III (F) at p. 23).

As to Plaintiffs' second suggested standard, it is somewhat perplexing that Plaintiffs would suggest it. Venezuela has the "most significant contacts" to this case. More specifically, Plaintiffs contend that under Article 40(2) of the Statute on Private International Law, Venezuelan courts would have jurisdiction to hear this case if "the actions derive from 'facts verified' in Venezuela." *See* Plaintiffs' Response, §II(B)(1) at p. 8. According to Plaintiffs' foreign law expert, determining whether the facts in this case were "verified" in Venezuela requires the equivalent of a "most significant contact" analysis. *Id.* Under this analysis, which Texas utilizes to evaluate conflict of laws issues, Venezuela has the most significant contacts to this case:

1. the accident at issue here, and all resulting injuries, occurred entirely in Venezuela;

2. the conduct allegedly causing the injuries did not occur in Texas;

5

3. none of the parties reside in Texas; and

4. the only relationship between any of the plaintiffs and Ford is based on this particular vehicle, which was assembled, sold, and maintained in Venezuela, and this specific accident, which occurred in Venezuela.

*See* Ford's Brief in Support of its Motion to Apply Venezuelan Law; *see also* Ford's Reply Brief in Support of its Motion to Apply Venezuelan Law.

  D. **In evaluating the public and private interest factors, Plaintiffs are asking this Court to misread and misapply the Treaty of Peace, Friendship, Commerce and Navigation.**

   Plaintiffs contend that the Treaty of Peace, Friendship, Commerce and Navigation entitles them to deference in their choice of forum equal to that of resident or citizen plaintiffs. It has long been the law that the choice of an American forum by a foreign plaintiff is not entitled to the same deference as such a choice by a citizen or resident of the United States:

> [The] distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. . . . When the [plaintiff's] home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft Co. v. Reyno*, 454 U.S. at 255-56; *see also Kamel v. Hill-Rom Co., Inc.*, 108 F.3d at 803 ("[B]ecause the primary objective of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice of forum deserves less deference."); *Macedo v. Boeing Co.*, 693 F.2d at 688 ("Courts routinely give less weight to a foreign plaintiff's choice of forum."); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998)("When the plaintiff is foreign, the private and public interest factors need not so heavily favor the alternative forum."), *cert. denied*, 526 U.S. 1112 (1999).

6

Plaintiffs' contrary approach is incorrect and conflicts with the plain language of the treaty upon which the Plaintiffs rely. That treaty simply guarantees that the citizens of signatory countries will be given access to courts "on the same terms which are usual and customary with the natives or citizens *of the country in which they may be* . . . ." Treaty of Peace, Friendship, Navigation and Commerce, June 20, 1836, U.S.-Venez., art. XIII, 8 Stat. 466, 1836 WL 3643 (emphasis added); *see also* Treaty of Peace, Amity, Navigation, and Commerce, December 12, 1846, U.S.-Colom.(then the Republic of New Granada), art. XIII, 9 Stat. 881, 1848 WL 6378 (to same effect).

Such treaties thus provide that foreign nationals who "may be" in the United States (for example, resident aliens) are entitled to the same access to United States courts as that enjoyed by United States citizens. They confer no special access to American courts to Venezuelans <u>who are in Venezuela</u>. The Plaintiffs cannot identify language in any treaty suggesting that Venezuelan citizens living in Venezuela are entitled to the same deference in the use of United States courts as are citizens or residents of the United States. By failing to apply the plain language of the treaty, Plaintiffs ignore one of the most basic principles for construing international agreements. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134-35 (1989)(court must be governed by the natural meaning of the text of the treaty, as adopted by the approving governments). This is the simple dispositive point: Plaintiffs misread the treaty.

Plaintiffs' argument also fails to address contrary interpretations of such treaties by a number of federal courts. *See, e.g., Pain v. United Technologies. Corp.*, 637 F.2d at 795-96 (rejecting foreign plaintiffs' argument that they were entitled to higher presumption of convenience "[b]ecause the United States has signed treaties of trade, or of friendship and

**FORD MOTOR COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS**

AUS:2070924.1
13486.95555

cooperation, with many nations guaranteeing equal access of one nation's citizens to courts of the other."); *In re Dow Corning Corp.*, 255 B.R. 445, 526-27 (E.D. Mich. 2000) (rejecting contention that *forum non conveniens* dismissal is unavailable where foreign plaintiffs are citizens of treaty state, noting in part that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient."), *aff'd*, 280 F.3d 648 (6th Cir. 2002).

