IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 3 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES AND MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, DECEASED; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY; THEMMAY GIORGIA PINEDA MORALES; EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |

**FORD MOTOR COMPANY'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO APPLY VENEZUELAN LAW**

I.   **SUMMARY OF PLAINTIFFS' RESPONSE**

In their Response, Plaintiffs ask this Court to apply Texas law to a case that arose out of an accident in Venezuela, involving a Venezuelan driver, Venezuelan plaintiffs and a product assembled, sold, operated, and maintained in Venezuela. Plaintiffs contend, at the outset, that Venezuela does not have any interest in such a case. *See* Plaintiffs' Choice of Law Response, §I(B) at pp. 3-4. Alternatively, Plaintiffs argue that <u>Texas</u> has the "most significant relationship" to this case because: (1) Texas has a paternalistic interest in regulating the conduct of product designers located outside of Texas and in protecting consumers from around the world; (2) the

1

vehicle at issue entered the stream of commerce in Venezuela; (3) it would be more predictable and uniform to apply the laws of Texas;[1] and (4) this Court has greater familiarity with Texas law.

The Fifth Circuit and the Western District of Texas have rejected such outrageous arguments and so should this Court. *Vasquez v. Bridgestone/Firestone*, 325 F.3rd 665, 674-75 (5th Cir.) ("... the aggregate of other specific contacts favors application of Mexican law. As the court recognized, all the decedents and plaintiffs are citizens of Mexico, the accident and subsequent investigation took place in Mexico, and the vehicle an tires were manufactured and purchased there"); s*ee also Elsa Beatriz Lopez Guedez, et al v. Ford Motor Company, et al*, Action No. P-03-CA-032 slip op. at pp. 7-8) (W.D. Tex. September 23, 2003) (finding that "Venezuelan law controls this dispute.") (attached to Ford's *Forum Non Conveniens* Reply Brief attached thereto as Exhibit 1); *see also Ciriaco Gonzalez v. Ford Motor Company*, Action No. P-02-CA-137 at pp. 7-8 (W.D. Tex. September 23, 2003) (same) (attached thereto as Exhibit 2).

II. **FORD'S REPLY**

   A. **Contrary to Plaintiffs' assertions, this is not a "false conflict" because Venezuela has an undeniable interest in this dispute.**

Plaintiffs rely exclusively on *Ford Motor Company v. Aguiniga*, 9 S.W.3d 252 (Tex. App.—San Antonio 2000, petition denied) for the proposition that Venezuela cannot possibly have an interest in this case because it does not involve a single Venezuelan defendant. In other words, plaintiffs argue that there is a "false conflict."

---

[1] Ford addressed this point in its Choice of Law Brief and, thus, will not reiterate its arguments here.

This is an innovative interpretation of *Aguiniga* that has no legs to stand on. First, the *Aguiniga* Court held (albeit wrongly) that Mexico did not have an interest in determining the amount of the Plaintiffs' compensation partly because the case involved thirteen Texas plaintiffs and the vehicle involved in the accident was inspected, licensed, registered and primarily operated in Texas. The present case, by contrast, has absolutely no connection to Texas. The accident giving rise to this case did not occur in Texas; it occurred in Venezuela. None of the Plaintiffs are Texan; they are all Venezuelan. The decedent was not a Texas resident; he was a Venezuelan citizen living in Venezuela. The vehicle involved in the accident has never been in Texas; it was assembled, sold, maintained and operated in Venezuela. *Aguiniga* simply does not apply.

Second, if Plaintiffs' interpretation of *Aguiniga* were correct, no court would ever apply foreign law to a case brought in Texas. Plaintiffs would avoid the application of foreign law simply by not suing a foreign defendant—e.g. a driver, a service provider, the local dealership, etc. This cannot be right.

Venezuela has a patently obvious interest in having its laws apply to this case. And, in fact, if there is a false conflict, it is because Texas has absolutely no interest in this case.

 B. **Equally absurd is Plaintiffs' assertion that Texas, as the forum state, can have a "paternalistic" interest in (1) regulating the conduct of product designers located outside the State and (2) protecting consumers from around the world.**

A state has no legitimate interest in regulating conduct that occurs entirely outside its borders. *See State Farm v. Campbell*, 538 U.S. ____, 123 S.Ct. 1523 (2003) and *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996). As the United States Supreme Court put it:

> [a state's] power to impose burdens on the interstate market for automobiles is not only subordinate to the federal powers over interstate commerce . . . but is also constrained by the need to respect the interests of the other states.

*Gore*, 517 U.S. at 574. After all, as the Court added, a basic tenet of federalism is that:

> each State may make its own reasoned judgment about what conduct is permitted as proscribed within its borders, and each State alone can determine what measure of punishment if any, to impose on a defendant who acts within its jurisdiction.

*State Farm*, 123 S.Ct. at 1523.

If Texas cannot regulate the conduct of other states within the Union, it surely cannot regulate the conduct of and standards established by other nations. As the Fifth Circuit recently put it in a similar case involving another foreign nation:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate--even patronizing--for us to denounce this legitimate policy choice. . . .

*Gonzalez, et al v. Chrysler Corporation, et al.*, 301 F.3d 377, 381-82 (5th Cir. 2002).

This same reasoning applies with equal force to Plaintiffs' claim that Texas has an interest in applying its laws to claims brought by consumers from around the world on the guise that it has a right to protect all consumers around the globe. As this Court previously stated, "[i]t would be the height of presumption to insist on the parochial concept that all disputes must be resolved under our laws and in our courts, and that anything short of American justice is inadequate." *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 834 (S.D. Tex. 1993).

4

C. **Ironically, Plaintiffs contend that the place where a product enters the stream of commerce (here, Venezuela) is attributed great weight.**

In Section I(C)(2) of their Response, Plaintiffs vehemently argue that great weight is attributed to the state where a product enters the stream of commerce. *See* Plaintiffs Choice of Law Response at pp. 6-7. Here, the vehicle was assembled and sold to Plaintiffs in Venezuela. There is no evidence whatsoever that the vehicle ever set its wheels on a Texas road. Assuming Plaintiffs' argument is correct, it supports the application of Venezuelan law, not Texas law.

D. **A court's familiarity with its own laws, standing alone, is not the standard for determining the applicable law.**

There is no doubt that a court will be most familiar with the laws of the forum in which it sits. Consequently, if this factor were the sole determinant of the applicable law, no court would ever apply the laws of a foreign state. This Court's ruling cannot hinge on this factor alone.

E. **Plaintiffs' various references to Firestone and allegedly defective tires are simply out of place.**

At numerous times in their Response, Plaintiffs make reference to the "subject tires," to Bridgestone/Firestone, Inc. and to "the Defendants." Plaintiffs' latest complaint has but one defendant (Ford) and there are no allegations regarding allegedly defective tires playing a role in this accident.

III. **PRAYER**

For the reasons stated in this Reply, as well as those stated in its Motion to Apply Venezuelan law, Ford respectfully requests this Court that Plaintiffs' claims be governed by and decided under the substantive law of Venezuela.

Respectfully submitted,

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 Fax


By: _____
    Ronald D. Wamsted
    Attorney-In-Charge
    State Bar No. 20832000
    Southern District Admissions No. 17108
    John W. Chambless, II
    Southern District Admissions No. 20674
    State Bar No. 00796334
    Jaime A. Saenz
    Federal I.D. No. 7630
    State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via Certified Mail Return Receipt Requested to:

Mark A. Cantu
Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th, Suite 400
McAllen, Texas 78501


on this 2n/day of October, 2003.


_____
Ronald D. Wamsted

7