United States District Court
Southern District of Texas
FILED

OCT 2 1 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES And MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON DE PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON<br><br>Plaintiffs<br><br>Vs.<br><br>FORD MOTOR COMPANY<br>Defendant | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXTEND TIME FOR *FORUM NON CONVENIENS* AND CONFLICT OF LAWS DISCOVERY**

---

TO THE HONORABLE JUDGE OF SAID COURT::

Plaintiffs move to extend time for *forum non conveniens* and conflict of laws discovery because Defendants have refused to allow the depositions of their proposed Venezuelan law experts and has yet to respond to written discovery requests. Because the Court conducts a fact-based inquiry when ruling on a motion to dismiss for *forum non conveniens*, it is imperative to ensure that the evidence presented by the Defendant in support of its motion to dismiss, is relevant and reliable and that Defendant's experts are qualified and their opinions are based on adequate foundation.

## I.    ARGUMENTS AND AUTHORITIES

**A. Plaintiffs should be afforded time to complete discovery in order to secure the just, speedy, and inexpensive determination of Defendant's motion.**

A lawsuit is not a game but a search for truth. The ends of justice in the case at bar are served by the development of relevant, reliable facts and opinions pertaining to the Defendant's motion to dismiss that will be subjected to a fact-based scrutiny. Because it is the Defendant who has the burden of persuasion, the question is not whether the Plaintiffs have done an adequate job in preparing their response but whether the evidence presented by the Defendant can withstand such scrutiny so as to be deemed reliable and persuasive. To this end, this Court granted the parties leave to conduct discovery that was focused on the merits of *forum non conveniens* and conflict of laws and granted the Plaintiffs' request for 30 days to respond to Defendant's motion. Plaintiffs' believed they could review Defendant's motion, prepare targeted discovery that would in part be based on said motion, and submit its response by sur-reply.

The Defendant was served very specific Interrogatories, Requests for Production and Requests for Admissions on September 22, 2003. Plaintiffs' efforts in propounding said discovery was, in large part, predicated on the assertions and evidence presented by the Defendant in this particular case. Plaintiffs diligently worked toward targeting its written discovery with rifle-shot accuracy rather than merely taking a shotgun approach in addressing the private and public factors of a *forum non conveniens* analysis. EXHIBIT A.

It is believed that the results of the written discovery will provide relevant and vital information for the Court's consideration in the matter before it. Additionally, the

Court is well within its discretion to hold the Defendant's motion to dismiss in abeyance until such time as written discovery is answered. *General Indus. Co. v. Birmingham Sound Reproducers, Ltd.*, 26 F.R.D. 559 (D.C.N.Y. 1961). Plaintiffs are not requesting the Court for time to conduct *additional* discovery. Rather, Plaintiffs seek an abeyance until interrogatories, requests for production and requests for admissions that have already been propounded are answered, Defendant's Venezuelan law experts are presented for deposition, Plaintiffs review said answers, responses and testimony, and then submit a Sur-reply to the Court. FED. RULES CIV. PROC. RULES 33, 34, 36.

### B. Defendant's evidence in support of its motion to dismiss should be subjected to a test of "cynical acid" to ensure that the Court's ruling is sufficient to withstand appeal.

Plaintiffs noticed the depositions of Victor Hugo Guerra Hernandez and Enrique LaGrange, two individuals whose affidavits the Defendant presents to the Court in support of its argument that an adequate and alternative forum exists. EXHIBIT B. Defendant indicated that it would not present these individuals for deposition. EXHIBIT C. Because the question of the existence of an adequate alternative forum presents a high hurdle for the Defendant to surmount, the opinions and conclusions of these two individuals must be closely scrutinized for relevance, reliability, and veracity rather than merely accepted at face value. Indeed, in the two Venezuelan cases of *Guedez* and *Hange* referenced by the Defendant, Judge Junell refused to consider the supplemental affidavit of Mr. Hernandez. EXHIBIT D at 96:10. Such was predicated on the fact, readily admitted by Defendant, that Mr. Hernandez did not rely on the facts of either case in arriving at his conclusions or in making his opinions but that his opinion was presented to the court nonetheless. EXHIBIT D at 13:9 and 18:13.

While the determination of whether an adequate alternative forum exists is a question of law, the Court makes this determination based on the weight it ascribes to the evidence. Of course the purpose of deposing Guerra and LaGrange is not to "change the law of Venezuela" or "the admissibility of the experts' reports" as misconstrued by the Defendant, but rather to assist the Court in determining what weight, if any, should be given to those affidavits. Specifically, depositions would determine whether these individuals are qualified to render opinions that will assist the Court, the basis of their opinions, and the reliability of their foundation. There can be no more legitimate purpose than to ferret out the truth and value of the evidence presented to the Court. To rely merely on the face of Guerra's and LaGrange's conclusory assertions, without more, defeats the purpose of a fact-based inquiry. "Depositions...rank high in the hierarchy of pre-trial, truth-finding, mechanisms..." *Founding Ch. of Scientology, Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). Clearly, if the testimony of Guerra and LaGrange were to indicate that they are not qualified to render an opinion as to Venezuelan jurisdiction in a case of this nature or if the basis of their opinion were not based on a reliable foundation, the Defendant would be left with an unsupported claim that there exists an alternate adequate forum.

Further, a plain reading of Plaintiffs' notices of deposition indicates that said depositions are being sought under Rule 30 which allows a party to take the testimony of *any person* by deposition upon oral examination. Therefore, the Defendant's concerns and objections regarding the application of Rule 26 in this case are inapplicable, moot, and without merit. Def's Response at 8. Because Guerra and LaGrange are witnesses who are offering opinions as to the existence of an adequate alternative forum and the

Court must make findings of fact to support its ruling, their depositions in this case and on this question are more than appropriate and clearly allowed under the rules of federal procedure. Plaintiffs ask that the Court compel the depositions of LaGrange and Guerra within such time, as the Court deems reasonable.

### C. Plaintiffs' efforts to conduct discovery targeting the merits of *forum non conveniens* and conflict of law merit an extension of time to allow for the completion of discovery.

Defendant's attempt to sway the Court with the ruling of Judge Junell in *Guedez* is without merit as the circumstances of the cases are distinguishable. The procedural history of *Guedez* indicates that the case was conditionally transferred to the MDL on July 21, 2003 at the request of the defendant. EXHIBIT E. The defendant subsequently filed an unopposed motion, on June 23, 2003, to stay all pretrial proceedings pending transfer to the MDL. The defendant then filed a motion to dismiss on *forum non conveniens* on July 24, 2003. Six days later, amidst questions regarding the authority of the court, Judge Junell informed the parties that the court was rescinding the conditional transfer order, denying the defendant's motion to stay, requiring the plaintiffs to file their response on or before August 26, 2003, and scheduling a hearing on said motion for September 10, 2003. EXHIBIT D at 21-22.

On July 31, 2003, Judge Junell informed the parties that he did not have the authority to prevent the conditional transfer but that the parties did have the authority to file an objection. The Court indicated that it would maintain the September 10, 2003 hearing date on defendant's motion to dismiss in the event one of the parties were to file an opposition to the conditional transfer. *Id.* Defendant Smithers filed an opposition to the conditional transfer on August 4, 2003. EXHIBIT F. Realizing there was insufficient

time to draft and propound targeted *forum non conveniens* and conflict of laws discovery, the plaintiffs filed a motion to extend time for discovery on August 26, 2003. Plaintiffs' motion to extend time was denied on September 10, 2003.

In contrast, the case at bar has not been conditionally transferred to the MDL and there is no question whatsoever that this Court has the authority and the jurisdiction to hear the Defendant's motion. Further, it is uncontroverted that the Plaintiffs have indeed made efforts to conduct discovery that target the merits of *forum non conveniens* and conflicts of law. Defendant cannot deny that its answers and responses to written discovery are due on October 22, 2003. Defendant cannot deny that attempts have been made to depose their proposed Venezuelan law experts and that Defendant has resisted and refused to present these individuals. Defendant's arguments against extending the time necessary to complete *existing* discovery efforts are an open attempt to force the Court to a rush to judgment.

## II.  PRAYER

Plaintiffs respectfully re-urge their request and pray that this Court grant their Motion to Extend Time to conduct *forum non conveniens* and conflict of laws discovery. Specifically, Plaintiffs ask the Court to grant the parties sufficient time to allow the Defendant to answer and respond to interrogatories, requests for production and admissions, compel the depositions of Guerra and LaGrange, and to allow the Plaintiffs sufficient time to prepare and submit its sur-reply based on that discovery prior to the Court either ruling on the merits based solely on the submitted motion and responses or scheduling a hearing on Defendant's motion and the presentation of oral argument.

Respectfully submitted.

**LAW OFFICE OF MARK A. CANTU**
*THE ATRIUM*
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel:  956/687-8181
Fax:  956/687-8868


Juan A. Gonzalez
State Bar No. 08129310
Ricardo G. Benavides
State Bar. No. 24031735

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the _____ day of October, 2003.

Ronald D. Wamsted
John W. Chamless, II
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701

Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
P.O. Box 2155
Brownsville, Texas 78522
**Attorneys for Ford Motor Company**

JUAN A. GONZALEZ
RICARDO G. BENAVIDES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| And MAYTHEM GIORGINA PINEDA | § | |
| MORALES, INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE ESTATE | § | |
| OF JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| CARVAJAL, Deceased; BEATRIZ DEL | § | |
| VALLE PINEDA, INDIVIDUALLY, | § | |
| GIORGIA PINEDA MORALES, | § | |
| EDWARD ENRIQUE PINEDA | § | |
| MORALES, INDIVIDUALLY; | § | |
| | § | |
| DOLORES CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| Vs. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| Defendant | § | |

PLAINTIFFS' FIRST SET OF FORUM NON CONVENIENS INTERROGATORIES,
REQUESTS FOR PRODUCTION AND REQUEST FOR ADMISSIONS TO
DEFENDANT FORD MOTOR COMPANY

To:    Defendant, Ford Motor Company, by and through its attorney of record:


Ronald D. Wamsted
John W. Chamless, II
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701

1


PLAINTIFF'S EXHIBIT
A
tabbies

Jaime Saenz
**Rodriguez, Colvin & Chaney, L.L.P.**
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522

Come now the Plaintiffs, **JORGE ENRIQUE PINEDA MORALES And MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON DE PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON** in the above-styled and numbered cause and file the following Set of Interrogatories, Requests for Production, Requests for Admissions under the provisions of Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, and under such rule, Plaintiffs require you to answer fully, and under oath, each of the following Interrogatories, Requests for Production and Requests for Admissions within thirty (30) days after the date of service of these Interrogatories and Requests for Production, which shall be deemed continuing so as to require supplemental answer if Defendant or its counsel should obtain further information between the time answers are served and the time of trial. To the extent possible, please answer the Interrogatories, Requests for Production, and Requests for Admissions in the space provided herein.

2

Respectfully submitted,

**LAW OFFICE OF MARK A. CANTU**
*THE ATRIUM*
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel: 956/687-8181
Fax: 956/687-8868


Juan A. Gonzalez
ATTORNEY IN CHARGE
State Bar No. 08129310
Ricardo G. Benavides
State Bar No. 24031735
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the 22nd day of September 2003.

Ronald D. Wamsted
John W. Chamless, II
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
Attorneys for Ford Motor Company

Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
Attorneys for Ford Motor Company


JUAN A. GONZALEZ
RICARDO G. BENAVIDES

3

## INSTRUCTIONS AND DEFINITIONS

1.  The "accident/incident in question" is the single vehicle accident that occurred on February 25, 2001 made the basis of this cause and which resulted in the death of **Jorge Enrique Pineda Carvajal** and injuries to the other occupants.

2.  The "vehicle in question" is the **2001 Ford XLT Explorer** driven by **Jorge Enrique Pineda Carvajal** at the time the accident/incident in question occurred.

3.  The term "Ford Explorer" is intended to refer to **all versions** of the **Ford Explorer, Mercury Mountaineer and Mazda Navajo** sold anywhere in the world.

4.  As used herein, the term "FMC" refers to the defendant, Ford Motor Company. "You", "your", "Ford", "FMC", or "Defendant" refers to Ford Motor Company, its divisions, subsidiaries, affiliates, sister corporations and like entities whether domestic or foreign, and any of their directors, officers, employees, consultants, agents, representatives, attorneys, and any other persons or entities purporting to act on behalf of Ford Motor Company or under any or all control of Ford Motor Company. The term "Ford" is intended to refer collectively.

5.  "Identify" or "identity" shall require you to state (a) the full name of the corporation or business entity; (b) the present or last known address; and (c) the principal place of business and state of incorporation. When used in reference to a document, "identify" or identity" shall require you to state (a) the date of such document; (b) the type of document; (c) the present location of such document or copies of such document; and (d) a brief summary of such document.

6.  The scope of discovery extends to all relevant and non-privileged information that might reasonably lead to the discovery of admissible evidence. Each individual interrogatory must be answered fully, in writing, and under oath. A corporate defendant has a responsibility to file full and complete answers and to furnish reliable information, documents and other tangible things in its possession, custody, or control or in the possession, custody or control or of: (a) past or present officers, agents, servants, and employees; (b) its departments and/or divisions; (c) parent or subsidiary corporations; (d) corporate affiliates; and (e) other persons, firms or corporations which, because of your business relationship, would (or should) readily respond to your efforts to obtain the information and/or documents requested. You may refer to your "business records" only if the Plaintiffs may obtain from those documents the same information you would provide if you were to answer the interrogatory and only if the burden placed upon the Plaintiffs by reference to the documents is the same as the burden, which would otherwise be placed upon the Defendant. If you claim privilege as a ground for not responding completely to an interrogatory or otherwise object to an interrogatory on the basis of a claim of privilege, please describe thin detail the factual basis for such claim, if the document is withheld under a claim of privilege, identify the custodian of the

4

document, the general subject matter of the document and all persons who have viewed the document.

7.      These interrogatories shall be deemed continuing so as to require supplemental answers upon receipt of additional information by Defendant and/or Defendant's attorney's subsequent to the submission of Defendant's original responses.

8.      These requests for admissions shall be responded to separately and fully in writing, under oath, with the responses to be signed by the person making them within thirty (30) days after the service hereof.  Each of the matters of which an admission is requested shall be deemed admitted unless, within thirty days after the service hereof, you deliver or cause to be delivered to counsel for Plaintiffs, a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why you cannot truthfully either admit or deny those matters as provided in Rule 36.  A true copy of the sworn responses are to be forwarded to Plaintiffs' attorney and to the attorneys for all the parties herein.

9.      You are further advised that you are under continuing duty to seasonably supplement your answers to these Requests for Admissions in the event you obtain new or additional information upon the basis of which you know that any response was incorrectly made or that you responses to these Requests for Admissions though, correct when made are no longer true, and the circumstances are such that a failure to amend your responses is in substance and a knowing concealment.

<u>PLEASE NOTE:</u>

Failing to respond, giving incomplete or false answers, or abusing the discovery process in any manner may result in the imposition of discovery sanctions against you, including, but not limited to, a default judgment, an order disallowing further discovery, taking facts as established, precluding the introduction of evidence, treating such abuses as contempt of court, and requiring the payment of Plaintiff's expenses and attorney's fees. *See Federal Rule of Civil Procedure 37.*

5

## PLAINTIFFS' FIRST SET OF *FORUM NON CONVENIENS* INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSIONS TO DEFENDANT FORD MOTOR COMPANY

### *FORUM NON CONVENIENS* INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each person preparing these responses to discovery (including persons consulted fro preparing responses).  Include each person's job title or position, and a brief job description.

**ANSWER:**

**INTERROGATORY NO. 2:**

If you believe that any other person or business entity (or related business that may go by a different name) may be responsible for Plaintiffs' damages, or may be the intended recipient of this lawsuit, then please list all such other entities.

**RESPONSE:**

**INTERROGATORY NO. 3:**

If you contend that Plaintiffs' injuries, if any, were the result of the negligent, grossly negligent, or intentional acts or omissions of any person or entity, including but not limited to Plaintiffs, Defendants, or any co-Defendants or other legal entity, then please provide the following information with regard to each such alleged act or omission.

    (a)    Describe the act or omission.
    (b)    Identify each person who was involved in participated in the act or omission. .
    (c)    Identify any witnesses or evidence which potentially supports your allegation.
    (d)    State what you contend the party responsible for the act or omission should have done differently.

**ANSWER:**

## INTERROGATORY NO. 4:

State whether you or anyone acting on your behalf has made any investigation into the incident in question and/or the events leading up to or following the incident. If so, please provide the following information:

      (a)     Identify and state the occupation of the person(s) who conducted each investigation.

      (b)     State the date(s) on which each investigation was conducted.

      (c)     Identify and state the employer of each person from whom a statement was taken during each investigation; and

      (d)     Identify any reports, photographs, films, video recordings, maps, drawings, charts, diagrams, measurements, surveys, computers disks, or other documents generated by referring to ˉand results of each investigation.

## ANSWER:

## INTERROGATORY NO. 5:

State whether you (or anyone consulted, hired, and/or cooperating with you) has conducted any tests, inspections, or analysis relating to the Ford Explorer made the subject of this suit. Please limit your response to any tests, inspections, or analysis related to the type of failure made the subject of this suit. If so, please provide the following information.

      (a)     State the subject and purpose of each test, inspection, or analysis.

      (b)     Identify the person(s) who conducted each test, inspection, or analysis.

      (c)     State the date on which each test, inspection, or analysis was performed.

      (d)     State the findings and/or results of each tests, inspection, or analysis.

      (e)     State whether any written report was prepared in connection with each test, inspection, or analysis. If so, identify the person or entity which currently has possession of said report(s), and said report(s) entire distribution list.

## ANSWER:

## INTERROGATORY NO. 6:

Please state the name and complete address of at least five (5) persons, either currently or formerly employed by the Defendant, who possess the greatest amount of knowledge with regard

to the details of the design, testing, and production of the Ford Explorer made the subject of this suit and where the decisions and engineering choices were made.

**ANSWER:**


**INTERROGATORY NO. 7:**

What percentage of the vehicle in question was manufactured in the United States? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in the United States.

**ANSWER:**


**INTERROGATORY NO. 8:**

What percentage of the vehicle in question was assembled in the United States? Fully identify such components' assembly in the United States, and fully explain all assembly or partial assembly of the subject product that occurred in the United States.

**ANSWER:**


**INTERROGATORY NO. 9:**

Did this Defendant design the Ford Explorer? If so, then state the full name and complete street address of the person (or persons) responsible for its design, and give the approximate date that the product was designed. If this Defendant did not design the product in question, then fully identify and set forth information within your possession regarding the product's design origin. Specifically, your response should include the name and address of each member of the engineering group (or team) who participated in the design, testing, and decision to produce the Ford Explorer and where said designing, testing, and decisions were made or performed.

**ANSWER:**

## INTERROGATORY NO. 10:

Identify any books, papers, manuals, documents, or memoranda, which contain FMC's design manuals, internal recommendations, determinations or guidelines setting forth guidelines or recommendations for Ford Explorer design and as to the acceptable or unacceptable rate or frequency of roll-over or any rate or frequency of roll-over which requires that action be taken or that notification be given by or to any internal Ford persons or organization.

## ANSWER:

## INTERROGATORY NO. 11:

What percentage of the vehicle in question was manufactured in **Venezuela**? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in **Venezuela**.

## ANSWER:

## INTERROGATORY NO. 12:

What percentage of the vehicle in question was assembled in **Venezuela**? Fully identify such components' assembly in Venezuela, and fully explain all assembly or partial assembly of the vehicle in question that occurred in Venezuela.

## ANSWER:

## INTERROGATORY NO. 13:

Have there been any changes of the Ford Explorer in question since 1990? If so, please identify each person responsible for and describe each such alteration or change in the design specifications or manufacturing process made by Ford with respect to the stability and handling of the Ford Explorer and where the decisions and engineering choices regarding those changes were made.

## ANSWER

9

**INTERROGATORY NO. 14:**

Has this Defendant ever received notice of any accidents, injuries, or deaths involving the 2001 model Ford Explorer? If so, please describe each such injury or accident of which the Defendant has been notified, including the date of incident, location of incident, attorneys representing injured or deceased (if any), and a brief description of the incident.

**ANSWER**

**INTERROGATORY NO. 15:**

Has the Ford Explorer ever been the subject of any type of a recall? If so, then fully describe each and every such recall, the reasons thereof, and all efforts by Defendant (or other) to accomplish such recall.

**ANSWER:**

**INTERROGATORY NO. 16:**

For the subject vehicle, state the following information:

- (a) Gross Vehicle Weight Rating (GVWR);
- (b) Gross Axle Weight Rating, Front (GAWR, FRT);
- (c) Gross Axle Weight Rating, Rear (GAWR, RR);
- (d) Weight of Subject Vehicle (without any cargo and without any occupants);
- (e) Current FORD recommendations regarding stability and for handling; and
- (f) At time of manufacture, FORD recommendations regarding stability and for handling and where such recommendations originated.

**ANSWER:**

**INTERROGATORY NO. 17:**

If this Defendant has any information identifying any potential safety risks relating to the Ford Explorer, then please fully identify such information. Please limit your response to model year 2001, and limit your response to potential safety risks relating to stability and/or handling failures.

10

**ANSWER:**


**INTERROGATORY NO. 18:**

Produce all contracts for design, manufacture, assembly, and marketing relating to the 2001 model Ford Explorer. Please limit your response to dates pertinent to the 2001 model Ford Explorer.

**ANSWER:**


**INTERROGATORY NO. 19:**

Produce all reports, letters, correspondence, and any other communications and documents sent to or received from any governmental agency whether United States or **Venezuela** government (whether the governmental agency is for enforcement, regulatory, or other) relating to the Ford Explorer. Your response should include all such documents and materials relating to patents, product recalls, compliance documents, reporting documents, review data, and the like.

**ANSWER:**


**INTERROGATORY NO. 20:**

Identify any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

**ANSWER:**


**INTERROGATORY NO. 21:**

Identify any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

**ANSWER:**


**INTERROGATORY NO. 22:**

Identify any and all research papers, reports, treatises or other publications published outside Ford Motor Company by Ford Motor Company or its employees related to the subject of Ford Explorer rollovers, stability or handling, testing or research to determine the causes of Ford Explorer rollovers.

**ANSWER:**


**INTERROGATORY NO. 23:**

Identify any warnings or instructions issued by Ford Motor Company to anyone regarding precautions to be taken to avoid rollovers during the operation of a Ford Explorer.

**ANSWER:**

12

## *FORUM NON CONVENIENS* REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all documents relied upon in support of Defendant's Motion to Dismiss on *forum non conveniens* grounds.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.2:**

Please produce all documents relied upon in claiming this lawsuit and its underlying facts do not have sufficient connection with the State of Texas.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.3:**

Please produce any affidavits from testifying experts related to Defendant's Motion to Dismiss on *forum non conveniens* grounds. This request does not seek the identity of nor affidavits from consulting only expert witnesses.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

Please produce any and all documents that address concern, reference, or relate to what overwhelming hardship the Defendant faces in defending their product in the United States Federal Court for the Southern District of Texas.

**RESPONSE:**

13

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any and all documents that address, concern, reference, or relate to how the convenience of any of Defendant's witnesses is improved or made easier by appearing in any foreign forum rather than in the Unites States court.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any and all documents which address, concern, reference, or relate to the Defendant's position on how a foreign forum, proceeding on the merits of these disputes involving a product designed by an American company in the United States prevents waste of time, energy, and money and protects the litigants, witnesses, and the public against unnecessary inconvenience and expense.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any and all documents, which address, concern, reference, or relate to all facts, evidence, or information that you assert indicates Venezuela is "available" as an alternate forum.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**

Please produce any and all documents which address, concern, reference, and relate to all facts, evidence, or information which you assert indicates Venezuela is "adequate" as an alternate forum.

**RESPONSE:**

14

**REQUEST FOR PRODUCTION NO. 9:**

Please produce any and all documents which address, concern, reference, and relate to all items of facts, evidence, or information which you assert shows that a balancing of private interest factors favors dismissal.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**

Please produce any and all documents which address, concern, reference, and relate to all items of facts, evidence, or information which you assert shows that a balancing of public interest factors favors dismissal.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

Produce all engineering orders and engineering reports, changes, or other documents relating to the Ford Explorer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all documents, reports, letters, memorandum, committee reports or writings, interoffice communications, writings, and other tangible items discussing design, specification, manufacture, and/or assembly of the Ford Explorer and documents which identify where such was designed, tested, or produced.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**

Produce all documents relating directly to your response to Interrogatory No. 5

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 14:**

Produce all documents relating directly to your response to Interrogatory No. 6.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 15:**

Produce all documents relating directly to your response to Interrogatory No. 8.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 16:**

Produce all documents relating directly to your response to Interrogatory No. 10

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 17:**

Produce all documents relating directly to your response to Interrogatory No. 12,

**RESPONSE:**

16

**REQUEST FOR PRODUCTION NO. 18:**

Produce all documents relating directly to your response to Interrogatory No. 13.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 19:**

Produce all documents relating directly to your response to Interrogatory No. 14.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 20:**

Produce all documents relating directly to your response to Interrogatory No 15.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 21:**

Produce all documents relating directly to your response to Interrogatory No 18.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 22:**

Produce an owner's manual for a Ford Explorer manufactured in the year 1996.

**RESPONSE:**

17

**REQUEST FOR PRODUCTION NO. 23:**

Produce an owner's manual for a Ford Explorer manufactured in the year 1997.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 24:**

Produce an owner's manual for a Ford Explorer manufactured in the year 1998.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**

Produce an owner's manual for a Ford Explorer manufactured in the year 1999.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**

Produce an owner's manual for a Ford Explorer manufactured in the year 2000.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**

Produce an owner's manual for a Ford Explorer manufactured in the year 2001.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:**

Produce all service information available by computer for VIN 8XDZU17EX18-A19439.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:**

Produce all manufacturing information available by computer for VIN 8XDZU17EX18-A19439.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:**

Produce all assembly information available by computer for VIN 8XDZU17EX18-A19439.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**

Produce all sales information available by computer for VIN 8XDZU17EX18-A19439.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:**

Produce all letters, memorandum, studies, engineering analysis, reports, and tangible items referencing any potential safety risk in stability or handling failure that would relate to the Ford Explorer.

**RESPONSE:**

19

## REQUEST FOR PRODUCTION NO. 33:

If you have failed to unqualifiedly admit the Request for Admission No. 2, please provide any and all documentation of any and all cases, claims, suits, or lawsuits wherein Defendant has been subjected to a finding of liability after the exhaustion of any legal proceeding in the country of Venezuela.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 34:

Please produce any and all documents identified in response to Request for Admission No. 11.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 35:

Please produce copies of any and all any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 36:

Please produce copies of any and all research papers, reports, treatises or other publications published outside Ford Motor Company by Ford Motor Company or its employees related to the subject of Ford Explorer rollovers, stability or handling, testing or research to determine the causes of Ford Explorer rollovers.

