UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 1 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JORGE ENRIQUE PINEDA MORALES §<br>And MAYTHEM GIORGINA PINEDA §<br>MORALES, INDIVIDUALLY AND AS §<br>ADMINISTRATOR/IX OF THE ESTATE §<br>OF JORGE ENRIQUE PINEDA §<br>CARVAJAL, Deceased; BEATRIZ DEL §<br>VALLE PINEDA, INDIVIDUALLY, §<br>GIORGIA PINEDA MORALES, §<br>EDWARD ENRIQUE PINEDA §<br>MORALES, INDIVIDUALLY; §<br> §<br>DOLORES CHACON DE PINEDA, §<br>INDIVIDUALLY AND AS NEXT §<br>FRIEND OF JORGE LUIS PINEDA §<br>CHACON, §<br> §<br>            Plaintiffs, §<br> §<br> §<br> §<br>vs. §<br> §<br>FORD MOTOR COMPANY, §<br>            Defendant. § | CIVIL ACTION NO. B-03-061 |

**PLAINTIFFS' *UNOPPOSED* MOTION TO ENLARGE TIME AND
MEMORANDUM IN SUPPORT THEREOF AND TO SET FOR EXPEDITED
HEARING**

TO THE HONORABLE JUDGE OF SAID COURT:

> Plaintiffs move for an order to enlarge the time required to file its
> surreply to Defendant's motion to dismiss to January for cause shown
> in accordance with FED. R. CIV. P. 6(b). The grounds for this motion
> is that *forum non conveniens* discovery will not be completed by such
> a date so as to allow Plaintiffs sufficient time to utilize and incorporate
> said discovery in its surreply on or before November 26, 2003.

### A.  Procedural Background

1.      On July 21, 2003, this Court granted the parties leave to conduct discovery

targeting the merits of *forum non conveniens* and conflict of laws.

2.     On September 22, 2003, Plaintiffs served Interrogatories, Requests for Production and Requests for Admissions on Defendant.

3.     On October 23, 2003, the Court ordered that Defendant produce its proposed Venezuelan law experts for deposition on or before November 15, 2003 and that Plaintiff submit its supplemental response to Defendant's motion to dismiss on or before November 27, 2003. Counsel for Plaintiffs anticipated that a written discovery dispute could arise and advised this Honorable Court that an expedited hearing might be necessary.

4.     On October 24, 2003, Defendant served objections, answers and responses to written *forum non conveniens* discovery, attached as EXHIBIT A and incorporated herein as though fully set forth.

5.     Defendant's objections to written discovery were considered by Plaintiffs to be unfounded and invalid. Similarly, Defendant's answers and responses were considered to be inadequate and improper under the Federal Rules of Civil Procedure.

6.     Counsel conferred on November 12, 2003 regarding Defendant's request for an extension time to produce Mr. Lagrange for deposition and to resolve written discovery concerns.  As memorialized in a November 12, 2003 letter, attached as EXHIBIT B and incorporated herein as though fully set forth, counsel agreed to take the deposition of Mr. Lagrange on November 19, 2003 and the Defendant would reconsider its answers and responses to written discovery in light of the clarification and limitation provided by Plaintiffs.  Further, counsel for Defendant agreed in principle to enlarge the time Plaintiff would have to file its surreply to Defendant's motion to dismiss.

7.    Plaintiffs filed this request for an extension as soon as they became aware of the need for additional time and before the deadline.

### B. Argument

8.    This motion is based on the pleadings and papers on file in this action and the following points and authorities.

9.    The Court may grant a request for extension of time for "cause shown." FED. R. CIV. P. 6(b).

10.    Plaintiffs request additional time to file its surreply to Defendant's motion to dismiss because the *forum non conveniens* discovery will not be completed by such date as to allow Plaintiffs sufficient time to prepare and file its surreply with the Court on or before November 26, 2003. The deposition of Mr. Lagrange was taken on November 19, 2003 and it is highly probable that a transcript and the exhibits will not be available quickly enough to be incorporated into and used as an exhibit for Plaintiff's surreply. Similarly, Defendant requires additional time to reconsider its answers and responses to written discovery and provide Plaintiffs with the requested documents and materials.

11.    Plaintiffs ask the Court to extend the deadline to January 5, 2004.

12.    Plaintiffs' request for additional time is for cause shown, as stated in this motion, not to delay these proceedings. *See* FED. R. CIV. P. 6(b).

### C. Conclusion

13.    Because the deposition of Mr. Lagrange and the Defendant's responses to written discovery are vital to the pivotal issue of *forum non conveniens*, Plaintiffs ask the Court to extend the time to file its surreply to Defendant's motion to dismiss until January 5, 2004.

Respectfully submitted,

**LAW OFFICE OF MARK A. CANTU**
*THE ATRIUM*
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel: 956/687-8181
Fax: 956/687-8868


**Juan A. Gonzalez**
State Bar No. 08129310


**Ricardo G. Benavides**
State Bar. No. 24031735

**ATTORNEYS FOR PLAINTIFFS**

**STATE OF TEXAS**  §
                    §
**HIDALGO COUNTY**  §

### Affidavit of Ricardo G. Benavides

On this day, Ricardo G. Benavides appeared before me, the undersigned notary public. After I administered an oath to him, upon his oath he said:

1.     My name is Ricardo G. Benavides. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.     I am an attorney with the Law Office of Mark A. Cantu representing the plaintiffs in Civil Action No. B-03-061 before the United States District Court Southern District of Texas, Brownsville Division.

3.     On November 12, 2003, counsel for the parties conferred and agreed to extend Defendant's deadline to produce Mr. Lagrange, a proposed expert on Venezuelan law, for deposition and additional time for Defendant to reconsider its answers and responses to written *forum non conveniens* discovery in the form of interrogatories, requests for production and requests for admissions.

_____
Ricardo G. Benavides

SWORN TO and SUBSCRIBED before me by Ricardo G. Benavides on November 20th , 2003.

_____
Notary Public in and for
The State of Texas



PAOLA VILLARREAL
Notary Public, State of Texas
My Commission Expires 08-09-06

## CERTIFICATE OF CONFERENCE

I hereby certify that my office has contacted counsel for Defendant, Ronald D. Wamstead, John W. Chambless, II, and Juan Alcala in this matter and they are *unopposed* to this motion.

RICARDO G. BENAVIDES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES And MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; DOLORES CHACON DE PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON | § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |
| Plaintiffs | | |
| Vs. | | |
| FORD MOTOR COMPANY | | |
| Defendant | | |

## FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' FIRST SET OF FORUM NON CONVENIENS INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSIONS TO DEFENDANT FORD MOTOR COMPANY

Now comes the Defendant, Ford Motor Company ("Ford"), as it submits its Response to

Plaintiffs' First Set of Forum Non Conveniens Interrogatories, Requests for Production and

Requests for Admissions to Defendant Ford Motor Company.