E.    **In evaluating the public and private interest factors, Plaintiffs ask this Court to ignore Fifth Circuit Precedent and focus on the fact that the vehicle at issue was designed in Michigan.**

In their Response, Plaintiffs attempt to misdirect this Court's entire analysis of the public and private interest factors by focusing on what they consider the fundamental issue in dispute— i.e., "a determination of the circumstances surrounding the design of the Ford Explorer [and] the reasons for the failure of the vehicle. . . ."  *See* Plaintiffs' Response, §II(C)(2) at p. 12 (emphasis added).

Plaintiffs' suggested focus dismisses as inconsequential all of the evidence related to the facts of each accident, the circumstances surrounding the decedent's fatal injuries and all of the evidence related to the history, maintenance, repair, and condition of the vehicle.  Moreover, Plaintiffs' suggested focus reaches back too far in the accident's causal link.  As the Fifth Circuit recently held:

> The linchpin of plaintiff's argument—that the alleged wrongful act was the original design of the vehicle and tires—reaches back too far in the accident's causal chain.  Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and alleged failure of the product, which all occurred in [Mexico].  If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims.

8

*Vasquez v. Bridgestone/Firestone, Inc., et al*, 325 F.3d 665, 674 (5th Cir. 2003).  The same is true here.

    F.    **Contrary to Plaintiffs' assertion, witness testimony taken in the United States is admissible in a Venezuelan court without the necessity of a court order.**

Professor Victor Hugo Guerra Hernandez (an expert on Private International Law) explained in his original declaration that under the Venezuelan Private International Law Statute and the Venezuelan Code of Civil Procedure, witness testimony obtained abroad is admissible in a Venezuelan court.  *See* Declaration of Victor Hugo Guerra Hernandez Concerning Private International Law and Discovery Under the Laws of Venezuela, §III(B) at pp. 13-15.  And, contrary to Plaintiffs' assertion, it is not necessary for a Venezuelan court to order the taking of such testimony for it to have value in a Venezuelan proceeding.  *See* Supplemental Declaration of Victor Hugo Guerra Hernandez (attached hereto as Exhibit 3).  In fact, it is not even necessary that the plaintiffs initiate a claim in the State of origin or the State that makes the request.  *Id.* All that is required, to avoid frivolous requests, is that the requested evidence was going to be used in a future trial or, at a minimum, in a contemplated proceeding in the state of origin.  *Id.*

Furthermore, the articles from the Venezuelan Code of Civil Procedure referenced by Plaintiffs in their Response do not apply to this case.  As Professor Guerra makes clear, "those articles apply in cases where there is a fear that evidence located outside Venezuela may disappear." *Id.*  Plaintiffs have not pointed to a single piece of evidence they fear is going to disappear and, therefore, require a Venezuelan court order to preserve it.

9

G. **Plaintiffs' attempt to downplay the surge of foreign accident cases filed in the United States is contrary to Plaintiffs' counsel's own experience.**

Plaintiffs seem to imply that the case at bar, which "involves a handful of individuals," is the only case involving a foreign accident and foreign plaintiffs. *See* Plaintiffs' Response, II(D)(1) at p. 18. Thus, Plaintiffs argue this case "will require no more of the Court's time and resources than would any other civil case, and would not be unfair to burden Texas citizens with jury duty for a trial." *Id.* Plaintiffs' counsel, who has filed at least half-a-dozen of these foreign accident cases, well knows that this is not the only case usurping the resources of federal and state courts. In fact, there are now dozens of foreign accident cases, involving hundreds of foreign plaintiffs pending in Texas, Tennessee, Florida, Mississippi and other states. Plaintiffs cannot dismiss, as simple rhetoric, the United States Supreme Court's warning that :

> The American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252, 102 S.Ct 252 (1981).