## RESPONSE:

**REQUEST FOR PRODUCTION NO. 37:**

Please produce any documents that relate to any warnings or instructions issued by Ford Motor Company to anyone regarding precautions to be taken to avoid rollovers during the operation of a Ford Explorer.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 38:**

Please produce Ford Motor Company's management, engineering, or marketing meeting minutes, memoranda, or other business records, referring or discussing the design, testing, and production of the Ford Explorer.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 39:**

Please produce Ford Motor Company's management, engineering, or marketing meeting minutes, memoranda, or other business records, referring or discussing stability, handling or rollovers of the Ford Explorer.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 40:**

Please produce a copy of those government standards or regulations, whether mandatory or voluntary, whether in the United States or foreign, which Ford Motor Company believes were applicable to the design, testing, manufacture, performance or export of the Ford Explorer sold by Defendant from 1988 through the present

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 41:

Please produce any and all non-lawsuit complaints, incident reports or other notices made by any dealership, customer, consumer or government agency to Ford alleging the rollover of a Ford Explorer from 1988 through the present.

## RESPONSE:

## *FORUM NON CONVENIENS* REQUESTS FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Admit that Defendant routinely claims factors such as driver error, failure to control speed, overloaded vehicles and tires in poor condition as the real factors that causes rollovers of Ford Explorers in Venezuela.

### RESPONSE:

### REQUEST FOR ADMISSION NO. 2:

Admit that Defendant has never suffered or been subjected to a finding of liability after the conclusion of any legal proceeding in the country of Venezuela with respect to injuries or death suffered as a result of alleged defects in stability or handling of a Ford Explorer such as the one at issue here.

### RESPONSE:

### REQUEST FOR ADMISSION NO. 3:

Admit that Defendant designed the Ford Explorer in the United States.

### RESPONSE:

### REQUEST FOR ADMISSION NO. 4:

Admit that Defendant tested the Ford Explorer in the United States.

### RESPONSE:

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant produced the Ford Explorer in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant's management and executives responsible for the decisions pertaining to the production of the Ford Explorer reside or are situated in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant's design and testing engineers, who were involved in the design and testing of the Ford Explorer, reside or are situated in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant maintains all documents, memoranda, records, and other data compilation with regard to the design, testing, and production of the Ford Explorer in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant manufactured the vehicle in question.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:**

Admit that the vehicle in question failed due to a stability and/or handling design flaw.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 11:**

Admit that you maintain loss adjustment data for the Ford Explorer.

The term "loss adjustment data" means summary compilations of individual claim adjustment records, field performance data and/or customer concession adjustment records, rainbow charts, awareness charts, vehicle failure records, failure data compilations or other statistical, quantitative or numerical records regarding handling or stability failures.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 12:**

Admit that Ford possesses documents that discuss designing of the Ford Explorer, in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:**

Admit that Ford possesses documents that discuss testing of the Ford Explorer, in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 19:**

Admit that Ford has litigated other cases involving the deaths or injuries allegedly caused by Ford Explorer rollovers in the State of Texas.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 20:**

Admit that the litigation of cases involving the deaths or injuries allegedly caused by Ford Explorer rollovers in the State of Texas was not inconvenient.

**RESPONSE:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| And MAYTHEM GIORGINA PINEDA | § | |
| MORALES, INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE ESTATE | § | |
| OF JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| CARVAJAL, Deceased; BEATRIZ DEL | § | |
| VALLE PINEDA, INDIVIDUALLY, | § | |
| GIORGIA PINEDA MORALES, | § | |
| EDWARD ENRIQUE PINEDA | § | |
| MORALES, INDIVIDUALLY; | § | |
| | § | |
| DOLORES CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE  LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
|        Plaintiffs | § | |
| | § | |
| | § | |
| Vs. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
|        Defendant | § | |

## CERTIFICATE OF WRITTEN DISCOVERY

TO THE HONORABLE JUDGE OF SAID COURT:

In compliance with Rules 33,  34 and 36 of the Federal Rules of Civil Procedure, Plaintiffs

served the following discovery:

1.    Plaintiffs' First Set of Forum Non Conveniens Interrogatories, Requests for Production and Requests for Admissions to Defendant Ford Motor Company.

This discovery, along with a copy of this Certificate of Written Discovery, were served on

the party listed below by the means of service designated as follows on  September 22, 2003.

1

Ronald D. Wamsted
John W. Chamless, II
**Brown McCarroll, L.L.P.**
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**

Jaime Saenz
**Rodriguez, Colvin & Chaney, L.L.P.**
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
**Attorneys for Ford Motor Company**

Respectfully submitted,

**LAW OFFICE OF MARK A. CANTU**
*THE ATRIUM*
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel:  956/687-8181
Fax:  956/687-8868

Juan A. Gonzalez
ATTORNEY IN CHARGE
State Bar No. 08129310
Ricardo G. Benavides
State Bar No. 24031735

ATTORNEY FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the 22nd day of September 2003.

Ronald D. Wamsted
John W. Chamless, II
**Brown McCarroll, L.L.P.**
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**


Jaime Saenz
**Rodriguez, Colvin & Chaney, L.L.P.**
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
**Attorneys for Ford Motor Company**


JUAN A. GONZALEZ
RICHARDO G. BENAVIDES



**Associates**

**GLENN D. ROMERO**
Board Certified
Personal Injury Trial Law
Texas Board of Legal
Specialization

**JUAN A. GONZALEZ**
Board Certified
Labor & Employment Law
Texas Board of Legal
Specialization

**RICARDO G. BENAVIDES**
Attorney At Law

**LAW OFFICE OF**

# MARK A. CANTÚ

September 22, 2003

Ronald D. Wamsted
John W. Chambless, II.
**Brown McCarroll, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas 78701

Via Facsimile (512) 479-1101
and First Class Mail

Jaime Saenz
**Rodriguez, Colvin & Chaney, L.L.P.**
1201 East Van Buren
P.O. Box 2155
Brownsville, TX 78522

Via Facsimile (956) 541-2170
and First Class Mail

Re: *Civil Action No. B-03-061, Jorge Enrique Pineda Morales, et al vs. Ford Motor Company;
In the United States District Court, Southern District of Texas, Brownsville Division*

Dear Counsel:

Enclosed please find the following in the above-referenced cause:

1. Certificate of Written Discovery; and,

2. Plaintiffs' First Set of Forum Non Conveniens Interrogatories, Requests for
Production, and Requests for Admissions to Defendant Ford Motor Company

Sincerely,

LAW OFFICE OF MARK A. CANTÚ

Ricardo G. Benavides

RGB/ac
Enclosures

**LAW OFFICES OF MARK A CANTU**
**THE ATRIUM**
**1300 N. 10TH STREET, SUITE 400**
**MCALLEN, TEXAS 78501**
**TEL: 956/687-8181 FAX: 956/687-8868**

DATE: September 22, 2003

TIME:_____

TO:    Ronald D. Wamsted           FAX NUMBER: (512) 479-1101
      John W. Chambless, II
      **Brown McCarroll, II**


      Jaime Saenz                   FAX NUMBER: (956) 541-2170
      **Rodriguez, Colvin & Chaney, L.L.P.**

TELEPHONE:

TOTAL NUMBER OF PAGES, INCLUDING THIS COVER LETTER:__32

IF YOU HAVE ANY QUESTIONS REGARDING THIS MATERIAL OR DID NOT RECEIVE
ALL THE PAGES, PLEASE CONTACT SENDER AT (956) 687-8181.

OTHER COMMENTS: Letter dated September 22, 2003 to counsel with Certificate of Written
Discovery and Plaintiffs' First Set of Forum Non Conveniens Interrogatories, Requests for
Production and Requests for Admissions to Defendant Ford Motor Company. Thank you.
_____
_____
_____
_____
_____

This facsimile contains CONFIDENTIAL INFORMATION which may be legally privileged and
which is intended only for the use of the addressee(s) named above. If you are not the intended
recipient of this facsimile, or the employee or agent responsible for delivering it to the intended
recipient, you are hereby notified that any dissemination or copying of this facsimile may be strictly
prohibited. If you have received this facsimile in error, please immediately notify us by telephone
and return the original facsimile to us at the above address via the United States Postal Service.
THANK YOU.

TRANSMISSION VERIFICATION REPORT

```
TIME : 09/22/2003 03:24
NAME : MARK A CANTU
FAX  : 9566878868
TEL  : 9566878181
```

```
DATE,TIME        09/22  03:17
FAX NO./NAME     5412170
DURATION         00:06:32
PAGE(S)          32
RESULT           OK
MODE             STANDARD
                 ECM
```

TRANSMISSION VERIFICATION REPORT

TIME : 09/22/2003 03:47
NAME : MARK A CANTU
FAX : 9566878868
TEL : 9566878181

| DATE,TIME | 09/22 03:41 |
| FAX NO./NAME | 15124791101 |
| DURATION | 00:06:29 |
| PAGE(S) | 32 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES And MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; | § § § § § § § § § § § | |
| DOLORES CHACON DE PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON | § § § § § | CIVIL ACTION NO. B-03-061 |
| Plaintiffs | § § § | |
| Vs. | § § § | |
| FORD MOTOR COMPANY Defendant | § § | |

FIRST AMENDED NOTICE OF INTENTION TO TAKE ORAL AND VIDEO
DEPOSITION OF VICTOR HUGO GUERRA HERNANDEZ
WITH SUBPOENA DUCES TECUM

TO:  *Defendant, Ford Motor Company*, by and through its attorney of record, Ronald D. Wamsted, John W. Chamless, II, Brown McCarroll, L.L.P., 111, Congress Avenue, Ste. 1400, Austin, Texas 78701

PLEASE TAKE NOTICE THAT, under Federal Rule of Civil Procedure 30, that Plaintiffs, Jorge Enrique Pineda Morales and Maythem Giorgina Pineda Morales, Individually and as Administrator/ix of the Estate of Jorge Enrique Pineda Carvajal, Deceased; Beatriz Del Valle Pineda,  Individually, Girogia Pineda Morales, Edward Enrique Pineda Morales, Individually; Dolores Chacon De Pineda, Individually and as Next Friend of Jorge Luis

1



Pineda Chacon will take the oral and video deposition of *Victor Hugo Guerra Hernandez*, will commence on October 6, 2003 at 10:00 o'clock A.M., and continue thereafter from day to day until completed. The deposition will be taken at the Law Office of **Rodriguez, Colvin & Chaney, L.L.P., 1201 East Van Buren, Brownsville, Texas 78522** before a certified court reporter with **Hill & Romero Certified Court Reporters, 5415 North McColl, Suite 107, McAllen, Texas 78504; (956) 287-8898,** by stenographic and video means, to be used as evidence in the above styled and numbered cause of action.

In connection herewith, the deponent shall be served with the *Subpoena Duces Tecum* made a part hereof, ordering *Victor Hugo Guerra Hernandez*, to produce on the above stated time and place any and all documents in his possession, custody or control set forth therein. Possession, custody or control includes constructive possession such that if the deponent has a superior right to compel the production from a third party, he or she have possession, custody or control.

For purpose of brevity and clarification of this notice of intent to take oral and video deposition and the attached *Subpoena Duces Tecum*, the following instructions and definitions will apply.

See hereto attached Exhibit "A".

Respectfully submitted.

LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Ste. 400
McAllen, Texas 78501
Telephone: (956) 687-8181
Fax: (956) 687-8868

By: _____
JUAN A. GONZALEZ
Attorney in Charge

2

Federal No. 3472
State Bar No. 08129310

Ricardo G. Benavides
Federal ID 32205
Texas State Bar No. 24031735
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument has been forwarded to the following

counsel of record via hand-delivery, facsimile, or certified mail return receipt on this the _____

day of September 2003.

Ronald D. Wamsted
John W. Chamless, II
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**

Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
**Attorneys for Ford Motor Company**

Juan González

3

EXHIBIT "A"

INSTUCTIONS

You are hereby requested to produce on the date of your deposition to Plaintiffs, at the office of Rodriguez, Colvin & Chaney, L.L.P., 1201 East Van Buren, Brownsville, Texas 78522, copies of information, documents and tangible things, designated and attached herewith as Exhibit A, (Subpoena Duces Tecum) for examination, inspection, and copying which are within the possession, custody, or control of *Victor Hugo Guerra Hernandez* pursuant to Rules 30(b)(1) and 45(a)(1)(c) of the Federal Rules of Civil Procedure.

The documents sought herein must be produced whether secured by you, your agent, representative, employee, investigator or attorney or any other person who has access to said documents. If any document cannot be produced, please explain why you are unable to produce said document. Plaintiffs request that *Victor Hugo Guerra Hernandez* conduct a thorough search of those files where the requested documents and things are reasonably expected to be found or filed, and that *Victor Hugo Guerra Hernandez* make inquiry of those persons reasonably expected to know the location of the requested documents and things.

If any documents requested were at one time in existence, but are no longer in existence, please so state, specifying for each document:

   (a)    the type of document;

   (b)    the types of information contained thereon;

   (c)    the date upon which it ceased to exist;

   (c)    the circumstances under which it ceased to exist;

4

(d)　the identity of all persons having knowledge of the circumstances under which it ceased to exist; and

(e)　the identity of all persons having knowledge or who had knowledge of the contents thereof.

This request is deemed continuing, and if, after producing the documents herein, you obtain or become aware of any further documents responsive to this Request, you are required to produce to Plaintiffs such additional documents through supplementation pursuant to Fed. R.Civ. P. 26(e).

If any documents covered by this Request are withheld by reason of a claim of privilege, pursuant to Fed. R. Civ. P. 26(b)(5), please provide a list, as part of your required response to this Request, identifying each document for which a privilege is claimed, together with the following information with respect to each document withheld.

a.　Date of the document;

b.　Author, sender and recipient of the document;

c.　The identity of any person to whom copies were furnished;

d.　The general subject matter of the document, and

e.　The basis on which privilege is claimed.

For any requested document identified on deponent's privilege log. Plaintiffs reserve the right to request an in camera review to be performed by the Court.

## DEFINITIONS

A.　"You" and "Your". The terms "you" and "your" shall mean *Victor Hugo Guerra Hernandez*, and any employees, agents, and all other persons or entities acting or purporting to act on your behalf, whether authorized or not.

B.     "Persons": The term "persons" shall include individuals, and every type of entity, whether formed for business purposes or not.

C.     "Documents": The term "documents" shall mean writings of every type and from any source, including originals and non-identical copies hereof, that are in your possession, custody, or control or known by you to exist.  This would include documents sent outside your organization to any source as well as documents intended for internal use only.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems.  If the information is kept in a computer or informational storage or retrieval system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

The term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate bylaws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memorandum record telephone or in-person conferences, manuals books, press releases, purchase orders, records, schedules, memo of interviews, evaluations, written reports or tests or experiments, public relations releases, telegrams, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

## SUBPOENA DUCES TECUM

Pursuant to Federal Rules of Civil Procedure 30(b) (1) 45(a)(1)(c) deponent is directed to produce at the time and place of this deposition, the following documents:

1.    Your current curriculum vitae or resume.

2.    All publications, treatises or reference materials consulted by you in arriving at any opinions, impressions, deductions, findings or conclusions that you have made in connection with this lawsuit.

3.    All written reports which in any way refer, pertain or relate to any opinions, impressions, conclusions or findings made in connection with your consultation in this lawsuit.

4.    All notes generated by you or relied upon by you in connection with your consultation in this lawsuit.

5    All preliminary drafts of your findings or reports made in connection with your consultation in this lawsuit.

6.    list of all publications authored by you either in whole or in part.

7.    All letters, correspondence, records, documents, reports, investigative material, depositions, pleadings, photographs or any other form of written document furnished to you in connection with your consultation in this lawsuit.

8    All letters, correspondence, records, documents, reports, investigative material, pleadings, depositions, photographs or any other form of written document reviewed by you in connection with your consultation in this lawsuit.

9.    A list of all lawsuits, including the style, cause number, and court in which you have testified by either deposition or by live testimony.

10.    Any and all files or other items or documents maintained by you in your office concerning your employment as a consultant in this lawsuit.

11.    All letters, correspondence, records, documents, agreements or contracts which in any way refer, pertain or relate to the fee arrangement for your services rendered in this litigation.

12.    All records and/or documents which form a basis, either in whole or in part, of any opinions, impressions, conclusions or findings that you have made in connection with your consultation herein.

13.    All invoices, bills statements or other writings which pertain or relate to all charges for consultation services rendered by you or your firm in connection with this lawsuit.

14.　Your complete file in connection with this lawsuit.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| And MAYTHEM GIORGINA PINEDA | § | |
| MORALES, INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE ESTATE | § | |
| OF JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| CARVAJAL, Deceased; BEATRIZ DEL | § | |
| VALLE PINEDA, INDIVIDUALLY, | § | |
| GIORGIA PINEDA MORALES, | § | |
| EDWARD ENRIQUE PINEDA | § | |
| MORALES, INDIVIDUALLY; | § | |
| | § | |
| DOLORES CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| Vs. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| Defendant | § | |

FIRST AMENDED NOTICE OF INTENTION TO TAKE ORAL AND VIDEO
DEPOSITION OF ENRIQUE LAGRANGE WITH SUBPOENA DUCES TECUM

TO: *Defendant, Ford Motor Company,* by and through its attorney of record, Ronald D
Wamsted, John W. Chamless, II, Brown McCarroll, L.L.P., 111, Congress Avenue, Ste. 1400,
Austin, Texas 78701.

PLEASE TAKE NOTICE THAT, under Federal Rule of Civil Procedure 30, that Plaintiffs,

Jorge Enrique Pineda Morales and Maythem Giorgina Pineda Morales, Individually and

as Administrator/ix of the Estate of Jorge Enrique Pineda Carvajal, Deceased; Beatriz Del

Valle Pineda. Individually, Girogia Pineda Morales, Edward Enrique Pineda Morales,

Individually; Dolores Chacon De Pineda, Individually and as Next Friend of Jorge Luis

Pineda Chacon will take the oral and video deposition of *Enrique LaGrange,* will commence on

1

October 6, 2003 at 2:00 o'clock P.M., and continue thereafter from day to day until completed. The deposition will be taken at the Law Office of **Rodriguez, Colvin & Chaney, L.L.P., 1201 East Van Buren, Brownsville, Texas 78522** before a certified court reporter with **Hill & Romero Certified Court Reporters, 5415 North McColl, Suite 107, McAllen, Texas  78504; (956) 287-8898,** by stenographic and video means, to be used as evidence in the above styled and numbered cause of action.

In connection herewith, the deponent shall be served with the *Subpoena Duces Tecum* made a part hereof, ordering *Enrique LaGrange*, to produce on the above stated time and place any and all documents in his possession, custody or control set forth therein. Possession, custody or control includes constructive possession such that if the deponent has a superior right to compel the production from a third party, he or she have possession, custody or control.

For purpose of brevity and clarification of this notice of intent to take oral and video deposition and the attached *Subpoena Duces Tecum,* the following instructions and definitions will apply.

See hereto attached Exhibit "A"

Respectfully submitted,

LAW OFFICE OF MARK A. CANT
The Atrium
1300 N. 10th Street, Ste. 400
McAllen, Texas 78501
Telephone: (956) 687-8181
Fax: (956) 687-8868

By: _____
    JUAN A. GONZALEZ
    Attorney in Charge
    Federal No. 3472
    State Bar No. 08129310

Ricardo G. Benavides

2

Federal ID 32205
Texas State Bar No. 24031735
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument has been forwarded to the following

counsel of record via hand-delivery, facsimile, or certified mail return receipt on this the _____

day of September 2003.

Ronald D. Wamsted
John W. Chamless, II
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**

Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
**Attorneys for Ford Motor Company**

Juan González

# EXHIBIT "A"

## INSTRUCTIONS

You are hereby requested to produce on the date of your deposition to Plaintiffs. at the office of Rodriguez, Colvin & Chaney, L.L.P., 1201 East Van Buren, Brownsville, Texas 78522, copies of information, documents and tangible things, designated and attached herewith as Exhibit A, (Subpoena Duces Tecum) for examination, inspection, and copying which are within the possession, custody, or control of *Enrique LaGrange* pursuant to Rules 30(b)(1) and 45(a)(1)(c) of the Federal Rules of Civil Procedure.

The documents sought herein must be produced whether secured by you, your agent, representative, employee, investigator or attorney or any other person who has access to said documents. If any document cannot be produced, please explain why you are unable to produce said document. Plaintiffs request that *Enrique LaGrange* conduct a thorough search of those files where the requested documents and things are reasonably expected to be found or filed, and that *Enrique LaGrange* make inquiry of those persons reasonably expected to know the location of the requested documents and things.

If any documents requested were at one time in existence, but are no longer in existence, please so state, specifying for each document:

    (a)    the type of document;

    (b)    the types of information contained thereon;

    (c)    the date upon which it ceased to exist;

    (c)    the circumstances under which it ceased to exist;

(d)  the identity of all persons having knowledge of the circumstances under which it ceased to exist; and

(e)  the identity of all persons having knowledge or who had knowledge of the contents thereof.

This request is deemed continuing, and if, after producing the documents herein, you obtain or become aware of any further documents responsive to this Request, you are required to produce to Plaintiffs such additional documents through supplementation pursuant to Fed. R.Civ. P 26(e).

If any documents covered by this Request are withheld by reason of a claim of privilege, pursuant to Fed. R. Civ. P. 26(b)(5), please provide a list, as part of your required response to this Request, identifying each document for which a privilege is claimed, together with the following information with respect to each document withheld:

a.  Date of the document;

b.  Author, sender and recipient of the document;

c.  The identity of any person to whom copies were furnished;

d.  The general subject matter of the document; and

e.  The basis on which privilege is claimed.

For any requested document identified on deponent's privilege log, Plaintiffs reserve the right to request an in camera review to be performed by the Court

## DEFINITIONS

A.  "You" and "Your": The terms "you" and "your" shall mean Enrique LaFarga, and any employees, agents, and all other persons or entities acting or purporting to act on your behalf, whether authorized or not.

B.  "Persons": The term "persons" shall include individuals, and every type of entity, whether formed for business purposes or not.

C.     "Documents": The term "documents" shall mean writings of every type and from any source, including originals and non-identical copies hereof, that are in your possession, custody, or control or known by you to exist.  This would include documents sent outside your organization to any source as well as documents intended for internal use only.

The term also includes communications not only in words, but in symbols,  pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems.  If the information is kept in a computer or informational storage or retrieval system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

The term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate bylaws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memorandum record telephone or in-person conferences, manuals books, press releases, purchase orders, records, schedules, memo of interviews, evaluations, written reports or tests or experiments, public relations releases, telegrams, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

## SUBPOENA DUCES TECUM

Pursuant to Federal Rules of Civil Procedure 30(b) (1) 45(a)(1)(c) deponent is directed to produce at the time and place of this deposition, the following documents:

1. Your current curriculum vitae or resume.

2. All publications, treatises or reference materials consulted by you in arriving at any opinions, impressions, deductions, findings or conclusions that you have made in connection with this lawsuit.

3. All written reports which in any way refer, pertain or relate to any opinions, impressions, conclusions or findings made in connection with your consultation in this lawsuit.

4. All notes generated by you or relied upon by you in connection with your consultation in this lawsuit.

5. All preliminary drafts of your findings or reports made in connection with your consultation in this lawsuit.

6. list of all publications authored by you either in whole or in part.

7. All letters, correspondence, records, documents, reports, investigative material, depositions, pleadings, photographs or any other form of written document furnished to you in connection with your consultation in this lawsuit.

8. All letters, correspondence, records, documents, reports, investigative material, pleadings, depositions, photographs or any other form of written document reviewed by you in connection with your consultation in this lawsuit.

9. A list of all lawsuits, including the style, cause number, and court in which you have testified by either deposition or by live testimony.

10. Any and all files or other items or documents maintained by you in your office concerning your employment as a consultant in this lawsuit

11. All letters, correspondence, records, documents, agreements or contract which in any way refer, pertain or relate to the fee arrangement for your services rendered in this litigation.

12. All records and/or documents which form a basis, either in whole or in part, of any opinions, impressions, conclusions or findings that you have made in connection with your consultation herein.

13. All invoices, bills statements or other writings which pertain or relate to all charges for consultation services rendered by you or your firm in connection with this lawsuit.

14. Your complete file in connection with this lawsuit.

LAW OFFICE OF

# MARK A. CANTÚ

Associates

**GLENN D. ROMERO**
Board Certified
Personal Injury Trial Law
Texas Board of Legal
Specialization

**JUAN A. GONZALEZ**
Board Certified
Labor & Employment Law
Texas Board of Legal
Specialization

**RICARDO G. BENAVIDES**
Attorney At Law

September 23, 2003

Ronald D. Wamsted
John W. Chambless, II.
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701

Via Facsimile (512) 479-1101
and First Class Mail

Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
P.O. Box 2155
Brownsville, TX 78522

Via Facsimile (956) 541-2170
and First Class Mail

Re:  *Civil Action No. B-03-061; Jorge Enrique Pineda Morales, et al vs. Ford Motor Company*
     *In the United States District Court, Southern District of Texas, Brownsville Division*

Dear Counsel:

Enclosed please find the following in the above-referenced cause:

1.  First Amended Notice of Intention to Take Oral and Video Deposition of Enrique
    LaGrange with Subpoena Duces Tecum; and,

2.  First Amended Notice of Intention to Take Oral and Video Deposition of Victor
    Hugo Guerra Hernandez with Subpoena Duces Tecum.

Sincerely,

LAW OFFICE OF MARK A. CANTÚ

Ricardo G. Benavides

JAG/ac
Enclosures

THE ATRIUM
1300 NORTH 10TH STREET, SUITE 400
MCALLEN, TEXAS 78501
TEL (956) 687-8181
FAX (956) 687-8868

# LAW OFFICES OF MARK A CANTU
## -THE ATRIUM
### 1300 N. 10TH STREET, SUITE 400
### MCALLEN, TEXAS 78501
### TEL: 956/687-8181 FAX: 956/687-8868

DATE:   September 23, 2003

TIME:_____

TO:   Ronald D. Wamsted                    FAX NUMBER: (512) 479-1101
      John W. Chambless, II
      **Brown McCarroll, II**


      Jaime Saenz                          FAX NUMBER: (956) 541-2170
      **Rodriguez, Colvin & Chaney, L.L.P.**

TELEPHONE:

TOTAL NUMBER OF PAGES, INCLUDING THIS COVER LETTER:__18

IF YOU HAVE ANY QUESTIONS REGARDING THIS MATERIAL OR DID NOT RECEIVE
ALL THE PAGES, PLEASE CONTACT SENDER AT (956) 687-8181.

OTHER COMMENTS: Letter dated September 23, 2003 to counsel with First Amended Notice of
Intention to Take Oral and Video Deposition of Victor Hugo Guerra Hernandez and Notice of
Intention to Take Oral and Video Deposition of Enrique Lagrange. Thank you.
_____
_____
_____

This facsimile contains CONFIDENTIAL INFORMATION which may be legally privileged and
which is intended only for the use of the addressee(s) named above.  If you are not the intended
recipient of this facsimile, or the employee or agent responsible for delivering it to the intended
recipient, you are hereby notified that any dissemination or copying of this facsimile may be strictly
prohibited.  If you have received this facsimile in error, please immediately notify us by telephone
and return the original facsimile to us at the above address via the United States Postal Service.
THANK YOU.