PLAINTIFF'S EXHIBIT

Respectfully submitted,

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas  78701
(512) 472-5456 Telephone
(512) 479-1101 Fax

By:_____
     Ronald D. Wamsted
     Attorney-In-Charge
     State Bar No.  20832000
     Southern District Admissions No. 17108
     John W. Chambless, II
     Southern District Admissions No. 20674
     State Bar No. 00796334
     Jaime A. Saenz
     Federal I.D. No. 7630
     State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

AUS:2077017.1
13486.95555

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via certified mail to all counsel of record on this 24th day of October, 2003.

Mark A. Cantu
Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
1300 N. 10th, Suite 400
McAllen, Texas 78501

John W. Chambless, II

3

## PRELIMINARY STATEMENT

The Explorer was introduced as a new vehicle in the 1991 model year and was treated as a major program (UN46). Although there were design changes during 1992-1994 model years, the Explorer was considered essentially a carryover vehicle. For the 1995 model year, the Explorer was redesigned and was again treated as a major program (UN105). The suspension, chassis and frame of the Explorer were completely redesigned in the 1995 model year. In 1998, there was a "freshening" of the Explorer (UN150), which did not significantly alter the suspension, chassis and frame of the Explorer or significantly affect the handling characteristics of the Explorer. For the 2001 model year, the Explorer Sport was redesigned and the Explorer Sport Trac was introduced (U/P207). The Explorer Sport is a 2-door 4-passenger SUV, while the Explorer Sport Trac is a 4-door 5-passenger SUV with an open cargo area. Both are equipped with an independent SLA front suspension. For the 2002 model year, the 4-door Explorer was redesigned and was again treated as a major program (U152). Again, the suspension, chassis and frame of the Explorer were redesigned. These changes include a revised independent front suspension which uses the SLA coil-over-shock design. Also new for 2002 is the introduction of an all-new fully independent rear suspension, which uses a SLA coil-over-shock design. The packaging of the rear suspension with the "porthole-in-frame" design allows the rear floor to sit seven inches lower than the previous model Explorers, allowing the 4-Door Explorer to now offer a third row of seating.

4

## PRODUCTION OF DOCUMENTS

These responses are made solely for the purpose of this action. Ford has not completed its investigation of the facts relating to this matter and discovery is continuing. Accordingly, the following responses are based upon, and therefore necessarily limited by, the records and information still in existence, presently recollected and thus far discovered in the course of preparing these responses. Ford reserves the right to produce at trial and make reference to any evidence, facts, documents or information not yet discovered, or the relevance of which has not yet been identified, by Ford or its counsel.

Except for the explicit facts stated in these responses, no incidental or implied admissions are intended by these responses. The fact that Ford has responded to any Interrogatory should not be taken as an admission that Ford accepts or admits the existence of any facts set forth or assumed by such Interrogatory, or that such response constitutes admissible evidence. The fact that Ford has responded to part or all of an Interrogatory is not intended and shall not be construed to be a waiver by Ford of all or any part of any objections to any Interrogatory made by Ford.

If, upon Plaintiffs' review of the material being produced, Plaintiffs believe that particular referenced documents may be relevant and wish to have them produced, and if Plaintiffs provide Ford with a description of those documents so that further inquiry and search can be made, Ford will conduct a supplemental search. If the documents can be located and are determined to be relevant and discoverable, Ford will promptly produce them in a supplemental response. If the documents cannot be located, or upon review are determined to be irrelevant or otherwise non-discoverable, Ford will promptly so inform Plaintiffs.

AUS:2077017.1
13486.95555

Some of the documents produced in response to Plaintiffs' discovery requests may refer to other documents, people, and events that have not been located in Ford's duly diligent search as described above. Ford has not studied each and every document produced for the purposes of (1) identifying each and every document, event, or person referred to in those documents, (2) determining whether each and every document, event, or person referred to might relate to some issue in this lawsuit, or (3) determining whether each and every document, event, or person referred to has been otherwise disclosed in the course of discovery in this case. Requiring Ford to conduct such a search would be unreasonably burdensome and essentially unending, because any information referred to would in turn refer to additional documents, people and events, which in turn would refer to still others, and so on. If, however, upon Plaintiffs' review of the material being produced, Plaintiffs believe that particular referenced documents may be relevant and wishes to have them produced, and if Plaintiffs provide Ford with a description of those documents so that further inquiry and search can be made, Ford will conduct a supplemental search. If the documents can be located and are determined to be relevant and discoverable, Ford will promptly produce them in a supplemental response. If the documents cannot be located, or upon review are determined to be irrelevant or otherwise non-discoverable, Ford will promptly so inform Plaintiffs.

Although Ford, by producing certain documents and by permitting inspection and copying by Plaintiffs, is producing some materials dealing with other models and model years, Ford does not hereby waive its objection that such documents are outside the proper scope of discovery. Ford does not stipulate or otherwise admit that these documents and other materials are authentic, relevant or admissible. Ford expressly reserves all objections to admission of these materials provided by the rules of evidence and procedure.

AUS:2077017.1
13486.95555

To the extent that Plaintiffs have sought to ascribe special meanings or definitions to words used in this set of discovery, Ford has declined to accept those specialized meanings and definitions and has interpreted all words contained in this set of discovery in accordance with their ordinary and customary meanings.

Ford hereby objects to these Interrogatories/Requests as a whole on the above grounds. In order to avoid repetition, Ford also hereby incorporates these objections into each of its Responses set out below as if these objections were set forth in their entirety in each Response.

### GENERAL OBJECTION

For purposes of responding to Plaintiffs' written discovery requests, Ford objects to Plaintiffs' definition of "Ford Explorer" as set forth in the preamble to the requests. Plaintiffs' definition of "Ford Explorer" covers several different types of vehicles and applies to any of those vehicles sold "anywhere in the world." In the context of Plaintiffs' requests, the definition is overly broad, unduly burdensome and, at times, confusing.

### PLAINTIFFS' FIRST SET OF *FORUM NON CONVENIENS* INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSIONS TO DEFENDANT FORD MOTOR COMPANY
### *FORUM NON CONVENIENS* INTERROGATORIES

### INTERROGATORY NO. 1

Identify each person preparing these responses to discovery (including persons consulted fro [sic] preparing responses). Include each person's job title or position, and a brief job description.

### OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege or work-product doctrine, and on the additional grounds that the Interrogatory is overly broad, unduly burdensome and seeks information that is

7

neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Without waiving its objections, these are the responses of Ford, which have been prepared by and under the supervision of Ford's attorneys, including counsel of record in this lawsuit, and with the assistance of various Ford employees. The answers are verified on Ford's behalf by a duly authorized agent as required under the applicable rules.

**INTERROGATORY NO. 2**

If you believe that any other person or business entity (or related business that may go by a different name) may be responsible for Plaintiffs' damages, or may be the intended recipient of this lawsuit, then please list all such other entities.

**ANSWER:**

Discovery has just commenced in this case, so this request is premature. But at this point, Ford is unaware of any such person or entity, but discovery is ongoing and Ford will supplement this response if needed.