H. **To require Ford to conduct a full fledged investigation in a foreign country before this foreign accident case can be dismissed would defeat the purpose of the *forum non conveniens* doctrine.**

Plaintiffs agree that Ford will be unable to implead potentially liable third parties, but they assert that because Ford has not provided a list of potentially liable third parties, either Ford conducted discovery regarding the existence of responsible third parties and found none or Ford has not conducted discovery and has waived any argument as to the merits of this factor. If Ford had to provide a detailed catalog of potentially liable third parties, it would have to conduct a full investigation and discovery in a foreign country under the Hague Convention to come up with

10

such a list. That would defeat the very purpose of the *forum non conveniens* doctrine. The simple fact that Ford cannot implead potentially liable third parties is enough to place this factor on the dismissal column. *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283-84 at n.4 (11th Cir. 2001) ("In the same vein, we note that MDC would likely suffer prejudice if it were the sole defendant in a lawsuit in the United States while other, potentially culpable, defendants were sued in Argentina."); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1315 (11th Cir. 2001); *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 15 (1st Cir. 2000); *Tonkon v. Denny's, Inc.*, No. 86-1186, 1987 WL 8837 at ' 2-3 (E.D. Pa. March 31, 1987) ("The final private interest which suggests that Mexico is the appropriate forum is the inability of defendant to implead potential third-party defendants.").

III.   **PRAYER**

For the reasons stated in this Reply, as well as its *Forum Non Conveniens* Brief, Ford respectfully requests this Court to dismiss this action on the grounds of *forum non conveniens*.

11

FORD MOTOR COMPANY'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS ON
*FORUM NON CONVENIENS* GROUNDS

AUS:2070924.1
13486.95555

Respectfully submitted,


**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas  78701
(512) 472-5456
(512) 479-1101 Fax



By:_____
      Ronald D. Wamsted
      Attorney-In-Charge
      State Bar No.  20832000
      Southern District Admissions No. 17108
      John W. Chambless, II
      Southern District Admissions No. 20674
      State Bar No. 00796334
      Jaime A. Saenz
      Federal I.D. No. 7630
      State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via Certified Mail Return Receipt Requested to:

Mark A. Cantu
Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th, Suite 400
McAllen, Texas 78501

on this _2_ day of ~~September~~ *October*, 2003.

_____
Ronald D. Wamsted

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

**FILED**

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| ELSA BEATRIZ LOPEZ GUEDEZ et al., | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | P-03-CA-032 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| DEL RIO TEST CENTER, INC., | § | |
| and FORD MOTOR COMPANY, | § | |
|     Defendants | § | |

## ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Before the Court is Firestone's Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 21, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 24, 2003. On August 26, 2003, the Plaintiffs filed their Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\A.graw\Civil\M-03-CV-032\fnc.wpd

1

42

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on April 8, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on March 3, 2003. The Plaintiffs are residents of Venezuela, and the case stems from an accident that occurred in Venezuela when one of the tires on a Ford Explorer allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In their Original Petition filed in state court, the Plaintiffs sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on May 27, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiffs represented that they were unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiffs' claims against Defendant Bridgestone Corporation were thus dismissed.

K:\AAgrawn\civil\M-03-CV-032\foc.wpd

2

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing

of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, on July 28, 2003. At a hearing on September 10, 2003, the Plaintiffs represented that

they were unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire &

Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own

costs in that regard. Accordingly, all of the Plaintiffs' claims against Defendant Smithers

Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been

dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiffs

and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate

that there exists an available and adequate alternative forum for the lawsuit and that the balance of

relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v.*

*Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered

available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an

alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly

in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court.

*Id.*

Once a court makes the threshold determination that an alternative forum for the case is both

available and adequate, it turns to balancing relevant private and public interest factors to decide

whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include:

the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

### I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. The Plaintiffs are all citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that they will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's submission to jurisdiction of alternative forum renders that forum available for purposes

of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendants. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and

expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

**IV. Public Interest Factors**

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at issue in this case were sold in Venezuela and allegedly failed in that country.

K:\AA gravelTich-iM-03-CV-032\Doc.wpd

6

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuela's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application

of foreign law. In sum, the administrative difficulties flowing from court congestion, the local

interest in having localized controversies decided at home, the interest in having the trial of a

diversity case in a forum that is at home with the law that must govern the action, the avoidance of

unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of

burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in

Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the

doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss Based on *Forum Non Conveniens*, filed

on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby

GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss

Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby

DISMISSED subject to the following additional Orders:


It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and

service of process in any Venezuelan court having jurisdiction under the applicable laws of the

country of Venezuela. This Court will not designate which court is proper because that question is

for the courts of Venezuela to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered

against them, or any of them, when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this 22 day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