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME : 09/23/2003 05:44
                                    NAME : MARK A CANTU
                                    FAX  : 9566878868
                                    TEL  : 9566878181
```

```
DATE,TIME              09/23  05:40
FAX NO./NAME           15124791101
DURATION               00:03:57
PAGE(S)                18
RESULT                 OK
MODE                   STANDARD
                       ECM
```

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
```

```
                              TIME : 09/23/2003 05:29
                              NAME : MARK A CANTU
                              FAX  : 9566878866
                              TEL  : 9566878181
```

```
┌──────────────────────────────────────────────────────────────────────────┐
│                                                                            │
│        DATE,TIME              09/23  05:25                                  │
│        FAX NO./NAME           5412170                                       │
│        DURATION               00:03:44                                      │
│        PAGE(S)                17                                            │
│        RESULT                 OK                                            │
│        MODE                   STANDARD                                      │
│                               ECM                                          │
│                                                                            │
└──────────────────────────────────────────────────────────────────────────┘
```

TRANSMISSION VERIFICATION REPORT

```
TIME : 09/23/2003 06:15
NAME : MARK A CANTU
FAX  : 9566878868
TEL  : 9566878181
```

```
DATE,TIME          09/23  06:11
FAX NO./NAME       15124791101
DURATION           00:03:46
PAGE(S)            17
RESULT             OK
MODE               STANDARD
                   ECM
```

Brown | McCarroll
L.L.P.

111 Congress Avenue, Suite 1400, Austin, Texas 78701-4043-
512-472-5456  fax 512-479-1101
direct (512) 479-1122  jchambless@mailbmc.com

October 1, 2003

VIA FAX

Juan A. Gonzalez
Law Office of Mark A. Cantu
The Atrium
1300 North 10th Street, Suite 400
McAllen, Texas 78501

Re:    Civil Action No. B-03-061; *Jorge Enrique Pineda Morales, et al vs. Ford Motor Company*; In the United States District Court, Southern District of Texas, Brownsville Division

Dear Mr. Gonzalez:

We are in receipt of your Notices of Deposition (as Amended) for Victor Hugo Guerra Hernandez and Enrique LaGrange. Please be advised that we object to the notices and will not be presenting them for deposition.

Very truly yours,

John W. Chambless, II

JWC:mac

cc:   Mike Eady
      Juan Alcala


PLAINTIFF'S EXHIBIT
C

10/01/03 10:52 FAX 512 9 1101   BROWN MCCARROLL   ☑001



# BROWN McCARROLL L.L.P.

## Attorneys At Law

Austin • Dallas • Houston • Longview

# FAX COVER SHEET

**AUSTIN OFFICE**
111 Congress Avenue
Suite 1400

512-479-1122          Austin, Texas 78701-4043          (512) 479-1101 (FAX)

| **TO:** | Juan A. Gonzalez | **FROM:** | John W. Chambless, II |
|---|---|---|---|
| Company: | Law Office of Mark A. Cantu | User ID: | 5493 |
| Phone No.: | 956-687-8181 | Client/Matter No.: | 13486.95555 |
| FAX No.: | 956-687-8868 | Total Pages: | 2 (including cover) |

**DATE:**   October 1, 2003          **Confirmation Receipt Required** ☐ Yes  ☐ No

---

**MESSAGE:**   Jorge Morales, et al. Vs. Ford Motor Company

*This facsimile message is PRIVILEGED and CONFIDENTIAL attorney-client communication and is transmitted for the exclusive information and use of the addressee. Persons responsible for delivering this communication to the intended recipient are admonished that this communication may not be copied or disseminated except as directed by the addressee. If you receive this communication in error, please notify us immediately by telephone at (512) 472-5456, ext. 2613.*

---

Completed By: _____ Date: _____ Time:_____

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                      PECOS DIVISION

 3

    ELSA BEATRIZ LOPEZ GUEDEZ,    )    P-03-CV-032
 4  ET AL.                        )
                                  )
 5  v.                            )    Hearing on Pending Motions
                                  )
 6  BRIDGESTONE/FIRESTONE, INC.,  )
    ET AL.                        )    September 10, 2003
 7

 8  _____

 9  AEIDA ELATRACH HANGE,         )    P-03-CV-043
    ET AL.                        )
10                                )
    v.                            )    Hearing on Pending Motions
11                                )
    BRIDGESTONE/FIRESTONE, INC.,  )
12  ET AL.                        )    September 10, 2003

13  _____

14

    RITA LETICIA CASTRO GARCIA,   )    P-03-CV-050
15  ET AL.                        )
                                  )
16  v.                            )    Hearing on Pending Motions
                                  )
17  BRIDGESTONE/FIRESTONE, INC.,  )
    ET AL.                        )    September 10, 2003
18

19  _____

20  ADRIANA CANALES RODRIGUEZ     )    P-03-CV-057
                                  )
21                                )
    v.                            )    Hearing on Pending Motions
22                                )
    BRIDGESTONE/FIRESTONE, INC.,  )
23  ET AL.                        )    September 10, 2003

24

25
```

PLAINTIFF'S
EXHIBIT
D

```
 1    JESUS GARCIA CASILLAS,         )      P-03-CV-067
      ET AL.                         )
 2                                   )
                                     )
 3    V.                             )      Hearing on Pending Motions
                                     )
 4    BRIDGESTONE/FIRESTONE, INC.,   )
      ET AL.                         )      September 10, 2003
 5    _____

 6
      MARTHA BERMUDEZ LOPEZ,         )      P-03-CV-69
 7    ET AL.                         )
                                     )
 8    V.                             )      Hearing on Pending Motions
                                     )
 9    BRIDGESTONE/FIRESTONE, INC.,   )
      ET AL.                         )      September 10, 2003
10

11

12              BEFORE THE HONORABLE ROBERT JUNELL
                  UNITED STATES DISTRICT JUDGE
13                    In Midland, Texas

14
      FOR THE PLAINTIFFS:        MR. JUAN A. GONZALEZ
15                               MR. RICARDO G. BENAVIDES
                                 Law Office of Mark A. Cantu
16                               1300 North 10th Street
                                 Suite 400
17                               McAllen, Texas  78501
                                 (956) 687-8181
18

19    FOR THE DEFENDANT,         MR. MORGAN L. COPELAND, JR.
      FIRESTONE:                 Vinson & Elkins
20                               2300 First City Tower
                                 1001 Fannin Street
21                               Houston, Texas  77002-6760
                                 (713) 758-2661
22

23    FOR THE DEFENDANT,         MR. JOHN W. WEBER, JR.
      SMITHERS TIRE & AUTOMOTIVE  Fulbright & Jaworski, L.L.P.
24    TESTING:                   300 Convent Street
                                 Suite 2200
25                               San Antonio, Texas 78205
                                 (210) 224-5575
```

Todd Anderson, CSR, RMR                    (432) 686-0605

3

```
 1   FOR THE DEFENDANT,          MR. WILLIAM R. MOYE
     FORD MOTOR COMPANY:         MR. EVAN N. KRAMER
 2                               MS. DANIELLE M. HARSANY
                                 Brown McCarroll, L.L.P.
 3                               1111 Bagby, 47th Floor
                                 Houston, Texas  77002
 4                               (713) 525-6253

 5
     COURT REPORTER:             MR. TODD ANDERSON, RMR
 6                               United States Court Reporter
                                 200 E. Wall, Rm. 107
 7                               Midland, Texas  79701
                                 (432) 686-0605
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23            The above styled and numbered cause was reported

24   by mechanical stenography and produced by computer.

25
```

4

1                              INDEX

2
     Judge's Ruling......................................... 96
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

```
 1            (September 10, 2003)
 2            THE COURT:  Mrs. LaForge, why don't you call all of
 3    our cases.
 4            THE CLERK:  Okay.  The Court calls
 5    Pecos-03-Civil-032.  It does not -- what is the lady's name?
 6            MR. GONZALEZ:  Guedez.
 7            MR. COPELAND:  Guedez.
 8            MR. WEBER:  Guedez.
 9            MR. KRAMER:  Guedez.
10            THE CLERK:  Okay.  Versus Bridgestone/Firestone,
11    Inc., Smithers Transportation Test Center, Del Rio Test Center
12    and Ford Motor Company.
13            Pecos-03-CV-043, Sourech Elatrach -- is that right?
14            MR. GONZALEZ:  Yes.  Hange.
15            THE CLERK:  Versus Bridgestone/Firestone, Smithers,
16    Del Rio and Ford Motor.
17            Pecos-03-Civil-050, Rita Leticia Castro Garcia versus
18    Bridgestone/Firestone, Smithers, Del Rio Test Center and Ford
19    Motor Company.
20            Pecos-03-Civil-057, Adriana Canales Rodriguez versus
21    Bridgestone/Firestone, Smithers Transportation, Del Rio Test
22    Center and Ford Motor Company.
23            Pecos-03-Civil-067, Jesus Garcia Casillas, et al.,
24    versus Bridgestone/Firestone, Bridgestone Corporation, Smithers
25    Transportation, Del Rio Test Center and Ford Motor Company.
```

Todd Anderson, CSR, RMR                    (432) 686-0605

6

1              Pecos-03-Civil-069, Martha Bermudez Lopez, et al.,

2     versus Bridgestone/Firestone, Bridgestone Corporation, Smithers

3     Transportation, Ford Motor Company.

4              THE COURT:  All right.  Mr. Gonzalez, you're here for

5     all the Plaintiffs; is that correct?

6              MR. GONZALEZ:  Your Honor, Juan Gonzalez and Ricardo

7     Benavides, present for all of the Plaintiffs.  I think I can

8     speed things up if I may, Judge.

9              THE COURT:  Surely.

10             MR. GONZALEZ:  I have filed a stipulation of

11    dismissal with prejudice as to all parties on Bermudez Lopez.

12             THE COURT:  Wait just a minute.  Let me get my docket

13    sheet so I can follow.

14             All right.  Give me the cause number, if you would,

15    just the last two digits.

16             MR. GONZALEZ:  69.

17             THE COURT:  All right.  So 69 has been dismissed with

18    prejudice, and I assume the Defendants have no objection.

19             MR. COPELAND:  No objection.

20             THE COURT:  Great.

21             MR. GONZALEZ:  Also with respect to the Castro Garcia

22    case.  That is 50, 5-0, the last digits.

23             THE COURT:  All right.

24             MR. GONZALEZ:  And that is a stipulation of dismissal

25    with prejudice as to all parties.

1          THE COURT:  All right.  So we've still got 32 --

2          MR. GONZALEZ:  I have one more, Your Honor.

3          THE COURT:  Okay.  I'm sorry.  Go ahead.

4          MR. GONZALEZ:  Pardon me.

5          THE COURT:  Yes, sir.

6          MR. GONZALEZ:  Garcia Casillas, which is 67, I also

7   stipulated a dismissal with prejudice as to all parties.

8          THE COURT:  All right.

9          MR. GONZALEZ:  That leaves us with Guedez, 32; Hange,

10  43; and Canales Rodriguez, 57.

11         THE COURT:  And remind me -- I believe 32 is a

12  Venezuelan case; is that --

13         MR. GONZALEZ:  32 and 43 are both Venezuelan cases,

14  and 57 is a Mexican case.

15         THE COURT:  My mind wandered there.  32 and 43 were

16  Venezuelan cases?

17         MR. GONZALEZ:  Yes, Your Honor.

18         THE COURT:  All right.  And 57 --

19         MR. GONZALEZ:  Is a Mexican case.

20         THE COURT:  Mexican case.  Great.

21         As far as the issues that we're going to take up this

22  morning -- I recognize there are some differences that people

23  make about the law of Mexico, vis-a-vis the law of Venezuela,

24  but if we make those differentiations do we have -- do you have

25  any objection to us taking up the three matters as they apply

1　to the issues, and then we will differentiate between Mexican

2　law and Venezuelan law and perhaps if there is some differences

3　between the facts as to where the tires were manufactured or

4　the type of tires?  Does that cause too much of a problem?

5　　　　　　MR. GONZALEZ:  Not at all, Judge.  That would speed

6　things up.

7　　　　　　THE COURT:  All right.  Now, the first thing we have

8　is you filed a motion for continuance?

9　　　　　　MR. GONZALEZ:  Yes, I did.

10　　　　　　THE COURT:  Mr. Benavides, you don't have to stand if

11　you're not -- I mean, if you want to -- I mean, you're welcome

12　to stand if you'd like to.

13　　　　　　MR. BENAVIDES:  I kind of prefer standing --

14　　　　　　THE COURT:  Okay.  Great.

15　　　　　　MR. BENAVIDES:  -- because I was sitting down all day

16　yesterday.

17　　　　　　THE COURT:  Okay.  Now, as I recall the last time

18　y'all got here you kind of did your tour of West Texas.

19　　　　　　MR. GONZALEZ:  I sure did.  We sure did.

20　　　　　　THE COURT:  This time we got here --

21　　　　　　MR. GONZALEZ:  I double-checked the order setting

22　hearing.

23　　　　　　THE COURT:  Okay.  All right.  So let's take up --

24　and I assume this is on 32, 43 and 57, your motion for

25　continuance.

1              MR. GONZALEZ:  Yes, Your Honor.

2              THE COURT:  All right.  Would you like --

3              MR. GONZALEZ:  With the Court's permission, I'm going

4       to allow my co-counsel to --

5              THE COURT:  Sure.  Mr. Benavides, go ahead.

6              MR. BENAVIDES:  Thank you.  Your Honor, we're asking

7       that the Court consider declining to hear the Defendants'

8       motion to dismiss for forum non conveniens and conflict of law

9       primarily because the issues that the motions are based on are

10      not unique to these particular cases.

11             According to the Manual for Complex Litigation, this

12      Court may rule on motions to remand or motions to dismiss.

13      However, it is with the proviso that the motions be based on

14      issues that are unique to this particular case.

15             Further, both the manual as well as the Second

16      Circuit in the case of Henry Ivy instruct us that where you

17      have a situation where the issues in the motions are based on

18      common issues that are related to other litigation, that is

19      further justification for allowing those cases to be

20      transferred to the MDL.

21             Now, as the Court is aware, these cases have been

22      conditionally transferred to the MDL, and the Defendants have

23      filed an opposition to that transfer.  We anticipate that the

24      MDL will be hearing that opposition within the next 10 to 15

25      days and will determine whether or not those cases will or will

 1    not be transferred.

 2           In the case at bar, Your Honor, the Defendants are

 3    raising issues that are not unique to the particular cases

 4    before the Court today.  The issues of forum non conveniens and

 5    conflict of law are not unique to this case.  For example, if

 6    their motions to dismiss were based on statute of limitations

 7    problems, that would be unique to the individual cases, but

 8    that's not the issue here.

 9           It is uncontested that the -- that their motion to

10    dismiss for forum non conveniens has been used by the

11    Defendants in hundreds of cases, both those cases that are

12    within the MDL and those that are not yet in the MDL.  With

13    respect to the MDL, the Court there has heard the Defendants

14    motions to dismiss on many cases and has issued a ruling.  The

15    argument to dismiss on forum non conveniens is a common

16    argument that is used in just about every case that exists in

17    the MDL.

18           Now, because the Defendants are not raising issues

19    that are particular or unique to these particular cases, we ask

20    that the Court defer ruling, allow the cases to either be

21    transferred to the MDL, if the MDL determines that that is

22    proper in the interest of justice; or if they decide to grant

23    the Defendants' motion or opposition, to defer ruling on this

24    issue until such time.

25           However, if the Court determines that the Defendants'

1   motions today do raise issues that are unique to these

2   particular cases, we ask that the Court grant us an additional

3   45 days to conduct discovery of the merits of forum non

4   conveniens and conflict of law.

5           And this is for four reasons, Your Honor.  As a

6   matter of procedure, the parties have not yet engaged in a case

7   management conference as required by Rule 26(f), and this

8   failure greatly prejudices the Plaintiffs in this case, and we

9   believe it also hinders the Court's ability to make a

10  determination as to the facts that support the Defendants'

11  motions.

12          THE COURT:  Have y'all noticed the Defendants for the

13  deposition of their experts?

14          MR. BENAVIDES:  At this time, no, Your Honor.

15          THE COURT:  Have you requested the Defendants to take

16  their experts, to provide a time when their experts could be

17  taken?

18          MR. BENAVIDES:  No, Your Honor.  Up until about a

19  week ago we were not aware of who they were going to use as an

20  expert.

21          THE COURT:  Okay.  And have you sent any

22  interrogatories or requests for production?

23          MR. BENAVIDES:  No, Your Honor, we have not.

24          THE COURT:  Okay.  Go ahead.

25          MR. BENAVIDES:  Now, as a practical matter it would

1   behoove the Plaintiffs as well as the Court to allow discovery

2   to be conducted as to the merits of forum non conveniens and

3   conflict of law because with regard to a forum non conveniens

4   analysis, this Court is required to conduct a case-by-case fact

5   base inquiry.

6          And without being able to ascertain the facts that

7   the Defendants rely upon in their motion, it is impossible at

8   most, extremely difficult at the very least, for us to

9   determine the veracity and reliability and relevancy of those

10   facts.

11          THE COURT:  Okay.  Which -- other than their

12   expert -- I mean, y'all have all of the facts within your

13   domain as to where the accident occurred.  You have the

14   vehicle.  You have the tires.  You have control.  The

15   Plaintiffs have control of all of those facts yourselves.

16          MR. BENAVIDES:  That's correct, Your Honor.

17          THE COURT:  I assume that somebody from your firm,

18   either an investigator or a co-counsel in Venezuela or

19   Mexico -- that y'all have control.

20          I guess the only thing that the Defendants have that

21   you don't have in this matter would be their experts' opinion

22   as to somebody saying, "The law of Venezuela allows us to bring

23   the case there, and it's an adequate forum," and somebody

24   saying the same thing about Mexico.

25          MR. BENAVIDES:  That is essentially correct, Your

1  Honor.  And in that regard, the Defendants have presented a

2  couple of experts.  One, an expert in Mexican law, and the

3  other a proposed expert in Venezuelan law.

4       And in the short time that we have had to review the

5  declarations or affidavits of two experts, we have found some

6  inconsistency with regard to the Venezuelan expert, Victor Hugo

7  Guerra Hernandez.  And we have filed a motion opposing his

8  declaration.

9       If the Court will refer to Mr. Hernandez's

10  declaration, the Court will find that Mr. Hernandez does not

11  rely on the facts of either the Guedez case or the Hange case

12  in arriving at his conclusions or in making his opinions.  He

13  relies on a case that is not before this Court.  In fact, it

14  has not been filed with this Court.  It is another case in

15  Brownsville by the name of Pineda, which is a

16  Bridgestone/Firestone.

17       THE COURT:  But are there common issues as far as

18  products liability law and procedure -- Venezuelan procedure

19  and jurisdiction and things of that?

20       I mean, what difference would it -- what difference

21  would it make if it was the Smith, the Jones, as long as it's

22  kind of the same Defendants, it's the same theory of law, and

23  the Defendants say Venezuela is a proper forum?  Help me

24  there.

25       MR. BENAVIDES:  Well, Your Honor, with regard to --

1  it may not make a difference with regard to the analysis, and

2  we will have some further argument if we wind up having to get

3  into the merits of that with regard to the reliability and

4  relevancy of his testimony, because bear in mind that a forum

5  non conveniens analysis is done on a case-by-case basis.  We

6  don't apply broad strokes of a brush to all Venezuelan cases or

7  all Mexican cases.  We do it on a case-by-case basis.

8           THE COURT:  Doesn't that argue against your saying

9  that all these issues are common in the MDL when we have to do

10  a case-by-case analysis?

11          MR. BENAVIDES:  No, Your Honor, it does not, because

12  all of these cases -- what the Supreme Court has instructed us

13  as far as applying forum non conveniens is that all these cases

14  share common facts.

15          Okay.  For example, in these cases dealing with Ford

16  and Bridgestone/Firestone, we're all dealing with the same type

17  of vehicle.  All these cases deal with the same type of tire.

18  All these cases involve the same design defects that resulted

19  in either death or injury.  Those are common factors.

20          However, when you do a forum non -- excuse me.  When

21  you're determining whether or not to hear a motion to dismiss

22  or remand, under your authority and in accordance with the

23  Manual for Complex Litigation, it can only be for issues that

24  are unique to this particular case.  And, again, I give the

25  Court the example of the statute of limitations problem.

1          Now, because the Defendants are raising the issue of

2    forum non conveniens in each and every one of these cases

3    involving foreign citizens, those are common issues that again

4    support allowing transfer to the MDL, whose sole purpose is to

5    take care of these type of cases.

6          THE COURT:  Okay.  Anything else you would like to

7    add as to the motion -- all we're talking about is the motion

8    for continuance to allow y'all to do additional discovery.

9          MR. BENAVIDES:  That is correct, Your Honor.  In the

10   alternative, or as we're initially asking, that the Court defer

11   hearing the motions -- the Defendants' motions to dismiss until

12   after the MDL has heard the Defendants' opposition to the

13   conditional transfer.

14         THE COURT:  All right.  Great.  Thank you.  Who would

15   like -- one or all of y'all speak for the Defendants, or

16   anybody would like to?

17         MR. COPELAND:  Your Honor, Morgan Copeland on behalf

18   of Firestone.

19         THE COURT:  Yes, sir.

20         MR. COPELAND:  Your Honor, first of all, the one

21   thing you didn't hear is that you do not have discretion to

22   hear this matter.  This Court does have the authority and

23   discretion to hear this matter today.

24         We would argue, Your Honor, that this Court is in a

25   better position to hear the FNC motion for some of the reasons

1    that the Court articulated last time that are individual to

2    this particular district, in weighing the public factors or the

3    interest of the public.

4        The consideration -- one of the considerations, as

5    the Court noted, is to consider the local forum's interest in

6    hearing the matter, the burden to the local citizenry of

7    hearing the matter, and other unique factors that relate to

8    your jurisdiction.

9        And as the Court is aware in In re Bridgestone, when

10   Judge Barker did her weighing of the factors, she weighed the

11   public interest of the United States as a whole versus that of

12   Venezuela.  So that is a consideration that if decided at the

13   MDL, it will be completely lost.  And that is something that

14   can only occur now.  It can only occur if you do it.  So we

15   would say for that reason -- that very important reason --

16   that it is entirely appropriate for this Court to hear this

17   matter.

18       As far as discovery goes, I believe they have been

19   well aware of who the experts have been for quite some time.  I

20   know that when we filed our motion back, I believe, in July, we

21   attached to it the affidavit of Enrique La Grande.  That is in

22   the motion for continuance that they filed, the only expert

23   whom they have identified and someone they would like to

24   depose.  Now, they may be amplifying that today.

25       But Mr. La Grange speaks exclusively to the adequacy

1    of Venezuelan law, vis-a-vis these Plaintiffs' claims.  So that

2    also is not an issue that I understand to be in issue or at

3    issue.  I don't believe that they dispute the adequacy prong of

4    the FNC analysis in this matter.  So deposing Mr. La Grange

5    would add nothing to this Court's analysis, to the Plaintiffs'

6    argument or to the matters that are truly at issue here.

7            As to Mr. Guerra, who is an expert that Ford first

8    utilized -- and I believe his affidavit was attached to their

9    original motion.  I think they have amplified that somewhat,

10   but I don't think too much beyond the original subject matter

11   of what he's done.  We rely on him as well.  So whether they

12   want to take his deposition, I don't know.  But I don't see how

13   that adds -- they have known about this a long time.  They have

14   not asked to do it, and they didn't ask to do it even in their

15   motion for continuance.

16           I guess the final thing I would add -- in Vasquez,

17   the Fifth Circuit case that I know the Court is familiar with,

18   in that case the Plaintiffs asked to take discovery from the

19   Defendants.  Judge Cobb denied that request, and it was

20   affirmed on appeal by the Fifth Circuit.

21           THE COURT:  All right.  Mr. Kramer, do you or

22   Mr. Weber have anything you'd like to add to this?

23           MR. KRAMER:  Briefly, Your Honor.  We touched on

24   the -- first of all, we mentioned both Ford's experts as well

25   as Bridgestone/Firestone's were disclosed to Plaintiff back in

1    July of this year.  There has been no request, until·this most

2    recent filing, of any request for depositions.

3            FNC expert Guerra, they mentioned an objection they

4    are filing to one of his affidavits, something they handed us

5    this morning.  That is an objection to his supplemental

6    affidavit, not to his principal affidavit which accompanied our

7    forum non conveniens brief.

8            And it is true that in that supplemental affidavit he

9    references that he's dealing primarily with just more detailed

10   analysis of the Hague Convention issues, things that are not

11   unique to the facts in the case but rather to the operation of

12   the Hague Convention Treaty.

13           He does reference the style of another case.  And we

14   were aware of that when we submitted it, thought it still might

15   be useful to the Court.  But I would point out that our

16   principal affidavit of Mr. Guerra is not subject to that

17   objection.

18           THE COURT:  Mr. Weber, anything from Smithers?

19           MR. WEBER:  Your Honor, I simply on behalf of the

20   Smithers entity have joined in the FNC motions briefing filed

21   by both of these parties.

22           THE COURT:  All right.  Now, Mr. Benavides, anything

23   else you would like to add as far as the motion for

24   continuance?

25           MR. BENAVIDES:  Yes, Your Honor, just a couple of

1  points.  Not one of these gentlemen has indicated to the Court

2  that the issues that they are presenting to the Court today are

3  unique to these particular cases, and the reason for that is

4  they can't.  These are common issues raised in each and every

5  case involving their failed products that also involve foreign

6  citizens.

7       And, additionally, with regard to opposing counsel's

8  reference to the Vasquez versus Bridgestone/Firestone case, if

9  the Court will refer to the particular quote on 673, it will

10  find that apparently discovery was allowed in that case.  What

11  the Court states in that case is that additional discovery

12  would not be allowed.

13       THE COURT:  Okay.

14       MR. BENAVIDES:  Thank you, Your Honor.

15       THE COURT:  I want to go back and recite just for the

16  record what docket -- and I believe this applies to all three

17  of these cases.  I only pulled the docket on 32.  And if it

18  doesn't also apply to 43 and 57, somebody correct me.

19       Cause Number 03-CV-32 was filed in this Court on

20  April 8, 2003, in the Pecos Division.  On April 8th.  And I

21  assume it had been filed in state court initially.  This case,

22  I believe, was filed in state court initially.

23       MR. WEBER:  That is correct.

24       THE COURT:  And it was removed here on April 8, 2003.

25  And I believe it had been filed in -- actually, maybe not in

1    Pecos, Texas, in Reeves County, but it may have been filed in

2    Pecos County, in Fort Stockton.  I don't think that makes any

3    difference.  But it was removed from state court to here on

4    April 8th.

5              On May 27th, Bridgestone filed its motion to dismiss

6    for lack of personal jurisdiction.

7              And on June 9th, I set a hearing on pending motions

8    here in Midland for July 30th, giving everybody 45 days, at

9    least 45 days' advance -- more than 45 days advance' notice.

10             Then on June 13th, there was a motion by the

11   Plaintiffs at least in the 32 case to substitute counsel.  And

12   I believe y'all were all in the same firm.  Wasn't Mr. Cantu in

13   y'all's firm --

14             MR. GONZALEZ:  That's correct, Your Honor.

15             THE COURT:  -- and just handling matters in your

16   firm?

17             MR. GONZALEZ:  That's correct, Your Honor.

18             THE COURT:  Then on June 25th, Bridgestone filed a

19   motion to stay all pretrial proceedings pending transfer to the

20   Multi District Litigation, brief in support.

21             On July 15th, I denied that motion.

22             On July 21st, Bridgestone filed a motion to apply

23   Venezuelan law in the alternative to its forum non conveniens

24   motion to dismiss.

25             On July 21st, there was a brief by Bridgestone filing

1   its -- in regards to its motion to apply Venezuelan law in

2   alternative to its forum non conveniens motion.

3            On July 21st, there was an amended motion by the

4   Plaintiffs about this counsel issue, about withdrawing counsel

5   and changing counsel.

6            On July 24th, there was a brief by Ford Motor Company

7   in support of its motion to apply Venezuelan law and a brief,

8   another brief on its motion to apply Venezuelan law.

9            On July 25th, Firestone produced additional evidence

10  in support of its motion to dismiss.

11           July 28th, there was a motion by Smithers to join in

12  Firestone's brief.

13           On July 28th, there was a motion by Smithers to

14  dismiss, a first amended answer, and affirmative defenses

15  subject thereto and request for a jury trial.

16           On July 29th, the Plaintiffs filed a preliminary

17  opposition to Defendants' motion to dismiss for forum non

18  conveniens in the alternative motion to apply Venezuelan law

19  and motion for forum non conveniens and conflict of law

20  discovery and briefing schedule.

21           On July 30th, we had a hearing in this Court.  And at

22  that time, because I didn't feel the Plaintiffs had had

23  adequate notice about the different motions being filed -- I'm

24  not even sure they filed a motion for continuance, but on my

25  own motion -- or maybe they filed one, too.  I don't see where

1   it was filed.  But on my motion reset that hearing for today.

2   In fact, gave today's date as that day and set a briefing

3   schedule for the Plaintiffs to file their response and then the

4   Defendants set to file a response to the Plaintiffs' response

5   which everybody on the record said, "We agree."

6          At that time, I also said I was rescinding my order

7   in the MDL, for which everybody kind of agreed I signed some

8   order in the MDL.  And after I got back to my chambers, I found

9   out there was no such order that I ever signed for the MDL.  So

10  the next day, on July 31st, we had a phone conference with all

11  of the lawyers.

12         In the meantime I had contacted the MDL and found out

13  that I didn't have the authority to sign any orders or do

14  anything like that, but if y'all wanted to do anything you

15  could.  And, evidently, that was heard in the meantime, and

16  there were so many days.

17         And so the next thing that happened in case that I

18  show of any note other than the opposition -- there had been an

19  opposition filed by Smithers on August 1st, that we actually

20  sent the order setting the hearing for 9-10 that I had

21  announced that day back on July 30th that we were going to do.

22  And I think that was on August 8th that I actually signed the

23  order doing that.

24         And then on August 26th, there was the motion by the

25  Plaintiffs to extend time for the forum non conveniens briefing

Todd Anderson, CSR, RMR                    (432) 686-0605

1  to allow discovery on FNC issues and to reschedule the

2  September 10th hearing date and objections and opposition to

3  the Defendants' motion to dismiss.

4          They also filed a response on the 26th.

5          On September 3rd, Firestone filed a reply brief.

6          On September 5th, there was a reply brief by Ford

7  Motor Company.

8          And that's the last thing that my docket shows.

9  There may have been some other things since that day, but

10  that's the last thing I show.

11          Here is my rub.  I think issues as far as common

12  discovery -- you know, why take the same engineer's deposition

13  500 times who had something to do with designing a Ford or a

14  tire or something like that?  That makes sense.  But issues

15  that are unique to a particular Court and jurisdiction should

16  retain with the Court.

17          And unless you've got some case that says -- that is

18  a Fifth Circuit case that says the District Courts of the Fifth

19  Circuit in a similar situation do not have jurisdiction to

20  decide forum non conveniens issues, which are jurisdictional

21  issues to this Court -- if the Judge in Indianapolis was going

22  to try this case, I would say, "Great.  That's her decision to

23  try it."  But she's not.  I'm going to try this case.  And the

24  jurors and the people in Pecos and that Court are going to hear

25  this case.  And so it is unique to this district.

1          Smithers, who y'all have sued, y'all have alleged had

2    something to do with this case.  Probably -- I don't know if

3    you -- Smithers got sued in New York or Miami or anywhere else,

4    but they are within the Western District of Texas, Pecos

5    Division.  And so that factor is unique to this.

6          Mr. Benavides, who is very eloquent and -- but you

7    kind of catch yourself coming and going.  On one hand, things

8    are common.  On another hand, there's got to be a factual -- a

9    fact-by-fact determination.

10          I can't imagine that Judge Barker is taking every

11   single case.  And -- I mean, I've talked to Judge Barker, not

12   about that issue, but trying to get ahold of what she was doing

13   up there just so I would understand.  I can't imagine that

14   she's having hearings on every single case involving forum non

15   conveniens.  I mean, I don't think there's enough hours in the

16   day.

17          About how many cases does she have up there now, a

18   round number?  What --

19          MR. GONZALEZ:  At least 100 Venezuelan cases.

20          THE COURT:  All right.  And how many Mexican cases?

21          MR. GONZALEZ:  I'm not aware that she has any Mexican

22   cases.

23          THE COURT:  Because the last time she told me she was

24   fixing to rule, I thought, or had some hearings on some Mexican

25   cases.

1          MR. KRAMER:  Judge, I think she's got around 25, 50.

2     I don't know.

3          THE COURT:  Okay.  Anyway --

4          MR. KRAMER:  I've got five in her court.

5          THE COURT:  I would hate -- I mean, I'd go crazy

6     sitting in here all day listening to a hundred factual

7     determinations on forum non conveniens cases.  Maybe I have a

8     little ADD here and I'm just not -- you know, would have the

9     attention span to do that.

10         So I'm going to deny your motion for continuance

11    based on the fact that, one, this Court does have jurisdiction.

12    It has not been transferred to the MDL.

13         Two, the parties were certainly put on notice that I

14    had denied motions to stay discovery pending any transfer.

15    There has been no effort by the Plaintiffs to conduct any

16    discovery, even any informal discovery.

17         I know a case that we had with Mr. Medina from

18    Florida in which some of these lawyers were involved, but at

19    least there had been some discussion informally, which I

20    encourage.  All judges encourage informally working this out

21    without giving notices and going back and forth with motions to

22    quash to take a Plaintiff's -- I mean, to take an expert's

23    deposition in a case.

24         And so I find that the Plaintiffs have waived any

25    right to complain as of today not having taken any expert's

1  deposition in this case.

2         It is a question of law for the Court.  I don't

3  believe that the experts on law is something that's

4  necessarily -- any depositions that you came up with.  I think

5  it would probably go to the weight rather other than to the

6  admissibility of what they had to say.

7         So I'm going to overrule the motion by the Plaintiffs

8  to continue this hearing and to enter into a scheduling order.

9  We will see if we need to enter into a scheduling order after

10  this hearing.

11         All right.  Mr. Benavides and Mr. Gonzalez, what

12  other motions -- preliminary motions do we have?  Any other

13  preliminary motions that I need to take up?

14         MR. GONZALEZ:  Your Honor, as a matter of clarity, if

15  I may, I understand your ruling to be denying obviously the

16  discovery aspect of what we moved for a moment ago.

17         THE COURT:  Yes, sir.

18         MR. GONZALEZ:  Could I get clarification on the

19  portion of that which requested you -- obviously, you have the

20  authority to proceed, and I suppose that you've already ruled.

21  But for clarity's sake and my own sake, the issue of the MDL

22  having this pending motion before them on the opposition by

23  Smithers, which is the sole party that opposed it and who I've

24  offered a stipulation of dismissal on, on all of the cases,

25  including the three that I recited into the record, I would

1   just like some clarification that you're also denying a stay on

2   that basis.

3            THE COURT:  Yes, sir, I am.  And I did talk -- I

4   mean, this isn't -- I talked to the MDL.  This is the first set

5   of cases I have had involving MDL.

6            MR. GONZALEZ:  As is ours.

7            THE COURT:  So what I was told by the clerk of the

8   MDL, whatever -- he signs -- the guy that signs all the

9   pleadings -- the orders out of D.C. -- was that until it is --

10  and this may not be the term of art -- finally accepted.  There

11  may be a better word than that -- that I have jurisdiction of

12  the case.  So at least that's my understanding.  And so someone

13  else will determine someday whether I was right or wrong about

14  that particular issue.

15           So, yes, I am denying that motion.

16           MR. GONZALEZ:  Thank you, Your Honor.

17           THE COURT:  And let me mull here for just a second.

18           (Pause)

19           THE COURT:  All right.  With that being said,

20  Mr. Gonzales and Mr. Benavides, are there any other preliminary

21  motions that we need to take up before we get to the issue --

22  I'm going to take up the forum motions first, and if not, then

23  we'll take up second the choice of law questions.

24           MR. GONZALEZ:  I do have a motion for dismissal of

25  Smithers as a Defendant in the three cases that are currently

Todd Anderson, CSR, RMR                    (432) 686-0605

1  pending, that is, Guedez, 32; Hange, 43; and Canales Rodriguez,

2  57.  I have obviously done a dismissal with prejudice on the

3  other pending cases as to all the Defendants with respect to

4  the three pending today.  I have offered a stipulation of

5  dismissal to Smithers only.  That was declined.

6           I understand the Defendants have opposed a dismissal,

7  but I would like a ruling, Judge, just for purposes of the

8  record and for clarity on my motion to dismiss with prejudice

9  the Smithers Defendants on Guedez, Hange and Canales Rodriguez.

10          THE COURT:  As we know, federal court is different

11  than state court.  State court, you can just kind of -- anytime

12  before the jury comes in, say, "Judge, we've decided not to go

13  any further."

14          But what's the law on this issue?  I know that once a

15  response has been filed, you have to get permission of the

16  party.

17          MR. GONZALEZ:  That is accurate, Your Honor.

18          THE COURT:  All right.  So give me some law on that

19  on what -- can they just say, "Heck, no, we're never going to

20  agree to this"?

21          MR. GONZALEZ:  I think the reason for this is quite

22  clear, and that is that there is a pending opposition in the

23  MDL.

24          THE COURT:  I understand that may be the

25  underlying -- help me with just some law right now so I can --

Todd Anderson, CSR, RMR                    (432) 686-0605

1      MR. GONZALEZ:  I think the law is unless they show --

2  and let me confirm that.  Unless they show that there is some

3  prejudice to the other Defendants, that you have every

4  authority to either dismiss it or not.

5      So I think that you have discretion.  And I don't

6  have a problem with what the standard of review is.  I think

7  you have entire discretion as to that question.

8      THE COURT:  Okay.  Well, then, let me hear from -- I

9  guess, Mr. Weber, you're the one that filed an objection to the

10  dismissal?

11      MR. WEBER:  Judge, I filed actually an objection to

12  the conditional transfer order.

13      THE COURT:  But what about to their motion to dismiss

14  with prejudice?

15      MR. WEBER:  I haven't objected to it.  I haven't

16  agreed to it.

17      MR. GONZALEZ:  Yeah.  He was not -- he was opposed to

18  my filing.  Let me clarify.  Thank you.

19      MR. WEBER:  And to put things in perspective, Judge,

20  I guess -- well, I don't guess.  What brought on the

21  stipulation of dismissal was my filing of the opposition to the

22  conditional transfer order.

23      The only place that my client has been sued in these

24  matters is here in Texas.  We are sort of the -- we became the

25  jurisdiction and venue poster child with the first of this

1   series of cases involving my client 21 or 22 cases ago now.

2   They all started in Pecos, and there have been some filed in

3   various -- like Laredo and so on and so forth that I'm dealing

4   with. But they're all here in Texas.

5         And it goes back to what the Court mentioned a minute

6   ago. Smithers is unique to these cases. And the fact they

7   have been filed in Texas is unique to these cases. I do not

8   want to be drug along with the MDL to Indianapolis only to be

9   forced to sit for the next year to year and a half reading a

10   plethora of orders that come in weekly to decide whether they

11   do or they don't apply to my client and so forth.

12         So any opportunity to get a ruling, whatever that

13   ruling may be, from a Court that is inclined to rule is the

14   reason why I filed the opposition of the conditional transfer

15   order.

16         Subsequently I received a request for a stipulation

17   of dismissal, but there was nothing said about with prejudice.

18   And I did not want to be in a situation where a case is

19   dismissed here and refiled somewhere else.

20         At this point in time, quite frankly, I would like to

21   have a ruling of the Court on my 12(b)(6). I have had two, and

22   those were on the prior cases that we were here on last time,

23   Garza Garza and -- I don't recall the other that were cases by

24   a different Plaintiff, a different Plaintiffs' firm. And the

25   Court ruled in favor of my 12(b)(6) motion but allowed time to

1    supplement.

2          Supplementation was done, and at that last hearing

3    the Court may recall the Plaintiffs' counsel in that matter

4    said, "Judge, I still don't think I've pled enough facts, and I

5    really would like an opportunity to do it again."  And so, you

6    know, that's why I have opposed.

7          So far as whether or not this Court can grant a

8    stipulation of dismissal with prejudice made by a party,

9    unfortunately, I can't help the Court.

10         THE COURT:  Well, somebody knows the law on this,

11   don't you?

12         MR. GONZALEZ:  Under Rule 41(a)(2) the Court may

13   grant a dismissal for voluntary -- a motion for voluntary

14   dismissal if the dismissal will not prejudice or operate to the

15   detriment of the nonmovant.

16         THE COURT:  Mr. Weber, what -- give me why this

17   would --

18         MR. WEBER:  Well, Judge, with prejudice.  So long as

19   it's an order with prejudice, I don't have a good reason why it

20   does prejudice me other than the fact that I would certainly

21   like a ruling by the Court on the merits of my 12(b)(6), but --

22         THE COURT:  And remind me on your 12(b)(6), what were

23   the grounds?

24         MR. WEBER:  Well, they failed to state a cause of

25   action, Judge.  There are not sufficient facts alleged.  Even

1   the alleged cause of action and the alleged facts don't raise a

2   recognizable cause of action. It doesn't state sufficient

3   facts to support a cause of action even though what little bit

4   is there is erroneous based upon the affidavits that have been

5   filed in response to -- or in support of the FNC, affidavits

6   from both Bridgestone/Firestone and from my client concerning

7   what we did do as opposed to what the Plaintiffs would like the

8   Courts to believe we did.

9          THE COURT: Well, if Mr. Gonzalez and Mr. Benavides

10  say, "We will agree to Smithers' 12(b)(6) motion, to it being

11  granted," does that solve your problem?

12         MR. WEBER: I believe it does.

13         THE COURT: Why don't you guys go talk for a minute?

14         MR. GONZALEZ: With your permission, Judge.

15         THE COURT: Yes.

16         Mr. Weber, why don't you go with Mr. Benavides and

17  Mr. Gonzalez. We'll take a break in place here for a second.

18         (Pause)

19         THE COURT: All right. What have we -- have we

20  decided anything or nothing?

21         MR. GONZALEZ: Yes, Your Honor. I have decided that

22  I do not oppose dismissal based on 12(b)(6) on Hange, Guedez

23  and Canales Rodriguez with respect to the Smithers Defendants

24  so long as no costs are imposed on my clients.

25         THE COURT: And, Mr. Weber, do you agree to that?

1          MR. WEBER:  That's reasonably accurate.  My

2  understanding is that the Plaintiffs will not oppose the

3  granting of an order or the issuance of an order that grants

4  the 12(b)(6) dismissing the Smithers entities.

5          THE COURT:  In which all costs are imposed upon the

6  party incurring the same?

7          MR. GONZALEZ:  That is correct, Your Honor.

8          THE COURT:  All right.  Now, so that's on the three

9  cases, 32, 43 and 57.

10          MR. WEBER:  That is correct.  And I have filed the

11  same 12(b)(6) on all three, Your Honor.

12          THE COURT:  All right.  Now, so where does that put

13  you on -- do you now agree with their motion for dismissal with

14  prejudice?  Does this actually take care of it?

15          MR. WEBER:  I believe it actually takes care of it.

16          MR. GONZALEZ:  Yes.

17          MR. WEBER:  Instead of a motion for dismissal with

18  prejudice, I have the granting of a motion for dismissal on the

19  12(b)(6) failure to state cause of action.

20          THE COURT:  All right.  So that makes moot your

21  motion, your stipulation of dismissal with --

22          MR. GONZALEZ:  It does.

23          THE COURT:  All right.  Now, let's go to the second

24  level.  Now, you're the only one that filed an objection to the

25  MDL?