**INTERROGATORY NO. 3**

If you contend that Plaintiffs' injuries, if any, were the result of the negligent, grossly negligent, or intentional acts or omissions of any person or entity, including but not limited to Plaintiffs, Defendants, or any co-Defendants or other legal entity, then please provide the following information with regard to each such alleged act or omission.

    (a)      Describe the act or omission.

    (b)      Identify each person who was involved in participated in the act or omission..

    (c)      Identify any witnesses or evidence which potentially supports your

8

allegation.

(d)     State what you contend the party responsible for the act or omission should

have done differently.

## ANSWER:

Discovery has just commenced in this case, so this request is premature.  Ford expects to

conduct discovery relevant to this request and will supplement its response appropriately.

## INTERROGATORY NO. 4

State whether you or anyone acting on your behalf has made any investigation into the

incident in question and/or the events leading up to or following the incident.  If so, please

provide the following information:

(a)     identify and state the occupation of the person(s) who conducted each

investigation.

(b)     State the date(s) on which each investigation was conducted.

(c)     identify and state the employer of each person from whom a statement was

taken during each investigation; and

(d)     Identify any reports photographs, films, video recordings, maps, drawings,

charts, diagrams, measurements, surveys, computers disks, or other documents

generated by referring to and results of each investigation.

## OBJECTIONS:

Ford objects on the basis of attorney client and work product privileges.  Subject thereto,

Ford identifies Mr. Roger Chen as the Ford Design Analysis engineer who inspected the vehicle

on May 13, 2003.

9

## INTERROGATORY NO. 5

State whether you (or anyone consulted, hired, and/or cooperating with you) has conducted any tests, inspections, or analysis relating to the Ford Explorer made the subject of this suit. Please limit your response to any tests, inspections, or analysis related to the type of failure made the subject of this suit. If so, please provide the following information.

    (a)    State the subject and purpose of each test, inspection, or analysis.

    (b)    Identify the person(s) who conducted each test, inspection, or analysis.

    (c)    State the date on which each test, inspection, or analysis was performed.

    (d)    State the findings and/or results of each tests, inspection, or analysis.

    (e)    State whether any written report was prepared in connection with each test, inspection, or analysis. If so, identify the person or entity which currently has possession of said report(s), and said report(s) entire distribution list.

## ANSWER:

Ford objects to this request to the extent it seeks to invade the attorney client or work product privileges. Subject thereto, Ford identifies Mr. Roger Chen as the Ford Design Analysis engineer who inspected the vehicle on May 13, 2003.

## INTERROGATORY NO. 6

Please state the name and complete address of at least five (5) persons, either currently or formerly employed by the Defendant, who possess the greatest amount of knowledge with regard to the details of the design, testing, and production of the Ford Explorer made the subject of this suit and where the decisions and engineering choices were made.

10

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer.

**ANSWER:**

This Interrogatory, as written, would require Ford to identify five individuals knowledgeable in a wide array of topics, concerning 14 years of vehicle production and spanning three unique vehicle programs. This is a nearly impossible task and a potentially useless exercise as plaintiffs have arbitrarily selected the number five. Complete information regarding these areas of inquiry would require input from numerous sources. Ford will exercise its right to choose appropriate corporate representative(s) in response to proper deposition notices designating areas of inquiry. However, Mr. Roger Chen, a Ford Design Analysis engineer, is generally knowledgeable regarding the design of the component parts, systems and assemblies relating to the vehicle performance characteristics of the Explorer.

**INTERROGATORY NO. 7**

What percentage of the vehicle in question was manufactured in the United States? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in the United States.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not

11

limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. To require Ford to list out each component and identify its location of manufacture, would be unquestionably burdensome and nonsensical.

**ANSWER:**

The subject 2001 Explorer was not assembled in the United States.

**INTERROGATORY NO. 8**

What percentage of the vehicle in question was assembled in the United States? Fully identify such components' assembly in the United States, and fully explain all assembly or partial assembly of the-subject product that occurred in the United States.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. To require Ford to list out each component and identify its location of manufacture, would be unquestionably burdensome and nonsensical.

**ANSWER:**

The subject 2001 Explorer was not assembled in the United States.

AUS:2077017.1
13486.95555

## INTERROGATORY NO. 9

Did this Defendant design the Ford Explorer? If so, then state the full name and complete street address of the person (or persons) responsible for its design, and give the approximate date that the product was designed. If this Defendant did not design the product in question, then fully identify and set forth information within your possession regarding the product's design origin. Specifically, your response should include the name and address of each member of the engineering group (or team) who participated in the design, testing, and decision to produce the Ford Explorer and where said designing, testing, and decisions were made or performed.

## OBJECTIONS:

Ford object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component.

## ANSWER:

Without waiving its objection, Ford states that it designed, in part, the 2001 Ford Explorer, which is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit.   It would be virtually impossible to identify the hundreds of personnel and documents relating to the design thereof.    Ford cannot state that it was the sole designer of the vehicle as many of the vehicle's component parts may have been designed to Ford's specification by outside vendors.

13

AUS:2077017.1
13486.95555

## INTERROGATORY NO. 10

Identify any books, papers, manuals, documents, or memoranda, which contain FMC's design manuals, internal recommendations, determinations or guidelines setting forth guidelines or recommendations for Ford Explorer design and as to the acceptable or unacceptable rate or frequency of roll-over or any rate or frequency of roll-over which requires that action be taken or that notification be given by or to any internal Ford persons or organization.

## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information which is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Ford further objects to this Request as argumentative and misleading to the extent it implies that the Explorer is defective or dangerous, which Ford denies.

## ANSWER:

Ford does not prepare projections or estimations of the anticipated or expected frequency of rollover incidents involving the Explorer nor any Ford vehicle, in the ordinary course of business. Ford is willing to provide information concerning Ford's statistical review of Explorer accidents including rollovers but objects to the suggestion that Ford would predict a number for the rollovers for any given vehicle. A rollover is an infrequent and unpredictable event.

## INTERROGATORY NO. 11

What percentage of the vehicle in question was manufactured in Venezuela? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in Venezuela.

14

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. To require Ford to list out each component and identify its location of manufacture, would be unquestionably burdensome and nonsensical.

**ANSWER:**

Ford believes that the subject 2001 Explorer was finally assembled in Venezuela.

**INTERROGATORY NO. 12**

What percentage of the vehicle in question was assembled in Venezuela? Fully identify such components assembly in Venezuela, and fully explain all assembly or partial assembly of the vehicle in question that occurred in Venezuela.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. To require Ford to list out each component and identify its location of manufacture, would be unquestionably

15

burdensome and nonsensical.

**ANSWER:**

Ford believes that the subject 2001 Explorer was finally assembled in Venezuela.