FILED

| | | |
|---|---|---|
| CIRIACO GONZALEZ, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | P-02-CA-137 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CONSOLIDATED WITH

| | | |
|---|---|---|
| ROSAURA LINARES CARMONA | § | |
| GUTIERREZ, Individually and as Wife | § | |
| of EDGAR GUTIERREZ, Deceased, and | § | |
| as Mother of EDWARD GUTIERREZ, | § | |
| and FANNY ESPERANZA SANDOVAL, | § | |
| Individually and as Parent of EDGAR | § | |
| GUTIERREZ, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | P-02-CA-016 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Before the Court is Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*, filed on June 6, 2003 in the above-captioned matter. The Plaintiffs' Memorandum in Response to the Motion of Defendant Ford Motor Company to Dismiss on the Grounds of *Forum Non Conveniens* was filed on August 14, 2003. Defendant Ford Motor Company's Reply to Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss on the

15

Grounds of *Forum Non Conveniens* was filed on August 20, 2003. Finally, a hearing on the Motion to Dismiss was held on August 20, 2003. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendant's Motion should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This consolidated case arose out of an accident that occurred on February 20, 2000 in Venezuela. On that day, Edgar Gutierrez was driving a 1998 Ford Explorer when he lost control of the vehicle. As a result of the ensuing accident, Gutierrez lost his life and Plaintiff Ciriaco Gonzalez, one of the passengers in the vehicle, was injured. Mr. Gutierrez's wife, Plaintiff Rosaura Linares Carmona Gutierrez, as well as his parent, Plaintiff Fanny Esperanza Sandoval, brought suit on his behalf against Ford Motor Company (Ford), Border Transfer Services, Inc., and Del Rio Test Center, Inc. in the 143rd Judicial District Court of Reeves County, Texas on February 4, 2002. Ford subsequently removed the case to this Court on March 13, 2002, and the case was assigned Cause Number P-02-CA-016. In contrast, Plaintiff Ciriaco Gonzalez's lawsuit against Ford was originally filed in this Court on December 27, 2002 under Cause Number P-02-CA-137. Both lawsuits alleged strict liability and negligence claims against Ford arising out of the February 20, 2000 accident.

On June 16, 2003, the Court ordered the two lawsuits consolidated under Cause Number P-02-CA-016. Prior to consolidation, the case filed on behalf of Edgar Gutierrez had an extensive procedural history which bears recounting here. As mentioned before, Plaintiffs Rosaura Linares Carmona Gutierrez and Fanny Esperanza Sandoval originally sued Ford, Border Transfer Services, Inc. (Border Transfer), and Del Rio Test Center, Inc. (Del Rio) in state court. After the case was removed to this Court, the Plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice on

April 22, 2002 as to the entire cause of action. Accordingly, the Court entered an Order on Voluntary Dismissal Without Prejudice on April 24, 2002 and the case was closed. Then, on July 9, 2002, the parties filed a Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. In response, the Court issued an Order to Show Cause on August 14, 2002. After the parties failed to respond to the Order to Show Cause, the Court entered an Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on September 5, 2002.

One week later, on September 12, 2002, the Plaintiffs filed an Emergency Motion for Reconsideration of Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. The Court therefore entered an Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on November 6, 2002. The case was thus resurrected, and a Scheduling Order was entered on February 10, 2003.

The history of this case continues. Due to ambiguity in the language of the Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice, it was not clear whether the Plaintiffs wished to maintain their causes of action against Border Transfer and Del Rio in addition to Ford subsequent to the reopening of the lawsuit. Thus, on May 27, 2003, the Plaintiffs filed a Notice of Voluntary Dismissal of Defendants Border Transfer Services, Inc. and Del Rio Test Center, Inc. The Court

K:\AAgrawal\civil\Gutierrez [4-02-CV-016]\fmc.wpd    3

accordingly entered an Agreed Order of Voluntary Dismissal of Defendants Del Rio Test Center, Inc. and Border Transfer Services, Inc. on May 28, 2003. Shortly thereafter, on June 16, 2003, the case was consolidated with Plaintiff Ciriaco Gonzalez's lawsuit against Ford arising out of the same accident in Venezuela. As such, the parties presently before the Court for the purpose of this Order are Defendant Ford Motor Company and Plaintiffs Ciriaco Gonzalez, Rosaura Linares Carmona Gutierrez, and Fanny Esperanza Sandoval.

### STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of

K:\A\Agrawal\civil\Gutierrez [4-02-CV-016]\fnc.wpd

4

these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

### I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. All of the Plaintiffs are citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendant has stipulated and represented to the Court that it will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

### II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum

for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendant. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary,

and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendant's alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful act in this case was the original design of the vehicle "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the product at issue in this case was sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and

K:\AAgrawal\civil\NGutierrez [4-02-CV-016]Mac.wpd                    7

the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle was purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuelan law is better suited than Texas law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of

burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that Defendant Ford Motor Company must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of Venezuela. This Court will not designate which court is proper because that question is for the courts of the country of Venezuela to decide.

It is FURTHER ORDERED that the Defendant must agree to pay any judgment rendered against it when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendant must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendant has obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendant shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if

K:\AAgrava\civil\Gutierrez [4-02-CV-016]\fnc.wpd

9

any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendant, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendant is precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this _22_ day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

R:\AAgrawal\elvinGudierrez [4-02-CV-016]\tbc.wpd          10

## "Supplemental Affidavit of Victor Hugo Guerra Hernandez
## re. Testimonial Evidence Obtained Abroad"

1. I have been asked to give further opinions on specific aspects regarding testimonial evidence obtained abroad. In answering these questions, I reviewed the international and domestic regulations effective in Venezuela.

2. First, it is my opinion that Articles 813 to 818 of the Venezuelan Civil Procedural Code do not apply in this case. Those articles apply in cases where there is a fear that evidence located outside Venezuela may disappear. I understand there is no fear in this case that evidence located in the United States may disappear and, therefore justify the application of those Articles.

3. Second, I understand that the *Jorge Enrique Pineda* et al case involves an accident that occurred in Venezuela and that the Plaintiffs are all Venezuelan citizens and residents. I also understand that the vehicle was assembled, sold, operated and maintained in Venezuela. This case also has a connection with the United States since the defendant is a United States corporation—i.e. Ford Motor Company.

4. Because this case involves connections with more than one legal system (i.e. United States and Venezuela), it is a "private international law case" that is governed by the Venezuelan Private International Law Statute ("VPILS"). *See VPILS Article 1.*

5. Under the VPILS: (i) international sources of law, such as international treaties, effective in the United States and Venezuela must prevail; and (ii) international cooperation among domestic authorities, particularly judicial authorities, will play an essential role in procedural matters such as taking of evidence abroad.

6. The applicable source of law in this specific case will be the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (concluded March 18, 1970) the "Convention". As I noted in my original Declaration, this Convention allows and facilitates the taking of evidence abroad by judicial authorities of different countries.

7. Under this Convention, it is not necessary for a Venezuelan court to order the taking of witness testimony for it to have value in a Venezuelan proceeding. In fact, it is not even necessary that plaintiffs initiate a claim in the State of origin or the State that makes the solicitude when the Letter of Request is issued so long as the requested evidence was going to be used in a future trial or at least in a contemplated proceedings in the State of origin to avoid frivolous solicitudes. *See Convention Article 1, as well as the Official Explanatory Report by Philip W. Amram http://www.hcch.net. Also, Convention Article 3 subdivisions (b) and (c) reinforces this statement.*

1

8. The Convention establishes the mechanism for performing requests between judicial authorities, i.e. Letters of Request; *See Convention Articles 1 to 4*. The judicial authority, who executes a Letter of Request, shall apply its own law as to the methods and procedures to be followed. However, it will follow a request of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties requested judicial authority will apply its own rogator; *See Convention Article 9*. This statement is also reinforced by VPILS, which grants the application of the law where the evidence is taken to furnish the evidence; *See VPILS Article 38*.

9. I conclude that in accordance with the Venezuelan legal system, in private international cases such as the *Jorge Enrique Pineda* et al case, the applicable law to furnish evidences abroad will be the law of the place where the evidence is taken. Therefore, United States law will apply regarding witness testimony taken in that country. It means, that the effectiveness of the above mentioned evidence does not depend of its performance before a Venezuelan judge and/or in a Venezuelan court. Moreover, Venezuelan Civil Procedural Code rules, such as Articles 477 to 498 concerning witness testimony, only applies in the following cases: (i) when is a domestic case; (ii) when a foreign authority request the execution of an evidence in the territory of Venezuela; and, (iii) certain mandatory rules of the Venezuelan procedure such as the requirement of proper translation of Spanish language regarding the form of procedural acts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 2, 2003.

Victor Hugo Guerra Hernandez

2