```
 1            MR. WEBER:  That is correct.

 2            THE COURT:  So where does that put us as far as --

 3   Mr. Copeland, you or Mr. Kramer, where does that put y'all as

 4   far as the MDL is concerned?

 5            MR. GONZALEZ:  The case is no longer -- it is not

 6   transferred yet in any event even though his motion is moot,

 7   because transfer does not become effective till it's filed with

 8   the clerk.  So for all practical purposes today, you can

 9   proceed and do what you will, Judge.

10            THE COURT:  All right.

11            MR. GONZALEZ:  That's my understanding.

12            MR. COPELAND:  That is correct.

13            THE COURT:  All right.

14            MR. WEBER:  That is likewise my understanding, Judge.

15            THE COURT:  Mr. Copeland, I would assume that on

16   behalf of Firestone and, Mr. Kramer, on behalf of Ford, do you

17   want the Court to go ahead and proceed today?

18            MR. COPELAND:  We do, Your Honor.

19            MR. KRAMER:  Yes, Your Honor.

20            THE COURT:  All right.  Mr. Weber, you or -- the

21   Court is going to grant -- based on representations made to the

22   Court will grant your 12(b)(6) motion as filed and as agreed to

23   and as stated by Mr. Gonzalez here in court.

24            MR. WEBER:  That would be in Cause Numbers 32, 43 and

25   57?
```

1          THE COURT:  Correct.

2          MR. GONZALEZ:  That is accurate, Your Honor.

3          MR. WEBER:  Thank you, Your Honor.

4          THE COURT:  All right.  The next thing let's do is

5    then take up the motion for forum non conveniens.  And who

6    wants to -- the Defendants have the burden here, so who wants

7    to start?

8          MR. COPELAND:  I will, Your Honor.

9          THE COURT:  Do you want to go odd or even or pick a

10   number between one and 10?  Not everybody at the same time at

11   defense counsel table, okay?

12         MR. COPELAND:  Your Honor, I will proceed as you

13   suggested and address these cases as one, I guess pointing out

14   differences if I see that there is a distinction that ought to

15   be brought to the Court's attention.

16         I think what is significant to me is -- well, let me

17   just go back.  As far as the factual background of these cases,

18   each of these cases involves an accident that occurred in a

19   foreign country, either Venezuela or in Mexico.

20         The Plaintiffs and the people involved in the

21   accidents are all residents of foreign countries, either Mexico

22   or Venezuela.

23         The Ford vehicles involved in the case -- I believe

24   I'm correct that they are all Ford Explorers.  And it is my

25   understanding that in the Venezuelan cases, Guedez and Hange,

1    that those vehicles were manufactured and sold in Venezuela.

2            As far as the Rodriguez case Explorer, I believe that

3    vehicle was manufactured in the U. S.  I'm not clear on where

4    it was sold.  Ford, I think, can address that.

5            As far as the Firestone tires go in Guedez, we  know

6    -- that is the only one of the three cases that we know for

7    certain where the tire was manufactured.  In that case --

8            THE COURT:  Give me the number on Guedez.  Is that

9    32?

10           MR. WEBER:  Correct.

11           MR. COPELAND:  Thank you.

12           In that case it was manufactured in Wilson, North

13   Carolina.  It is -- we know from the affidavit proof of

14   McGibbon the same type and kind of tire that was exported for

15   sale in Venezuela, but there is no way that we can identify

16   with specificity where any particular tire went by looking at a

17   DOT number.

18           I think we can infer from the other facts that we

19   know, that is, that the Plaintiffs are residents of Venezuela

20   and that the vehicles were in use there and that they were in

21   use on vehicles that were Ford Explorer vehicles that were

22   manufactured, produced and sold in Venezuela that they were

23   original equipment, tires on those vehicles.

24           As far as the Rodriguez case, we don't know anything

25   about that tire.  We don't know if we have a tire.  So as to

1    that, all we know is that they were used on vehicles -- a

2    vehicle in Mexico at the time the accident happened.

3         We know that in each case the accidents were

4    investigated by Venezuelan and Mexican investigatory

5    authorities, police and the like; that the documents that they

6    have created reflecting their investigation are, of course, all

7    in Spanish and will require translation.

8         The victims in the accidents were treated in

9    Venezuela and/or Mexico.

10        So the facts of these cases are very much like the

11   other cases that have been dismissed in Gonzalez versus

12   Chrysler, in Vasquez versus Bridgestone/Firestone.

13        I think what's telling in the papers that have been

14   filed with the Court is that the silence is deafening from the

15   Plaintiffs' side with respect to these two very similar cases

16   that have recently been decided by the Fifth Circuit, Gonzalez

17   versus Chrysler and Vasquez versus Bridgestone/Firestone.  The

18   Plaintiffs have chosen for the most part to ignore them and not

19   address what the Court said in those two cases, which I find

20   very important.

21        I know now that the Court has listened to several FNC

22   motions, and some in the context of this litigation, that

23   you're well aware of factors that go to a determination of

24   whether a case is appropriate for dismissal under FNC.  They

25   are that the alternative forum is available, that it is

1  adequate.  The Court is required to weigh the private interest

2  of the parties.  And then if the private interest of the

3  parties tips in favor of not dismissing the case, the Court

4  goes on to weigh the public interest and may still dismiss the

5  case even in the event that the private factors weigh in favor

6  of nondismissal or not dismissing the case.

7           So moving on to the first criteria, Mexico is, I

8  think, the easier case.  I mean, it in Vasquez and Gonzalez has

9  been held to be an available forum.  It is upon the

10  Defendants --

11           THE COURT:  Can I hold you just a second?

12  Mr. Klassen, who is head of our U. S. Attorney's Office, you

13  are not looking for any of these gentlemen right here, are you?

14           MR. KLASSEN:  No, sir.  I'm sorry.  I'm just --

15           THE COURT:  You're welcome to sit in here.  Do you

16  need me for something?

17           MR. KLASSEN:  I do not, Your Honor.  I'm just killing

18  time, Your Honor.  I apologize.

19           THE COURT:  Okay.  Great.  Get your meter running,

20  Mr. Klassen.

21           MR. COPELAND:  That's good news to me, Your Honor.

22           THE COURT:  All right.  Go ahead.

23           MR. COPELAND:  The availability prong of the

24  analysis, while it is somewhat different, or at least the

25  arguments are going to be different, Mexico versus Venezuela,

1     they are governed by the same principles.  Available means that

2     all parties and claims can -- can -- that is the operative

3     word -- come within jurisdiction of the Courts.

4          Clearly in Mexican cases, which are no different from

5     this, in Gonzalez and Vasquez, that the Fifth Circuit has said

6     that Mexico is an available forum upon submission of the

7     Defendants to the jurisdiction of Mexico, and in this case that

8     has occurred.

9          With respect to Venezuela, I would submit to you

10    that -- well, certainly the standard is no different.  And

11    there have been arguments made to the contrary which we can

12    talk about.  But, again, what we're talking about and what the

13    Fifth Circuit -- there have been no -- the arguments that are

14    made from the other side derive from decisions made outside the

15    Fifth Circuit.

16         And Fifth Circuit authority from the In re air crash

17    near New Orleans case to the Veba-Chemie v. M/V Getafix case --

18    in those cases the Fifth Circuit has said unequivocally without

19    qualification that upon submission to the jurisdiction of the

20    courts by the Defendants that the forum is available.

21         And in the Veba-Chemie case the Court discusses that

22    a little bit, and basically says here the whole point is we're

23    trying to determine upon the dismissal of a case for

24    convenience's sake of the transferring court is there a place

25    where the Plaintiff has to go.

1          Clearly in the Venezuelan cases the Plaintiffs, if

2     they so desire, Venezuelan law is -- and their experts agree

3     with this, and our experts agree with this -- that they can

4     consent.  If there is consent by both parties, they may file

5     their case there.

6          So clearly the Venezuelan courts are available to the

7     Plaintiffs if this Court should dismiss their case.  And that,

8     I believe, is the end of the inquiry.

9          Any other interpretation could mean that there can

10    never be a dismissal under forum non conveniens because the

11    Plaintiff would be in sole control of blocking that by saying,

12    "Well, we won't agree to that."  And that can't be the law, and

13    I don't think that is the law for the Fifth Circuit.

14         Judge Barker's opinion is the obvious one, the one we

15    need to discuss.  And in In re Bridgestone, which she addressed

16    Venezuelan cases, in that case she founded her decision upon

17    the Plaintiffs' expert in that case who said under Venezuelan

18    law the Venezuelan courts don't have jurisdiction unless there

19    is an express consent on the part of both parties.

20         And what I would submit to the Court is that is the

21    wrong inquiry.  The question is -- there is no question that

22    their expert and our expert say that Venezuela courts do have

23    jurisdiction.  They do.  If both parties agree to it, they have

24    jurisdiction.

25         The question is under U. S. forum non conveniens law

1    how would we treat the unilateral refusal of the Plaintiff to

2    file suit in an available forum.  That's really the question,

3    and that is what Judge Barker, I would submit, never dealt with

4    in a direct fashion.  And I think that based on the Fifth

5    Circuit cases that we have, the Fifth Circuit would decide that

6    differently.

7            In the Veba-Chemie case there is a hint -- first of

8    all, they have unqualifiedly said that upon submission there is

9    availability, end of case.  But even in the Veba-Chemie case at

10   the last minute, I believe on appeal, the other side -- the

11   Plaintiffs raised the idea that there was some sort of a

12   treaty, equal rights treaty, same sort of argument being made

13   here -- well, let me take that back.  I'm confusing my cases.

14           In Veba-Chemie the Plaintiffs were arguing that the

15   focus as to availability should be only as of the time that the

16   Plaintiff filed his case originally; and because the Defendants

17   hadn't consented at that time, it was unavailable.

18           And the Fifth Circuit said no, that's not right;

19   availability is to be determined at the time of dismissal.  And

20   then they went on in a footnote and said, you know, even if --

21   even if the Plaintiff -- even if what the Plaintiff said -- let

22   me see if I can get this right.

23           They went on and said that if the Plaintiff had

24   failed to file -- if the forum was unavailable at the time of

25   dismissal because of something the Plaintiff did, in other

1   words, failing to file at a time when limitations had not run

2   under the forum jurisdiction law, then in that event the plight

3   is of the Plaintiff's own making.  And in that event perhaps

4   the case could be dismissed anyway.

5          So I think you have a hint there if faced with this

6   same argument of what the Fifth Circuit would do.  And I think

7   the Fifth Circuit's unequivocal pronouncements about

8   availability in the face of other kinds of challenges tell us a

9   little bit about where they would go with that.

10         THE COURT:  Have any courts in the -- any District

11   Courts within the Fifth Circuit ruled one way or the other on

12   the forum non conveniens issue in this type of litigation

13   involving Venezuela?  In Mississippi, Louisiana, Texas, any

14   district --

15         MR. COPELAND:  I don't know that any of them dealt

16   with Venezuelan law.

17         THE COURT:  Okay.

18         MR. COPELAND:  I can't recall.  Somebody can correct

19   me.

20         MR. KRAMER:  Judge Cobb ruled in Vasquez.  And I

21   think Judge Hinojosa in the Southern District may have --

22         MR. COPELAND:  I know Vasquez was the only case in

23   Mexican law.

24         THE COURT:  Yeah.  I talked to Judge Cobb a little

25   bit about his decision.