**INTERROGATORY NO. 13**

Have there been any changes of the Ford Explorer in question since 1990? If so, please identify each person responsible for and describe each such alteration or change in the design specifications or manufacturing process made by Ford with respect to the stability and handling of the Ford Explorer and where the decisions and engineering choices regarding those changes were made.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' request could reasonably be construed to include hundreds of components that bear no relevance to the issues in this case.

**ANSWER:**

Without waiving its objections, Ford would generally state that the Explorer was introduced as a new vehicle in the 1991 model year and was treated as a major program (UN46). Although there were design changes during 1992-1994 model years, the Explorer was considered essentially a carryover vehicle. For the 1995 model year, the Explorer was redesigned and was again treated as a major program (UN105). The suspension, chassis and frame of the Explorer were completely redesigned in the 1995 model year. In 1998, there was a "freshening" of the Explorer (UN150), which did not significantly alter the suspension, chassis and frame of the

16

AUS:2077017.1
13486.95555

Explorer or significantly affect the handling characteristics of the Explorer. For the 2001 model year, the Explorer Sport was redesigned and the Explorer Sport Trac was introduced (U/P207). The Explorer Sport is a 2-door 4-passenger SUV, while the Explorer Sport Trac is a 4-door 5-passenger SUV with an open cargo area. Both are equipped with an independent SLA front suspension. For the 2002 model year, the 4-door Explorer was redesigned and was again treated as a major program (U152). Again, the suspension, chassis and frame of the Explorer were redesigned. These changes include a revised independent front suspension which uses the SLA coil-over-shock design. Also new for 2002 is the introduction of an all-new fully independent rear suspension, which uses a SLA coil-over-shock design. The packaging of the rear suspension with the "porthole-in-frame" design allows the rear floor to sit seven inches lower than the previous model Explorers, allowing the 4-Door Explorer to now offer a third row of seating.

**INTERROGATORY NO. 14**

Has this Defendant ever received notice of any accidents, injuries, or deaths involving the 2001 model Ford Explorer? If so, please describe each such injury or accident of which the Defendant has been notified, including the date of incident, location of incident, attorneys representing injured or deceased (if any), and a brief description of the incident.

**OBJECTIONS:**

Ford objects to this Interrogatory to the extent it is overly broad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly in that it is not limited to the type of incident at issue in this case.

AUS:2077017.1
13486.95555

**ANSWER:**

Ford states that lawsuits filed against Ford often fail to clearly state the basis for a claim, to specify the nature of the accident, or to clearly identify the alleged product defect. Because Ford is unable to accurately identify those claims which might be sought by this request, Ford will produce to Plaintiffs' counsel, upon notification and agreement to pay copying costs, those complaints received prior to April 30, 2003, retrieved from its open and closed files which seek damages for bodily injury allegedly sustained in an accident involving a rollover of a 2001 Ford Explorer vehicle.

Ford will also make available to Plaintiffs information relative to non-litigated claims for bodily injury allegedly sustained in an accident involving a rollover of a 2001 Ford Explorer vehicle. In those instances where correspondence is not available but an alleged accident is referenced in a document prepared by Ford's legal counsel or in anticipation of litigation, Ford will disclose the vehicle type, owner's name and address, document date and nature of the claim to the extent this information is available from the document. Ford asserts the attorney-client privilege and work-product protection to the remaining portion of these documents.

Finally, Ford does not concede by this response that the factual predicates of the lawsuits and claims that Ford has agreed to produce to Plaintiffs are substantially similar or relevant in any way to the accident or vehicle at issue in this lawsuit due to the fact that the various claims may include factually different accident scenarios from those at issue in this lawsuit.

**INTERROGATORY NO. 15**

Has the Ford Explorer ever been the subject of any type of a recall? If so, then fully describe each and every such recall, the reasons thereof, and all efforts by Defendant (or other) to accomplish such recall.

18

## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

## ANSWER:

Ford will produce a summary of the recall history for the subject vehicle, and produce, if found, copies of any recalls applicable to the subject vehicle. However, Ford can generally state that in May 2000, Ford de Venezuela initiated a dealers notification program to replace all Firestone radial ATX and Wilderness AT tires. This program was completed in October 2000. Ford will produce the Venezuelan Dealer Notification Program Letters.

## INTERROGATORY NO. 16

For the subject vehicle, state the following information:

(a)     Gross Vehicle Weight Rating (GVWR);

(b)     Gross Axle Weight Rating, Front (GAWR, FRT);

(c)     Gross Axle Weight Rating, Rear (GAWR, RR);

(d)     Weight of Subject Vehicle (without any cargo and without any occupants);

(e)     Current FORD recommendations regarding stability and for handling; and

(f)     At time of manufacture, FORD recommendations regarding stability and for handling and where such recommendations originated.

## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it is vague and ambiguous and seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

19

**ANSWER:**

Ford will produce the 2001 Source Book for the Ford Explorer, from which Plaintiffs can derive the requested information. Further, an Owner Guide and Warranty Facts booklet are furnished with each new vehicle at the time of its original sale and contain, among other things, clear and adequate instructions for the safe operation of the vehicle. Ford will produce representative copies of the 2001 Model Owner Guide and Warranty Facts booklet that were provided with the subject vehicle at the time of its original sale.

**INTERROGATORY NO. 17**

If this Defendant has any information identifying any potential safety risks relating to the Ford Explorer, then please fully identify such information. Please limit your response to model year 2001, and limit your response to potential safety risks relating to stability and/or handling failures.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds that it is vague and ambiguous. Ford further objects to this Interrogatory on the grounds it is argumentative and misleading to the extent it implies the Explorer is defective or dangerous vehicle, which Ford denies.

**ANSWER:**

Safety is an important factor throughout the design process of the separate component parts and overall systems equipped in the Explorer. Ford's product safety philosophy requires that it design its products not only to meet or exceed all applicable laws and regulations. Throughout virtually all phases of the design, development and production of the Explorer, Ford conducted numerous visual and functional tests and evaluations to ensure that the vehicles possess appropriate characteristics, would meet their design intent and would be reliable and

20

predictable in performance.   The subject vehicle met or exceeded the applicable government and industry standards at the time of its production.   Please refer to the vehicle certification label affixed to the driver's door of the vehicle.

## INTERROGATORY NO. 18

Produce all contracts for design, manufacture, assembly, and marketing relating to the 2001 model Ford Explorer. Please limit your response to dates pertinent to the 2001 model Ford Explorer.

## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it seeks the production of documents, not information is therefore not appropriate for an Interrogatory.   Ford further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues this lawsuit.   To require Ford to list out each component and locate the requested information, would be unquestionably burdensome and nonsensical.

## ANSWER:

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

## INTERROGATORY NO. 19

Produce all reports, letters, correspondence, and any other communications and documents sent to or received from any governmental agency whether United States or

21

Venezuela government (whether the governmental agency is for enforcement, regulatory, or other) relating to the Ford Explorer. Your response should include all such documents and materials relating to patents, product recalls, compliance documents, reporting documents, review data, and the like.