```
 1            MR. COPELAND:  So I don't think, Your Honor, that
 2    there are any Venezuelan law cases out there --
 3            THE COURT:  Okay.
 4            MR. COPELAND:  -- that I can recall.  The other basis
 5    upon which Judge Barker made her decision was -- and the other
 6    possible jurisdictional exception in Venezuela was if the case
 7    could be brought in a place where the facts are verified.
 8            Here we have a battle of experts.  Their expert says
 9    one thing; our expert says the other, although I would argue
10    that if you follow the analysis that their expert suggests,
11    which is that you do a most significant contact analysis and
12    analyze the most significant contacts of the case with the
13    forum, I still think that this exception would apply, although
14    Judge Barker accepted without qualification the Plaintiffs'
15    experts on that.  So on availability, that's from my
16    perspective where we stand.
17            As far as adequacy of the forum, I don't think the
18    Plaintiffs here dispute that.  Even Judge Barker found that
19    Venezuela was an adequate forum, adequate laws, whatnot as that
20    of Mexico.  That has been well established in Vasquez and
21    Gonzalez.  So we get to then weigh the private interest of the
22    litigants.
23            And here I don't see this case is materially
24    different from Vasquez and Gonzalez.  Any sources of proof are
25    in Mexico and Venezuela.  As we discussed before, the accidents
```

1    happened there. They were investigated there. The witnesses

2    to the accident will be there. The medical and forensic

3    autopsy type people are there. Documents relating to that will

4    be there.

5          And I would say that we can't overemphasize the

6    critical nature of this kind of evidence in cases of this kind,

7    because each of these cases is a unique accident. I mean, it

8    is a car accident. And the facts, the unique facts about the

9    accident are critical to the analysis. And each case is quite

10   different.

11         These cases actually provide an interesting example

12   of that. In the Guedez case, which I believe we said was 32,

13   in that case the vehicle was driving at around 2:30 a.m. in the

14   evening. They pulled in front of a city bus, and the bus

15   T-boned the vehicle. There is no indication anywhere in the

16   reports that I saw of any kind of a tire problem or failure.

17         I think that obviously the individual circumstances

18   of that case are going to be critical to know and to deal with,

19   and we will be -- and Firestone will be at a great disadvantage

20   not being able to have compulsory process for witnesses that

21   were involved in that case -- the police, the other key people

22   who would be able to testify to these facts, which would be

23   largely put in a forum where we can't effectively utilize

24   them.

25         In the Rodriguez case, that occurred apparently

Todd Anderson, CSR, RMR                    (432) 686-0605

1 during a rainstorm. The roads were wet. The police found that

2 the driver was driving with excessive speed.

3    So these cases are very particular in their nature.

4 And it is not just these particular ones. These are good

5 examples. But they are all that way because they are all

6 different.

7    Clearly there are no sources of proof in Texas, which

8 is a critical distinction, since this is the forum where they

9 have chosen to file suit rather than the United States as a

10 whole.

11    In Texas there is no proof. Smithers now is gone

12 from this case, which validates what we have said in many

13 courts and many places that they are a Defendant that has been

14 added with frivolous claims. They are there in an effort to

15 defeat adversity. And I won't go into the details of the facts

16 about Smithers, but we can if there are questions later.

17    As far as Del Rio Test Center, the other test center,

18 it has been merged into Firestone. It didn't go into business

19 until early 2000. I think in each of the three cases we're

20 talking about the vehicles were manufactured before that point

21 in time. And in addition, Del Rio did not do any kind of

22 testing. They actually arranged for testing conducted by a

23 third party in Mexico, a Mexican entity. So it is hard to

24 imagine that, again, Del Rio Test Center is anything but a

25 Defendant added in an effort to defeat adversity.

1          So as a practical matter what we have is all this

2     evidence that we've talked about in Venezuela, none in Texas.

3     And the Plaintiffs' response to that is, well, there is all

4     this design and manufacture evidence in the United States,

5     somewhere other than Texas, but in the United States.

6          Vasquez, I think, was determinative in doing away, at

7     least in the Fifth Circuit, with that consideration and saying

8     that is going too far back.  When you go back to the designer's

9     draft board, that is reaching too far back in time.  And that

10    element does not weigh and it's not to be weighed -- not to be

11    given any weight.

12         In the Gonzalez case, at the conclusion of that case,

13    the Fifth Circuit said there are no private and public factors

14    weighing in favor of Texas.  And that case also involved

15    products that were designed and manufactured in the United

16    States but not in Texas.

17         Obviously Venezuelan witnesses, documents would

18    require translation.

19         The Plaintiffs argue -- or they may argue that

20    depositions taken in this case would not be admissible in

21    Venezuela.  Mr. Guerra's affidavit is to the contrary.  The

22    Plaintiffs have introduced no proof whatsoever by affidavit or

23    otherwise of that in this matter.

24         The Plaintiffs have argued in their papers at least

25    that there is delay involved in Venezuelan courts, and they

1   refer to the discussions that Judge Barker had.   Judge Barker

2   was dealing with evidence in 2001 and before.

3        Now the Plaintiffs have handed me something today,

4   some papers -- some purported news articles.  I don't know what

5   they are.  I haven't had a chance to read them.  But in any

6   event, Judge Barker even said she gave slight weight to this

7   factor.  So regardless -- the facts as dealt with by Judge

8   Barker were before -- 2001 and before, so they do nothing to

9   tell us about today.

10       So in any event, as far as the private factors go,

11  really it is down to the Plaintiffs' argument that design,

12  manufacture evidence in the United States versus all the

13  things, all the kinds of evidence that are critical to our

14  defense of the case that exists in Venezuela.

15       If you find that the interest weighs in favor of

16  dismissing the case, you don't have to go to the public's

17  interest.  As far as weighing the public's interest, which is

18  the final element here, obviously Venezuela has the paramount

19  interest in protecting its own citizens.  They obviously have a

20  strong interest in regulating products that are used or sold in

21  their country.  Venezuelan law or Mexican law will most

22  assuredly govern in these cases.

23       The Court is well aware of the most significant

24  relationship test that is applied by the State of Texas.  And

25  in a tort case, that case is applied by considering where the

1   accident happened -- or I'm sorry -- where the injury occurred.

2   And in both cases, of course, it's Mexico or Venezuela, the

3   place where the conduct or cause of injury occurred.  Here I

4   would argue that we need to look to -- in each case the drivers

5   in these vehicles were either killed or injured and are either

6   suing on their own behalf or someone suing on their behalf.  In

7   each case I would argue that their conduct would certainly be

8   among the things considered in determining the conduct causing

9   the injury.

10          Alternatively, the Plaintiffs would argue that you

11   need to look back to what happened in the United States -- not

12   Texas, but in the United States with respect to design and

13   manufacture of these products.  Again, the Fifth Circuit in

14   Vasquez said that goes too far back.

15          Finally, the third prong is the place where the

16   relationship of the parties is centered.  To the extent these

17   products were sold, as in Guedez and Hange, with the vehicles

18   in Venezuela, it has to be in Venezuela.  With respect to the

19   tires in those cases, we can only infer that fact from other

20   facts we know.

21          In my view -- in our view, Vasquez is determinative

22   in this matter.  The Fifth Circuit did a de novo review of this

23   matter and determined in a case with facts that were not

24   materially different that Mexican law applies, and there would

25   be no distinction between that and the Venezuelan cases.

1          So, likewise, the Court is better situated than I am

2     to evaluate whether or not there is local interest in trying

3     cases involving accidents in Venezuela; in Mexico; in Midland,

4     Texas; or in Pecos, Texas; and, likewise, whether there is

5     reason to burden this community and its citizens of Pecos with

6     a trial of this magnitude.

7          And critically as we talked about in determining

8     whether or not the Court should go forward today, Judge Barker

9     by her own admission has stated that In re Bridgestone she did

10    not weigh the interest of the local community but rather

11    weighed the interest of the United States as a whole.  And

12    that, I believe, we would submit to the Court, is not an

13    appropriate -- that the Defendants are not receiving the full

14    benefit of the forum non conveniens analysis that is due to it

15    under the laws but certainly of the Fifth Circuit when that

16    kind of analysis goes forward.

17         So I think with that I'll sit down or answer any

18    questions the Court has.

19         THE COURT:  Thank you very much.  Mr. Kramer, do you

20    wish to speak on behalf of Ford?

21         MR. KRAMER:  Judge, Mr. Copeland did a very thorough

22    job, and I will try not to muck it up too bad, but I do have a

23    few things to add or I would like to address.

24         The Plaintiffs have raised an argument in their

25    briefing regarding a purported presumption that Plaintiffs are

1  entitled to with respect to the forum that they choose to file

2  their action in.  And I would like to address that briefly.

3          If we look at it either logically or if we look at

4  the Piper aircraft case from the U. S. Supreme Court we can see

5  you start with an assumption.  That presumption is based upon

6  an assumption that the Plaintiff is going to file a case in the

7  jurisdiction or in a venue in which they have some connection

8  of some sort.

9          If you look at the cases cited by Plaintiff really

10 throughout their brief in toto, you see that in the vast

11 majority of those cases you are dealing with cases where it was

12 an American citizen who had an accident in Venezuela or an

13 accident in Mexico or similar instance.  There is much greater

14 nexus between the United States and the venue where the case is

15 filed.

16         That's simply not the case here.  As Mr. Weber

17 mentioned earlier, we have had 22 cases like this filed in

18 Reeves County.  And they weren't filed here because Reeves

19 County or Pecos was convenient to anyone.  I don't know --

20 not -- certainly not to the Plaintiffs, not to the Defendants,

21 not to the counsel, not to the witnesses.  They were filed here

22 under a misguided attempt to take advantage of what was seen as

23 a favorable state court venue in this state and presumably to

24 get a better jury pool.

25         In order to obtain that venue, the Plaintiffs in this

1    case as well as others have fraudulently joined both Smithers

2    and Del Rio Test Center and a number of other Defendants.  This

3    is true throughout the state in different venues to invoke that

4    jurisdiction.

5         So as I stood here or sat here this morning earlier

6    hearing an argument why Smithers should be dismissed, I thought

7    back to sitting in the same courtroom before your predecessor

8    on motion to remand when I heard arguments adamantly to the

9    point of why Smithers, of course, had a critical role in this

10   case and should be in this case.

11        So we start with the point of Plaintiffs not filing

12   this action here out of any point of convenience to themselves

13   but rather purely to attempt to take advantage by fraudulent

14   joinder of what they perceive to be a favorable state

15   jurisdiction.

16        I believe under the Piper aircraft case the Supreme

17   Court would say under these circumstances we have someone

18   purely attempting to manipulate jurisdictional scheme in order

19   to obtain a more favorable setting, that not only do they not

20   get a presumption of the forum being more convenient, but in

21   fact there is no presumption at all in their favor.  So I think

22   at most that would be a neutral factor in this case.

23        On the articles that were submitted by Plaintiff or

24   handed to us today, I would just briefly address those and

25   point out several things.  First of all, that the press

```
 1   regarding Venezuela is highly politicized.  The press is an

 2   active participant in the political squabbles that go on in

 3   Venezuela.  Also, not all of those articles -- I mean, some of

 4   those articles are dated in May 2003, and then you look at the

 5   final byline and it's 2002.

 6           Things have changed as you referenced last time I was

 7   here on this issue.  You can look at the State Department's

 8   advisory.  But we would primarily object to those simply as

 9   being hearsay and not proper evidence to be considered in this

10   hearing today.

11           The Canales Rodriguez vehicle I would add in -- this

12   was left out.  But that vehicle was manufactured in St. Louis,

13   but we are aware of no records that would indicate that the

14   Plaintiffs, the individuals in Mexico who were driving this

15   vehicle, purchased that vehicle in the United States.  We

16   believe that vehicle was shipped south of the border towards

17   the end of its lifetime and resold in Mexico.

18           I believe, Your Honor, that's all I have.

19           THE COURT:  Thank you very much.  All right.

20   Counsel, do you want to --

21           MR. GONZALEZ:  Your Honor, may I allow --

22           THE COURT:  I'll tell you what.  That's very smart to

23   do.  Mr. Benavides is very good, so --

24           MR. GONZALEZ:  As I well know.

25           THE COURT:  And we all determined last time that he
```

```
 1   is not related to Judge Benavides, as I recall.

 2             MR. BENAVIDES:  Yes, Your Honor.

 3             THE COURT:  But Judge Benavides would be proud to be

 4   related to you.  I know that.

 5             MR. BENAVIDES:  Thank you, Your Honor.

 6             THE COURT:  Help me just a little bit, if you

 7   could --

 8             MR. BENAVIDES:  Yes, Your Honor.

 9             THE COURT:  -- so I can kind of keep this up.  And

10   let me find my note here.  Fifty -- excuse me.  32 is a

11   Venezuela case?

12             MR. GONZALEZ:  Yes, it is, Your Honor.

13             THE COURT:  43 is a Venezuela case.  And 57 is a

14   Mexico case?

15             MR. GONZALEZ:  That is correct.

16             THE COURT:  Now, on 32, the Venezuela case, I think

17   that what I heard that the Defendants say was that the vehicle

18   was manufactured and sold in Venezuela.  At least that's their

19   position; is that --

20             MR. GONZALEZ:  That is accurate.

21             THE COURT:  All right.

22             MR. GONZALEZ:  It is, however, located in McAllen,

23   Texas.

24             THE COURT:  Okay.  But, I mean, they don't -- y'all

25   don't -- the Plaintiffs don't disagree that the Ford vehicle
```

54

1    involved in Cause Number 32 was manufactured and sold in

2    Venezuela?

3              MR. GONZALEZ:  That is true.

4              THE COURT:  All right.  So that I'm clear.  Now, the

5    tires, I heard Mr. Copeland say they believe in that case they

6    were manufactured in Wilson, North Carolina.

7              MR. COPELAND:  In 32.

8              THE COURT:  In 32.

9              MR. COPELAND:  Right.

10             MR. GONZALEZ:  We don't dispute that at all.

11             THE COURT:  And would it -- I mean, I guess this is

12   somewhat of an assumption.  Does anybody disagree that tires

13   manufactured in Wilson, North Carolina then were shipped to

14   Venezuela and probably sold at retail there?  Is that a -- does

15   that -- or do we know?

16             MR. GONZALEZ:  It may have been original equipment.

17   I don't know.

18             THE COURT:  Or it could have been original equipment.

19   It could have been original equipment.

20             MR. COPELAND:  Our brief is, Your Honor, there is no

21   way to trace with specificity a particular DOT number to

22   Venezuela other than to say that this particular kind of

23   tire -- and we have affidavit proof of this -- was of the kind

24   and size at this time period in Firestone that were shipped to

25   Venezuela for sale.

```
 1              THE COURT:  Okay.  But there's nothing to say that
 2    the Plaintiffs for some reason were in the United States and
 3    they went into Firestone and said, "Let's buy a set of tires
 4    and ship them back"?
 5              MR. GONZALEZ:  Absolutely not.
 6              THE COURT:  All right.  Then in Cause Number 43, what
 7    do we know about the vehicle in that case?
 8              MR. GONZALEZ:  We understand it to have been
 9    manufactured in Venezuela, Your Honor.
10              THE COURT:  And sold there as well?
11              MR. GONZALEZ:  Yes.
12              THE COURT:  And what do we know about the tires in
13    that case, or do we know?
14              MR. GONZALEZ:  Your Honor, as far as I know, that
15    tire has been delivered to Mr. Hicks with Firestone.  And I do
16    not know where it was manufactured.
17              THE COURT:  All right.
18              MR. GONZALEZ:  But it's my understanding Firestone
19    has actual possession of the tire.
20              THE COURT:  Then in 57, Adriana Canales Rodriguez,
21    what do we know about the vehicle in that case?
22              MR. GONZALEZ:  It was manufactured in the United
23    States, Your Honor.
24              THE COURT:  That's the one that was in St. Louis, I
25    believe; is that --
```

56

1            MR. KRAMER:  Yes, Your Honor.

2            THE COURT:  And then do we know how the Plaintiff --

3            MR. GONZALEZ:  We do not allege it was purchased in

4    the United States.

5            THE COURT:  All right.  And then what do we know

6    about the tires in 57?

7            MR. GONZALEZ:  We understand one of the tires failed.

8    That tire has been lost, misplaced or stolen.  This case, were

9    it to proceed on the tire claim, would be one where we would be

10   pushing the envelope of proof.

11           THE COURT:  Yeah.

12           MR. GONZALEZ:  We have the other three.  We believe

13   those all to be American-made tires.  We have possession of

14   those.  We have advised Firestone of the DOT on those.  Our

15   information is that the fourth tire is of the same type.  We do

16   not have the tire, nor do we know where it's at.

17           THE COURT:  All right.  What about the other three

18   tires?

19           MR. GONZALEZ:  We understand those to be American

20   tires.

21           THE COURT:  And they were manufactured --

22           MR. COPELAND:  Your Honor, I don't have any

23   information about that.  If we have the tires, then I don't

24   know that.  I don't dispute it.  Maybe we do.  That has not

25   been conveyed to me, so I don't know.

Todd Anderson, CSR, RMR                    (432) 686-0605

1           THE COURT:  Do you have -- didn't y'all -- does

2    Firestone manufacture any tires in Mexico?

3           MR. GONZALEZ:  They do.

4           THE COURT:  I'm not saying these tires.

5           MR. GONZALEZ:  No.

6           MR. COPELAND:  Firestone -- there is a separate

7    entity that is a Mexican company that is a Firestone -- it is

8    among the Bridgestone -- it's a sub, I think, of Bridgestone

9    Corporation.  It's in the family.

10          THE COURT:  Okay.

11          MR. COPELAND:  But it is a Mexican-made tire and --

12   but there are American-made tires that are made by my client

13   Firestone that are, of course, shipped to Mexico for sale.

14          THE COURT:  But we don't know where these tires --

15   where they fit into all of that?

16          MR. COPELAND:  We don't know.

17          MR. GONZALEZ:  I do not.

18          THE COURT:  Okay.  Great.  Now -- I just needed to

19   get straight some of the factual matters that we have.

20          All right.  Mr. Benavides.  Talk to me about

21   availability and adequacy.

22          MR. BENAVIDES:  Availability and adequacy.  Yes, Your

23   Honor.  If I may --

24          THE COURT:  Yes.

25          MR. BENAVIDES:  -- before I address your question --

```
 1              THE COURT:  Absolutely.

 2              MR. BENAVIDES:  If I could just point out a couple of

 3    things with regard to forum non conveniens analysis.

 4              THE COURT:  Yes, sir.

 5              MR. BENAVIDES:  As the Court indicated to us earlier,

 6    the Defendants do have the burden.  They have the burden of

 7    persuasion to show that there is in existence an adequate

 8    alternative forum.  They also have the burden to show that the

 9    public and private factors clearly point toward the alternative

10    forum.

11              Secondly, the central focus of a forum non conveniens

12    analysis is where the trial will be held that is convenient to

13    both parties, not simply one.  And in addition, that it will

14    serve the interest of justice.

15              And lastly, as the Supreme Court told us in

16    Quackenbush versus Allstate, the doctrine of forum non

17    conveniens proceeds from the premise that in rare circumstances

18    one court may relinquish its jurisdiction over a case to

19    another court.  And the emphasis there, Your Honor, is in rare

20    circumstances.

21              Now, with regard to your question, the Fifth Circuit

22    in Veba-Chemie A.G. versus M/V Getafix taught us that forum non

23    conveniens analysis doesn't even come into play unless the

24    Defendants can show us that the Plaintiff has available to it

25    at least two forums.  And these forums must not be in existence
```

 1    merely at the will or grace of the Defendants.

 2            Venezuelan courts in the two cases at bar do not

 3    provide an adequate alternative forum for two reasons.  Number

 4    one, jurisdiction under Article 40, Section 4 of the Statute of

 5    Private International Law requires that both parties submit to

 6    the jurisdiction of the Court.

 7            THE COURT:  Let me ask you this.

 8            MR. BENAVIDES:  Yes, Your Honor.

 9            THE COURT:  Doesn't that basically say there can

10    never be a case filed in Venezuela?

11            MR. BENAVIDES:  No, Your Honor, that's not saying

12    that.  What it's saying is that in order for a forum to exist,

13    both parties have to agree ahead of time.  They have to agree

14    expressly and unequivocally in writing that they are going to

15    submit themselves to the jurisdiction of that court.

16            THE COURT:  All right.  Is there any -- other than

17    Judge Barker's In re Bridgestone opinion, is there any other

18    court that has ever held that -- whether it was a products case

19    or an MDL case, any issue involving Venezuelan law on that

20    point?

21            MR. BENAVIDES:  Not that I'm familiar with, Your

22    Honor, no.

23            THE COURT:  Okay.

24            MR. BENAVIDES:  Basically the issue of the

25    application of Venezuelan law or the exercise of Venezuelan

1    jurisdiction has come up, to my knowledge, just in these

2    cases.

3            THE COURT:  Okay.

4            MR. BENAVIDES:  Now, with regard -- or more

5    specifically with regard to Article 40, Section 4, our expert

6    Dr. de Maekelt indicates a clear reading requires that both

7    parties expressly submit to the jurisdiction of the Court.

8    Opposing counsel has said, well, according to the Vasquez case

9    and the Gonzalez case, if the Defendant unilaterally submits to

10   the jurisdiction of the forum -- the alternate forum, that is

11   sufficient to meet this element.

12           Now, that may or may not be true under Mexican law.

13   In the Vasquez case, I believe it was, the Plaintiffs did not

14   dispute the availability of an alternate forum.  In the cases

15   at bar, we do contest that, Your Honor.  So that's not a given.

16   And it's their burden to show that such does exist.

17           THE COURT:  All right.  Now, as far as the -- and

18   Article 40, Section 4 of the Venezuelan Treaty doesn't apply to

19   the Mexican cases.  Is there another -- do you have a point as

20   far as availability or that would apply to the Mexican law?

21           MR. BENAVIDES:  Your Honor is correct.  We --

22   Article 4 [sic], Section 4, would apply only to the Venezuelan

23   cases.

24           With regard to the single Mexican case that we have,

25   or single case that involves a Mexican citizen -- excuse me --

1    we do not have an expert that we are relying on.

2            THE COURT:  Okay.

3            MR. BENAVIDES:  However, again I remind the Court

4    that it is the Defendants' burden.  And if the Court would

5    refer to Defendants' expert on Mexican law, it will note as

6    opposing counsel stated the same premise, that both parties

7    have to submit to the jurisdiction of the Court.

8            In this regard, for this particular case, we argue

9    before the Court that the same reason would apply on that

10    Mexican case.

11            Now, with regard to the Defendants' argument that,

12    "Well, if we follow the Plaintiffs' reasoning and adopt their

13    clear reading of the statute, Article 40, Section 4, and apply

14    their reasoning, well, then, there would never be a case where

15    a transfer would occur."  In contrast, Your Honor, or as is the

16    case based on their argument, there would never be a case in

17    which a Defendant would file a motion for forum non conveniens

18    that wouldn't be granted so long as they submit to the

19    jurisdiction of the alternate forum.  And that flies in the

20    face of the clear reading of the Venezuelan statute.

21            Now, with regard to jurisdiction under Article 40,

22    Section 2, jurisdiction by a Venezuelan court can only derive

23    from the verified facts in Venezuela.

24            Now, the Defendants claim that the verified facts in

25    these cases, particularly the Venezuelan cases, are all in

1    Venezuela.   The accidents happened in Venezuela.   The

2    investigations of those accidents occurred in Venezuela.

3    Autopsy reports, medical reports were all generated in

4    Venezuela.   The vehicles were purchased in Venezuela.   On and

5    on and on and on.

6         Defendants are incorrect, however, in stating that

7    these cases present merely an automobile accident.   At its very

8    heart these cases present an issue of strict liability, product

9    liability.   At its heart these cases present an issue of design

10   defect.

11        And if we look at the cause of action based on design

12   defect, we will find that the facts verifiable all reside in

13   the United States.   Both the vehicle and the tires were

14   designed in the United States.   The testing of the vehicle and

15   tires were done in the United States.   Accident and/or failure

16   rates were determined and records regarding that were done and

17   maintained in the United States.   All of that information that

18   is critical and central to the issue of design defect are in

19   the United States.

20        Now, Defendants have claimed based on the Gonzalez

21   versus Chrysler case that these facts are too attenuated and

22   that as such we should just look at the actual event that

23   precipitated the deaths and injuries of these individuals.

24   Well, again, that reasoning is a bit shortsighted, Your Honor,

25   because in the Gonzalez versus Chrysler case the Court in that