**OBJECTIONS:**

Ford objects to Plaintiffs' use of the phrase "all reports, letters, correspondence, and any other communications and documents" because it is overly broad, unduly burdensome, vague, and ambiguous. Ford further objects to the extent it seeks the production of information that may be protected from disclosure by the attorney-client privilege and/or work product protection privilege. Because of the vague and ambiguous nature of the Request, Ford is unable to specifically identify those documents that may be responsive but which are protected.

**ANSWER:**

Without waiving its objections, Ford states that information regarding patents is in the public domain, and is thus equally available to Plaintiff as it is to Ford. Ford refers Plaintiff to the Internet web site, http://patents.uspto.gov/, from which Plaintiff may find information responsive to this request. Ford does not, however, contend that this information is at all relevant to the issues in this lawsuit.

For information regarding recalls, Ford refers Plaintiff to its response to Interrogatory No. 15.

The U.S. certification files for the 2001 Explorer include many certifications for FMVSS requirements that have no bearing or relevance to this litigation, such as FMVSS 301 (Fuel System Integrity). If plaintiffs will identify a particular FMVSS for which they would like the certification files, Ford will consider such reasonable requests. Further, given that the subject

22

vehicle was assembled in Venezuela, it is unlikely complete information will be available regarding foreign certification to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the certification of the subject vehicle in Venezuela.

## INTERROGATORY NO. 20

Identify any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

## OBJECTIONS:

Ford objects to this Request on the grounds that it is vague, ambiguous and does not adequately designate the items or categories of items sought.

## ANSWER:

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

## INTERROGATORY NO. 21

Identify any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

## OBJECTIONS:

Ford objects to this Request on the grounds that it is vague, ambiguous and does not adequately designate the items or categories of items sought.

AUS:2077017.1
13486.95555

**ANSWER:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

**INTERROGATORY NO. 22**

Identify any and all research papers, reports, treatises or other publications published outside Ford Motor Company by Ford Motor Company or its employees related to the subject of Ford Explorer rollovers, stability or handling, testing or research to determine the causes of Ford Explorer rollovers.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is unintelligible, vague, ambiguous and does not adequately designate the items or categories of items sought.

**ANSWER:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

**INTERROGATORY NO. 23**

Identify any warnings or instructions issued by Ford Motor Company to anyone regarding precautions to be taken to avoid rollovers during the operation of a Ford Explorer.

**OBJECTIONS:**

Ford objects to this Interrogatory on the grounds it is vague and ambiguous, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

24

**ANSWER:**

Without waiving its objections, Ford communicated with users of the vehicle through the written material provided with the vehicle at the time it was sold by Ford and through written information on the vehicle itself. Ford will produce a copy of the Owners Guide and Warranty Facts booklet that accompanied the 2001 Ford Explorer.

## *FORUM NON CONVENIENS REQUESTS FOR PRODUCTION*

### REQUEST FOR PRODUCTION NO. 1

Please produce all documents relied upon in support of Defendant's Motion to Dismiss on forum non conveniens grounds.

**OBJECTIONS:**

Ford objects to this request because it is overly broad and unduly burdensome. Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

### REQUEST FOR PRODUCTION NO. 2

Please produce all documents relied upon in claiming this lawsuit and its underlying facts do not have sufficient connection with the State of Texas.

**OBJECTIONS:**

Ford objects to this request because it is overly broad and unduly burdensome. Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

AUS:2077017.1
13486.95555

**REQUEST FOR PRODUCTION NO. 3**

Please produce any affidavits from testifying experts related to Defendant's Motion to Dismiss on forum non conveniens grounds. This request does not seek the identity of nor affidavits from consulting only expert witnesses.

**RESPONSE:**

Ford refers Plaintiff to its papers and exhibits filed by Ford in support of its Motion to Dismiss.

**REQUEST FOR PRODUCTION NO. 4**

Please produce any and all documents that address concern, reference, or relate to what overwhelming hardship the Defendant faces in defending their product in the United States Federal Court for the Southern District of Texas.

**OBJECTIONS:**

Ford objects to this request because it is overly broad and unduly burdensome. Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

**REQUEST FOR PRODUCTION NO. 5**

Please produce any and all documents that address, concern, reference, or relate to how the convenience of any of Defendant's witnesses is improved or made easier by appearing in any foreign forum rather than in the Unites States court.

**OBJECTIONS:**

Ford objects to this request because it is overly broad and unduly burdensome. Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

26

## REQUEST FOR PRODUCTION NO. 6

Please produce any and all documents which address, concern, reference, or relate to the Defendant's position on how a foreign forum, proceeding on the merits of these disputes involving a product designed by an American company in the United States prevents waste of time, energy, and money and protects the litigants, witnesses, and the public against unnecessary inconvenience and expense.

## OBJECTIONS:

Ford objects to this request because it is vague, overly broad, and unduly burdensome. Ford refers Plaintiff to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

## REQUEST FOR PRODUCTION NO. 7

Please produce any and all documents, which address, concerns reference, or relate to ail facts, evidence, or information that you assert indicates Venezuela is "available" as an alternate forum.

## OBJECTIONS:

Ford objects to this request because it is overly broad and unduly burdensome. Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to Dismiss and Application of foreign law.

## REQUEST FOR PRODUCTION NO. 8

Please produce any and all documents which address, concern, reference., and relate to all facts, evidence, or information which you assert indicates Venezuela is "adequate" as an alternate forum.

AUS:2077017.1
13486.95555

**OBJECTIONS:**

Ford objects to this request because it is vague, overly broad and unduly burdensome.

Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its

Motion to Dismiss and Application of foreign law.

**REQUEST FOR PRODUCTION NO. 9**

Please produce any and all documents which address, concern, reference, and relate to all

items of facts, evidence, or information which you assert shows that a balancing of private

interest factors favors dismissal.

**OBJECTIONS:**

Ford objects to this request because it is vague, overly broad and unduly burdensome.  Subject

thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its Motion to

Dismiss and Application of foreign law.

**REQUEST FOR PRODUCTION NO. 10**

Please produce any and all documents which address, concern, reference, and relate to all

items of facts, evidence, or information which you assert shows that a balancing of public

interest factors favors dismissal.

**OBJECTIONS:**

Ford objects to this request because it is vague, overly broad and unduly burdensome.

Subject thereto, Ford refers Plaintiffs to the papers and exhibits filed by Ford in support of its

Motion to Dismiss and Application of foreign law.

**REQUEST FOR PRODUCTION NO. 11**

Produce all engineering orders and engineering reports, changes, or other documents

relating to the Ford Explorer.

AUS:2077017.1
13486.95555



## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it is vague and ambiguous, particularly in its use of the phrases "engineering report" and "other documents. Ford further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. As such, Plaintiffs' request could reasonably be construed to include hundreds of components that bear no relevance to the issues if this case. Further, because the scope of this Interrogatory is so vague, ambiguous, and overly broad, the Request may seek material otherwise responsive but protected from discovery pursuant the attorney-client privilege and the work product doctrine.