```
 1   case was dealing with a product that did not share the same
 2   multi-year -- or multi-national history of product failure as a
 3   result of design defect.
 4         In fact, in the Gonzalez versus Chrysler case, that
 5   Court was not dealing with products that failed to such a
 6   degree that the U. S. Government initiated congressional
 7   hearings and investigation to determine the nature of that
 8   defect.
 9         And it is this distinction, the fact that the facts
10   verifiable with regard to design defect are all situated in the
11   United States, that based on Dr. de Maekelt's significant
12   contact analysis which she says would be applied by a
13   Venezuelan court, and which I believe the Defendants'
14   Venezuelan expert does not contest.
15         Based on that application, the Venezuelan court would
16   find that the most significant relationship would be to the
17   United States, and a Venezuelan court would deny jurisdiction
18   or deny to exercise jurisdiction.
19         THE COURT:  Well, let's say that happened.  Let's say
20   I transferred this case to Venezuela.  A Venezuelan court comes
21   in and, you know, y'all show up in Caracas or wherever,
22   wherever it would be, and they say, "We don't have jurisdiction
23   of this case."  And I guess there is some appellate -- way to
24   go through an appellate system.  And that's held all the way
25   through.  Then doesn't that case come back to me?  Under
```

1    Gonzalez -- under Vasquez, doesn't the Fifth Circuit require in

2    that case for that case to come back?

3         MR. BENAVIDES:  Well, in that particular case, Your

4    Honor, it is premised on the fact that at least for the

5    purposes of that case, the Court determined that Mexican law

6    would allow a Mexican court to exercise jurisdiction so long as

7    the Defendant submitted itself to its jurisdiction.

8         THE COURT:  The point I'm after, though, is the point

9    that said that -- in fact, in the Fifth Circuit's opinion it

10   was vacated and remanded with instructions I think both as to

11   the issues of the -- the Court may have not had the right to

12   enjoin them from filing any more lawsuits or something like

13   that.  But I thought there was also a provision that the Court

14   also had to -- in fact, we had a little dispute about what this

15   thing is going to look like.  What's the --

16        MR. GONZALEZ:  Return of jurisdiction.

17        THE COURT:  Return of jurisdiction clause in the

18   District Court's order, which I don't think had anything to do

19   with the point of which law was being applied or not.  It was

20   just a question -- and I think that's -- is that in Vasquez or

21   in Gonzalez?

22        MR. COPELAND:  That is in Vasquez, Your Honor.  And

23   that's -- as far as I know, any other case that has been

24   dismissed by FNC, I believe the law is that they -- the Court's

25   dismissing a case must include a return of jurisdiction clause

1   so that in the event that the matter is not accepted by the

2   foreign forum or other things occur so that the Plaintiff is

3   denied access to the Court, it comes back to the Court from

4   whence it came.  That is a given.  That is -- that is an

5   absolute.

6         MR. GONZALEZ:  That's right.  I understand it would

7   be an abuse of discretion.  There is a separate case from

8   Vasquez.

9         But I think the point I would raise with respect to

10  that line of thinking, Your Honor, is that that should not be

11  included in the analysis as to whether it is appropriate to

12  send it.  Merely if you choose to send it, it must be included

13  so that if a jurisdiction does not accept it, it can come back

14  and justice can be done.

15        THE COURT:  I guess going back just a second.  And my

16  point is -- and I agree with you that it is not part of the

17  initial analysis except that it is not an all or nothing

18  situation.  I mean, it is -- the argument that -- I mean,

19  we're -- of course, in all cases we're making hypothetical

20  arguments, obviously, because we don't know what the Venezuelan

21  court is going to do or I'm going to do or the Supreme Court or

22  anybody else is going to do.  So there are always hypothetical

23  type arguments.

24        But it is not an all or nothing situation.  I mean,

25  the case does -- the Fifth Circuit does require it to come back

1   to this jurisdiction.

2        Go ahead, Mr. Benavides.  I'm sorry, I didn't mean to

3   interrupt you.

4        MR. BENAVIDES:  It's no problem at all, Your Honor.

5        With regard to the private factors, the private

6   factors in these cases weigh in favor of maintaining

7   Plaintiffs' choice of forum essentially for four reasons.

8        As the U. S. Supreme Court instructed us in Gulf Oil

9   Company versus Gilbert, the Defendants have the burden to show

10  that the private factors clearly point towards another forum.

11  And they failed to meet this burden.

12       Now, today the Defendants are attempting to lessen

13  their burden of persuasion with regard to the Plaintiffs'

14  choice of forum by making the argument that the Plaintiffs,

15  because they are not American citizens, are entitled to less

16  deference because they are foreigners.

17       It's our contention that this claim is without merit

18  because it has been recognized at least by the Second Circuit

19  that treaty obligations that exist between countries like

20  Venezuela and the United States and Mexico and the United

21  States entitles Plaintiffs who are citizens of those other

22  countries the same access to U. S. courts and on the same terms

23  as United States citizens.

24       Now, in addition, the supremacy clause of the United

25  States Constitution forms the basis of all of this, Your Honor.

1   And if I may recite from the Constitution, "This Constitution

2   and the laws of the United States which shall be made in

3   pursuance thereof and all treaties made or which shall be made

4   under the authority of the United States shall be the supreme

5   law of the land, and the judges in every state shall be bound

6   thereby, anything in the Constitution or laws of any state the

7   contrary notwithstanding."

8        Now, with this in mind and given the fact that the

9   United States has a treaty with Venezuela and a treaty -- an

10  economic treaty as well as a treaty and a friendship with the

11  United States -- or with Mexico, excuse me -- the courts of

12  this country should be accessible on the same terms to

13  Venezuelan citizens and Mexican citizens as they would if they

14  were U. S. residents or citizens.

15       THE COURT:  Yeah, but doesn't that apply to when

16  those citizens of those countries are actually within our --

17  within the boundaries of our country that we open our courts to

18  them?

19       For instance, if someone from Venezuela had an

20  accident here, we can't discriminate against them because they

21  are from Venezuela as opposed to being an American citizen.

22       MR. BENAVIDES:  Not necessarily, Your Honor.  That

23  could certainly be one situation where U. S. courts would be

24  available under the same terms to a foreign citizen.  However,

25  there is a lot of case law in which citizens from a foreign

```
 1  country who are injured in a foreign country bring a lawsuit to

 2  the United States.

 3          THE COURT:  All right.  And, again, this goes back

 4  to -- I guess this is the Treaty of 1836 that we're talking

 5  about?

 6          MR. BENAVIDES:  That's correct, Your Honor.

 7          THE COURT:  All right.  Are there any cases that have

 8  interpreted -- other than Judge Barker's opinion and In re

 9  Bridgestone that have interpreted the Treaty of 1836?

10          MR. BENAVIDES:  Yes, Your Honor.  I refer the Court

11  to Alcoa Steamship Company versus M/V Nordic Regent, 654 F.2d

12  147, Second Circuit case, 1978.

13          THE COURT:  And what -- 654 -- what was the rest of

14  it?

15          MR. BENAVIDES:  F.2d 147.

16          THE COURT:  And is it a maritime case?  Because I

17  heard a ship in there somewhere.  I always wonder if it's an

18  admiralty or a maritime case.

19          MR. BENAVIDES:  I don't recall off the top of my

20  head, Your Honor.  If the Court will indulge me for a moment.

21          THE COURT:  Certainly.

22          MR. BENAVIDES:  Let me find that case for you.

23          THE COURT:  I have looked forward to doing admiralty

24  out here, but so far the Pecos has been too dry to sail any

25  ships up that navigable stream.
```

```
 1          MR. BENAVIDES:  Unfortunately, we've been having the

 2   same problem down in the Valley, Your Honor.

 3          (Pause)

 4          MR. BENAVIDES:  While I find out, Your Honor, there

 5   is also another case in which treaty law has been considered,

 6   and that is the Blanco versus -- I know I'm going to just

 7   butcher the name of this -- Blanco versus Banco.  And the cite

 8   to that, Your Honor, is 997 F.2d 974.  And that is also a

 9   Second Circuit case decided in 1993.

10          THE COURT:  And do you recall the basic facts of the

11   case or the nature of the actions or --

12          MR. BENAVIDES:  This case involved a construction and

13   development of a large privately owned residential apartment

14   complex in Venezuela.  And the Plaintiff in this case was a

15   construction contractor who had an agreement with the bank for,

16   I believe, somewhere in the neighborhood of $40 million.  And

17   there was a loan agreement that was outstanding.

18          I'm looking for the Alcoa case.

19          THE COURT:  We've got plenty of time, so --

20          (Pause)

21          MR. BENAVIDES:  And what happened there is the

22   Plaintiff, who was a Venezuelan company, filed the action

23   against the Defendant in the Supreme Court of the State of New

24   York for breach of fiduciary duty, conversion and wrongful

25   exaction of fees and interest.  And the Court did do an
```

Todd Anderson, CSR, RMR                    (432) 686-0605

1  analysis of jurisdiction based in part on an analysis of the

2  treaty.

3         THE COURT:  And Mr. Alcoa was a Venezuelan citizen,

4  and the bank was a U. S. banking corporation?

5         MR. BENAVIDES:  Well, this particular case, Your

6  Honor, is the Blanco versus Banco Industrial.

7         THE COURT:  I'm sorry.

8         MR. BENAVIDES:  I'm still looking for the Alcoa case.

9         (Pause)

10         MR. WEBER:  Your Honor, while they do that, may I

11  interrupt?

12         THE COURT:  Yes.

13         MR. WEBER:  On the ruling earlier on the 12(b)(6),

14  would the Court like for me to submit orders?

15         THE COURT:  That will be fine.  If you can get them

16  to Mr. Agrawal.

17         MR. WEBER:  I will do that.

18         THE COURT:  And you need to get them to him before

19  the 19th of September.

20         MR. WEBER:  I will get them --

21         THE COURT:  Because he goes on active duty with a

22  real law firm on that date, so he's --

23         MR. WEBER:  I will have them to him by Monday.  And,

24  Judge, I have depositions here in Midland County this

25  afternoon, so if I may be excused.

Todd Anderson, CSR, RMR                    (432) 686-0605

1          THE COURT:  You may be excused, Mr. Weber.

2          MR. WEBER:  Thank you, Your Honor.

3          (Pause)

4          MR. BENAVIDES:  I don't believe I have a copy of

5     that.

6          THE COURT:  We will look it up.  We will get

7     Mr. Agrawal to look it up for us.

8          MR. BENAVIDES:  Okay.  With regard to the private

9     factors, Your Honor, the Supreme Court in Calenberg versus Bear

10    taught us that in deciding the issue of forum non conveniens

11    the trial court has to scrutinize and determine a lot of

12    different things.

13         The trial court has to determine what are the causes

14    of action.  The trial court has to determine what are the

15    central disputed issues between the parties.  The trial court

16    has to determine what is the relevant evidence as well.

17         In these cases we're dealing with the central issue

18    of deaths and injuries caused by the design or product failures

19    of the Defendants' products due to a design defect.  As such,

20    the relevant and critical information and evidence pertaining

21    to that central issue revolves around design history and

22    comment, testing, the depositions of corporate representatives,

23    the deposition of design experts, the deposition of experts

24    that did the testing of these products, the depositions of

25    individuals that have been retained by opposing counsel in

 1   defense of this case.

 2        In short, this huge volume of evidence is situated in

 3   the United States, and it is going to require -- if this Court

 4   dismisses this case and it's refiled or attempted to be refiled

 5   in a Venezuelan court or a Mexican court, for that matter, all

 6   of these documents are going to have to be translated into

 7   Spanish.  All of these depositions are going to have to be

 8   translated into Spanish.

 9        And if the underlying basis for a forum non

10   conveniens analysis is to try a case where it is convenient to

11   both parties, it seems kind of intuitive that having to take

12   this vast amount of documentary evidence, translate it, and

13   then transport it to Venezuela wouldn't be convenient to both

14   parties.

15        THE COURT:  Let me ask you this.

16        MR. BENAVIDES:  Certainly.

17        THE COURT:  Does every document, though, that -- I

18   mean, we all know we get more documents in discovery than what

19   we actually use at trial.  So the repository or depository for

20   the MDL may have 2 million pages of documents.  Whatever it

21   has, it has a bunch.  Obviously not all of those pages are

22   going to be used in trial either in the United States or in

23   Venezuela.

24        So, I mean, good lawyers like yourself will be

25   assisting, I'm sure, down there as to which documents would be

Todd Anderson, CSR, RMR                    (432) 686-0605

1   relevant or not.  So really not every document would have to

2   be -- and I recognize there would be a considerable number.

3   I'm sure there's some sort of trail of documents that y'all

4   would believe is relevant.  But not every document that has

5   been filed in the MDL would have to be translated.  We could

6   agree with that?

7           MR. BENAVIDES:  Perhaps, perhaps not, Your Honor.  I

8   would -- I would make the argument that it is likely that every

9   scrap of paper would have to be translated because in order for

10  us to try this case in a Venezuelan court, we're going to have

11  to associate with local counsel in Venezuela.

12          And I would imagine that local counsel in Venezuela

13  is going to want to look at each and every scrap of paper in

14  order to determine for themselves what's relevant and what's

15  not and what's going to be used.

16          So in that sense, Your Honor, I would say that

17  everything is going to have to be translated.

18          THE COURT:  Okay.

19          MR. BENAVIDES:  Now, the Defendants have talked about

20  the fact that, well, you know, the Plaintiffs are in Venezuela

21  or Mexico; the investigative reports, Venezuela or Mexico;

22  autopsy reports, medical reports, Venezuela or Mexico.

23          Well, all that's true.  We don't disagree with that

24  at all.  However, if you compare the sheer volume of the

25  evidence that is going to be obtained from these individuals in

```
 1   Venezuela and Mexico, and compare that to the volume of
 2   evidence that is situated in the United States, there is no
 3   comparison.
 4            THE COURT:  But how do they get -- the people that
 5   came on the scene -- how do we get the bus driver to come to
 6   Pecos, Texas?  How do we get the police officer?  Because all
 7   of those things -- and I have never handled one of these cases
 8   on either side, so all I know is what I have read in the paper
 9   and pleadings that have been in these cases.
10            How do the Defendants get that testimony into their
11   trial that they are entitled to of eyewitness testimony?
12            MR. BENAVIDES:  I understand the Court's concern, and
13   it's a very valid concern.  What I can tell the Court is this.
14   What we've done in these cases is at our own expense we have
15   gone and obtained the investigative reports, the accident
16   reports, the reports from the police officers, any medical
17   reports that we've been able to get our hands on that we've
18   obtained, autopsy reports if they're out there that we've
19   obtained, and we've had them translated.  And we've already
20   exchanged them with the Defendants.
21            THE COURT:  But, again, how does the bus driver whose
22   eyewitness testimony in the case -- assuming -- and I'm sure
23   y'all would have objected if Mr. Copeland had not stated -- or
24   whoever it was, Mr. Copeland or Mr. Kramer -- there was a bus
25   involved in an accident.  They are entitled to have that bus
```

1  driver's testimony if it helps them in presenting to a jury in

2  Pecos, Texas.

3           MR. BENAVIDES:  I agree with you, Your Honor.

4           MR. GONZALEZ:  If I may interrupt briefly.

5           THE COURT:  Sure.

6           MR. GONZALEZ:  With respect to the Venezuelan case,

7  as I understand, the Hague Convention applies.  There is a

8  mechanism via the Hague Convention.  More importantly, Your

9  Honor, we know as a practical matter Mike Cadell has a series

10  of cases against these various Defendants, and they have taken

11  literally hundreds of depositions by agreement in either

12  Venezuela or Aruba of these precise kinds of witnesses.  So

13  between one or the other of those mechanisms, it can be

14  accomplished.

15           With respect to Mexico there is a bilateral treaty

16  that applies.  And, again, we -- our experience has been in

17  Mexican accidents we've always been able to get the

18  investigating officer and the eyewitnesses available by

19  agreement even without the bilateral treaty.  But those things

20  can be done, and they are being done with frequency in these

21  types of cases, Your Honor.

22           THE COURT:  Okay.  Can I order -- let's say I send

23  this case to Venezuela.  Do I have the authority in my forum

24  non conveniens order to say that -- and Mr. Smith, who was a

25  crucial witness for y'all -- I mean, that is a Ford expert or a

1   Ford design person.  Do I have the authority and order to say

2   that Mr. Smith, employee of Ford, will go if requested to

3   Venezuela and testify or to Mexico and will testify?  Do I have

4   the authority to do that as a part of the order dismissing the

5   case?

6          MR. GONZALEZ:  I don't know that you have that

7   authority.  I know that the Defendants have offered to do that.

8   With respect to the Venezuelan cases, my understanding of

9   Venezuelan law is that if the depositions are not ordered by

10  the Venezuelan court, they won't accept those depositions.  So

11  my belief is that they would have to go.  But I don't know that

12  there is any authority for this Court to order that to happen

13  or not.

14         THE COURT:  Okay.  All right.

15         MR. BENAVIDES:  Now, as another private factor, Your

16  Honor, we would refer the Court to the volatile Venezuelan

17  political situation that exists in that country right now and

18  the fact that that would, in fact, compromise any convenience

19  of holding a trial there.

20         In their reply brief to our response, the Defendants

21  indicated that they were not satisfied with our recitation of

22  the volatile political situation because it's a year old.  And

23  we've attempted to address that concern by obtaining and

24  presenting to the Court -- I believe I gave the Court a copy of

25  these articles.  They're not from today's newspaper, but they

1   are within the past year, and they are essentially very

2   current.

3           We will refer the Court to a February 24th, 2003

4   report that talks about three people being wounded when two

5   bombs in the Spanish Embassy and the Colombian Consulate

6   exploded.

7           We will refer the Court to a February 27, 2003 report

8   that there was protest against the "vicious judicial system" in

9   connection with the trial of seven executives for a company,

10   PDVSA.

11          We also refer the Court to a March 21st, 2003 article

12   published in Analitica.com which talks about Venezuelan

13   simmering political crisis.

14          THE COURT:  But let's say we had articles from the

15   United States.  And, gosh, time has passed now, and it is

16   embarrassing not to remember.  But 1995, terrorists blow up

17   federal building in Oklahoma City.  September 11, 2001,

18   terrorists blow up -- crash airplane -- I mean, everybody has

19   got that.  It doesn't mean that the whole judicial system and

20   everything in the country has, you know, melted down.

21          MR. BENAVIDES:  Well, Your Honor, in response to

22   that, if I may, there is a world of difference between pointing

23   out 1995 bombing of a building or, let's say, riots in Florida

24   or what have you, when you compare that to looking at an entire

25   political system and that entire political system being

```
 1   volatile.
 2            THE COURT:  Impeachment of President of the United
 3   States.  I mean, you know, we have gone through some pretty
 4   volatile times if you were outside our country and -- you know,
 5   I think it shows, you know, what a wonderful system we have
 6   that we are able to withstand these sort of things.
 7            MR. BENAVIDES:  I would agree with the Court.
 8            THE COURT:  But I get the point.  I get the point.
 9            MR. BENAVIDES:  Thank you.
10            THE COURT:  Yes, sir.
11            MR. BENAVIDES:  Now, with regard to the admissibility
12   of evidence, the Defendants have presented the Court with
13   Venezuelan law experts.  And, again, we oppose the Court giving
14   him any consideration whatsoever.
15            THE COURT:  Is this only as to the supplemental?
16            MR. BENAVIDES:  Supplemental, yes, Your Honor.
17            THE COURT:  All right.
18            MR. BENAVIDES:  And it is -- I believe it is only in
19   the supplemental that he really gets into developing his
20   opinions and conclusions with regard to the admissibility of
21   evidence in the Venezuelan court.
22            Now, the Court in the MDL, in In re
23   Bridgestone/Firestone, determined based on the expert testimony
24   of Dr. Annabelle Guerra, who was a former Justice of the Court
25   of Justice in Venezuela, that some evidence would not be
```

```
 1   admissible in the Venezuelan court under Article 813 to 818 of

 2   the Venezuela Code of Civil Procedure.

 3         If the Court wants to look at Mr. Hernandez's

 4   affidavit with regard to his opinions and conclusions on

 5   admissibility of evidence, the Court will note that

 6   Mr. Hernandez refers to just about every provision in the code

 7   of Venezuelan civil procedure except Articles 813 to 818.  So

 8   they do not present any conflicting testimony or opinion with

 9   regard to those particular provisions.

10         THE COURT:  And what are -- what evidence under 813

11   to 818 will not -- at least as to that opinion will not come

12   into evidence?

13         MR. BENAVIDES:  If I recall, Your Honor -- and I'm

14   going to paraphrase.  Basically what those articles involve is

15   the deposition testimony of individuals obtained in the United

16   States.  They have to follow a certain procedure in order to be

17   admissible in a Venezuelan court.

18         THE COURT:  Let me ask you this.  If the parties

19   agree to this, do the courts accept that agreement?  For

20   instance, if both the Plaintiffs and the Defendants agree that

21   this is the -- you know, we're going to take -- you know, maybe

22   they don't use video depositions, but y'all agree to use video

23   depositions.  Can that be admissible in the court even though

24   one party objected that it would not have been?

25         MR. BENAVIDES:  I don't know the answer to that
```

1   question, Your Honor.  I don't know for sure.

2            THE COURT:  Okay.

3            MR. BENAVIDES:  I don't know enough about Venezuelan

4   law to be able to enlighten the Court, I'm afraid.

5            THE COURT:  All right.

6            MR. BENAVIDES:  I think I would have to go back to

7   law school for another year.

8            THE COURT:  All right.

9            MR. BENAVIDES:  Now, with regard to the public

10  factors, the Defendant has weighed in and talked about a lot of

11  public factors that weigh against maintaining jurisdiction in

12  this court, while it's our position that the public factors in

13  these cases do, in fact, weigh in favor of maintaining

14  jurisdiction over these cases here in the United States for

15  three reasons.

16           Number one, the United States does, in fact, have a

17  considerable interest in the resolution or disposition of these

18  cases.

19           Number two, the State of Texas has considerable

20  interest in the resolution or disposition of these cases.

21           And number three, this Court's docket is not going to

22  face any administrative difficulties or any clogging if these

23  cases wind up coming back here for trial.

24           THE COURT:  Okay.  Tell me why the State of Texas has

25  this interest if we're down now to Ford and Firestone and they

1    happen in Venezuela?  How does the State of Texas have an

2    interest?

3         MR. BENAVIDES:  Well, Your Honor, with regard to the

4    State of Texas's interest in this, the fact is is that Ford and

5    Firestone have produced products that have failed because of a

6    design defect.  And injuries and deaths have resulted from

7    those design defects and product failures.

8         These deaths and injuries have not occurred only in

9    Mexico.  They have not only occurred in Venezuela.  They have

10   not only occurred in Colombia or other South American

11   countries.  They have occurred in New York; they have occurred

12   in Florida; and they have occurred in Texas.

13        The citizens of our neighbors, friends, family

14   members have been injured or killed as a result of these

15   products.  And the State of Texas does have considerable

16   interest in assuring that the driving public is safe.

17        THE COURT:  But don't those people who are involved

18   in those accidents, say, if they brought their claims -- or if

19   they felt they had a claim in the State of Texas?

20        MR. BENAVIDES:  That is correct, Your Honor.  We

21   don't disagree with that at all.

22        THE COURT:  Okay.

23        MR. BENAVIDES:  However based on Texas's conflict of

24   laws principle, and more importantly Section 71.001 of the

25   Texas Civil Practice and Remedies Code, Texas provides

Todd Anderson, CSR, RMR                    (432) 686-0605

1   nonresidents, even individuals who are noncitizens, recourse to

2   file tort causes of action against individuals like the

3   Defendants today.  And based on that it is our contention that

4   Texas does have an interest in resolving these cases.

5           THE COURT:  But doesn't the forum -- is that the

6   forum non conveniens provision?

7           MR. BENAVIDES:  Forum non conveniens, yes, Your

8   Honor.

9           THE COURT:  But they go through the same analysis,

10  though?

11          MR. BENAVIDES:  That is essentially correct.  Now,

12  with regard to the United States interest, you know, clearly

13  these are very large corporations.  They are multi-national

14  corporations.  They are American corporations.  The United

15  States has treaty obligations, both economic as well as

16  relationship type treaties, with other countries.  And the

17  United States Government has an interest in assuring that the

18  products that we send out under the auspices of these economic

19  and trade treaties aren't going to injure other people.

20          With regard to the Court's docket, let me just say

21  that these cases are not going to clog the Court's docket or

22  cause this Court any administrative difficulty based on the

23  fact that if these cases are, in fact, transferred to the MDL,

24  which we believe is likely given the past history of the MDL

25  and its purpose and interest in resolving these types of cases,

1    96 percent never come back to the transferring court.

2         The chances are very good, much better than the

3    Cowboys winning next Monday night against the Giants, that

4    these cases are never going to come back.  They are going to be

5    either resolved or they are going to be dismissed, or they're

6    going to be settled, one of the three.

7         Now, even if by some miracle these cases do come back

8    to this Court, we are dealing with -- at most with these three

9    cases, including minors, next of friends and all that, around

10   20 plaintiffs for three cases.  These cases are not going to

11   cause this Court any additional administrative difficulty than

12   any other case before this Court.

13        Compare this case -- these cases to the case of Nolan

14   versus Boeing which was heard by a Louisiana court.  And in

15   this particular case there were 100 foreign plaintiffs.  And

16   the Court in that case recognized that it was going to take

17   months to try that case.

18        These cases will take a week, maybe two weeks

19   depending on the number of experts that we have, but no more.

20        THE COURT:  I'm going to write that down, a week

21   but --

22        MR. BENAVIDES:  I also said two weeks, Your Honor.  I

23   also said two weeks.

24        In conclusion, Your Honor, we -- we feel that the

25   Defendants, while they may have adequately described a forum

```
 1   non conveniens analysis, have not met their burden of
 2   persuasion.  And we would respectfully ask that this Court deny
 3   their motion.
 4           THE COURT:  All right.  Let's take a break here.
 5   Have y'all discussed settlement among yourselves?  How do y'all
 6   do these cases?  Do y'all ever get together?
 7           MR. GONZALEZ:  Your Honor, I can address that.  We
 8   were in Indianapolis -- Mr. Kramer was there -- with the MDL
 9   magistrate on eight cases that our office has.  The other cases
10   but for these we had substantive settlement discussions.  We
11   were far apart, but they made very good faith offers to settle.
12   We left money on the table when we left, but these gentlemen
13   specifically in front of the judge made it very clear that with
14   this hearing pending they would make no offer.
15           And so with that in mind, we would urge the Court
16   again to defer ruling until a later date.  But we would love to
17   talk settlement with these people.
18           THE COURT:  Mr. Kramer?
19           MR. KRAMER:  I might add in, Judge, that's not quite
20   the full story.  I mean, I'll delay going through all the
21   facts.  But what we know in Guedez, for example, what
22   Mr. Copeland referenced, is the tip of the iceberg.  But I
23   won't get into why the woman was ejected, where she was ejected
24   or wearing any clothes at the time of the accident.
25           THE COURT:  I'm not interested -- I just -- I asked a
```

```
 1   very simple question.  Go ahead.

 2            MR. KRAMER:  Your Honor, we would -- there are any

 3   number of reasons why we wouldn't be settling this case or a

 4   number of others of Mr. Cantu's cases, and certainly not

 5   without investigating them all carefully.  But there might have

 6   been one case that we were willing to get rid of on the fact

 7   that it looked bad on top, but no interest in the rest of

 8   these.

 9            And that was -- I think these would fall out -- that

10   4 percent group, these are the type of cases that fall into

11   that 4 percent group.

12            THE COURT:  Well, let's take about a 10-minute break.

13   What is y'all's plane schedules getting out here today?

14            MR. GONZALEZ:  1:30 for us, Your Honor.

15            MR. KRAMER:  1:30.

16            THE COURT:  1:30.  We'll come back.  Let me take a

17   break here for a second.

18            MR. GONZALEZ:  Thank you, Your Honor.

19            SECURITY OFFICER:  All rise.

20            (Recess from 11:00 to 11:15)

21            THE COURT:  All right.  Please be seated.

22            Has Judge Cobb entered his final orders yet?  Do we

23   know?