## RESPONSE:

Without waiving its objections, Ford would generally state that the Explorer was introduced as a new vehicle in the 1991 model year and was treated as a major program (UN46). Although there were design changes during 1992-1994 model years, the Explorer was considered essentially a carryover vehicle. For the 1995 model year, the Explorer was redesigned and was again treated as a major program (UN105). The suspension, chassis and frame of the Explorer were completely redesigned in the 1995 model year. In 1998, there was a "freshening" of the Explorer (UN150), which did not significantly alter the suspension, chassis and frame of the Explorer or significantly affect the handling characteristics of the Explorer. For the 2001 model year, the Explorer Sport was redesigned and the Explorer Sport Trac was introduced (U/P207).

29

The Explorer Sport is a 2-door 4-passenger SUV, while the Explorer Sport Trac is a 4-door 5-passenger SUV with an open cargo area. Both are equipped with an independent SLA front suspension. For the 2002 model year, the 4-door Explorer was redesigned and was again treated as a major program (U152). Again, the suspension, chassis and frame of the Explorer were redesigned. These changes include a revised independent front suspension which uses the SLA coil-over-shock design. Also new for 2002 is the introduction of an all-new fully independent rear suspension, which uses a SLA coil-over-shock design. The packaging of the rear suspension with the "porthole-in-frame" design allows the rear floor to sit seven inches lower than the previous model Explorers, allowing the 4-Door Explorer to now offer a third row of seating.

## REQUEST FOR PRODUCTION NO. 12

Please produce all documents, reports, letters, memorandum, committee reports or writings, interoffice communications, writings, and other tangible items discussing design, specification. manufacture, and/or assembly of the Ford Explorer and documents which identify where such was designed, tested, or produced.

## OBJECTIONS:

Ford objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer, or any particular component. The 2001 Ford Explorer is a complex vehicle consisting of thousands of component parts, few of which are relevant to the issues of this lawsuit. To require Ford locate and produce all information concerning all parts of the Ford Explorer, would be unquestionably burdensome and nonsensical.

30

**RESPONSE:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

**REQUEST FOR PRODUCTION NO. 13**

Produce all documents relating directly to your response to Interrogatory No. 5.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 5 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 5 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 14**

Produce all documents relating directly to your response to Interrogatory No. 6.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 6 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 5 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 15**

Produce all documents relating directly to your response to Interrogatory No. 8.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 8 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 8 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 16**

Produce all documents relating directly to your response to Interrogatory No. 10.

31

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 16 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 16 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 17**

Produce all documents relating directly to your response to Interrogatory No. 12.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 12 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 12 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 18**

Produce all documents relating directly to your response to Interrogatory No. 13.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 13 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 13 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 19**

Produce all documents relating directly to your response to Interrogatory No. 14.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 14 as if fully set forth herein

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 14 as if fully set forth herein.

AUS:2077017.1
13486.95555



**REQUEST FOR PRODUCTION NO. 20**

Produce all documents relating directly to your response to Interrogatory No 15.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 15 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 15 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 21**

Produce all documents relating directly to your response to Interrogatory No 18.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 18 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 18 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 22**

Produce an owner's manual for a Ford Explorer manufactured in the year 1996.

**OBJECTIONS:**

The subject vehicle is a 2001 Explorer. Ford objects to this Request as overly broad to the extent that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, as it is not limited to the model year vehicle at issue in this lawsuit.

**RESPONSE:**

Ford will produce a copy of the 2001 Owners Guide that accompanied the vehicle at the time of the original sale.

AUS:2077017 1
13486.95555



## REQUEST FOR PRODUCTION NO. 23

Produce an owner's manual for a Ford Explorer manufactured in the year 1997.

## OBJECTIONS:

Ford incorporates its objections to Request for Production No. 22 as if fully set forth herein.

## RESPONSE:

Ford incorporates its response to Request for Production No. 22 as if fully set forth herein.

## REQUEST FOR PRODUCTION NO. 24

Produce an owner's manual for a Ford Explorer manufactured in the year 1998.

## OBJECTIONS:

Ford incorporates its objections to Request for Production No. 22 as if fully set forth herein.

## RESPONSE:

Ford incorporates its response to Request for Production No. 22 as if fully set forth herein.

## REQUEST FOR PRODUCTION NO. 25

Produce an owner's manual for a Ford Explorer manufactured in the year 1999.

## OBJECTIONS:

Ford incorporates its objections to Request for Production No. 22 as if fully set forth herein.

AUS:2077017.1
13486.95555

**RESPONSE:**

Ford incorporates its response to Request for Production No. 22 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 26**

Produce an owner's manual for a Ford Explorer manufactured in the year 2000.

**OBJECTIONS:**

Ford incorporates its objections to Request for Production No. 22 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Request for Production No. 22 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 27**

Produce an owner's manual for a Ford Explorer manufactured in the year 2001.

**RESPONSE:**

Ford will produce a copy of the 2001 Owners Guide that accompanied the vehicle at the time of the original sale.

**REQUEST FOR PRODUCTION NO. 28**

Produce all service information available by computer for VIN 8XDZU17EX18-A19439.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Ford further objects because it asks for documents based on their location, rather than requesting the documents themselves.

AUS:2077017.1
13486.95555



**RESPONSE:**

Given that the subject vehicle was manufactured and likely serviced in Venezuela, it is unlikely complete information will be available to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the service history of the subject vehicle.

## REQUEST FOR PRODUCTION NO. 29

Produce all manufacturing information available by computer for VIN 8XDZU17EX18-A19439.

## OBJECTIONS:

Ford objects to the phrase "all manufacturing information" as vague and ambiguous and further objects to this Interrogatory on the grounds that it seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Ford further objects because it asks for information and documents based on their location, rather than requesting the documents themselves.

## RESPONSE:

Given that the subject vehicle was manufactured in Venezuela, it is unlikely complete information will be available to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the service history of the subject vehicle. Ford further objects because it asks for documents based on their location, rather than requesting the documents themselves.

## REQUEST FOR PRODUCTION NO. 30

Produce all assembly information available by computer for VIN 8XDZU17EX18-A19439.

36

**OBJECTIONS:**

Ford objects to the phrase "all assembly information" as vague and ambiguous and further objects to this Interrogatory on the grounds that it seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**

Given that the subject vehicle was assembled in Venezuela, it is unlikely complete information will be available to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the service history of the subject vehicle.

**REQUEST FOR PRODUCTION NO. 31**

Produce all sales information available by computer for VIN 8XDZU17EX18-A19439.

**OBJECTIONS:**

Ford objects to the phrase "all sales information" as vague and ambiguous and further objects to this Interrogatory on the grounds that it seeks the discovery of information or documents that are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Ford further objects because it asks for documents based on their location, rather than requesting the documents themselves.

**RESPONSE:**

Given that the subject vehicle was assembled and sold in Venezuela, it is unlikely complete information will be available to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the service history of the subject vehicle.