24            MR. COPELAND:  He just did.

25            THE COURT:  And just did is like today, yesterday?
```

1          MR. COPELAND:  Well, he entered an order.  We filed

2    some additional briefing, and he had revised his order.  And it

3    was done as of -- I got it Friday, I believe.

4          THE COURT:  And that deals with the injunctive

5    issues?  Is that one of the things that y'all went back to look

6    at?

7          MR. COPELAND:  Yeah, we went back and looked at how

8    the injunction should be reformed.  And ultimately what he has

9    done is he has said, "My injunction extends only to the choice

10   of law issue," and enjoins any court in Texas, whether it be

11   federal or state, to applying anything other than Mexican law.

12   And it applies to only the Defendants -- they have gone and

13   filed another case in Laredo, and they added additional

14   defendants.  So they added additional defendants, and the case

15   was dismissed, and he has a return of jurisdiction clause.

16         THE COURT:  And help me with what the return of

17   jurisdiction clause is.

18         MR. COPELAND:  Well -- I'm sorry.

19         THE COURT:  Go ahead.

20         MR. COPELAND:  It is simply a clause that is -- first

21   of all, when he first entered his order, he did not have one.

22         THE COURT:  Right.  And that got remanded.

23         MR. COPELAND:  The Fifth Circuit says you have to

24   have one.  And it is, as I understand it, a provision that sets

25   out the conditions under which that case, the dismissal occurs.

```
 1              And if the case gets to the foreign forum to which it
 2    has been transferred and the Court there does not accept the
 3    case or other matters occur that would obstruct the Plaintiffs'
 4    ability to have a hearing, then it comes back to the case from
 5    whence -- the Court from whence it came.
 6              THE COURT:  I'm sorry, I wandered for a second.  Say
 7    that one more time.
 8              MR. COPELAND:  Well --
 9              THE COURT:  The last part.
10              MR. COPELAND:  It deals with the ability of -- well,
11    if they can't get jurisdiction of the court, for whatever
12    reason the foreign jurisdiction pops it out and they're not
13    able to go forward anymore, then it comes back here.
14              THE COURT:  Okay.
15              MR. COPELAND:  It requires typically the Defendant to
16    waive limitations at least as to new limitations arguments that
17    would have not existed at the time dismissal occurred.  So
18    because of the delay and refiling in Venezuela, you can't go in
19    and argue that limitations applies.
20              THE COURT:  Mr. Gonzalez.
21              MR. GONZALEZ:  There is a forum proposed order that I
22    had filed in the alternative if the Court rules that it is
23    dismissed that is on page 25 of the Hange Guedez, which I think
24    is in proper order.  And I had a similar one approved by Judge
25    Hinojosa in McAllen.
```

```
 1              What it states is that the Defendants agree to submit
 2    to the foreign jurisdiction and processing in foreign courts,
 3    that the Defendant waives limitation defenses, that the
 4    Defendant agrees to submit to discovery in the foreign forum,
 5    that the Defendant agrees that discovery in the U. S. suit may
 6    be used in a foreign suit, that the Defendant agrees to make
 7    its witnesses and evidence available in the foreign
 8    jurisdiction.  That's not to say that they accept it.  And that
 9    the Defendant agree that the foreign judgment may be enforced
10    against it in the United States and would give full faith and
11    credit.  And that if the Defendant obstructs the suit in the
12    alternative forum or the Court in the alternative forum does
13    not accept the case, the Plaintiff may return to an American
14    forum.
15              I think all of those are the type of things that the
16    Court has the authority to put in the return of jurisdiction
17    clause.  Obviously, the limitations defenses are very, very
18    important.  Obviously, if they are going to go to a foreign
19    forum and then say, "We're not subject to your jurisdiction,"
20    then in that case it should come back.  And the full faith and
21    credit is also a question of enforceability.
22              THE COURT:  Let me go just a second on the limitation
23    issue.  It would seem to me -- and maybe y'all both already
24    agreed to this.  As far as limitations are concerned, if the
25    case was barred by limitations when it was initially filed in
```

1    the United States --

2              MR. GONZALEZ:  Different story.

3              THE COURT:  -- it continues to be barred by

4    limitations?

5              MR. GONZALEZ:  That's true.

6              THE COURT:  We are not trying to revive anything.

7              MR. GONZALEZ:  That is true.

8              THE COURT:  Go ahead.  Yes, sir.  Mr. Copeland.

9              MR. COPELAND:  We likewise, Your Honor, in our reply

10   brief to their response to the forum non conveniens motion set

11   out the conditions that we would suggest are appropriate for

12   the return to this Court's jurisdiction clause.

13             THE COURT:  All right.  Mr. Copeland, you or

14   Mr. Kramer have anything that you would like to add in rebuttal

15   to -- or in response to what Mr. Benavides and Mr. Gonzalez had

16   to say?

17             MR. COPELAND:  Your Honor, let me just add a few

18   things.  First of all, throughout their discussion about the

19   standard by which you're to judge the balancing of public and

20   private factors, they say the factors must clearly point to

21   dismissal.  That is a position that has only been accepted by

22   the Second Circuit.  It was not accepted by even Judge Barker.

23             And no one has mentioned the case in the Southern

24   District of Texas decided in February of this year by Judge

25   Rosenthal in Houston which is in the Zermeno, Z-E-R-M-E-N-O,

1    versus McDonnell Douglas Corporation case decided February

2    18th, 2003.

3          In that case she was dealing with the Mexican treaty

4    that we discussed, the equal rights treaty with Mexico.  And

5    she says here on page 661, "Plaintiffs argue that their choice

6    of the United States forum is entitled to substantial

7    deference, and then to give a lower degree of deference to

8    Plaintiff's foreign selection violates the American treaty

9    obligations under the international covenant on civil and

10   political rights.  This treaty prohibits according inferior

11   treatment to foreign citizens in American courts.  The case law

12   does not support this argument."

13         And she goes on -- I'm skipping over down to page

14   662, "The central purpose of the forum non conveniens inquiry

15   is to ensure the trial is convenient.  When a foreign plaintiff

16   chooses the United States forum, it is 'much less reasonable'

17   to presume that the choice was made for convenience."

18         So there is a -- there is a decision within the Fifth

19   Circuit recently decided on equal treaties and a situation

20   where the other side was arguing that they were entitled to the

21   same presumption as United States citizens filing a case in

22   which the Court said no, that's not right.

23         So I will bring that to the Court's attention.

24         THE COURT:  All right.

25         MR. COPELAND:  So I think that our argument is that

1    in this -- that the treaty rights, whatever they may be with

2    Venezuela, the equal treaty rights, could not change the

3    position that a foreign plaintiff is typically in.

4         I want to point out something to the Court.  And I

5    don't believe this was done in any way intentionally, but I

6    think it is important.  The Plaintiffs have -- in arguing that

7    in the Fifth Circuit that we've not met our burden on

8    availability have quoted from the brief language from what

9    purports to be the Veba-Chemie case, which is a Fifth Circuit

10   case decided in '83, which we rely on heavily as well.

11        And it says here that, "The doctrine of forum non

12   conveniens furnishes a criteria for a choice between two or

13   more forums in which the Defendant at a minimum must process.

14   At least two such forums must be available to the Plaintiff

15   before the doctrine can come into play, and they shall not be

16   dependent merely upon the will or grace of the Defendant, but

17   must be provided by law."

18        I have scoured that opinion, and I have likewise

19   asked the Plaintiffs.  That language does not appear in the

20   Veba-Chemie case.  The Veba-Chemie case stands for exactly the

21   opposite proposition, and that is that the availability

22   criterion cannot be dependent upon the grace or the will of the

23   Plaintiff.  The case does not say that in those words, but I

24   believe the proposition and principles articulated there

25   support that interpretation.

1           Finally -- not finally.  On the inquiry again about

2    whether there is jurisdiction under Venezuelan law, there

3    clearly is if both parties agree.  There clearly is.  And the

4    question then is that -- that's as far as you need to go in

5    Venezuelan law.

6           Then the question becomes, "Well, okay.  How does the

7    United States forum non conveniens law view the unilateral

8    refusal of the Plaintiff to agree to that?  That's the inquiry,

9    and that is the end of the Venezuelan law inquiry.

10          The argument concerning the balancing of private

11   factors, I submit to the Court, have been decided.  Vasquez has

12   decided these questions.  The Court said on page 673,

13   "Analyzing the private factors, the Court correctly determined

14   that the trial should be held in Mexico.  The Court emphasized

15   that Plaintiffs, the driver of the vehicle, and all the

16   witnesses are Mexican citizens.  In addition, the vehicle and

17   the tires were manufactured, purchased and maintained in

18   Mexico.  The vehicle had a Mexican owner.  And the trip took

19   place entirely in Mexico.  All the physical evidence and

20   medical reports are in Mexico.  Conducting a trial in the

21   United States would require the translation of numerous reports

22   and witness testimony.  Federal courts have no power of

23   compulsory process over Mexican citizens, including the

24   surviving driver and passenger, police and mechanics who

25   serviced and maintained the vehicle."  In my mind, that decides

1   the issue in this case.

2          As far as whether or not depositions would be

3   available for use in Venezuela, Mr. Guerra's initial affidavit

4   says that evidence taken in the United States is admissible.

5   The Plaintiffs have offered no proof in this matter, in this

6   court on that issue.

7          And, finally, on balancing the public factors, they

8   discussed everything is in the interest of Texas; the interest

9   of Texas is critical.  And there is none.  And that is all I

10  have, Your Honor.

11         THE COURT:  Mr. Kramer, anything that you would like

12  to add?

13         MR. KRAMER:  Very briefly, Your Honor.  The

14  Plaintiffs made their argument on availability, as Mr. Copeland

15  just addressed, dealing with the Venezuela law and the fact

16  that both parties -- their argument that both parties had to

17  consent.

18         They also attempted to extrapolate that same argument

19  to their Mexican case, to the Rodriguez Canales case.  They

20  can't do that in this instance because there is -- we're

21  dealing with two different statutes.  But they also have no

22  Mexican law expert on -- in the Rodriguez Canales case they

23  presented to the Court to make that argument.  So regardless of

24  whether it would be valid on the Venezuelan case, it does not

25  apply as they attempted to assert on the Mexican case.

1           On the private factors, Your Honor, the Plaintiffs'

2    counsel rephrased our argument as a statement that

3    Plaintiffs -- the defense were saying that the Plaintiffs were

4    entitled to less deference simply because they were citizens of

5    a foreign state.  That, of course, is not what we're saying.

6    What we're saying is what the Supreme Court said in the Piper

7    aircraft case, which is where a Plaintiff has elected or chosen

8    a forum simply to take advantage of more liberal products

9    liability law and more liberal pleading rules; that they are

10   not entitled to any deference in that election under those

11   circumstances.

12           Also under the private factors, there was some

13   discussion of translation.  And the Court raised its own issue

14   of whether everything would have to be translated.

15   Specifically with respect to the design documents that might

16   exist or testing documents, of course, we need to keep in mind

17   that those documents would be documents that would be examined

18   by -- the Plaintiffs themselves have said they would have

19   American experts in those fields.

20           So those documents would be reviewed by

21   English-speaking experts.  While it remains possible that

22   certain documents might have to be translated for admission

23   purposes later on, you certainly would not find yourself

24   translating millions and millions of documents.

25           And on the Guerra affidavit, I again emphasize that

```
 1   their objection to Mr. Guerra's supplemental affidavit relates

 2   purely to the fact that -- and as we talked earlier, his

 3   additional testimony that supplemental affidavit relates purely

 4   to Hague Convention, to noncase specific issues.  But those

 5   same matters are addressed on page 5 of Mr. Guerra's primary

 6   affidavit in this case where he talks about the admissibility

 7   of evidence that is taken outside the United States and the

 8   sort of broad Venezuelan provision under Venezuelan law that

 9   anything not prohibited expressly can come in if everybody

10   agrees.

11           THE COURT:  Okay.  Thanks.  Anything else,

12   Mr. Gonzalez, Mr. Benavides, y'all would like to add?

13           MR. GONZALEZ:  Your Honor, with respect to the quote

14   from what we thought was the Veba-Chemie case that counsel just

15   pointed out, we reviewed that case and we don't find that

16   precise quotation in there.  But we did get it from somewhere,

17   and I can provide that to the Court, because I'm not smart

18   enough to make it up, Judge.

19           THE COURT:  Some law review probably put it in there.

20   And don't -- or some other judge quoted it.  Don't worry about

21   that.