37



**REQUEST FOR PRODUCTION NO. 32**

Produce all letters, memorandum, studies, engineering analysis, reports, and tangible items referencing any potential safety risk in stability or handling failure that would relate to the Ford Explorer.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 17 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 17 as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 33**

If you have failed to unqualifiedly admit the Request for Admission No. 2, please provide any and all documentation of any and all cases, claims, suits, or lawsuits wherein Defendant has been subjected to a finding of liability after the exhaustion of any legal proceeding in the country of Venezuela.

**RESPONSE:**

Ford refers Plaintiffs to its response to Request for Admission No. 2.

**REQUEST FOR PRODUCTION NO. 34**

Please produce any and all documents identified in response to Request for Admission No. 11.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer.

38

**RESPONSE:**

Ford refers Plaintiff to the lawsuit and non-litigated claim information provided in response to Interrogatory No. 14.

**REQUEST FOR PRODUCTION NO. 35**

Please produce copies of any and all any and all documents in the possession or control of Defendant that contain, constitute, or document studies, reports, testing or research to determine the causes of Ford Explorer rollovers.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is vague, ambiguous and does not adequately designate the items or categories of items sought.

**RESPONSE:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

**REQUEST FOR PRODUCTION NO. 36**

Please produce copies of any and all research papers, reports, treatises or other publications published outside Ford Motor Company by Ford Motor Company or its employees related to the subject of Ford Explorer rollovers, stability or handling, testing or research to determine the causes of Ford Explorer rollovers.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is unintelligible, vague, ambiguous and does not adequately designate the items or categories of items sought.

AUS:2077017.1
13486.95555

**RESPONSE:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request, Ford will endeavor to further respond.

**REQUEST FOR PRODUCTION NO. 37**

Please produce any documents that relate to any warnings or instructions issued by Ford Motor Company to anyone regarding precautions to be taken to avoid rollovers during the operation, of a Ford Explorer.

**OBJECTIONS:**

Ford objects to this Request on the grounds it is vague and ambiguous, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**

Without waiving its objections, Ford communicated with users of the vehicle through the written material provided with the vehicle at the time it was sold by Ford and through written information on the vehicle itself. Ford will produce a copy of the Owners Guide and Warranty Facts booklet that accompanied the 2001 Ford Explorer.

**REQUEST FOR PRODUCTION NO. 38**

Please produce Ford Motor Company's management, engineering, or marketing meeting minutes, memoranda, or other business records, referring or discussing the design, testing, and production of the Ford Explorer.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably

AUS:2077017.1
13486.95555



calculated to lead to the discovery of admissible evidence to the extent it is not limited to the

model series or model year of the subject vehicle, a 2001 Ford Explorer.

**RESPONSE:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request,

Ford will endeavor to further respond.

**REQUEST FOR PRODUCTION NO. 39**

Please produce Ford Motor Company's management, engineering, or marketing meeting

minutes, memoranda, or other business records, referring or discussing stability, handling or

rollovers of the Ford Explorer.

**OBJECTIONS:**

Ford objects to this Request on the grounds that it is overly broad, unduly burdensome

and seeks information that is neither relevant to the issues in this lawsuit nor reasonably

calculated to lead to the discovery of admissible evidence to the extent it is not limited to the

model series or model year of the subject vehicle, a 2001 Ford Explorer.

**RESPONSE:**

Ford relies on its objections, but states that if Plaintiffs clarify or narrow their request,

Ford will endeavor to further respond.

**REQUEST FOR PRODUCTION NO. 40**

Please produce a copy of those government standards or regulations, whether mandatory

or voluntary, whether in the United States or foreign, which Ford Motor Company believes were

applicable to the design, testing, manufacture, performance or export of the Ford Explorer sold

by Defendant from 1988 through the present

41



**OBJECTIONS:**

Ford objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the model series or model year of the subject vehicle, a 2001 Ford Explorer.

**RESPONSE:**

The 2001 Ford Explorer met or exceeded all the industry and governmental standards in effect at the time of its original sale. The U.S. certification files for the 2001 Explorer include many certifications for FMVSS requirements that have no bearing or relevance to this litigation, such as FMVSS 301 (Fuel System Integrity). If plaintiffs will identify a particular FMVSS for which they would like the certification files, Ford will consider such reasonable requests. Further, given that the subject vehicle was assembled in Venezuela, it is unlikely complete information will be available regarding foreign certification to permit an answer. Ford will search for and, to the extent located, produce copies of the available, relevant, documents in its possession concerning the certification of the subject vehicle in Venezuela.

**REQUEST FOR PRODUCTION NO. 41**

Please produce any and all non-lawsuit complaints, incident reports or other notices made by any dealership, customer, consumer or government agency to Ford alleging the rollover of a Ford Explorer from 1988 through the present.

**OBJECTIONS:**

Ford incorporates its objections to Interrogatory No. 14 as if fully set forth herein.

**RESPONSE:**

Ford incorporates its response to Interrogatory No. 14 as if fully set forth herein.

42

## *FORUM NON CONVENIENS* REQUESTS FOR ADMISSIONS

### REQUEST FOR ADMISSIONS NO. 1

Admit that Defendant routinely claims factors such as driver error, failure to control speed, overloaded vehicles and tires in poor condition as the real factors that causes [sic] rollovers of Ford Explorers in Venezuela.

### OBJECTIONS:

Ford objects to the term "routinely" as vague and ambiguous and argumentative.

### RESPONSE:

Ford admits that it has cited factors including driver error, failure to control speed, overloaded vehicles and tires in poor condition as causal factors for rollovers of the Ford Explorer in Venezuela.

### REQUEST FOR ADMISSIONS NO. 2

Admit that Defendant has never suffered or been subjected to a finding of liability after the conclusion of any legal proceeding in the country of Venezuela with respect to injuries or death suffered as a result of alleged defects in stability or handling of a Ford Explorer such as the one at issue here.

### OBJECTIONS:

Ford objects to the terms "suffered," "finding of liability," and "legal proceeding in the country of Venezuela" as vague and ambiguous.

### RESPONSE:

Ford admits that as of the time of filing this response, it is not aware of any final judgment that has been entered against Ford Motor Company in the country of Venezuela as a result of a product defect claim in an Explorer.

43



### REQUEST FOR ADMISSIONS NO. 3

Admit that Defendant designed the Ford Explorer in the United States.

### OBJECTIONS:

Ford objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.

### RESPONSE:

Ford admits that it designed, in part, 2001 Ford Explorer vehicles in the United States. Beyond this, Ford after a reasonable inquiry of the information known or readily available, Ford is without knowledge or information sufficient to admit or deny this request because Ford is not the sole designer of 2001 Ford Explorers, including the subject Explorer, which is comprised of thousands of component parts may have been designed to Ford's specifications by outside vendors.

### REQUEST FOR ADMISSIONS NO. 4

Admit that Defendant tested the Ford Explorer in the United States.

### OBJECTIONS:

Ford objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.