22           MR. GONZALEZ:  We'll run that down.

23           THE COURT:  Okay.

24           MR. GONZALEZ:  Your Honor, with respect to this

25   entire analysis, I would just urge the Court to keep in mind
```

1   that, you know, the issue of convenience is what this whole

2   thing is about.  But, you know, we're representing families of

3   people that suffered real loss that are looking to this Court

4   and looking for justice from products that cause these -- in

5   our view cause their injuries and deaths.  And so we would urge

6   the Court to keep that in mind in its analysis.  We certainly

7   thank you for the adequate time to address it, and we're very

8   pleased to be here, Judge.

9        THE COURT:  Thank you very much.

10       First of all, I am not going to consider the

11  supplemental affidavit of the Defendants' expert in my analysis

12  of the case.  My first order will be in Cause Number

13  Pecos-03-CV-57 entitled Adriana Canales Rodriguez versus

14  Bridgestone/Firestone, et al.

15       The Court finds that pursuant to Gonzalez and Vasquez

16  that a foreign forum is available when the entire case and all

17  the parties can come within the jurisdiction of that forum.

18  Then a forum is adequate when the parties will not be deprived

19  of all the remedies or be treated unfairly even though they may

20  not enjoy the same benefits as they might receive in an

21  American court.

22       I find that the Defendants have met their burden on

23  step one of the test for forum non conveniens as it applies to

24  the Rodriguez case.

25       Once the Defendants have established that there is an

1    alternative forum which is both available and adequate -- and I

2    do find that Mexico is both adequate and available.  Then the

3    Movant must show dismissal is warranted because of the balance

4    of certain private and public interests.

5         The relevant private interest factors include the

6    relative ease of access to sources of proof.  The Court finds

7    that all of the witnesses to the accident itself are within

8    Mexico.  The Plaintiff is a Mexican citizen.  The law

9    enforcement officers who investigated the accident are Mexican

10   citizens.

11        The vehicle -- the proof provided to the Court was

12   that the vehicle was purchased in Mexico; that the vehicle was

13   maintained in Mexico; and that Mexico has the ability to

14   acquire process for attendance of unwilling witnesses in

15   Mexico.

16        Because it is an automobile accident, it may be

17   appropriate for that Court to determine that a view of the

18   accident scene would be appropriate, and certainly can do that

19   if that is the view of the Court in Mexico.

20        All of the events leading to that case took place in

21   Mexico.  And the medical treatment occurred in Mexico.  And

22   physical evidence other than the vehicles, which may have been

23   moved from Mexico to some other site, are in Mexico.

24        It would be difficult and expensive to produce

25   Mexican witnesses other than the Plaintiff and transport the

1   evidence to a court in Texas, and that Mexican witnesses are

2   not -- cannot be forced by service of process to come to a

3   Texas court.   This Court has no power of compulsory process

4   over citizens of Mexico while they would be available to a

5   Mexican court to compel them to appear and testify.

6          Even if the Plaintiff can guarantee the availability

7   of the Plaintiff to be present, the Plaintiff cannot guarantee

8   the availability of any of the necessary witnesses who might be

9   unwilling to appear.  And as I previously stated, this Court

10  cannot summon them to a court proceeding.

11         Additionally, the cost of transporting, domiciling

12  such a group would be expensive for those witnesses who would

13  be willing to appear in person.  And these factors strongly

14  favor dismissal to allow the Plaintiffs to proceed in Mexico.

15         All the reports dealing with this accident are in

16  Spanish, and the translation process would be a lengthy one and

17  expensive.

18         Any of the Mexican citizens who would be willing to

19  appear in person at a trial in Texas would require translators

20  to testify, again at a greater expense and also a risk of

21  accuracy.  Such translation requirements which this Court is

22  certainly aware through its criminal docket would certainly

23  slow the case and perhaps introduce confusion among the jury.

24         It is true that certain evidence that may prove

25  germane to the instant action is located in the United States,

 1   but this evidence is available to the Plaintiffs through the

 2   MDL process and through other cases involving similar products

 3   for which the Plaintiffs' counsel has at its disposal.

 4          In balance, all the private factors indicate that

 5   Mexico is a more appropriate forum and the case should be

 6   dismissed.

 7          In looking at the public factors, the Pecos court

 8   currently carries a docket including over 400 criminal cases

 9   and approximately 130 civil cases.  In addition, this Court has

10   to travel to Pecos, which is over 100 miles away.  It would

11   significantly burden the docket in terms of time and resources.

12          Jurors come from a geographical region the size of

13   Utah to court in Pecos two weeks out of each month, and it

14   would be a burden on the jury to -- on the jury service to have

15   to bring them in for this trial.

16          The Court finds that there is no local interest in

17   deciding this controversy.  Given the limited contacts this

18   case has in Texas, it would be an injustice to impose a burden

19   of jury duty upon people of this state and the Pecos Division,

20   having no relation to this litigation.  At the same time,

21   Mexico has a great interest in the quality of the products used

22   by its citizens, and it holds accountable the manufacturers of

23   products that allegedly cause death or injury within its

24   borders.

25          Finally, Texas Conflict of Law analysis requires this

 1    Court to apply the law of the forum of the most significant

 2    relationship to the occurrence of the parties.  And as between

 3    Texas and Mexico, there can be no doubt that Mexico has the

 4    most significant relationship to the occurrence and to the

 5    parties.

 6          The Plaintiffs have failed to present any information

 7    to this Court to demonstrate any real nexus this dispute has

 8    with Texas.  And as such, under Texas Conflict of Law analysis,

 9    Mexican law would apply to this dispute.  Because Mexican law

10    would be applied in a Mexican court which understands that law

11    far better than this one, it should hear this case.  This would

12    also avoid any conflicts between substantive laws in Mexico and

13    procedural laws of the United States Federal Courts.

14          Thus, the public interest strongly indicates that

15    Mexico is a more appropriate forum and this case should be

16    dismissed.  It is, therefore, ordered that the Defendants'

17    motions to dismiss pursuant to the doctrine of forum non

18    conveniens are hereby granted.  This case is dismissed and the

19    case closed.

20          The Court will enter the following order.  The

21    Defendants must agree to submit to the jurisdiction of any

22    Mexican court having jurisdiction under the applicable laws of

23    the Republic of Mexico.  This Court will not designate which

24    court is proper because that decision is for the courts of the

25    Republic of Mexico to decide.

1        The Defendants must agree to pay any judgment

2   rendered against them, or any of them, when required by the

3   appropriate court in the Republic of Mexico.

4        The Defendants must make witnesses and evidence

5   available to Plaintiffs in the appropriate Mexican court.  The

6   Defendants obtained the dismissal in this Court under the

7   doctrine of forum non conveniens upon the explicit

8   representation to this Court that all necessary proofs,

9   evidence and witnesses were available there, and the Defendants

10  will be held to that representation.  All evidence obtained

11  through discovery in this Court shall be made available and

12  shall be admissible to the extent permitted under the

13  applicable Mexican court procedural rules.

14       In the event that the appropriate court or courts of

15  the Republic of Mexico refuse or fail to grant access to either

16  the Plaintiffs or Defendants, the parties may return to this

17  jurisdiction for further proceedings.

18       The Defendants shall not plead the statute of

19  limitations or any jurisdictional bar in the courts of the

20  Republic of Mexico.  This Court will not permit either party to

21  delay the proceedings in this case in order to invoke a statute

22  of limitations or other jurisdictional bar through dilatory

23  tactics.

24       All right.  Any questions that I need to clarify?

25  And obviously I'm going to commit this to writing.  But any

1    questions or clarification, Mr. Gonzalez?

2             MR. GONZALEZ:  Yes, Your Honor.  With respect to the

3    discovery fruits.

4             THE COURT:  Yes.

5             MR. GONZALEZ:  Obviously we did not engage in

6    discovery ourselves, but as the Court noted there are MDL

7    materials.  And we would request that those discovery materials

8    also be within the scope of the materials that they would be

9    required to allow us to use in Mexico.

10            THE COURT:  Mr. Kramer, Mr. Copeland, any response to

11   that?

12            MR. COPELAND:  That's fine, Your Honor.

13            MR. KRAMER:  I don't have an objection to it, Your

14   Honor.  I just don't know jurisdictionally whether this Court

15   can order it, but if you want these parties to make that same

16   database available, we have no --

17            THE COURT:  Do you agree to that?

18            MR. COPELAND:  Yes.

19            THE COURT:  Do you agree to that?

20            MR. KRAMER:  I'm agreeable with that.

21            THE COURT:  All right.

22            MR. GONZALEZ:  Thank you, Your Honor.

23            THE COURT:  All right.  Based on agreement by Ford

24   and Firestone, we will add that.

25            All right.  Now, as to Cause Number P-03-CV-32 and

1  P-03-CV-43, the Court enters the following order:

2       The Court finds that the Defendants have established

3  that there is an alternate forum which is both available and

4  adequate.  And I do find that Venezuela is both adequate and

5  available.

6       The various treaty -- the two treaties that have been

7  discussed, I find that the analysis by the Plaintiffs and the

8  Plaintiffs' expert is not persuasive and that the plain reading

9  of those treaties and there being no available Fifth Circuit

10  law or Supreme Court law for the Court to follow, the Court

11  refuses or declines to follow the reasoning of the MDL in its

12  analysis of the treaty in place.

13       It would seem that a plain reading of those treaties

14  would mean that a Plaintiff could always veto a case being

15  brought in a Venezuelan court by simply not agreeing to it even

16  though all mitigating -- all factors would be under -- would

17  compel the case to be brought in Venezuela.

18       The same thing is true about the Treaty of 1836.

19  Again, there is no case law that can guide the Court on that

20  issue other than the decision in the MDL which the Court

21  declines to follow.

22       But, again, the plain reading of the Treaty of 1836

23  was that the United States was giving the access to the courts

24  of the United States to Venezuelan citizens residing in the

25  United States and not simply carte blanche for any case arising

1  in the country of Venezuela by Venezuelan citizens to be
2  brought in the United States without any application of federal
3  law or state law that may apply in the United States.

4        The Court finds that the convenience of the parties
5  as well as the interest of justice will best be served if these
6  two instant actions are dismissed and refiled in an appropriate
7  court in Venezuela.

8        There is no question that the Plaintiffs are all
9  citizens of Venezuela.  Further, there is no doubt that this
10 action -- these actions were triggered by automobile accidents
11 occurring in Venezuela.  As such, Venezuelan courts certainly
12 offer a viable alternative forum in which the Plaintiffs may
13 vindicate their claims.  Furthermore, the Defendants'
14 submission to the jurisdiction of an alternative forum renders
15 that forum available.

16       In this case, both Ford and Bridgestone/Firestone
17 have both submitted to the jurisdiction of Venezuela, certified
18 they will abide by the rulings of that jurisdiction, and will
19 pay any recovery judgment against them.  Therefore, Venezuela
20 is an available forum to hear the action.

21       Venezuelan law is adequate, if there is a recovery of
22 damages, to ensure that that recovery occurs.  Here the
23 Plaintiffs' proceedings are proceedings under negligence and
24 strict product liability actions.  Venezuelan law recognizes
25 those actions.

Todd Anderson, CSR, RMR                    (432) 686-0605

1      All the events leading to this action, to both of

2   these actions, take place in Venezuela.  Again, the Plaintiffs

3   or the relatives of the Plaintiffs in the case are all

4   Venezuelan citizens.  The accidents occurred in Venezuela.  The

5   vehicles were maintained in Venezuela.  All medical and law

6   enforcement personnel and physical evidence are in Venezuela.

7   The two Ford vehicles were both manufactured and sold in

8   Venezuela.

9      This Court has no compulsory process over citizens of

10   Venezuela.  All medical and police personnel, forensic

11   analysis, and other unknown individuals who may have witnessed

12   this case reside in Venezuela.  Again, the same analysis in the

13   former action on the Mexican case, on the Rodriguez case, would

14   apply as far as being unable to compel witnesses to appear in

15   the United States.

16      If the Court determines that a viewing of the

17   location of the accident would be appropriate, a Venezuelan

18   court would have that at its disposal where a court in the

19   United States would not.

20      As far as the Court is aware, all the reports dealing

21   with the accident are in Spanish, and the translation process

22   is a lengthy one and expensive.  Additionally, most of the

23   witnesses are probably Venezuelan citizens, and even if willing

24   to appear in person, would require translators to testify,

25   again at a greater expense and at a risk of loss of accuracy

1   since translation requirements would certainly slow the case

2   and introduce confusion -- perhaps introduce confusion among

3   the jury.

4          While it's certainly true that certain evidence that

5   may prove germane to the instant action is located in the

6   United States, none of this evidence as far as the Court is

7   aware is stored in Texas.  And, accordingly, some inconvenience

8   would be necessary -- necessarily would be involved in

9   transporting it to trial for this Court.  It does not seem,

10  however, that the inconvenience of bringing it to Texas would

11  be any more or less than any inconvenience of bringing it to

12  Venezuela.

13         In balance, all the private factors indicate that

14  Venezuela is a more appropriate forum and this case should be

15  dismissed.

16         I'm not going to go back through the analysis of the

17  cases that this Court has except the Pecos Division has no

18  nexus or any contact with these two cases, nor does it appear

19  that the State of Texas and certainly not the Western District

20  of Texas, Pecos Division.

21         And, finally, the Texas Conflict of Law analysis

22  requires this Court to apply the law of the forum of the most

23  significant relationship to the occurrence of the parties.  And

24  as between Venezuela and Texas, there can be no doubt that

25  Venezuela has the most significant relationship to the

1   occurrence and to the parties.

2         All the Plaintiffs are either citizens of -- all the

3   parties -- excuse me.  All of the Plaintiffs are citizens of

4   Venezuela, and no parties are citizens of the State of Texas.

5   The place of the accident and the place where the vehicle was

6   maintained are located in Venezuela.  And the Plaintiffs failed

7   to present any information to this Court that demonstrates any

8   real nexus that this dispute has with Texas or the Western

9   District of Texas or the Pecos Division.  As such, under Texas

10  Conflict of Law analysis, Venezuelan law would apply to this

11  dispute.

12        Because Venezuelan law will be applied, a Venezuelan

13  court, which understands that law far better than this one,

14  should hear this case.  This would also avoid any conflicts

15  between substantive laws of Venezuela and procedural laws of

16  the United States Federal Court.

17        Thus, the public interest factors strongly indicate

18  that Venezuela is a more appropriate forum and this case should

19  be dismissed and the case is closed.

20        The Court enters the additional following orders:

21  The Defendants must agree to submit to the jurisdiction of any

22  Venezuelan court having jurisdiction under the applicable laws

23  of the country of Venezuela.  This Court will not designate

24  which court is proper because that decision is for the courts

25  of the country of Venezuela to decide.

Todd Anderson, CSR, RMR          (432) 686-0605

1          The Defendants must agree to pay any judgment

2     rendered against them, or any of them, when required by the

3     appropriate court in Venezuela.

4          The Defendants must make witnesses and evidence

5     available to Plaintiffs in the appropriate Venezuelan court.

6     This would include evidence garnered in the MDL that the

7     Defendants have provided through the MDL process.

8          The Defendants obtained the dismissal in this Court

9     under the doctrine of forum non conveniens upon the explicit

10    representation to this Court that all necessary proofs,

11    evidence and witnesses were available there, and the Defendants

12    will be held to that representation.  All evidence obtained

13    through discovery in this Court and the MDL shall be made

14    available and shall be admissible to the extent permitted under

15    the applicable Venezuela court procedural rules.

16         In the event that the appropriate court or courts of

17    Venezuela refuse or fail to grant access to either the

18    Plaintiffs or Defendants, the parties may return to this

19    jurisdiction for further proceedings.

20         The Defendants shall not plead the statute of

21    limitations or any jurisdictional bar in the courts of

22    Venezuela.  The Court will not permit either party to delay the

23    proceedings in this case in order to invoke a statute of

24    limitations or other jurisdictional bar through dilatory

25    tactics.

1        Anybody need clarification from the Bench?  Anybody

2   need clarification?  From the Plaintiffs, anything?

3        MR. GONZALEZ:  Your Honor, I think you have covered

4   the water front with that.

5        MR. COPELAND:  No, sir.

6        THE COURT:  Anything from the Defendants?

7        MR. KRAMER:  No, Your Honor.

8        THE COURT:  All right.  Mr. Agrawal will be doing

9   this.  The last portions come from the September 4, 2003 order

10  entered by Judge Cobb in Vasquez versus Bridgestone.  And I

11  didn't add the part because there weren't any -- he also has

12  other parts dealing with the restraining order and injunctive

13  relief which doesn't apply in this case.  So y'all are welcome

14  to copies of this.

15       If there is nothing further, the parties are excused.

16  And this Court is in recess until 1:30 this afternoon.  Thank

17  you.

18       SECURITY OFFICER:  All rise.

19

20

21

22

23

24

25

Todd Anderson, CSR, RMR                    (432) 686-0605

1        I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Western District of

3   Texas, Midland/Odessa Division, hereby certify that the above

4   and foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6        WITNESS MY HAND on this 12th day of September, 2003.

7

8

9

10                          TODD ANDERSON, RMR
                            United States Court Reporter
11                          200 E. Wall, Rm. 107
                            Midland, Texas  79701
12                          (432) 686-0605

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States Court of Appeals
Sixth Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

**DIRECT REPLY TO:**
Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone. [202] 502-2800
Fax. [202] 502-2888

http://www.jpml.uscourts.gov

July 21, 2003

TO INVOLVED COUNSEL

MDL-1373 -- In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation

(See Attached Schedule CTO-50)



Dear Counsel:

Attached is a copy of a conditional transfer order filed today by the Judicial Panel on Multidistrict Litigation involving the actions listed on the attached schedule. The actions are transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001). Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office BY FACSIMILE, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court. Your cooperation would be appreciated.

   NOTICE OF OPPOSITION DUE ON OR BEFORE:   __August 5, 2003__      (4 p.m. EST)
      (Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7 5 of the Panel Rules before filing your Notice of Opposition. Please file one Notice of Opposition (with an attached schedule of actions. if necessary) if you are opposing the transfer of more than one action. A consolidated Motion and Brief to Vacate the CTO, with attached schedule of actions, is acceptable and encouraged.

For more information about MDL-1373, counsel are encouraged to visit the Southern District of Indiana transferee court's website at **http://www.insd.uscourts.gov/Firestone/default.htm.**

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By _____
Deputy Clerk

Attachments

PLAINTIFF'S EXHIBIT
E
tabbies

JPML Form 39A



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 2 1 2003

FILED
CLERK'S OFFICE

## DOCKET NO. 1373

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-50)

On October 24, 2000, the Panel transferred 58 civil actions to the United States District Court for the Southern District of Indiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 683 additional actions have been transferred to the Southern District of Indiana. With the consent of that court, all such actions have been assigned to the Honorable Sarah Evans Barker.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Southern District of Indiana and assigned to Judge Barker.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of Indiana for the reasons stated in the order of October 24, 2000, and, with the consent of that court, assigned to the Honorable Sarah Evans Barker.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of Indiana. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Michael J. Beck
Clerk of the Panel

## SCHEDULE CTO-50 - TAG ALONG CASES
## DOCKET NO. 1373
## IN RE BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION

<u>DISTRICT  DIV. CIVIL ACTION#</u>

**FLORIDA SOUTHERN**
| | | | |
|---|---|---|---|
| FLS | 1 | 03-21263 | Idalmis Yadira Ricciulli De Piemienta, et al. v. Bridgestone/Firestone North American Tire, LLC, et al. |
| FLS | 1 | 03-21350 | Oscar Gomez Romero, et al. v. Bridgestone/Firestone North American Tire, LLC, et al. |

**GEORGIA NORTHERN**
| | | | |
|---|---|---|---|
| GAN | 1 | 03-1651 | Michelle Grant v. Bridgestone/Firestone, Inc., et al. |

**INDIANA NORTHERN**
| | | | |
|---|---|---|---|
| INN | 2 | 03-140 | Edward Crocker v. Ford Motor Co., et al. |

**TEXAS WESTERN**
| | | | |
|---|---|---|---|
| TXW | 4 | 03-32 | Elsa Beatriz Lopez Guedez, et al. v. Bridgestone/Firestone, Inc., et al. |
| TXW | 4 | 03-57 | Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al. |

**VIRGINIA EASTERN**
| | | | |
|---|---|---|---|
| VAE | 1 | 03-597 | Alfred Hinson v. Ford Motor Co., et al. |

VOLVED COUNSEL FOR SCHEI    LE CTO-50
DOCKET NO. 1373
IN RE BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION

Alfred B. Adams, III
Holland & Knight, LLP
1201 West Peachtree Street, N.E.
One Atlantic Center, Suite 2000
Atlanta, GA 30309-3400

John H. Beisner
O'Melveny & Myers, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004-1109

Daniel P. Byron
Bingham McHale, LLP
10 West Market Street
#2700
Indianapolis, IN 46204-4900

Mark A. Cantu
Law Office of Mark A. Cantu
The Atrium, Suite 400
1300 North 10th Street
McAllen, TX 78501

Adina K. Chirogianis
Clark, Thomas & Winters
P.O. Box 1148
Austin, TX 78767

Robert S Corish
Becker, Hadeed, Kellogg & Berry
5501 Backlick Road
Suite 220
Springfield, VA 22151

Anthony D. Dwyer
4151 Chain Bridge Road
Fairfax, VA 22030-1853

Roddy L. Harrison
P O. Box 1908
Pecos, TX 79772

Mark Herrmann
Jones, Day, Reavis & Pogue
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Sadaf Khan
Clark, Thomas & Winters
P.O. Box 1148
Austin, TX 78767

Evan Nicholas Kramer
Brown McCarroll, LLP
1111 Bagby
47th Floor
Houston, TX 77002

Irwin B. Levin
Cohen & Malad
One Indiana Square, Suite 1400
P.O. Box 627
Indianapolis, IN 46206-0627

Mark Merkle
Krieg DeVault , LLP
One Indiana Square
Suite 2800
Indianapolis, IN 46204-2017

F. Faison Middleton, IV
McKenna, Long & Aldridge, LLP
303 Peachtree Street, N.E.
Suite 5300
Atlanta, GA 30308-3201

Knox D. Nunnally
Vinson & Elkins
1001 Fannin Street
2500 First City Tower
Houston, TX 77002-6760

Gary M. Pappas
Carlton Fields
100 S.E. 2nd Street, Suite 4000
P.O. Box 019101
Miami, FL 33131-9101

Eric M. Persian
Dorherty Sheridan & Persian
8408 Arlington Blvd.
Suite 200
Fairfax, VA 22031

Eric G. Reeves
Moran, Kiker & Brown, P.C.
4110 E. Parham Road
Richmond, VA 23228

Gregory S. Reising
607 South Lake Street
Suite A
Gary, IN 46403

Randall Riggs
Locke Reynolds LLP
201 North Illinois Street, Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

Carlos E. Silva
Silva & Silva, P.A.
236 Valencia Avenue
Coral Gables, FL 33134

Linwood Slayton, Jr.
P.O. Box 55557
Atlanta, GA 30308

Colin P. Smith
Holland & Knight, LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603

Lee P. Teichner
Holland & Knight, LLP
701 Brickell Avenue
Suite 3000
Miami, FL 33131-5441

Brian K. Telfair
Bowman & Brooke, LLP
Riverfront Plaza West Tower
901 East Byrd Street, Suite 1500
Richmond, VA 23219

John W. Weber, Jr.
Fulbright & Jaworski
300 Convent Street
Suite 2200
San Antonio, TX 78205-3792

William Winingham
Wilson, Kehoe & Winingham
P.O. Box 1317
2859 N. Meridian Street
Indianapolis, IN 46206

Daryl V. Yokely
127 Peachtree Street
The Candler Building, Suite 505
Atlanta, GA 30303

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

RULE 7.4:      CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)     Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)     Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)     Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)     Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)     Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:      MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)     Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)     Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)     Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)     A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)     Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States Court of Appeals
Sixth Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:       [202] 502-2888

http://www.jpml.uscourts.gov

August 4, 2003

John W. Weber, Jr., Esq.
Fulbright & Jaworski
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792

Re: MDL-1373 -- In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation

> *Elsa Beatriz Lopez Guedez, et al. v. Bridgestone/Firestone, Inc., et al.,* W.D. Texas, C.A. No. 4:03-32
> *Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al.,* W.D. Texas, C.A. No. 4:03-57

Motion and Brief Due on or before: **August 19, 2003**

Dear Mr. Weber:

We have received and filed your Notice of Opposition to the proposed transfer of the referenced actions for coordinated or consolidated pretrial proceedings. In accordance with Rule 7.4(c) of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435 (2001), the conditional transfer order is stayed until further order of the Panel. You must adhere to the following filing requirements:

1) Pursuant to Panel Rules 5.12(a), 5.13 and 7.4(d), an original and eleven copies of your Motion and Brief to Vacate the Conditional Transfer Order, as well as a computer readable disk of the pleading in WordPerfect for Windows format, must be received in the Panel offices by the due date listed above. Fax transmission of your motion and brief will not be accepted. *See* Panel Rule 5.12(d). Counsel filing oppositions in more than one action are encouraged to consider filing a single motion and brief with an attached schedule of actions.

2) Papers must be served on the enclosed Panel Service List. Please attach a copy of this list to your certificate of service. (Counsel who have subsequently made appearances in your action should be added to your certificate of service).

3) Rule 5.3 corporate disclosure statements are due within eleven days of the filing of the motion to vacate.

4) Failure to file and serve the required motion and brief within the allotted fifteen days will be considered a withdrawal of the opposition and the stay of the conditional transfer order will be lifted.

Any recent official change in the status of a referenced actions should be brought to the attention of the clerk's office as soon as possible by facsimile at (202) 502-2888. Your cooperation would be appreciated.

Very truly,

Michael J. Beck
Clerk of the Panel

By _____
Deputy Clerk

Enclosure

cc:   Panel Service List
      Transferee Judge: Judge Sarah Evans Barker
      Transferor Judge: Judge Robert A. Junell

JPML Form 37

PANEL SERVICE LIST (Excerpted from CTO-50)
## DOCKET NO. 1373
## IN RE BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION

*Elsa Beatriz Lopez Guedez, et al. v. Bridgestone/Firestone, Inc., et al.,* W.D. Texas, C.A. No. 4:03-32
*Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al.,* W.D. Texas, C.A. No. 4:03-57

John H. Beisner
O'Melveny & Myers, LLP
1625 Eye Street, N.W.
Washington, DC 20004-1109

Daniel P. Byron
Bingham McHale, LLP
10 West Market Street
#2700
Indianapolis, IN 46204-4900

Mark A. Cantu
Law Office of Mark A. Cantu
The Atrium, Suite 400
1300 North 10th Street
McAllen, TX 78501

Adina Kuper Chirogianis
Clark, Thomas & Winters
P O. Box 1148
Austin, TX 78767

Roddy L. Harrison
P O Box 1908
Pecos, TX 79772

Mark Herrmann
Jones, Day, Reavis & Pogue
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Sadaf Khan
Clark, Thomas & Winters
P O. Box 1148
Austin, TX 78767

Evan Nicholas Kramer
Brown McCarroll, LLP
1111 Bagby
47th Floor
Houston, TX 77002

Irwin B. Levin
Cohen & Malad
One Indiana Square, Suite 1400
P O. Box 627
Indianapolis, IN 46206-0627

Knox D. Nunnally
Vinson & Elkins
1001 Fannin Street
2500 First City Tower
Houston, TX 77002-6760

Randall Riggs
Locke Reynolds LLP
201 North Illinois Street, Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

John W. Weber, Jr.
Fulbright & Jaworski
300 Convent Street
Suite 2200
San Antonio, TX 78205-3792

William Winingham
Wilson, Kehoe & Winingham
P.O. Box 1317
2859 N. Meridian Street
Indianapolis, IN 46206



BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE BRIDGESTONE/FIRESTONE, INC.,          §
TIRES PRODUCTS LIABILITY LITIGATION          §          MDL Docket No. 1373

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

ADRIANA CANALES RODRIGUEZ          §
                                                           §          Civil Action No. P-03-CA-57
V.                                                         §          (Jury trial)
                                                           §
BRIDGESTONE/FIRESTONE, INC.;         §
BRIDGESTONE CORPORATION            §
SMITHERS TRANSPORTATION TEST       §
CENTER, A/K/A SMITHERS TIRE &        §
AUTOMOTIVE TESTING OF TEXAS,         §
INC.; DEL RIO TEST CENTER, INC.        §
And FORD MOTOR COMPANY               §

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

ELSA BEATRIZ LOPEZ GUEDEZ,            §
INDIVIDUALLY AND AS                       §
ADMINISTRATRIX OF THE ESTATE         §          Civil Action No. P03-CV-32
OF ANTONIO JOSE MANRIQUE            §          (Jury trial)
LOPEZ, DECEASED; JUAN PEDRO         §
MANRIQUE LOPEZ AS                         §
ADMINISTRATOR OF THE ESTATE OF      §
DANA LYS TEY MALDONADO DE           §
MANRIQUE; JUAN PEDRO MANRIQUE      §
LOPEZ AS NEXT FRIEND OF               §
BETSABEL DAYAN MANRIQUE              §
MALDONADO, A MINOR AND               §
ANTONIO JOSE MANRIQUE                 §
MALDONADO, A MINOR; TADEO           §
MALDONADO, INDIVIDUALLY AND         §
ISABEL SANCHEZ SANTA CRUZ,           §
INDIVIDUALLY; JUAN PEDRO             §          (JURY TRIAL)
MANRIQUE LOPEZ, AS NEXT FRIEND      §



OF MARIA JOSE MANRIQUE                  §
VALASQUEZ, A MINOR; JUAN PEDRO          §
MANRIQUE LOPEZ, AS NEXT FRIEND          §
OF FIRLLYTH FRANCHESKA                  §
MANRIQUE MOLINA, A MINOR                §
                                        §
VS.                                     §
                                        §
BRIDGESTONE/FIRESTONE, INC.;            §
BRIDGESTONE CORPORATION;                §
SMITHERS TRANSPORTATION TEST            §
CENTER, A/K/A SMITHERS TIRE &           §
AUTOMOTIVE TESTING OF TEXAS,            §
INC.; DEL RIO TEST CENTER, INC. and     §
FORD MOTOR COMPANY                      §

## DEFENDANT SMITHERS' NOTICE OF OPPOSITION
## TO CONDITIONAL TRANSFER ORDER 50

Please take notice that Defendant Smithers Transportation Test Center, A/K/A Smithers Tire & Automotive Testing of Texas, Inc. opposes Conditional Transfer Order 50, filed July 21, 2003, with respect to the following scheduled cases:

(1)    Case Caption: *Elsa Beatriz Lopez Guedez, et al. v. Bridgestone/Firestone, Inc., et al.*

Transferor Court:  TXW 4 03-32

(2)    Case Caption: *Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al.*

Transferor Court:  TXW 4 03-57

This notice of opposition is made pursuant to 199 F.R.D. 425, 435 (2001) Rule 7.4(c).

In accordance with 199 F.R.D. 425, 435 (2001) Rule 7.4(d), Smithers will be filing a motion to vacate and brief in support within 15 days of the filing of this notice of opposition.

Respectfully submitted,

FULBRIGHT & JAWORSKI, L.L.P.

By: John W. Weber Jr. with permission by Philip J Hundl

John W. Weber, Jr.
State Bar No. 21046500
Philip J. Hundl
State Bar No. 24034498
300 Convent Street, Suite 2200
San Antonio, Texas 78205-3792
Telephone: 210/224-5575
Facsimile: 210/270-7205

**COUNSEL FOR SMITHERS TRANSPORTATION
TEST CENTER, A/K/A SMITHERS TIRE &
AUTOMOTIVE TESTING OF TEXAS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by Certified Mail, Return Receipt Requested this 31st day of July, 2003, on the following counsel of record:

*Liaison counsel*:

John H. Beisner
O'Melveny & Myers, LLP
555 13th Street, N. W.
Suite 500 West
Washington, DC 20004-1109

Randall Riggs
Locke Reynolds LLP
201 North Illinois, Suite 1000
P.O. Box 44961
Indianapolis, IN 46244

Daniel P. Byron
Bingham McHale, LLP
10 West Market Street
#2700
Indianapolis, IN 46204-4900

William Winingham
Wilson, Kehoe & Winingham
P.O. Box 1317
2859 N. Meridian Street
Indianapolis, IN 46206

Mark Herrmann
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Colin P. Smith
Holland & Knight LLP
55 West Monroe Street, Suite 800
Chicago, IL 60603

Irwin B. Levin
Cohen & Malad
One Indiana Square, Suite 1400
P.O. Box 627
Indianapolis, IN 46206-0627

*Case-specific counsel:*

*Attorneys-In-Charge for Plaintiffs:*
Juan A. Gonzalez
Mark A. Cantu
**LAW OFFICE OF MARK A. CANTU**
The Atrium
1300 N. 10th Street, Suite 400
McAllen, Texas 78501

*Attorneys for Defendant, Bridgestone/*
*Firestone North American Tire, L.L.C.,*
*Successor to Bridgestone/Firestone, Inc.:*
Knox D. Nunnally
Morgan L. Copeland, Jr.
VINSON & ELKINS L.L.P.
1001 Fannin
2300 First City Tower
Houston, Texas 77002

Roddy L. Harrison
**ATTORNEY AT LAW**
515 S. Oak St.
Pecos, Texas 79772-4028

*Attorney for Defendant, Bridgestone*
*Corporation:*
Adina K. Chirogianis
David Duggins
CLARK, THOMAS & WINTERS
P.O. Box 1148
Austin, Texas 78767

*Attorney for Defendant, Ford Motor*
*Company:*
Evan N. Kramer
William R. Moye
**BROWN McCARROLL L.L.P.**
1111 Bagby , 47th Floor
Houston, Texas 77002

*Transferor Court*:

*Via Federal Express*

Honorable Robert A. Junell
U.S. District Judge
Western District of Texas
200 East Wall
Midland, Texas  79701

Ms. Karen J. White
U.S. District Clerk's Office
Western District of Texas, Pecos Division
410 South Cedar
Pecos, Texas  79772

John W. Weber, Jr. *with permission*
by _____

John W. Weber, Jr.

Attorney for Defendant, Smithers Transportation
Test Center, a/k/a Smithers Tire & Automotive
Testing of Texas, Inc.



# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
300 CONVENT STREET, SUITE 2200
SAN ANTONIO, TEXAS 78205-3792
WWW.FULBRIGHT.COM

JOHN W. WEBER, JR.
PARTNER
JWEBER@FULBRIGHT.COM

DIRECT DIAL:    (210) 270-7122
TELEPHONE:    (210) 224-5575
FACSIMILE:    (210) 270-7205

July 31, 2003

*VIA FEDERAL EXPRESS*

Mr. Michael J. Beck
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
One Columbus Circle, N.E.
Thurgood Marshall Federal Judiciary Bldg.
Room G-255, North Lobby
Washington, D.C.  2002-8004

Re:    C.A. No. P-03-CA-57; *Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al;* In the United States District Court For The Western District of Texas, Pecos Division

C. A. No. P03-CV-32; *Elsa Beatriz Lopez Guedez, et al v. Bridgestone/Firestone, Inc., et al;* In the United States District Court For The Western District of Texas, Pecos Division

Dear Mr. Beck:

Enclosed please find an original and one copy of Defendant Smithers' Notice of Opposition to Conditional Transfer Order 50. Please return a date-stamped copy of the this document to our office in the enclosed self-addressed stamped envelope. Thank you for your cooperation and assistance in this regard.

Very truly yours,

*John W. Weber, Jr.*    with permission

John W. Weber, Jr.

by

JWW/skb
Enclosures

30523762.1/10305940

Mr. Michael J. Beck
July 31, 2003
Page 2


cc:    ***Liaison Counsel:***

John H. Beisner
O'Melveny & Myers, LLP
555 13th Street, N. W.
Suite 500 West
Washington, DC 20004-1109

Randall Riggs
Locke Reynolds LLP
201 North Illinois, Suite 1000
P.O. Box 44961
Indianapolis, IN 46244

Daniel P. Byron
Bingham McHale, LLP
10 West Market Street
#2700
Indianapolis, IN 46204-4900

William Winingham
Wilson, Kehoe & Winingham
P.O. Box 1317
2859 N. Meridian Street
Indianapolis, IN 46206

Mark Herrmann
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Colin P. Smith
Holland & Knight LLP
55 West Monroe Street, Suite 800
Chicago, IL 60603

Irwin B. Levin
Cohen & Malad
One Indiana Square, Suite 1400
P.O. Box 627
Indianapolis, IN 46206-0627

30523762.1

Mr. Michael J. Beck
July 31, 2003
Page 3


*Case-Specific Counsel:*

    *Attorneys-In-Charge for Plaintiffs:*
    Juan A. Gonzalez
    Mark A. Cantu
    LAW OFFICE OF MARK A. CANTU
    The Atrium
    1300 N. 10th Street, Suite 400
    McAllen, Texas 78501

    *Attorneys for Defendant, Bridgestone/ Firestone North American Tire, L.L.C.,*
    *Successor to Bridgestone/Firestone, Inc.:*
    Knox D. Nunnally
    Morgan L. Copeland, Jr.
    VINSON & ELKINS L.L.P.
    1001 Fannin
    2300 First City Tower
    Houston, Texas 77002

    Roddy L. Harrison
    ATTORNEY AT LAW
    515 S. Oak St.
    Pecos, Texas 79772-4028

    *Attorney for Defendant, Bridgestone Corporation*:
    Adina K. Chirogianis
    David Duggins
    CLARK, THOMAS & WINTERS
    P.O. Box 1148
    Austin, Texas  78767

    *Attorney for Defendant, Ford Motor Company:*
    Evan N. Kramer
    William R. Moye
    BROWN McCARROLL L.L.P.
    1111 Bagby , 47th Floor
    Houston, Texas 77002

    *Transferor Court:*

    Honorable Robert A. Junell
    U.S. District Judge
    Western District of Texas
    200 East Wall
    Midland, Texas  79701

30523762.1

Mr. Michael J. Beck
July 31, 2003
Page 4

Ms. Karen J. White
U.S. District Clerk's Office
Western District of Texas, Pecos Division
410 South Cedar
Pecos, Texas  79772



# FULBRIGHT & JAWORSKI L.L.P.

A Registered Limited Liability Partnership
300 Convent Street, Suite 2200
San Antonio, Texas 78205-3792
www.fulbright.com

JOHN W. WEBER, JR.
PARTNER
JWEBER@FULBRIGHT.COM

DIRECT DIAL:　(210) 270-7122
TELEPHONE:　(210) 224-5575
FACSIMILE:　(210) 270-7205

July 31, 2003

***VIA FEDERAL EXPRESS***

Honorable Robert A. Junell
U.S. District Judge
Western District of Texas
200 East Wall
Midland, Texas 79701

Re:　C.A. No. P-03-CA-57; *Adriana Canales Rodriguez v. Bridgestone/Firestone, Inc., et al*; In the United States District Court For The Western District of Texas, Pecos Division

C. A. No. P03-CV-32; *Elsa Beatriz Lopez Guedez, et al v. Bridgestone/Firestone, Inc., et al;* In the United States District Court For The Western District of Texas, Pecos Division

Dear Judge Junell:

As we discussed on the conference call this morning, enclosed please find Defendant Smithers' Notion of Opposition to Conditional Transfer Order 50, which is being filed with the Clerk of the Judicial Panel on Multidistrict Litigation. Under MDL Panel Rule 7.4(e), the order of transfer is not effective until filed with the clerk of the transferee district court. Pursuant to MDL Panel Rule 7.4(c), the filing of a notice of opposition stays the filing of the order (and thus the effectiveness of the transfer), until the opposition has been finally resolved by the Panel.

As required by Panel Rule 7.4(d), Smithers will be filing a motion to vacate and brief in support within 15 days of the filing of this notice of opposition. The Panel will then act on the motion sometime in the future.

In the meantime, this Court retains jurisdiction over the above-referenced cases. I wanted to draw your attention to two cases which indicate that, prior to the effectiveness of a conditional transfer order, the district court may make rulings in the case, including the dismissal of the case. *See, e.g., The State of Rio de Janeiro of the Federated Republic of Brazil v. Phillip Morris Inc.,* 239 F.3d 714, 715-16 (5th Cir. 2001). Thus, the Court is free to take up the issue of *forum non conveniens* during the pendency of Smithers' opposition to the conditional transfer.

30523824.1/10305940

Honorable Robert A. Junell
July 31, 2003
Page 2


     Thank you for your attention to this matter.  A copy of this letter is being served on all counsel of record.

Very truly yours,

John W. Weber, Jr.

JWW/skb
cc:   Ms. Karen J. White
      U.S. District Clerk's Office
      Western District of Texas, Pecos Division
      410 South Cedar
      Pecos, Texas  79772

      *Attorneys-In-Charge for Plaintiffs:*
      Juan A. Gonzalez
      Mark A. Cantu
      LAW OFFICE OF MARK A. CANTU
      The Atrium
      1300 N. 10th Street, Suite 400
      McAllen, Texas 78501

      *Attorneys for Defendant, Bridgestone/ Firestone North American Tire, L.L.C., Successor to Bridgestone/Firestone, Inc.:*
      Knox D. Nunnally
      Morgan L. Copeland, Jr.
      VINSON & ELKINS L.L.P.
      1001 Fannin
      2300 First City Tower
      Houston, Texas 77002

      Roddy L. Harrison
      ATTORNEY AT LAW
      515 S. Oak St.
      Pecos, Texas 79772-4028

      *Attorney for Defendant, Bridgestone Corporation:*
      Adina K. Chirogianis
      David Duggins
      CLARK, THOMAS & WINTERS
      P.O. Box 1148
      Austin, Texas  78767

30523824.1

Honorable Robert A. Junell
July 31, 2003
Page 3

**_Attorney for Defendant, Ford Motor Company:_**
Evan N. Kramer
William R. Moye
BROWN McCARROLL L.L.P.
1111 Bagby , 47th Floor
Houston, Texas 77002