### RESPONSE:

Ford admits that it tested, in part, 2001 Ford Explorer vehicles in the United States. Beyond this, Ford after a reasonable inquiry of the information known or readily available, Ford is without knowledge or information sufficient to admit or deny this request because Ford is not the sole designer of 2001 Ford Explorers, including the subject Explorer, which is comprised of

44

thousands of component parts may have been designed to Ford's specifications by outside vendors.

## REQUEST FOR ADMISSIONS NO. 5

Admit that Defendant produced the Ford Explorer in the United States.

## OBJECTIONS:

Ford objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally. Ford also objects because "produced" is vague and ambiguous.

## RESPONSE:

Ford denies this request for the reason that it is untrue; the subject Explorer was not assembled in the United States.

## REQUEST FOR ADMISSIONS NO. 6

Admit that Defendant's management and executives responsible for the decisions pertaining to the production of the Ford Explorer reside or are situated in the United States.

## OBJECTIONS:

Ford objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally. Ford also objects because "produced" is vague and ambiguous.

## RESPONSE:

Ford denies this request for the reason that it is untrue; the subject Explorer was not assembled in the United States.

45

## REQUEST FOR ADMISSIONS NO. 7

Admit that Defendant's design and testing engineers, who were involved in the design and testing of the Ford Explorer, reside or are situated in the United States.

## OBJECTIONS:

Ford objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.

## RESPONSE:

Ford admits that it designed, in part, and tested, in part, 2001 Ford Explorers. Ford also admits that there are Ford design and test engineers that reside or are situated in the United States.

## REQUEST FOR ADMISSIONS NO. 8

Admit that Defendant maintains all documents, memoranda, records, and other data compilation with regard to the design, testing, and production of the Ford Explorer in the United States.

## OBJECTIONS:

Ford objects to "all" and "other" as overly broad.

## RESPONSE:

Ford denies this request for the reason that it is untrue.

## REQUEST FOR ADMISSIONS NO. 9

Admit that Defendant manufactured the vehicle in question.

## OBJECTIONS:

Ford objects to "manufactured" as vague and ambiguous.

AUS.2077017.1
13486.95555

**RESPONSE:**

Ford admits that it assembled, in part, the subject 2001 Ford Explorer outside of the United States. Ford was not the sole assembler of this Explorer, as the subject vehicle's is comprised of thousands of component parts that may have been manufactured to Ford's specifications by outside vendors.

**REQUEST FOR ADMISSIONS NO. 10**

Admit that the vehicle in question failed due to a stability and/or handling design flaw.

**OBJECTIONS:**

Ford objects to "failed" and "design flaw" as misleading, argumentative and undefined.

**RESPONSE:**

Ford denies this request for the reason that it is untrue.

**REQUEST FOR ADMISSIONS NO. 11**

Admit that you maintain loss adjustment data for the Ford Explorer. The term "loss adjustment data" means summary compilations of individual claim adjustment records, field performance data and/or customer concession adjustment records, rainbow charts, awareness charts, vehicle failure records, failure data compilations or other statistical, quantitative or numerical records regarding handling or stability failures.

**OBJECTIONS:**

Ford objects to this request's definition of "lost adjustment data" as vague and ambiguous and overly broad.

**RESPONSE:**

Ford admits that it compiles data regarding alleged product failures, including regarding Ford Explorer vehicles.

AUS:2077017.1
13486.95555

**REQUEST FOR ADMISSIONS NO. 12**

Admit that Ford possesses documents that discuss designing of the Ford Explorer, in the United States.

**OBJECTIONS:**

Ford objects to "discuss" as overly broad.  Ford also objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.

**RESPONSE:**

Ford admits that it possesses documents regarding the design of Ford Explorer vehicles in the United States.

**REQUEST FOR ADMISSIONS NO. 13**

Admit that Ford possesses documents that discuss testing of the Ford Explorer, in the United States.

**OBJECTIONS:**

Ford objects to "discuss" as overly broad.  Ford also objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.

**RESPONSE:**

Ford admits that it possesses documents regarding testing Ford Explorer vehicles in the United States.

**REQUEST FOR ADMISSIONS NO. 14**

Admit that Ford possesses documents, which discuss production of the Ford Explorer in the United States.

48

**OBJECTIONS:**

Ford objects to "discuss" as overly broad. Ford also objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally. Ford finally objects to "production" as vague and ambiguous.

**RESPONSE:**

Ford denies this request for the reason that it is untrue; the subject Explorer was not assembled in the United States.

**REQUEST FOR ADMISSIONS NO. 15**

Admit that Ford possesses documents that discuss engineering choices pertaining to the Ford Explorer, in the United States.

**OBJECTIONS:**

Ford objects to "discuss" as overly broad. Ford also objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally. Ford finally objects to "engineering choices" as vague and ambiguous.

**RESPONSE:**

Ford admits that it possesses documents regarding "engineering choices" for Ford Explorer vehicles in the United States.

**REQUEST FOR ADMISSIONS NO. 16**

Admit that Ford possesses documents that discuss management decisions pertaining to the Ford Explorer, in the United States.

AUS:2077017.1
13486.95555

**OBJECTIONS:**

Ford objects to "discuss" as overly broad.  Ford also objects to "the Ford Explorer" as vague and ambiguous; Ford does not know whether Plaintiff is referring to the subject Explorer, or Explorer vehicles generally.   Ford finally objects to "management decisions" as vague and ambiguous.

**RESPONSE:**

Ford admits that it possesses documents regarding "management decisions" for Ford Explorer vehicles in the United States.

**REQUEST FOR ADMISSIONS NO. 17**

Admit that Ford has previously produced in other litigation, documents which discuss Ford Explorer rollovers during testing of the Ford Explorer in the United States.

**OBJECTIONS:**

Ford objects to "discuss" as over broad.

**RESPONSE:**

Ford admits that it has produced in other litigation documents regarding testing of Ford Explorer vehicles, as well as documents regarding rollovers of Ford Explorer vehicles, in the United States.

**REQUEST FOR ADMISSIONS NO. 18**

Admit that Ford has received consumer complaints regarding a Ford Explorer rollover in the State of Texas.

**RESPONSE:**

Ford admits that it has received consumer complaints regarding Ford Explorer rollovers, including in the State of Texas.

50



## REQUEST FOR ADMISSIONS NO. 19

Admit that Ford has litigated other cases involving the deaths or injuries allegedly caused by Ford Explorer rollovers in the State of Texas

## RESPONSE:

Ford admits that it has been involved in litigation involving injuries or deaths allegedly caused by Explorer rollovers, including in the State of Texas.

## REQUEST FOR ADMISSIONS NO. 20

Admit that the litigation of cases involving the deaths or injuries allegedly caused by Ford Explorer rollovers in the State of Texas was not inconvenient.

## OBJECTIONS:

Ford objects to this Request as nonsensical. The phrase, "in the State of Texas was not inconvenient," makes no sense as written.

## RESPONSE:

Ford relies on its objections.

51