

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES And MAYTHEM GIORGINA PINEDA MORALES, INDIVIDUALLY AND AS ADMINISTRATOR/IX OF THE ESTATE OF JORGE ENRIQUE PINEDA CARVAJAL, Deceased; BEATRIZ DEL VALLE PINEDA, INDIVIDUALLY, GIORGIA PINEDA MORALES, EDWARD ENRIQUE PINEDA MORALES, INDIVIDUALLY; | § § § § § § § § § § § | |
| | § | |
| DOLORES CHACON DE PINEDA, INDIVIDUALLY AND AS NEXT FRIEND OF JORGE LUIS PINEDA CHACON, | § § § § § | CIVIL ACTION NO. B-03-061 |
| Plaintiffs, | § § § | |
| | § § | |
| vs. | § § | |
| | § | ORAL ARGUMENT REQUESTED |
| FORD MOTOR COMPANY, Defendant | § § | |

**PLAINTIFFS' SUPPLEMENTAL SURREPLY TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs reurge the Court to deny Defendant's motion to dismiss for *forum non conveniens* for the reasons that: (1) Defendant fails to meet its burden of persuasion in showing that an adequate alternative forum exists; (2) Defendant fails to show that the private and public interests outweigh the convenience of maintaining the suit in Defendant's home forum; (3) Defendant fails to show that maintaining the suit in Defendant's home forum is vexatious or oppressive; and (4) Defendant attempts to use the doctrine of *forum non conveniens* to "reverse forum shop" and as a means of evading responsibility for the killing of Dr. Carvajal rather than as an instrument for the furtherance of justice.

## I.   BACKGROUND

The case at bar involves a determination of the circumstances surrounding the design of the subject Ford Explorer, the reasons for the failure of the vehicle attributable to a design flaw, and the damages associated therewith.

On January 9, 2004 a telephonic hearing was held to discuss Plaintiffs' motion to compel discovery. At the conclusion of that hearing, Defendant was ordered to supplement its answers and responses to Interrogatories and Requests for Production on or before January 28, 2004. Plaintiffs were ordered to file its supplemental response to Defendant's motion to dismiss on or before February 11, 2004 based on Defendant's responses. EXHIBIT A.

On January 28, 2004 Defendant filed its supplemental answers to Interrogatories. EXHIBIT B.

Plaintiffs incorporate by reference its pleadings, responses, and surreplies previously submitted and filed with this Court as though fully set forth herein.

## II.   SUPPLEMENTAL ARGUMENTS AND AUTHORITIES

### A.   The balance of private factors favors Plaintiffs' choice of forum.

On a motion to dismiss based for *forum non conveniens*, the Court's analysis of Plaintiffs' "private interest" begins with the elements of Plaintiffs' causes of action; a consideration of the evidence required to prove and disprove each element; and then make a reasoned assessment as to likely location of such proof. *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003); *Macedo v. Boeing Co.*, 693 F.2d 683, 688-89 (7th Cir. 1982). Considering the relatively significant portions of material evidence available in the

United States as opposed to Venezuela and the theories the parties will seek to prove at trial, two conclusions may be reached: (1) Defendant fails to present sufficient evidence to support its motion; and (2) Plaintiffs' choice of forum is convenient and appropriate.

1. **The existence, availability, and accessibility of documentary evidence relevant to Plaintiffs' causes of actions and Defendant's defense favor maintaining jurisdiction in the United States.**

♦ Over 285,000 documents pertaining to Venezuela alone and known as "Venezuelan Documents" are deposited in the United States. EXHIBIT B.

♦ It is indisputable that all documents pertaining to the engineering development, design, testing, analysis, and production of the subject Ford Explorer are situated in the United States.

♦ It is indisputable that all documents including executive and management reports, and letters discussing stability and handling issues, safer alternative design, alternative design testing in regard to the handling and stability of the subject Ford Explorer are retained in the United States.

♦ It is indisputable that all documents, including engineering analyses and engineering and management recommendations, pertaining to of stability and handling issues, are preserved in the United States.

♦ It is indisputable that all documents concerning Ford Explorer "roll-over" and "rear-end skate" (a condition where the vehicle moves from a straight line direction) are maintained in the United States.

♦ It is indisputable that all documents pertaining to Venezuelan consumer complaints and accidents are retained in the United States.

The relative ease of access to sources of proof that are critical to determining the design of the subject Ford Explorer and the reasons for the failure of the vehicle clearly point toward hearing the merits of this case in Plaintiffs' choice of forum. Defendant surely cannot honestly claim that the cumbersome task of translating all these documents into Spanish and transporting them to a Venezuelan court 3000 miles away from their own home forum would be convenient and appropriate. To the contrary, such a task is not only needlessly onerous and expensive but it also shows to what extent this multinational

3

corporation will go to "reverse forum shop" and avoid responsibility for the failure of their product.

> **2.    The existence, availability, and accessibility of potential witnesses relevant to Plaintiffs' causes of actions and Defendant's defense favor maintaining jurisdiction in the United States.**

Notably, Defendant did not identify additional potential witnesses who have investigated the accident and will be called to testify. However, the Court should also consider that, if trial on the merits is reached in this case, whether in the United States or in Venezuela, Defendant will identify a number of additional individuals who will have been retained to render expert opinions and/or testify relevant to the elements of Plaintiffs' causes of action:

- ♦ **Lee Carr -**        Mechanical Engineer; Failure analysis and accident reconstruction; Risk analysis of mechanical designs; Quantification of actual risk for use of existing systems; Design, design verification; Design and evaluation of automotive crash protection systems and crashworthiness analysis of motor vehicles; Application of Federal Motor Vehicle Safety Standards and other requirements to automobiles, trucks and buses. EXHIBIT C.

- ♦ **Donald Tandy -**    Mechanical Engineer; Failure analysis and accident reconstruction; Risk analysis of mechanical designs. EXHIBIT C.

- ♦ **Todd Hoover –**    Electrical Engineer; Failure analysis and accident reconstruction; Risk analysis of mechanical design; Vehicle testing and instrumentation. EXHIBIT C.

- ♦ **Michelle Vogler -**    Mechanical Engineer; Failure analysis/design evaluation of motor vehicle systems; Accident reconstruction; Design and implementation of mechanical test programs;Risk analysis and statistical evaluation of system and field performance. EXHIBIT C.

- ♦ **Robert Pizialli -**    Mechanical Engineer; Biomechanics. EXHIBIT C.

- ♦ **Larry Ragan -**    Aerospace Engineering; Automotive engineering and mechanical/structural design; Failure and safety analysis of mechanical systems and subsystems including automotive components for light/heavy trucks, multipurpose and passenger vehicles; Accident reconstruction and analysis;

Human factors in design and operation of automotive and mechanical system; Governmental regulatory process, standards and history. EXHIBIT C.

- ◆ **Karl E. Stopschinski** - Electrical Engineer; Crash investigation, analysis and reconstruction; Forensic investigation of crashes; Vehicle dynamic analysis. EXHIBIT C.

- ◆ **Eddie R. Cooper** - Mechanical Engineering; Failure analysis of vehicles, vehicle components and vehicle systems, including passenger cars and trucks. EXHIBIT C.

These are all individuals who Defendant has consistently retained in other litigation similar to the case at bar to render opinions pertaining to the critical issues of liability in this case: accident reconstruction; design engineering; mechanical engineering; statistical analysis; biomechanics and roof design. EXHIBIT C. All reside in the United States, their work will be performed in the United States, their opinions and conclusions will be based on documents maintained in the United States, and their reports will be written in English. Similarly, any and all experts retained by Plaintiffs to render expert opinions as to accident reconstruction, design, alternative design, and biomechanics are situated in the United States. Certainly consideration of transportation costs, the inconvenience of transporting these individuals to a foreign country for trial, translating their reports into Spanish, and interpreting their testimony into Spanish militates a finding that trial on the merits in this forum is both convenient and appropriate in this case.

Similarly, it is indisputable that the design engineers, management, executives and corporate representatives who were involved in the design, testing and production of the Ford Explorer are situated in the United States. Clearly, the same consideration of convenience, appropriateness and cost support this Court's maintenance of jurisdiction over this case.

5

In identifying Robert Pascarella and four Venezuelan individuals as possessing the greatest amount of knowledge with regard to the details of the design, testing, and production of the subject Ford Explorer, Defendant is ostensibly identifying potential witnesses whose testimony is crucial, relevant, and material to disputed issues in the case at bar. EXHIBIT B at 4. "Curiouser and curiouser," is the fact that closer scrutiny of Defendant's response reveals that the Venezuelan individuals have no knowledge as to design and testing of the Ford Explorer. EXHIBIT B at 4-5. Their identification can only be described as misleading and disingenuous.

- ♦ Hector Rodriguez is a *purchasing director* who is responsible for the sourcing of local parts, purchasing and quality approval. EXHIBIT B at 4-5.

- ♦ Luis Marcano is a *buyer,* responsible for the local negotiation of the tires. EXHIBIT B at 4-5.

- ♦ Francisco Grau and Roselia Morena are engineers respectively responsible for the *approval of the tires* and the *selection of shock absorbers*. EXHIBIT B at 4-5.

The case at bar does not involve a tire defect, nor does it involve a manufacturing or marketing defect but rather a defect in the handling and stability aspects of the subject vehicle. None of the identified Venezuelan individuals have any involvement in the design or testing of the subject vehicle. Clearly the materiality and importance of their testimony would be irrelevant to the merits of Plaintiffs' causes of action as well as Defendant's defense. Therefore the Court should presume that all individuals possessing such knowledge are situated in the United States.

In sum, examining the substance of the disputes in this case, specifically the design of the subject Ford Explorer, failure of the vehicle attributable to a design flaw, and the damages associated therewith, the primary, necessary, material and relevant evidence (both documentary and testimonial) that will support the parties respective

6

causes of action and defense are more easily accessible were trial on the merits held in

Plaintiffs' choice of forum. Clearly, the four *Gilbert* private factors that are concerned

with obtaining evidence from abroad favor this Court retaining jurisdiction in this case.

**B.     The balance of the public factors favors Plaintiffs' choice of forum.**

- ◆ 100% of the subject Ford Explorer was designed in the United States. EXHIBIT B at 6.

- ◆ 100% of the testing pertaining to roll-over, rear-end skate and other stability and handling issues including alternative design were conducted.

- ◆ 100% of the decisions and recommendations based on roll-over, rear-end skate and other stability and handling test results were made in the United States and then disseminated to Venezuela.

- ◆  18% of the parts manufactured for the subject Ford Explorer were manufactured by Venezuelan vendors according to U.S. Ford design and specifications. EXHIBIT D at 7-8. Such parts included glass, seat belts, battery, carpet, seats, radio, antenna, noise insulators, shock absorbers, rear springs, air conditioning system, radiator, tires, and paint. None of these parts play any role in the design of the vehicle. EXHIBIT B at 7-8.

- ◆ 82% of the parts manufactured for the subject Ford Explorer were manufactured in the United States. EXHIBIT B at 5.[1]

- ◆ At least 82% of the subject Ford Explorer was assembled in the United States then shipped to Venezuela for "final assembly." The term "final assembly" remains undefined and may range from attaching the aforementioned parts (18%) to merely placing a sales sticker on the vehicle (1%).

Clearly, all of the decisions pertaining the design and alternative design of the subject

Ford Explorer were made in the United States. Without question, Ford's activities in

designing and testing the Ford Explorer in the United States have a far more significant

relationship to Plaintiffs' claims than does Venezuela and in turn support the Plaintiffs'

---

[1] Although Defendant states its "reasonable belief that seventy-two percent [72] of the parts installed in the 2001 Explorer assembled in Venezuela were supplied by a U.S. manufacturer..." Plaintiff believes this calculation to be in error based upon Defendant's answer to Interrogatory No.11 wherein Defendant states18% of the subject vehicle was manufactured in Venezuela. Working backward, it appears more accurate to conclude that at least 82% of the subject Ford Explorer was manufactured and assembled in the United States.

choice of forum. Whereas in *Blanco* there was little connection with the local forum, this case presents a situation where the connection is close and immediate. *Blanco v. Banco Industrial De Venezuela, S.A.*, 997 F.2d 974 (2nd Cir. 1993).

Under a "governmental interests" reasoning, the United States has a strong interest in adjudicating the disputed issues and in the precedential value of issues presented to the Court. Further, it cannot be denied that there is a strong public interest in determining the design and operational safety of vehicles of United States origin, and whether known safety standards, if observed, would avert similar catastrophes at home. That interest militates toward having these questions determined in the forum best capable of adjudicating claims of this nature, in which the expertise of scientific, public interest, and regulatory groups is most readily available. The information that is revealed during this trial might have an important bearing on the development of domestic laws and standards regarding SUVs, and indeed the future of the automotive industry.

Plaintiffs emphasize that such action is not unusual. United States courts have taken special interest in and denied dismissal on *forum non-conveniens* when the United States had local or national interest. *Friends For All Children Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602 (Ct. App. D.C. 1982); *Transamerica Leasing Inc. v. La Republica de Venezuela*, 21 F. Supp. 2d 47 (D.C. 1998).

There simply is no compelling argument why a U.S. manufacturer of a product that is distributed worldwide, which causes injury or fatality in the State of Texas and in the Republic of Venezuela, should not be subject to suit and held accountable for its acts or omissions in its own forum. As much as Defendant would like to insulate itself from liability exposure, the fact remains that if an American manufacturer is going to avail

itself of the benefit of a world market and reap the benefit of selling its U.S. designed product abroad, it should have the burden of being subject to liability in its own home court.

Further, Texas has a strong interest in regulating corporations doing business in Texas. *Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1140-41 (N.D. Tex. 1980) (even though no Texas plaintiff was involved in the suit against the defendant, a Texas corporation, the court still applied Texas law based on Texas' desire to force Texas corporations to accept responsibility for the failure to exercise adequate care).

## II.    CONCLUSION AND PRAYER FOR RELIEF

Defendant has failed to meet its burden in establishing that an adequate and alternative forum exists. Defendant also fails to distinguish that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons rather than for reasons of convenience. To the contrary, Defendant is using the doctrine of *forum non conveniens* as a means to "reverse forum shop" and as a procedural ploy to avoid liability. Common sense dictates that it is illogical for Defendant to succeed in avoiding suit in its own home forum. Plaintiffs ask that the Court deny Defendant's motion, retain jurisdiction of the case at bar, and give Plaintiffs the opportunity to pursue justice in their chosen forum.

Respectfully submitted,

**LAW OFFICE OF MARK A. CANTU**
*THE ATRIUM*
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel: 956/687-8181
Fax: 956/687-8868

**Juan A. Gonzalez**
State Bar No. 08129310

**Ricardo G. Benavides**
State Bar. No. 24031735

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded via regular mail, certified mail return receipt requested, and/or telefax to the following counsel of record on this the _____ day of February 2004.


Ronald D. Wamstead
John Chambless, III
Juan Alcala
BROWN McCARROLL, L.L.P.
1111 Congress Avenue, Suite 1400
Austin, Texas 78701
*Counsel for Defendant, Ford Motor Company*


Jaime Saenz
Rodriguez, Colvin & Chaney, L.L.P.
P.O. Box 2155
Brownsville, Texas 78522
*Counsel for Defendant, Ford Motor Company*


JUAN A. GONZALEZ
RICARDO G. BENAVIDES

1

```
              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF TEXAS
                    BROWNSVILLE DIVISION
```

<pre>
 1
 2
 3   _____ )
     JORGE ENRIQUE PINEDA MORALES, ET )
 4   AL                             )
                                    )
 5                                  ) CIVIL ACTION NO.
     VS.                            ) CA B-03-061
 6                                  )
     FORD MOTOR COMPANY             )
 7   _____)
</pre>

8

9                        TELEPHONIC HEARING
              BEFORE THE HONORABLE ANDREW S. HANEN
10                       JANUARY 9, 2004

11   APPEARANCES:

12   For the Plaintiffs:        MR. JUAN A. GONZALEZ
                                MR. RICARDO G. BENAVIDES
13                              Law Office of Mark A. Cantu
                                The Atrium
14                              1300 North 10th Street, Suite 400
                                McAllen, Texas  78501
15

16   For the Defendant:         MR. JOHN W. CHAMBLESS, II
                                MR. JUAN ALCALA
17                              Brown McCarroll, L.L.P.
                                111 Congress Avenue, Suite 1400
18                              Austin, Texas  78701

19   Transcribed by:            BARBARA BARNARD
                                Official Court Reporter
20                              600 E. Harrison, Box 301
                                Brownsville, Texas  78520
21                              (956)548-2591

22

23                          CERTIFIED

24   PLAINTIFF'S
     EXHIBIT
     A                          COPY
25

1          THE COURT:  This is Judge Hanen.  Who's on the phone?

2          MR. GONZALEZ:  This is Juan Gonzalez and Ricardo

3    Benavides for the plaintiffs.

4          MR. CHAMBLESS:  And John Chambless and Juan Alcala for

5    the defendants, Ford Motor Company.

6          THE COURT:  Mr. Gonzalez, who's with you?

7          MR. GONZALEZ:  Ricardo Benavides.

8          THE COURT:  Okay.  All right.  Here's what I'd like to

9    do.  I mean, obviously we have the -- we have the pending

10   motions as to where this case should be pending, and obviously

11   that's an issue that the court is very much looking at right

12   now.  What I don't want, though, is this discovery to get in the

13   way of that, first of all.  And then secondly, assuming the case

14   stays here, I don't want it to slow down this case.

15       And so for lack of a better means of doing this, you know, I

16   want you, Mr. Gonzalez, to kind of talk to me about what you

17   think out of the defendant's discovery answers you need more of,

18   and then I'll let Mr. Chambless tell me why he can't do it, and

19   then I'll figure out something that I think sounds reasonable,

20   and that's what we'll do.

21         MR. GONZALEZ:  Okay.  With your permission, Judge, I'm

22   going to have Mr. Benavides address that.  He drafted the motion

23   and he's looked at this in quite a bit more detail than I, and

24   let me have him touch on those issues for us.

25         THE COURT:  That's fine.  Go ahead, Mr. Benavides.

1        MR. BENAVIDES:  Thank you, Your Honor.  Essentially,

2   Your Honor, we've got three areas of discovery that we'd like to

3   discuss, the first being interrogatories; second, requests for

4   production; and third, requests for admission.  If the court

5   will recall, back in, I believe it was October 23rd, we had a

6   hearing, and you ordered that discovery specific to forum non

7   conveniens be conducted.

8        THE COURT:  Right.

9        MR. BENAVIDES:  We drafted our discovery as specific as

10  we possibly could to the merits of forum non conveniens.

11       THE COURT:  Okay.  Now, I'm not taking issue with your

12  thought process on that, but I've looked at the interrogatories,

13  and it looks to me like some of them go way beyond forum non

14  conveniens.

15       MR. BENAVIDES:  Well, Your Honor, I suppose they could

16  be taken that way.  But the way they're drafted, what we're

17  primarily interested in is getting information that pertains to

18  the private and/or public factors, primarily the private factors

19  that the court would rely on in conducting its forum non

20  conveniens analysis.

21       THE COURT:  And that's what I had intended for y'all to

22  get -- for you to ask for and for them to produce.

23       MR. BENAVIDES:  Correct.

24       THE COURT:  Okay.

25       MR. BENAVIDES:  Now, for example, some of the questions

1    asked --

2         THE COURT:  Well, let's do this, Mr. Benavides.  I've

3    got the interrogatories sitting in my lap.  Let's go through

4    them.

5         MR. BENAVIDES:  Okay.  Very good, Your Honor.

6    For example, starting with Interrogatory No. 4, Your Honor,

7    what we're asking for is whether or not Ford has made any

8    investigation into the incident in question, and the purpose of

9    that is to identify potential witnesses.  If Ford has conducted

10   an investigation, we presume that the individual that conducted

11   that investigation would be situated in the United States,

12   which, in terms of forum non conveniens, the analysis for that,

13   would mean that these witnesses would, if the defendant is

14   correct in its claim that the case should be dismissed and tried

15   in Venezuela, that these witnesses are going to have to be

16   transported to Venezuela, translators provided, and any reports

17   that they generated also translated as well.

18        THE COURT:  Well, let me ask you, Mr. Chambless, you've

19   identified Mr. Chen as someone who's investigated or at least

20   inspected the vehicle.  I mean, other than, you know, lawyers,

21   paralegals, people that, you know, aren't necessarily

22   contemplated by the private factors, although some cases talk

23   about where your lawyer is located, that type of thing, but most

24   of the cases actually consider that to be almost a non-factor.

25   Lawyers get short shrift in a forum non conveniens argument.  I

1    mean, who else has made an investigation of this accident?

2        MR. CHAMBLESS:  Well, Judge, what we -- the position we

3    took in response to that was that -- is to the extent that Ford

4    had, you know, hired an investigator or had had discussions with

5    them, that we considered that work product.

6        Now, if -- I won't even argue with Mr. Benavides' analysis,

7    but we went back through.  And if we know or knew of or learned

8    of any witnesses to the accident, photographs, or anything like

9    that, we've turned those over and we've provided those.  Now,

10   that may just let the cat out of the bag, but we've not

11   disclosed whether or not Ford has hired an investigator to look

12   into the accident.  And we did that --

13        THE COURT:  I think that --

14        MR. CHAMBLESS:  -- on work product grounds and then --

15        THE COURT:  That's his objection, is you haven't

16   disclosed it.

17        MR. CHAMBLESS:  I know we haven't.  We have not

18   disclosed it.

19        THE COURT:  Tell me why not.

20        MR. CHAMBLESS:  Whether there was a specific person who

21   was an investigator?

22        THE COURT:  Yeah.  Let me -- if he's eventually --

23   here's what I want you to do.  I want you to disclose that

24   person by name, address, okay, and employer, if he's ever going

25   to testify.

1          MR. CHAMBLESS:  Okay.  I'm sorry, Judge.  So the

2     condition is if he will testify?

3          THE COURT:  If he's ever going to testify.

4          MR. CHAMBLESS:  Well, he's not going to testify.

5          THE COURT:  Okay.  If no one is going to testify, then

6     your answer is all right.  But you understand what I'm saying

7     is, if you don't disclose him now, I'm not going to let him

8     testify.

9          MR. CHAMBLESS:  I understand that, Judge.  And that

10    was -- I'm sorry for not being more clear on that, but that was

11    the basis of our objection.  But the underlying type factual

12    information we've provided.

13         THE COURT:  Okay.  But I just want to make -- I'm being

14    as clear as I can be, that it's -- I don't want to -- I don't

15    want you to have someone come up and say, "Oh, yeah, we had Mr.

16    Smith.  Now we want to put him on the stand," and we find out

17    he's involved in this case and has been involved in this case

18    and you didn't disclose him.  Do you understand?

19         MR. CHAMBLESS:  I understand, Judge.  If we have

20    somebody that we are thinking about calling as a witness --

21         THE COURT:  His name better be disclosed now, okay?

22         MR. CHAMBLESS:  Understand.

23         THE COURT:  All right.  What's the next one,

24    Mr. Benavides?

25         MR. BENAVIDES:  Let's see.  The next one, Your Honor,

1    would be Interrogatory No. 5, which dovetails in with

2    Interrogatory No. 4 with regard to whether or not Ford has

3    hired, consulted or retained anybody to conduct any tests or

4    inspections; for example, an accident reconstructionist, a

5    statistician.  And again, it's for the same reasons:  Are these

6    individuals going to testify at time of trial, where are they

7    situated, and all the other related private factors under a

8    forum non analysis.

9        THE COURT:  Okay.  My ruling is going to be the same on

10    this one, Mr. Chambless.  If you've already hired somebody and

11    you're contemplating using that person as a witness, you need to

12    go ahead and disclose them now, name, address and employer.

13        MR. CHAMBLESS:  Yes, Judge, I understand.

14        THE COURT:  Okay.

15        MR. BENAVIDES:  The next one, Judge, Interrogatory

16    No. 6, what we're asking for are the names and addresses of at

17    least five individuals -- we tried to keep it as minimal as

18    possible -- that possesses the greatest amount of knowledge with

19    regards to the details of design, testing or production of the

20    Ford Explorer that's the subject of this lawsuit.

21        And again, Your Honor, it goes to the same basis.  You know,

22    these are individuals that if they are called to testify,

23    whether the trial is held here in the United States or in

24    Venezuela, where are they situated; are translators going to be

25    needed; the cost of bringing willing witnesses in to testify,

1    and all those other factors.  And what we're asking for is

2    simply an identification of five potential witnesses.

3         THE COURT:  Okay.  I want this one answered.  Okay.

4    Now, having said that, I know there's always a worry when you're

5    answering these when they use the "who possesses the greatest

6    amount of knowledge," because sometimes you're worried does Joe

7    Blow have the greatest amount of knowledge or does John Smith

8    have the greatest amount of knowledge.  But I'd like -- I want

9    this one answered.

10        MR. CHAMBLESS:  Okay.  John Chambless here.  If I might

11   just ask for one brief clarification.  Mr. Benavides --

12        MR. BENAVIDES:  Yes.

13        MR. CHAMBLESS:  -- referenced the particular vehicle at

14   issue; but in the actual interrogatory, it just says Ford

15   Explorer, and they define that to be every Explorer, every

16   change.

17        THE COURT:  No, no.  We're talking -- I'm limiting it to

18   the vehicle in question, the model vehicle, year model; year and

19   model vehicle in question, okay?

20        MR. CHAMBLESS:  Understood.

21        MR. BENAVIDES:  Understood, Your Honor.

22        THE COURT:  Now, you may end up with a split.  I mean,

23   the person that knows the most about the design may be in

24   Dearborn in Michigan.  And if this vehicle was assembled in

25   Venezuela, maybe the person who knows the most about the

1    production is in Venezuela.  But whoever that is, I want to -- I

2    want this one answered.

3            MR. GONZALEZ:  Your Honor, the next two questions,

4    Interrogatories 7 and 8, what we're asking for is for Ford to

5    give us in a percentage --

6            THE COURT:  Well, I think -- these I think they have

7    answered.  I mean, the way I'm looking at this, they're telling

8    you it's zero.

9        Mr. Chambless, now, that's my clear reading of your answer

10    to No. 7.

11            MR. GONZALEZ:  Well, Your Honor, if I may interject, the

12    question for No. 7 is asking what percentage was manufactured in

13    the United States, not assembled.

14            THE COURT:  Okay.

15            MR. GONZALEZ:  And his answer goes to assembly.

16            THE COURT:  Okay.  So he's answered No. 8, but he hasn't

17    answered No. 7?

18            MR. BENAVIDES:  Correct.

19            THE COURT:  Okay.

20            MR. BENAVIDES:  And I do -- I do have a concern with

21    regard to their answer in Interrogatory No. 8 when you compare

22    that to their answer to Interrogatory No. 11.

23            THE COURT:  Okay.  Let's cross that bridge when we get

24    to it.

25            MR. BENAVIDES:  Okay.

1    THE COURT: Mr. Chambless, why can't we, at least on

2    No. 7, make a good faith estimate of this?

3    MR. CHAMBLESS: I can go back and try to check. The

4    problem we had, Your Honor, with the way the question was worded

5    is just kind of how we spelled out in our answer. There are so

6    many parts and component parts that are not necessarily made or

7    they're vendored out to different companies, and --

8    THE COURT: Well, I don't think -- I don't think -- I'm

9    not going to hold you to -- let me -- I'm not going to hold you

10   to identifying every component part. I mean, like I'm not going

11   to say you have to tell them where the light bulb -- you know,

12   that GE made the light bulb in New York, okay? But you ought

13   to -- you ought to be able to say with some confidence that, "We

14   buy 60 percent of all --" you know, "As far as we know, 60 to

15   65 percent of this vehicle is made in the United States." Or

16   it's, you know, only 20 percent. I mean, you guys are in the

17   best shape to answer this interrogatory, and I can't believe

18   there's not someone at Ford that knows this or some group of

19   people at Ford that knows this.

20   MR. CHAMBLESS: Well, and, again, we're taking the

21   question literally as framed.

22   THE COURT: Okay. Take it literally as I framed it,

23   okay? To the extent that I'm rewriting the question, I want you

24   to say what percentage of the vehicle was manufactured in the

25   United States, and somebody -- and I'll make it easier for you.

1   Manufactured, or the parts were purchased from a manufacturer in

2   the United States.  You know, therefore, if you buy Monroe shock

3   absorbers that are produced in Indiana, that will count, even

4   though Monroe may make them in Japan or something.  You follow

5   my drift?

6           MR. CHAMBLESS:  I do.  And I think that was one of the

7   problems I think we had had originally with it, was having to go

8   through like, for example, shocks, the stereo, and those kind of

9   things.  I understand what the court is saying, and I'm going to

10  try to get an answer, I mean, just what part of the vehicle was

11  manufactured here.  I think once we're getting into it piecemeal

12  by piecemeal, it just became so difficult to make a percentage.

13          THE COURT:  No, I understand.  All right.  Let's talk

14  about 8.  Now, what is -- I read the answer to 8 -- I think a

15  fair reading of the answer to 8 is you're saying zero percent

16  was assembled in the United States.

17          MR. CHAMBLESS:  I think that would be misleading, kind

18  of just going back to this just general how was it assembled.

19  Now, assembly does get a little different than manufacturer

20  because you don't deal with all these -- where do the -- you

21  know, tracing raw materials.  Assembly, you know, once we get

22  the parts from the vendor, then that's kind of been Ford's --

23          THE COURT:  Well, why don't you tell me.  Explain to me

24  how this vehicle was assembled in Venezuela, because that's what

25  your answer to 11 says, "it was finally assembled," and I think

1   the word "finally" is probably what is bothering Mr. Benavides.

2        MR. BENAVIDES:  That's correct, Your Honor.

3        MR. CHAMBLESS:  Well, and I can get more clarification

4   on that.  It's my understanding that some of the parts may have

5   come from the United States and were shipped to Venezuela.  This

6   vehicle, as you might, you know, envision was assembled, went

7   down the line in Venezuela.

8        THE COURT:  Okay.  Well, here's what I want.  In 7,

9   you're going to tell us a percentage of what parts, you know,

10   came from the United States.  And by percentage, obviously,

11   we're going to know what parts didn't come from the United

12   States.  And then I think by doing that and then telling us that

13   the parts were then assembled in Venezuela, which is what I hear

14   you telling me, that should answer our questions for purposes of

15   forum non conveniens.  And we'll know how much was done here in

16   the United States by virtue of the answer for 7; and by virtue

17   of the answer to 8 and 11, we're going to know it was made in

18   Venezuela or finally put together.

19        MR. BENAVIDES:  That's correct, Your Honor.

20        THE COURT:  All right.  That's what I want.

21        MR. CHAMBLESS:  Okay.

22        THE COURT:  All right.  What's next, Mr. Benavides?

23        MR. BENAVIDES:  Interrogatory No. 9, Your Honor.  Again,

24   we're asking Ford to identify the name of the person or persons

25   responsible for the subject Ford Explorer's design.  Again, for

1   the same reasons, access to the witness, are they going to have

2   to be transported to Venezuela if this case is ultimately

3   dismissed, and all the other private factors that go into the

4   forum non analysis.

5       THE COURT:  Okay.  Here's what I want to -- this one we

6   ought to be able to short circuit.  And I know why they objected

7   to it, because design is a broad term.  And if you say, "Name

8   every member of the engineering team that designed it," this

9   product is a 20 year old product.  You know, there could have

10  been thousands of people that did it.

11      MR. CHAMBLESS:  Yes, Your Honor.

12      THE COURT:  Here's the way I think we ought to do it.  I

13  want to know what percentage of the design team resides in the

14  United States and what percentage resides outside the United

15  States.  And as a subset of the latter, I want to know what

16  percentage resides in Venezuela.

17      MR. BENAVIDES:  As opposed to any other country?

18      THE COURT:  Right.  So what -- I mean, it could be

19  65 percent United States, 35 percent elsewhere; and out of that

20  35 percent, 5 percent of all the designers live in Venezuela.

21      MR. CHAMBLESS:  I understand.

22      THE COURT:  Okay?  All right.  What's next,

23  Mr. Benavides?

24      MR. GONZALEZ:  Interrogatory No. 10, Your Honor.  That

25  was requesting various documents, papers, books, manuals that

1    pertain to the design of the Ford Explorer and frequency of

2    rollovers.  Mr. Chambless did provide us with some documents.

3    Specifically he provided us with FARS rates that are generated

4    by NHTSA, but what we're -- but what we believe is responsive to

5    this question is what information Ford has gleaned based on its

6    own information gathering system, if it has one.

7            THE COURT:  What would this have to do with forum non

8    conveniens?

9            MR. BENAVIDES:  Well, again, Your Honor, because the --

10   the crux of this case relies on an alleged flaw in the design,

11   the documents that are going to support that particular aspect

12   of the litigation, we believe, are all situated in the United

13   States as opposed to Venezuela.  And again, you're going to have

14   the private factors of transportation of these documents,

15   translation of these documents, and basically that's it, Your

16   Honor.

17           MR. GONZALEZ:  This is Juan.  If I might add to that,

18   Judge.  Also, I think that the design process, to the extent

19   that real world data that they take into account plays a role in

20   the decision making of design, if none of that information ever

21   came from Venezuela and it's all in the United States, then that

22   goes to some of the -- some of the factors that we're going to

23   be looking at.

24       Now, it may be that they have data concerning Venezuelan

25   rollovers that they considered in the design process for later

1    models.  And if that's the case, then that goes the other way on

2    the factor, but it's still something we think is legitimately

3    necessary.

4         THE COURT:  All right.  Here's -- on this kind of

5    question here, I'm going to do it on this and any other question

6    that falls into this category.  I'm going to limit the answer to

7    this to Venezuela, all right?  And, Mr. Chambless, let me

8    explain to you what I'm going to do when we're deciding this.

9    In a way, I'm shifting the discovery burden onto you; but, of

10   course, anytime you answer discovery, you've got the burden of

11   answering it.

12        Here's the deal.  I'm going to presume that any kind of

13   material like this, for purposes of the forum non conveniens

14   motion, is made, documented, retained, located in, whatever verb

15   you want to use, in the United States unless, for example, in

16   response to Interrogatory No. 10, you can identify those that

17   don't, okay?

18        MR. CHAMBLESS:  Uh-huh.

19        THE COURT:  So this should ease your burden as far as

20   answering it, but it should also ease the plaintiff's concern

21   about where all this stuff is located, because that's the reason

22   they're asking it.  And I'm like them.  I'd presume it's in

23   Detroit too or Dearborn or wherever you guys are headquartered.

24        So I want you to answer No. 10, and there may be other ones

25   where I make the same ruling, to the extent it's located in

1    Venezuela knowing -- Venezuela or elsewhere, if there is

2    elsewhere, but obviously Venezuela is the pertinent part to this

3    case, knowing that to the extent you don't answer it, I'm going

4    to presume it's in Michigan.

5           MR. CHAMBLESS:  Okay.  So as opposed to a breakdown or

6    specific identification, it's being limited to identify these --

7    what they request to the extent it's in Venezuela?

8           THE COURT:  Right.

9           MR. CHAMBLESS:  Otherwise the presumption is that it's

10   going to be, well, at least not in Venezuela, probably Dearborn

11   or somewhere?

12          THE COURT:  Right.  The presumptions that I'm going to

13   exercise in deciding this forum non conveniens is everything you

14   don't identify is United States.

15          MR. CHAMBLESS:  Okay.

16          MR. BENAVIDES:  Your Honor, moving on -- let's see.

17   Moving on to Interrogatory No. 17.  The others before that are

18   fine.  Interrogatory 17, we think that kind of fits in with what

19   we've just been talking about.  What we're asking for is for the

20   defendant to identify potential safety risks related to the

21   subject Ford Explorer, and we've asked them to limit their

22   response to potential safety risks related to stability and/or

23   handling failures.  And I imagine what the court can do is

24   provide the same limitation that it did with regard to the other

25   question.

1    THE COURT:  Well, my only problem with this one in doing

2    that is I'm not sure I understand what Interrogatory 17 is

3    asking for.  You're asking them to identify potential safety

4    risks.

5    MR. GONZALEZ:  Information identifying potential safety

6    risks.  I think what we intended with that one, Judge -- and

7    again, this is Juan Gonzalez -- is information of accidents

8    occurring in Venezuela that are coming back to Detroit,

9    notifying them that these things are occurring in Venezuela.

10    THE COURT:  Okay.

11    MR. CHAMBLESS:  John Chambless.  I mean, I certainly

12    don't read that when I read the question.

13    THE COURT:  Okay.  Why don't we just -- No. 17 we're

14    going to revise to read that way.

15    MR. GONZALEZ:  We can do that, Judge.

16    THE COURT:  You don't have to revise it.  I just revised

17    it for you.

18    MR. GONZALEZ:  Thank you.

19    MR. BENAVIDES:  Thank you, Judge.

20    MR. CHAMBLESS:  This is John Chambless.  Just so I'm

21    clear then on 17, then it's --

22    THE COURT:  You're going to identify any information

23    that you have regarding stability and handling failures in

24    Venezuela with regard to the Ford Explorer model year 2001s.

25    MR. CHAMBLESS:  Regarding Venezuelan accidents, I

1    presume?

2        THE COURT:  Well, no.  I mean, if you have a memo

3    sitting in your file somewhere that says, "Hey, there haven't

4    been any accidents, but these Venezuelans have been driving off

5    mountains," or something; you know, if you've got something like

6    that, you have to identify that as well.

7        MR. CHAMBLESS:  And, Judge, that brings up an

8    interesting point.  With respect to this one and the previous

9    one we just talked about, Interrogatory 10, is that giving them

10   access to Ford docs.com as identified in my response, there are

11   hundreds of thousands of pages on Venezuelan handling and

12   stability issues.

13       THE COURT:  Well, if there are, why don't you refer them

14   to the -- those pages are bound to be numbered.  Refer them to

15   the Bates numbers and just say, "Between documents 50,000 and

16   documents 150,000, you'll find all these documents."

17       MR. CHAMBLESS:  Yes, Judge.

18       THE COURT:  All right.  Mr. Benavides?

19       MR. BENAVIDES:  Yes, Your Honor.  Let's see.

20   Interrogatories No. 18, 19, 20, 21 and 22 are all asking for

21   Ford to identify documents that range from, let's see, contracts

22   for design, manufacture and assembly related to this model year

23   Ford Explorer; letters, correspondence --

24       THE COURT:  Okay.

25       MR. BENAVIDES:  -- either sent to or received from a

1    governmental agency, whether United States government or

2    Venezuelan government, related to this model year Ford Explorer;

3    documents that constitute or contain studies, reports or testing

4    with regard to stability and handling as they relate to

5    rollover; and any other research papers, reports, or other

6    publications that Ford has in its possession related to

7    stability, handling or rollovers testing or research.

8        And this -- the requested information falls into the same

9    category of what we're talking about.  What we want Ford to be

10   able to do is tell us where these documents are situated; to

11   identify them and tell us where they're situated.  Are they all

12   here in the United States, as we're presuming, or are they all

13   or some part situated in Venezuela?

14            THE COURT:  Okay.  Here's what I -- Mr. Chambless?

15            MR. CHAMBLESS:  Yes, Judge.

16            THE COURT:  On 18, I want you to identify the contracts

17   you have for the design, manufacture, assembly and marketing in

18   Venezuela.  And I want you to also identify a percentage -- and

19   it can be a good faith estimate -- of how many -- what portion

20   of these contracts are representative of the entire production

21   of the Ford Explorer.  Okay?  Do you understand what I'm saying?

22            MR. CHAMBLESS:  I understand.  That whatever X number is

23   for contracts that went into the building of the Explorer,

24   what's Y amount related to Venezuela?

25            THE COURT:  Yeah.  Because I think what's going to

1    happen is you're going to say, "Well, the design was done here,

2    so we don't have any of those. The manufacture was done here,

3    so we don't have any of those. The assembly was done there, and

4    so we have A, B and C contracts." And, you know, there may be

5    marketing down there where Ford, you know, markets its vehicles,

6    so you may have some there. And then you say, and that --

7    those, you know, ten contracts that we've identified basically

8    constitute 10 percent of all the contracts that are

9    representative of the manufacture of this vehicle. Okay?

10           MR. CHAMBLESS: Yes, Judge.

11           MR. BENAVIDES: Your Honor, as far as the

12    interrogatories, those are the only concerns we had with Ford's

13    responses.

14           THE COURT: All right. Wait a minute, let's --

15           MR. BENAVIDES: Yes, Your Honor.

16           THE COURT: Let me finish, because you mentioned several

17    of them. Now, 19 is -- you know, I read this two or three

18    times. It's not an interrogatory.

19           MR. BENAVIDES: Let me go back to that. No, you're

20    correct, Your Honor. It does say "produce." It should say

21    "identify."

22           MR. CHAMBLESS: John Chambless. I didn't see 19 in

23    their motion to compel, so I need to read it.

24           THE COURT: Well, I was just going through all these.

25    You know, that one jumped out at me because it's not even an

1    interrogatory, so --

2        That's all right, Mr. Chambless.  You objected to it.  You

3    didn't waive anything.

4        Here's -- you understand, I want -- the matters mentioned in

5    his motion to compel, I want you to be specific about Venezuela,

6    and then I want a percentage of the whole, because that's going

7    to tell us -- now, if you want to be more specific,

8    Mr. Chambless, that's fine with me; and you actually may want to

9    because I've already told you anything that you don't identify

10   as being Venezuelan I'm going to presume is United States.

11       MR. CHAMBLESS:  I understand.

12       THE COURT:  And so you may want to say, "Oh, by the way,

13   20 percent of this was done in Germany" or whatever, or Japan or

14   whatever else.  But for purposes of the -- of the FNC motion,

15   those are the two countries we're dealing with it.  I mean, it's

16   here because this is where the lawsuit is pending, or it's there

17   because that's what you guys contend it ought to be.

18       MR. CHAMBLESS:  Okay.

19       THE COURT:  All right.  Now, Mr. Benavides, if we do

20   that, have we fixed the interrogatory answers?  And I know you

21   may come back later on on the actual substantive lawsuit and

22   say, "Well, we want more stuff now because we asked about -- we

23   were asking about Venezuela."  But as far as the forum non

24   conveniens, are we okay on the interrogatories?

25       MR. GONZALEZ:  Yes, Your Honor.

1        MR. BENAVIDES:  Yes, Your Honor, we are.

2        THE COURT:  All right.  Let's jump over to the requests

3   for production and talk to me about those.

4        MR. BENAVIDES:  Requests for production start with

5   Request for Production No. 13.  The numbers 13 through 21, Your

6   Honor, relate back to the corresponding interrogatories where

7   we're asking that the documents that are identified, for

8   example, in Interrogatory No. 5 or No. 6 or No. 8 be produced.

9        THE COURT:  All right.  Let me look back at the

10  interrogatories for a second.

11       Well, 5 -- I mean, 13 and 14 ought to be easily answered,

12  shouldn't they?  I mean, those are where you're going to

13  identify people or forever hold your peace.

14       MR. CHAMBLESS:  Yes, Judge, I understand that.

15       THE COURT:  Okay.  So those shouldn't be a problem.  You

16  should answer those.  15 and 16 is 8 and 10.

17       Okay.  I don't see that you're going to get anything out of

18  8 and 10; so I'm saying in Request for Production 14 and 15, you

19  don't have to answer them.  At least right now you don't.

20       And, gentlemen, the reason I'm saying that, Mr. Benavides,

21  is because those are the two questions that ask for percentage.

22       MR. BENAVIDES:  Correct.

23       THE COURT:  So they don't really -- there's no document

24  identified.

25       MR. BENAVIDES:  That sounds correct, Your Honor.

1    THE COURT: Okay. So those are out. Now, what's the

2  next one? 16 asks for Interrogatory 10?

3    MR. BENAVIDES: Judge, if I may, I think that's pretty

4  much the same thing. If we have a percentage or -- in other

5  words, producing the documents would be not for today, but

6  perhaps for another day.

7    THE COURT: Well, that's what I'm thinking too. I want

8  to -- I want a percentage with the same, you know, breakout of

9  Venezuelan, here's what it is. You know, we have -- and I don't

10  remember which one 10 is, but let's say it's the contracts. We

11  have 20 contracts in the design, marketing and assembly -- and

12  what was the other thing -- manufacturer in Venezuela. The

13  other -- that's -- that's 10 percent out of the entire number of

14  contracts involved in the manufacture of it.

15    Now, having said that, that's not saying that later on,

16  assuming we're still here, that I may not let them come back and

17  get a lot of this when we're actually talking about design

18  defect and stuff like that.

19    MR. CHAMBLESS: I understand, Judge.

20    THE COURT: Okay. All right. Mr. Benavides, where are

21  we coming up next then?

22    MR. BENAVIDES: Let's see, Your Honor. Does that take

23  care of -- oh, let's see. Where did we leave off? 10, okay.

24  Request for Production 17 relates to Interrogatory No. 12. And

25  again, I don't think we have to worry about that because they're

1  going to answer that by providing us with a percentage of

2  assembly.

3          THE COURT:  Right.

4          MR. BENAVIDES:  There won't be any document responsive

5  to that.

6          THE COURT:  Okay.

7          MR. BENAVIDES:  Let's see.  Now, Request for Production

8  No. 18 relates back to Interrogatory No. 13.

9          MR. GONZALEZ:  And we didn't touch on that on

10  interrogatories, so we're not going to argue about that one.

11          MR. BENAVIDES:  And the same is true for Interrogatory

12  No. 14.  As a matter of fact, John -- John was responsive to

13  that request for production and provided us with six boxes of

14  lawsuits and customer complaints and things of that nature, so I

15  think that's been adequately responded to, Your Honor.

16          THE COURT:  He didn't call up and ask you where your

17  railroad siting was?

18          MR. BENAVIDES:  No, he didn't, Your Honor.  I was too

19  busy reading them all.

20          THE COURT:  Well, let me -- let me just -- I don't mean

21  to cut you off; but, you know, some of these objections, you

22  know, are they too broad, that type of thing, I agree with.  But

23  what I really want to do -- and some of them I don't agree with.

24  But here's my general philosophy on this.  I want to fast

25  forward on this forum non conveniens question and resolve this

1  before we spend millions of dollars just deciding whose court

2  we're in, and so I want to put that very much on the front

3  burner.

4      And so, you know, I want these answered as good as we can

5  answer them with that question in mind. And, Mr. Chambless,

6  keeping in mind that my presumption, whether it's accurate or

7  not, is going to be that anything you don't answer happens in

8  the United States, okay?

9          MR. CHAMBLESS:  I understand, Judge.

10         THE COURT:  And so in a lot of ways, I'm putting the

11 burden on you.  But what's going to -- what's going to happen at

12 this hearing when we have it finally and put on all the evidence

13 and argue this, which I want to do ASAP, is Mr. Gonzalez and

14 Mr. Benavides are going to get up there and say, "Well, Judge,

15 here's what they said happened in Venezuela, so the rest of it

16 must happen in the United States."  And I'm telling you, unless

17 you answer specifically enough that it's determined that's not

18 true, that's an argument I'm going to buy, okay?

19         MR. CHAMBLESS:  I understand, Judge.

20         THE COURT:  All right.  Mr. Benavides, anything else we

21 need to -- what about the request for admissions?

22         MR. BENAVIDES:  Well, Your Honor, I think if the court

23 is going to presume that anything that is not shown to have

24 occurred in Venezuela occurred in the United States, I don't

25 think we really need to go into the requests for admissions.

1    THE COURT:  Okay.

2    MR. GONZALEZ:  I agree, Your Honor.  This is Juan

3    Gonzalez.  I think with the information that we understand

4    you're ordering Ford to provide, that fills the gaps in what we

5    know and what we need to know to argue adequately on these

6    issues, so I think that's covered it.

7    I guess the next question that arises is the question of

8    timing.  Obviously Ford needs time to do what you've asked them

9    to do, and we would request some period of time after receipt of

10   the responses to get those into our brains by osmosis and get a

11   final response in before the court.

12   THE COURT:  Okay.  Mr. Chambless, how much time do you

13   think you need?

14   MR. CHAMBLESS:  Judge, I'm going to get with Ford

15   hopefully today; you know, and I'm aware the court wants to get

16   this moving forward, and I certainly do too, the forum non

17   conveniens issue.

18   THE COURT:  Here's what I'm going to do.  Today is

19   the --

20   MR. CHAMBLESS:  Two weeks?  I mean, I'm --

21   THE COURT:  I'm sorry, I didn't hear you.

22   MR. CHAMBLESS:  Two weeks?  Is two weeks --

23   THE COURT:  All right.  I'll tell you what.  I'll give

24   you until the 28th.  That's three weeks almost.

25   MR. CHAMBLESS:  Okay.

1      THE COURT:  Not completely three weeks, but it's -- and

2  with regard to them, I know some of the requests for productions

3  are objecting to what model we're talking about.  I'm limiting

4  everything to the model in question.

5      MR. BENAVIDES:  Yes, Your Honor.

6      THE COURT:  Okay?

7      MR. CHAMBLESS:  I'm sorry.  Did you say with respect to

8  the request for productions or the interrogatories?

9      THE COURT:  To all of it.

10      MR. CHAMBLESS:  Okay.

11      THE COURT:  We're talking about the model in question,

12  okay?  But again, you know, I'm emphasizing this, because I

13  don't want y'all to be shocked and amazed, you defendants, that

14  I presume or I am willing to buy the plaintiff's argument that

15  such and such was done in the United States, because basically

16  what I'm telling you is if it wasn't done in the United States,

17  that's what you need to tell them and me.

18      MR. CHAMBLESS:  I understand, Judge.

19      THE COURT:  And I'm talking overall about all these

20  categories.  Because, I mean, for purposes of the work that

21  we've already done on this, I mean, in the deep recesses of my

22  mind, I'm thinking most of it happened in the United States.

23  And so I'm kind of saying, "Ford, you're going to have to show

24  that it wasn't because how -- you know, we won't know it any

25  other way unless you tell us."  I mean, the plaintiffs won't

1    know it.  I won't know it.

2        MR. GONZALEZ:  And in our minds, Your Honor,

3    Mr. Chambless, the question would then be if it isn't in the

4    United States, is it in Venezuela or elsewhere, because that

5    also is going to play a role, I think, in the analysis.

6        THE COURT:  Well, and that's why I kept saying

7    percentage in the United States, percentage elsewhere, and then

8    the subset of percentage elsewhere is percentage Venezuela,

9    okay?

10        MR. CHAMBLESS:  Okay.  I understand that, Judge.  And I

11    guess that, as a practical matter, puts the burden on us to show

12    what Venezuelan is out there.  To the extent we don't meet that,

13    we run the risk of having this all in the United States.

14        THE COURT:  Yeah.  And you realize -- I mean, this is no

15    surprise.  I mean, you know about the private factors.  Now, the

16    private factors aren't completely controlling of the lawsuit,

17    but they are certainly factors.  There are private factors and

18    public factors, and that's one subset of what goes into the

19    forum non conveniens analysis.

20        But, you know, the plaintiffs have got to be able to show or

21    at least investigate to their own satisfaction these factors

22    before they either argue them or punt on them, okay?

23        MR. CHAMBLESS:  I understand that, Judge.

24        THE COURT:  All right.  Now, here's -- if I give you

25    until the 28th, I'm going to give the plaintiffs until the

1  11th, which is two weeks after that, to supplement any kind

2  of -- any kind of filings they already have on file.

3        MR. BENAVIDES:  We can do that, Your Honor.

4        THE COURT:  And probably during the meantime, I will

5  have come to a conclusion on whether I think we need a hearing

6  or not just on the forum non conveniens issue.

7        MR. GONZALEZ:  And we would, of course, encourage you to

8  find that you do need a hearing because we'd love to talk about

9  it some more.

10        THE COURT:  Okay.  Anything else we need to do today?

11        MR. GONZALEZ:  No, Your Honor.

12        MR. BENAVIDES:  No, Your Honor.

13        THE COURT:  All right.  Y'all have a good weekend.

14        MR. GONZALEZ:  Thank you, Your Honor.

15        MR. CHAMBLESS:  Thank you, Your Honor.

16                          *  *  *

17

18

19

20

21

22

23

24

25

1    (End of requested transcript)

2                        —oOo—

3    I certify that the foregoing is a correct transcript from

4    the record of proceedings in the above matter.

5

6    Date:  January 22, 2004

7

8                        Signature of Court Reporter

9                        Barbara Barnard

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF MICHIGAN )
                     ) ss.
COUNTY OF WAYNE )

### DAMIAN PORCARI

_____, being duly sworn, deposes and says that the

deponent is an authorized agent of Ford Motor Company, and that the deponent verifies the **FORD**

**MOTOR COMPANY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF**

*FORUM NON CONVENIENS* **INTERROGATORIES, REQUESTS FOR PRODUCTION AND**

**REQUESTS FOR ADMISSIONS TO DEFENDANT FORD MOTOR COMPANY** for and on behalf

of Ford Motor Company and is duly authorized so to do; that the matters stated therein are not within the

personal knowledge of the deponent; that the facts stated therein have been assembled by authorized

employees and counsel of Ford Motor Company, and the deponent is informed that the facts stated therein

are true.

Subscribed and sworn to before me this

____ day of _January_ 2004

LINDA G. BINGHAM
NOTARY PUBLIC WAYNE CO., MI
MY COMMISSION EXPIRES Aug 15, 2005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA | § | CIVIL ACTION NO. B-03-061 |
| MORALES And MAYTHEM | § | |
| GIORGINA PINEDA MORALES, | § | |
| INDIVIDUALLY AND AS | § | |
| ADMINISTRATOR/IX OF THE | § | |
| ESTATE OF JORGE ENRIQUE | § | |
| PINEDA CARVAJAL, Deceased; | § | |
| BEATRIZ DEL VALLE PINEDA, | § | |
| INDIVIDUALLY, GIORGIA PINEDA | § | |
| MORALES, EDWARD ENRIQUE | § | |
| PINEDA MORALES, | § | |
| INDIVIDUALLY; DOLORES | § | |
| CHACON DE PINEDA, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JORGE LUIS PINEDA | § | |
| CHACON | § | |
| | § | |
|     Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| | § | |
|     Defendant | § | |

**<u>FORD MOTOR COMPANY'S SUPPLEMENTAL RESPONSES TO
PLAINTIFFS' FIRST SET OF *FORUM NON CONVENIENS* INTERROGATORIES,
REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSIONS TO
DEFENDANT FORD MOTOR COMPANY</u>**

Now comes the Defendant, Ford Motor Company ("Ford"), as it submits its Response to

Plaintiffs' First Set of *Forum Non Conveniens* Interrogatories, Requests for Production and

Requests for Admissions to Defendant Ford Motor Company.



Respectfully submitted,

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas  78701
(512) 472-5456 Telephone
(512) 479-1101 Fax


By: _____
      Ronald D. Wamsted
      Attorney-In-Charge
      State Bar No.  20832000
      Southern District Admissions No. 17108
      John W. Chambless, II
      Southern District Admissions No. 20674
      State Bar No. 00796334
      Jaime A. Saenz
      Federal I.D. No. 7630
      State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via facsimile and certified mail to all counsel of record on this 28th day of January, 2004.

Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
1300 N. 10th, Suite 400
McAllen, Texas 78501

John W. Chambless, II

3

## SUPPLEMENTAL RESPONSES

### INTERROGATORY NO. 6

Please state the name and complete address of at least five (5) persons, either currently or formerly employed by the Defendant, who possess the greatest amount of knowledge with regard to the details of the design, testing, and production of the Ford Explorer made the subject of this suit and where the decisions and engineering choices were made.

### SUPPLEMENTAL ANSWER:

Although the design of the Ford Explorer was conducted in the United States, several decisions were made by Ford of Venezuela with regard to the selection of components to be locally manufactured and the selection of particular component levels if design alternatives were available in the base vehicle design. In other words, Venezuelan engineers selected parts designed for the Explorer by Ford (U.S.). However, it should be noted that several parts, including the shock absorbers, were designed uniquely to meet the market requirements of the Venezuelan market by Ford (U.S.) at Ford of Venezuela's request. Ford of Venezuela then finally assembled the 2001 Explorer in its assembly plant located in Valencia, Venezuela. For the launch process of the Explorer in Venezuela, a local team managed the key aspects of the process. Among those persons who are identified as having knowledge of this are:

— Hector Rodriguez — Purchasing Director -- responsible for the sourcing of local parts, purchasing and quality approval;

— Luis Marcano — Buyer -- responsible for the local negotiation of the tires;

— Francisco Grau -- Supplier Technical Assistance Engineer -- responsible for the approval of the tires; and

4

   —    Roselia Moreno -- Product Engineer responsible for the selection of the shock absorbers.

Ford would further identify Robert Pascarella, as being the Ford (U.S.) employee most knowledgeable about the design and testing of the 2001 Ford Explorer as it relates to stability and handling.

## INTERROGATORY NO. 7

What percentage of the vehicle in question was manufactured in the United States? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in the United States.

## SUPPLEMENTAL ANSWER:

The subject 2001 Ford Explorer was not finally assembled in the United States – it was finally assembled at Ford of Venezuela's Valencia Plant. It is Ford's reasonable belief that seventy-two [72] percent of the parts installed in the 2001 Explorer assembled in Venezuela were supplied by a U.S. manufacturer, although some of those parts may have in fact been manufactured or assembled at facilities outside of the United States.

## INTERROGATORY NO. 8

What percentage of the vehicle in question was assembled in the United States? Fully identify such components' assembly in the United States, and fully explain all assembly or partial assembly of the subject product that occurred in the United States.

## SUPPLEMENTAL ANSWER:

The subject 2001 Explorer was not finally assembled in the United States – it was finally assembled at Ford of Venezuela's Valencia Plant. It is Ford's reasonable belief that seventy-two [72] percent of the parts installed in the 2001 Explorer assembled in Venezuela were supplied by

5

a U.S. manufacturer, although some of those parts may have in fact been manufactured or assembled at facilities outside of the United States.

## INTERROGATORY NO. 9

Did this Defendant design the Ford Explorer? If so, then state the full name and complete street address of the person (or persons) responsible for its design, and give the approximate date that the product was designed. If this Defendant did not design the product in question, then fully identify and set forth information within your possession regarding the product's design origin. Specifically, your response should include the name and address of each member of the engineering group (or team) who participated in the design, testing, and decision to produce the Ford Explorer and where said designing, testing, and decisions were made or performed.

## SUPPLEMENTAL ANSWER:

The design of the Ford Explorer was conducted in the United States, however several decisions were made by Ford of Venezuela with regard to the selection of components to be locally manufactured and the selection of particular components levels if design alternatives were available in the base vehicle design. In other words, Venezuelan engineers selected parts designed for the Explorer by the U.S. design team. However, it should be noted that several parts, including the shock absorbers were designed uniquely to meet the market requirements of the Venezuelan market at Ford of Venezuela's request. Ford of Venezuela then finally assembled the 2001 Explorer in its assembly plant located in Valencia, Venezuela.

## INTERROGATORY NO. 10

Identify any books, papers, manuals, documents, or memoranda, which contain FMC's design manuals, internal recommendations, determinations or guidelines setting forth guidelines or recommendations for Ford Explorer design and as to the acceptable or unacceptable rate or

AUS:2129732.1
13486.95555

frequency of roll-over or any rate or frequency of roll-over which requires that action be taken or that notification be given by or to any internal Ford persons or organization.

**SUPPLEMENTAL ANSWER:**

As the design of the Ford Explorer was conducted in the United States, all such material residing in Venezuela regarding the design of the 2001 Ford Explorer are the same as those that are located in the in the U.S. However, several decisions were made by Ford of Venezuela with regard to the selection of components to be locally manufactured and the selection of particular component levels if design alternative were available in the base vehicle design. In other words, Venezuelan engineers selected parts already approved for the Explorer by the U.S. design team. Ford of Venezuela then finally assembled the 2001 Explorer in its assembly plant located in Valencia, Venezuela. All such documentation related to those decisions is located in Venezuela. Some of the documents are in Spanish and some are in English.

**INTERROGATORY NO. 11**

What percentage of the vehicle in question was manufactured in Venezuela? Fully identify such components, and fully explain all manufacture or partial manufacture of the vehicle in question that occurred in Venezuela.

**SUPPLEMENTAL ANSWER:**

The subject 2001 Explorer was finally assembled in Venezuela. However, to comply with Venezuelan law, it is mandatory for the local assembler to locally incorporate a given percentage of parts in the vehicle – in the case of the 2001 Ford Explorer, eighteen [18] percent of parts were manufactured by Venezuelan vendors. The list of parts that were manufactured in Venezuela for the 2001 Explorer includes glass, seat belts, battery, carpets, seats, radio, antenna, shock absorbers, rear springs, tires, wheels, exhaust system, battery cables, radiator, evaporator,

7

air conditioning system, paint, refrigerants, fuel, and noise insulators.

**INTERROGATORY NO. 17**

If this Defendant has any information identifying any potential safety risks relating to the Ford Explorer, then please fully identify such information. Please limit your response to model year 2001, and limit your response to potential safety risks relating to stability and/or handling failures.

**SUPPLEMENTAL ANSWER:**

Ford is not aware of ANY information in the possession of Ford regarding stability and handling failures in Venezuela with regard to the 2001 Ford Explorer. Ford has performed a reasonable and duly diligent search for lawsuits and claims pertaining to rollover incidents that occurred in 2001 Explorers in Venezuela, and has not identified any incidents other than the incident which forms the basis of this lawsuit. However, Ford would refer the Plaintiff to the category of documents (285, 410 in total) known as "Venezuelan Documents" that are accessible on www.forddocs.com. These documents can be identified by either the use of the general Bates prefix FAAV or by choosing "Select Category" as "Venezuelan Documents" and "Select Subcategory" as "ALL" on the main search page of forddocs.

**INTERROGATORY NO. 18**

Produce all contracts for design, manufacture, assembly, and marketing relating to the 2001 model Ford Explorer. Please limit your response to dates pertinent to the 2001 model Ford Explorer.

**SUPPLEMENTAL ANSWER:**

Due to the fact that the Explorer was not designed in Venezuela, all contracts pertaining to the design of the 2001 Explorer are in the United States. However, to comply with

8

Venezuelan law, it is mandatory for local assemblers to locally incorporate a given percentage of parts in the vehicle – in the case of the 2001 Ford Explorer, eighteen [18] percent of parts were manufactured by Venezuelan vendors. It is anticipated that a corresponding percentage of contracts for the manufacture of the 2001 Explorer therefore reside in Venezuela. Further, as the final assembly of the 2001 Explorer occurred at Ford of Venezuela's Valencia Plant, documentation related to the final assembly is located in Venezuela. Further, all of the marketing of the 2001 Ford Explorer was managed by Ford of Venezuela, therefore all contracts pertaining to the marketing of the 2001 Explorer are in Venezuela. Some of the documents are in Spanish and some are in English.

9

*Tandy Engineering & Associates,*

25003 Pitkin Road, Suite F100
The Woodlands, TX 77386
Telephone: (281) 363-0888    Fax: (281) 292-5979

## Donald F. Tandy, Jr.

### Specialized Professional Competence

o   Failure analysis and accident reconstruction.

o   Risk analysis of mechanical designs including identification of failure modes, assessment of consequences of failure, quantification of actual risk for use of existing systems, and projections of risks for systems under consideration.

o   Design, computer aided engineering, computer modeling of design, manufacturing, design verification, reliability and quality control techniques for mass produced products.

o   Design and evaluation of automotive chassis systems.

### Professional Qualifications

o   Bachelor of Science (Mechanical Engineering), The Ohio State University, 1985

o   Master of Science (Mechanical Engineering), The Ohio State University, 1986

o   Principal Engineer,
    Tandy Engineering & Associates, Inc. – 2002 to Present

o   Graduate Engineer,
    Carr Engineering, Inc. – 1995 to 2001

o   Supervisor, Advanced Vehicle Technology,
    Ford Motor Company – 1994-1995
    (Core and Advanced Vehicle Dynamics CAE and Test)

o   Supervisor, Light Truck Engineering,
    Ford Motor Company – 1993-1995
    (Light and Truck Vehicle Dynamics and Suspension Design and Test)

o   Technical Specialist, Light Truck Engineering,
    Ford Motor Company – 1989-1993
    (Vehicle Dynamic Modeling and Test)

o   Research Engineer, Product Manufacturing and Engineering Staff,
    Ford Motor Company – 1986-1989
    (Design and Testing of Advanced Suspension Concepts)

o   Recipient of One Ford Motor Company Henry Ford Technical Award,
    Six Ford Customer Driven Quality Awards, and Two Ford Light Truck Achievement Awards

o   Holder of Two United States Government Patents on Suspension Designs

o   Member of Society of Automotive Engineers and American Society of Mechanical Engineers

o   Registered Texas Professional Engineer

o   National Science Foundation Fellow

01/01/02



DONALD F. TANDY, JR.

PUBLICATIONS AND LECTURES

Master's Thesis: Solution of Inverse Heat Conduction Problems Using an Eigenvalue Reduction Technique

Tandy, D., Trujillo, K., Busby, H., "Solution of Inverse Heat Conduction Problems Using an Eigenvalue Reduction Technique," Numerical Heat Transfer, Volume 10, Pages 597-617, 1986.

Tandy, D., Los, B., "Point Mobility Study on a 1987 Taurus LX and 1985 Tempo GL," Ford Technical Report No EM-87-18, Vehicle Methods & Components Department, 1987.

Tandy, D., Los, B., "Point Mobility Study on a 1986 Mazda 626 GT," Ford Technical Report No EM-87-21, Vehicle Methods & Components Department, 1987.

Tandy, D., Los, B., "Point and Transfer Mobility Comparison of a 1987 Taurus LX, a 1985 Tempo GL, and a 1986 Mazda 626 GT," Ford Technical Report No EM-88-04, Vehicle Methods & Components Department, 1988.

Tandy, D., Goran, M., Starr, D., "Objective Straight Ahead Stability Study," Ford Technical Report No. EM-88-08, Vehicle Methods & Components Department, 1988.

Tandy, D., Knapp, R., "Objective Fingerprinting of the Linear Handling Performance of Several D-FC55 Image Vehicles," Ford Technical Report No EM-89-13, Vehicle Methods & Components Department, 1989.

Tandy, D., Knapp, R.," Objective Measurement and Comparison of the Transient Handling Characteristics of the AVET High Speed Mule and Several D-FC55 Image Vehicles," Ford Technical Report No EM-89-15, Vehicle Methods & Components Department, 1989.

Tandy, D., "ADAMS Model Correlation in Limit Handling Maneuvers," Ford Light Truck Report, 1990.

Tandy, D., "RIDE6: Nonlinear Computer Ride Model," Ford Light Truck Report, 1991.

Tandy, D., Avouris, J., "Computer Simulation Using an ADAMS Light Truck Vehicle Model and Flat Trac II Experimental Tire Data," Presented at SAE Fatigue Design and Evaluation Committee, April 24, 1991.

Tandy, D., "Comparison of Vehicle Handling Characteristics Between a UPN105 Pre-System Workhorse and 1991 Explorer," Ford Light Truck Division, 1991.

Tandy, D., "Ford Light Truck's ADAMS Tire Model," Ford Light Truck Division, 1992

Tandy, D., "Ford Light Truck ADAMS User's Guide," Ford Light Truck Division, 1992.

Tandy, D., Thrasher, D., Boyd, K., Markham, K., "Light Truck Objective Snow Traction and Handling Procedure," Ford Light Truck Division, 1994.

Tandy, D., "Ford Light Truck ADAMS User's Guide," Ford Light Truck Division, 1994.

Tandy, D., "Ford Worldwide ADAMS User's Guide," Advanced Vehicle Technology, Ford Moor Company, 1995.

Carr, Lee C. & Tandy, Donald F., Jr., "Technical Report: Performance Capacities of the 1996 Isuzu Trooper and Evaluation of Consumers Union Criticisms", Carr Engineering, Inc., 1996.

Carr, Lee C. & Tandy, Donald F., Jr., "Evaluation by Carr Engineering, Incorporated of the Rulemaking and Defect Petitions filed on August 20, 1996 by Consumers Union of United States, Inc. PRM-MP-004-18 and DP96-011", Carr Engineering, Inc., 1997.

SAE TOPTEC - Dynamic Tests of Rollover Resistance, Carr Engineering, Inc., December 11, 1997

# TRIAL TESTIMONY

## OF

## DONALD F. TANDY, JR.

| | | |
|---|---|---|
| Woodard (Howard) v. Ford<br>Columbia, TN | 1-94-0121 | 06/22/95 |
| Smith (Jackie) v. Isuzu<br>Houston, TX | H-95-3815 | 12/04/96 |
| Moodenbaugh (Michael) v. Ford<br>Tacoma, WA | C95-5493FDB | 03/12/97 |
| Greenwald (Michael) v. Ford<br>Maricopa Co., AZ | CV 95-03064 | 05/07,08/97 |
| Cartrette (Judith O'Quinn) v. Isuzu<br>Wake Co., NC | 95 CVS 11667 | 75/24,27/98 |
| Lovett (Willa Jari) v. Chrysler<br>Ft. Smith, AR | 97-2036 | 10/23/98 |
| King (Anthony) v. Toyota<br>Missoula Co., MT | 81858 | 10/26/98 |
| Moses (Jennifer) v. Ford<br>Contra Costa Co., CA | C-96-01651 | 11/09,10/98 |

# DEPOSITION TESTIMONY

## OF

## DONALD F. TANDY, JR.

| | | |
|---|---|---|
| Woodard (Howard) v. Ford<br>Columbia, TN | 1-94-0121 | 01/19/95 |
| Jones (Gerald) v. Toyota<br>Fulton Co., GA | 94VS89350F | 03/27/96 |
| Yawer (Jwan) v. Toyota<br>Northern Dist of Ohio, Eastern Div. | 5:94 CV 1921 | 04/02/96 |
| Bedford (Clara) v. Ford<br>Harris Co., TX | 255,149 | 05/07/96 |
| Wade (Charles) v. Toyota<br>Los Angeles, Co., CA | PC011452 W | 06/04/96 |
| Brockie (Chad) v. Ford<br>Jefferson Circuit, MI | 95-Ci-06126 | 09/05/96, 05/05/97 & 07/28/97 |
| Wade (Charles) v. Toyota<br>Los Angeles, Co., CA | PC011452 W | 09/13/96 |
| Glover (Neeley) v. Ford<br>Waco, TX | W96CA207 | 11/11/96 |
| Kyle (Toni) v. Ford<br>Harris Co., TX | 95-38284 | 11/14/96 |
| Hurst (Terry) v. Ford<br>New Mexico | CIV 96 0126 JP | 12/16/96 |
| Nemirovsky (Marianna) v. Honda<br>Los Angeles Co., CA | PC015685Y & PC015686Y | 02/12/97 |
| Moodenbaugh (Michael) v. Ford<br>Tacoma, WA | C95-5493FDB | 02/26/97 |

PAGE 2

| | | |
|---|---|---|
| Martens-Sagiao (Melinda) v. Toyota<br>Eastern Dist, WA | CS-95-0511-WFN | 02/28/97 |
| Greenwald (Michael) v. Ford<br>Maricopa Co., AZ | CV 95-03064 | 04/01/97 |
| Straus v. Toyota<br>Los Angeles, CA | SC039174 | 04/04/97 |
| Jackson (Leonard) v. General Motors<br>Mobile Co., AL | CV-95-3098 | 04/10/97 |
| Curcio (Marita) v. Toyota<br>Dauphin Co., PA | 3346-S-1992 | 05/01&28/97 |
| Ambrosio (Alexis) v. Ford<br>Essex Co., NJ | ESX-L-173-94 | 05/15/97 |
| Teekel (Alfred) v. General Motors<br>Baton Rouge, LA | 338,543, DIVISION "M" | 06/24/97 |
| Solis (Julian) v. Ford<br>Hidalgo Co., TX | C-4177-95-E | 07/07/97 |
| Hightower (Kimberly) v. Ford<br>Harris Co., TX | 94-021244 | 07/14/97 |
| Berger (Richard) & Samuel (Michael) v. Ford<br>Northern Div., MD | WMN-96-2155 | 09/03,24/97 |
| Chavers (Lisa) v. Nissan<br>Pensacola, FL | 95-30169-LAC | 09/11/97 |
| Sunderland (Denis) v. Ford<br>San Diego, CA | N72125 | 10/03/97 |
| King (Anthony) v. Toyota<br>Missoula Co., MT | 81858 | 10/28/97 |
| Tooke (Travis) (For Squirrels) v. Ford<br>Savannah, GA | CV496-87, CV496-88, CV496-115,<br>CV496-116, CV496-269 | 11/07/97 |

PAGE 3

| | | |
|---|---|---|
| Alvarez (Elizabeth) v. Ford | | 01/08/98 |
| Kern Co., CA | 229121 | |
| | | |
| Brown (Janet & Warren) v. Ford | | 03/02/98 |
| Los Angeles Co., CA | GC 016559 | |
| | | |
| Harris (Billy Wayne) v. Ford | | 03/05/98 |
| Jackson, MS | 3:97cvl 7BN | |
| | | |
| Moses (Jennifer) v. Ford | | 03/09,10/98, 6/9/98 |
| Contra Costa Co., CA | C-96-01651 | |
| | | |
| Schoenbeck (Mark) v. Toyota | | 03/30/98 |
| Great Falls, MT | CV 96-094-GF-DWM, CV 97-067-GF-DWM, CV 97-066-GF-DWM | |
| | | |
| Greco (Paul) v. Ford | | 04/02/98 |
| New Albany Div., IN | NA 94-165-C R/H | |
| | | |
| Janicki (Paul) v. Ford | | 04/22/98 |
| Orange Co., CA | 769496 | |
| | | |
| Wootton (Allison) v. Ford | | 04/24/98 |
| Louisville, KY | 3:95 CV 797-C | |
| | | |
| Luciow (Juan) v. Isuzu | | 05/18/98 |
| Miami, FL | 97-1428-KING | |
| | | |
| Cartrette (Judith O'Quinn) v. Isuzu | | 05/20/98 |
| Wake Co., NC | 95 CVS 11667 | |
| | | |
| Silva (Cynthia) v. Ford | | 08/03/98 |
| Galveston, TX | G-98-031 | |
| | | |
| Moses (Jennifer) v. Ford | | 09/01/98, 09/18/98 |
| Contra Costa Co., CA | C-96-01651 | |
| | | |
| Lovett (Willa Jari) v. Chrysler | | 09/14/98 |
| Ft. Smith, AR | 97-2036 | |
| | | |
| Gutierrez (Irene) v. Isuzu | | 09/21/98 |
| Ventura, CA | CIV 171967 | |

PAGE 4

Hufnagel (Jane) v. Ford                                          09/23/98
Jefferson Co., KY                    92-CI-06693

McDonald (William) v. Ford                                       10/01/98
Alexandria, VA                       CL97-0757

Morris (Nancy) v. Ford                                           10/05/98
Monongalia Co., WV                   96-C-332

Howard (Anthony) & Carleton (Kevin) v. Ford          12/04/98 & 02/16/99
Maricopa Co., AZ                     CV 97-02797

Howard (Thomas B.)  v. Isuzu                                     12/08/98
Dist. of MA                          96-11565 DPW

Palmer (Laura) v. New Roads Motor Company, Inc.                  12/21/98
Pointe Coupee Parish, LA             31,718

White (Barrett R.) v. Isuzu                                      12/29/98
Tallapoosa Co., AL                   CV-97-45

Beefamerica Operating Co. (Douglas, David) v. Ford          01/04,05/99
Hillsborough Co., FL                 96-4533 Division "D"

Williams (Deborah) v. General Motors                        01/07,08/99
Northern Dist., IL                   93 C 6661

Gering (Kenith) v. Ford                                          02/02/99
Spokane Co., WA                      97-2-04070-6

Haffey (Barbara) v. Ford                                         02/04/99
Yazoo Co., MS                        98-0004

Hession (Pamela June) v. Ford                                    02/09/99
Scott Circuit Court, KY              96-CI-00232

*Tandy Engineering & Associates, Inc.*

25003 Pitkin Road, Suite F100
The Woodlands, TX 77386
Telephone: (281) 363-0888    Fax: (281) 292-5979

# TODD D. HOOVER

**Specialized Professional Competence**

o   Failure analysis and accident reconstruction.

o   Risk analysis of mechanical designs including identification of failure modes, assessment
    of consequences of failure, quantification of actual risk for use of existing systems, and
    projections of risks for systems under consideration.

o   Computer aided engineering and computer modeling of design.

o   Vehicle testing and instrumentation.

**Professional Qualifications**

o   Bachelor of Science (Electrical Engineering), University of Houston, 1994



o   Graduate Engineer,
        Tandy Engineering & Associates, Inc.- 2002 to Present

o   Graduate Engineer,



## MICHELLE M. VOGLER, Ph.D., P.E.

**Professional Specialization**

Failure analysis/design evaluation of motor vehicle systems, mechanical components consumer products, and industrial machinery. Accident reconstruction and analysis of accident related issues for motor vehicles and automotive components including body structures, body closures, suspension systems, steering systems, restraint systems, and seating systems. Design and implementation of mechanical test programs. Risk analysis and statistical evaluation of system and component field performance. Fire investigation. Guarding and safety standard issues.

Solid mechanics and stress analysis. Metallurgical evaluation of materials related issues in field applications. Mechanical, thermal and electrical finite element modeling. Fatigue and fracture mechanics testing/analysis. Research includes investigation of resistance spot welding process and evaluation of material characteristics based on environmental and loading conditions.

**Professional Background**

B.S. (Mechanical Engineering), Michigan State University
M.S. (Mechanical Engineering), University of Santa Clara
Ph.D. (Mechanical Engineering), Stanford University
Additional Courses (Accident Reconstruction, Fracture Mechanics and Applied Testing),
      Northwestern University Traffic Institute; University of Iowa; University of California, Berkley;
      Union College of New York

**Principal Engineer,**
      Design Research Engineering
**Managing Engineer,**
      Failure Analysis Associates, Inc.
**Research Assistant, Department of Mechanical Engineering,**
      Stanford University
**Test Engineer, Nuclear Energy Division,**
      General Electric Company
**Engineer,**
      Packard Electric, Division of General Motors

Registered Professional Mechanical Engineer, California #22720

American Welding Society, Charles H. Jennings Memorial Award, 1994

Member Society of Automotive Engineers
Member American Welding Society
Member American Society of Mechanical Engineers

**Selected Publications**

"Development of Wheelchair Restraint System," California Department of Transportation,
      Final Report, Sacramento, California, August 1993.
"Electrical Contact Resistance Under High Loads and Elevated Temperatures,"
      Welding Journal, Vol. 72, No. 6, June 1993 (with S. Sheppard).
"Investigation of Resistance Spot Weld Formation," Ph.D. Thesis, Stanford University, 1992.

**MICHELLE M. VOGLER, Ph.D., P.E.**

**Selected Publications (continued)**

"A Study of Temperature Histories in Resistance Spot Welding," Trends in Welding Research
      International Conference, Gatlinburg, Tennessee, 1992 (with S. Sheppard).

"Contact Resistance Under High Loads and Elevated Temperatures," 26th Annual Technical Meeting,
      Society of Engineering Science, Ann Arbor, Michigan, 1989 (with S. Sheppard).

"Investigation of the Reliability of Solid Aluminum Main Bearings, in Emergency Diesel Generators,"
      9th International Conference on Structural Mechanics in Reactor Technology, Vol. D, Lausanne,
      Switzerland, August 1987 (with L. A. Swanger and S. A. Rau).

"Type 304 Stainless Steel High Cycle Fatigue Behavior," Conference on Fracture and Fatigue, General
      Electric Technical Conference, Schenectady, New York, 1982.

January 1996



PIZIALI & ASSOCIATES. 65_ SKYWAY ROAD, #202, SAN CAi OS, CALIFORNIA 94070 650-802-5930 FAX: 650-802-5949. BIOENGINEERING AND ACCID NT ANALYSIS

# ROBERT L. PIZIALI

## PERSONAL

Birthday:  September 3, 1942

## EDUCATION

University of California at Berkeley

    B.S. in Mechanical Engineering, January 1965
    M.E. in Mechanical Engineering, June 1966
    Ph.D. in Mechanical Engineering, September 1970

## EMPLOYMENT

Piziali and Associates, 1995-Present
Failure Analysis Associates, Vice President, 1990-1994, Principal Engineer, 1987-1990, Managing Engineer, 1985-1987
Phase 2 Automation, Vice President, Engineering, 1983-1985
Veterans Administration Medical Center, Rehabilitation Engineering Research and Development Center, Palo Alto, California, Associate Director for Orthopaedic Biomechanics, 1979-1982
Technical Advisors, Inc., Vice President, 1982-1983
Stanford University, Professor, 1982-1984
Stanford University, Associate Professor, 1976-1982
Stanford University, Assistant Professor, 1970-1976
IBM, San Jose, California, part-time Summer 1974 in conjunction with the Engineering Case Program of Stanford University
Lawrence Radiation Laboratory, Livermore, California, Summer 1964, 1966, 1968, part-time October 1967 to June 1968
Goddard Space Flight Center, Greenbelt, Maryland, Summer 1964
Jet Propulsion Laboratory, Pasadena, California, Summer 1963

## PROFESSIONAL AND HONOR SOCIETIES

American Society of Mechanical Engineers (ASME)
American Society for Biomechanics
American Society for Testing Materials (ASTM)
Society of Automotive Engineers
Tau Beta Pi
Pi Tau Sigma
Eta Kappa Nu
Orthopaedic Research Society

Registered Professional Mechanical Engineer, California MO26849

## PATENTS

Medical Ventilator Device Parametrically Controlled for Patient Ventilation, U.S. Patent
     No. 4,448,192, filed May 15, 1984 with Stawitcke, Frederick A., Sunnyvale,
     California; Mordan, William J., Sunnyvale, California; Jimison, Holly B., Palo
     Alto, California; Ream, Allen, K., Woodside, California.
Articulated Prosthetic Knee and Method for Implanting Same, U.S. Patent No. 4,358,859,
     filed November 16, 1982 with Schurman, David J., Stanford, California.
Tennis Ball Collection, Pickup and Propelling System, U.S. Patent Application No.
     4,108,432, filed August 22, 1978 with Clark, Thomas S., Monte Sereno,
     California; Kennedy, William S., San Jose, California.
Method for Treating Premature Infants, U.S. Patent No. 4,088,124, filed May 9, 1978
     with Korner, Anneliese, F., Palo Alto, California; Ellsworth, Orval T., Palo Alto,
     California.
Infant Waterbed, U.S. Patent No. 4,048,684, filed September 20, 1977 with Korner,
     Anneliese, F., Palo Alto, California; Ellsworth, Orval T., Palo Alto, California.
Tennis Ball Collection, Pickup and Propelling System, U.S. Patent No. 4,046,131, filed
     September 6, 1977 with Kennedy, William S., San Jose, California.

## PRODUCTS AND SYSTEMS LICENSED TO INDUSTRY

The Stanford Transport Incubator, Cavitron Corporation.
Oscillating Waterbed for Infant Therapy, Air Shields Corp.

## HONORS AND AWARDS

Otto Aufrank Award, 1978, presented by the Hip Society of the American Association of
     Orthopaedic Surgeons, with D.J. Schurman and L.W. Swenson.
Stanford University, Fellow, 1977/78, 1978/79.

Keynote Speaker, 4th Annual Meeting of the American Society of Biomechanics.
NSF Traineeship, University of California at Berkeley, 1966-1969.


## FUNDED RESEARCH PROJECTS

"Structural Dynamic Analysis of the Human Anatomical Structure," $10,077, 1 year,
    Stanford University Research Development Fund, 11/71 - 10/72.
"Collaborative Research in the Mechanics and Biomechanics of Skiing Injuries," 50,000,
    2 years, National Science Foundation Grant NSF0-GK-40182, 10/73 - 6/75.
"Establishment of a Medical Design Center," $10,007, 1.5 years, Stanford University
    Research Development Fund, 2/75 - 8/76.
"Experimental and Analytical Mechanics of Human Injury," $111,865, 2 years, National
    Science Foundation Grant No. NSF-3567, 4/76 - 7/78.
"Structural Characteristics of the Human Knee," $111,430 plus overhead, 3 years.
    National Institute of Health Grant No. R01-18181, 6/76 - 5/79.
"Structural Characteristics of the Human Lumbar Spine," $197,291 plus overhead, 3
    years. National Institute of Health, Grant No. AM018737, 1/77 - 12/79.
"Mechanics of Dorsal-Lumbar Spinal Injury and Stabilization," $23,000, 2.5 years,
    Veterans' Hospital, Palo Alto, California, 7/75 - 12/77.
"External and Internal Stabilization of the Disrupted Lumbo-Dorsal Spine," $171,500, 4
    years, Veterans Administration Hospital Grant, 7/78 - 6/82.
"A Pilot Study Regarding Structures Properties of the Fracture Dislocated Spine in
    Rehabilitation Medicine," $15,000. Veterans Administration Hospital, Palo Alto,
    California, 10/78 - 9/79.
"A Pilot Study Regarding Structural Properties of Bone and Connective Tissue in
    Rehabilitation Medicine," $16,500. Veterans Administration Hospital, Palo Alto,
    California, 10/79 - 9/80.
"A Pilot Study of Human Knee Mechanics Associated with Gait and Support Problems,"
    $16,500. Veterans Administration Hospital, Palo Alto, California, 10/79 - 9/80.
"The Mechanics of Human Bone and Long Bones," National Institute of Health, 7/1/80 -
    6/30/85, $154,502, plus overhead.


## PUBLIC SERVICE

Member and past secretary of ASTM Committee F.27.50, Snow Skiing, Subcommittee
    on Shop Practices.
Former member of NEW Food and Drug Administration Task Advisory Group on
    Electric Spirometer Standards.

## UNIVERSITY ADMINISTRATIVE ACTIVITIES (PAST)

Past Chairman, School of Engineering Advisory Committee on Engineering in Medicine
     and Biology.
Co-Director, Institute for Engineering Design in Medicine.
Past Chairman, Curriculum Committee, School of Engineering, Undergraduate Council.
Past member of Faculty Senate.
Past Co-Editor, The Biomaterials, Biomechanics and Prosthetic Devices Division,
    "Annals of Biomedical Engineering".
Past Reviewer for Applied Mechanics Review.

## PROFESSIONAL ACTIVITIES

Chairman, Solid Mechanics Subcommittee, Division of Bioengineering, American
    Society of Mechanical Engineers.
Co-Chairman of NSF Workshop on "The Mechanics of Human Injury," Stanford, CA,
    April 1976.
Ad Hoc Reviewer, Applied Physiology and Orthopaedics Study Group, NIH.
Research Proposal Reviewer for NSF, Veterans Administration.
Co-Chairman, Conference on Trauma and Rehabilitation in Orthopaedics, Snowmass,
    CO, Mar 21 - Apr 1, 1978.
Reviewer for Journal Biomechanics and Journal Biomechanical Engineering.
Session Chairman at various ASME and ACEMB conferences.
Program coordinator and reviewer for Biomechanics sessions for the 28th Annual
    ACEMB Conference, New Orleans, Sep 1975.
Associate Director of Orthopedic Biomechanics at the Palo Alto Veterans Administration
    Rehabilitative Engineering Research and Development Center.

## INVITED SEMINARS AND LECTURES

University of California, Berkeley, "The Dynamic Characterization of Snow Skis," Jan
    1971.
American Association of Orthopaedic Surgeons Postgraduate Course on Skiing Injuries,
    Aspen, Colorado, "The Biomechanics of Skiing Injuries," Feb 1973,
Sierra Traumatalogical Society, Jan 1975, "The Biomechanics of Snow Skiing."
2nd International Forum on Skiing and Safety II, Forum Davos, Davos, Switzerland,
    September 1976, "The Biomechanics of Lower Limb Response and Injury."
Northwestern University, "The Dynamic Response of the Human Leg in Snow Skiing,"
    May 1977.
Sierra Traumatalogical Society, "The Biomechanics of Snow Skiing," Jan 1978.
Acoustical Society of America, Hawaii, "The Dynamic Response of the Human Leg in
    Snow Skiing," Nov 1978.

4

Keynote speaker, 4th Annual Meeting of the American Society of Biomechanics, "The Heisenberg Principle in Biomechanics," Oct 1980.

Association for the Advancements of Automotive Medicine, Orlando, FL, Crash Reconstruction: Purpose and Principles, "Computer Programs for Occupant Kinematics," Mar 12-15, 1990.

Xerox, PARC Forum, "Accident Reconstruction," Jan 1990.

Stanford Applied Mechanics Seminar, "Biomechanics and Accident Reconstruction," Fall 1991.

Stanford Design Division Graduate Course, "Design and Product Liability," Fall 1991.

Stanford Department of Aeronautics and Astronautics Course, Techniques of Failure Analysis, "Biomechanics and Litigation," Spring 1992.


## ARTICLES IN REFERENCED JOURNALS

Dekker, D., Piziali, R.L., and Dong, E., Jr., "Effect of Boundary Conditions on the Ultrasonic-Beam Characteristics of Circular Disks," *Journal of Acoustical Society of America*, pp. 87-93, Jul 1974.

Dekker, D., Piziali, R.L., and Dong, E., Jr., "A System for Ultasonically Imaging the Human Heart in Three Dimensions," *Computers and Biomedical Research*, Dec 1974.

Piziali, R.L. and Nagel, D.A., "Modeling of the Human Leg in Ski Injuries:  Putting It All Together," *Clinical Orthopaedics in North America*, Jan 1976.

Mancini, L.J. and Piziali, R.L., "Optimal Design of Helical Springs by Geometrical Programming," *Engineering Optimization*, Vol. 2, pp. 73-81, 1976.

Piziali, R.L., Hight, T.K. and Nagel, D.A., "An Extended Structural Analysis of Long Bones - Application to the Human Tibia," *Journal Biomechanics*, Vol. 9, pp. 695-701, 1976.

Piziali, R.L., Whitcher, C., Sher, R., and Moffat, R.J., "Distribution of Waste Anesthetic Gases in the Operating Room Air," *Anesthesiology*, Vol. 45, No. 5, 487-494, Nov 1976.

Piziali, R.L., Rastegar, J.C., and Nagel, D.A., "Measurement of the Nonlinear Coupled Stiffness Characteristics of the Human Knee," *Journal Biomechanics*, Vol. 10, pp. 45-51, 1977.

Koogle, T.A., Piziali, R.F., Nagel, D.A., and Perkash, I., "A Motion Transducer for Use in the Intact In Vitro Human Lumbar Spine," *Journal of Biomechanical Engineering*, pp. 160-165, Aug 1977.

Whitcher, C.E., Zimmerman, D.C., Tonn, E.M., and Piziali, R.L., "Control of Occupational Exposure to Nitrous Oxide in the Dental Operatory," *Journal of American Dental Association*, Vol. 95, pp. 763-776, Oct 1977.

Whitcher, C., Zimmerman, D.C., and Piziali, R.L., "Control of Occupational Exposure to $N_2O$ in the Oral Surgery Office," *Journal of Oral Surgery*, 1978.

5

Hight, T.K., Piziali, R.L., and Nagel, D.A., "A Dynamic Non-Linear Large Displacement Model of a Human Leg," *Journal of Biomechanical Engineering*, Vol. 101, pp. 176-184, Aug 1979.

Hight, T.K., Piziali, R.L., and Nagel, D.A., "A Dynamic Nonlinear Finite Element Model of a Human Leg," *Journal of Biomechanical Engineering*, Vol. 101, Aug 1979.

Rastegar, J., Piziali, R.L., Nagel, D.A., and Schurman, D.J., "Effects of Fixed Axes of Rotation on the Varus-Valgus and Torsional Load-Displacement Characteristics of the In Vitro Human Knee," *Journal of Biomechanical Engineering*, Vol. 101, pp. 134-140, May 1979.

Hight, T.K., Piziali, R.L., and Nagel, D.A., "Natural Frequency Analysis of a Human Tibia," *Journal of Biomechanics*, Vol. 13, No. 2, pp. 139-148, 1980.

Rastegar, J., Piziali, R.L., Nagel, D.A., and Schurman, D.J., "The Contribution of the Cruciate Ligaments to the Load-Displacement Characteristics of the Human Knee Joint," *Journal of Biomechanical Engineering*, Vol. 102, pp. 277-283, Nov 1980.

Seering, W., Piziali, R.L., Nagel, D.A., and Schurman, D.J., "The Function of the Primary Ligaments of the Knee in Anterior-Posterior and Medial-Lateral Motions," *Journal of Biomechanics*, Vol. 13, No. 9, pp. 777-784, 1980.

Piziali, R.L., Seering, W., Nagel, D.A., and Schurman, D.J., "The Function of the Primary Ligaments of the Knee in Varus-Valgus and Axial Rotations," *Journal of Biomechanics*, Vol. 13, No. 9, pp. 785-794, 1980.

Piziali, R.L., Hight, T.K., and Nagel, D.A., "Geometric Properties of Human Leg Bones," *Journal of Biomechanics*, Vol. 13, No. 10, pp. 881-886, 1980.

Nagel, D.A., Koogle, T.A., Piziali, R.L., and Perkash, I., "Stability of the Upper Lumbar Spine Following Progressive Disruptions and the Application of Individual Internal and External Fixation Devices," *Journal of Bone and Joint Surgery*, pp. 62-70, Jan 1981.

Piziali, R.L., Nagel, D.A., Koogle, T., and Whalen, R., "Knee and Tibia Strength in Snow Skiing, " *Proceedings, Ski Trauma and Skiing Safety IV, International Society for Skiing Safety*, Italy, 1981; Editors:  W. Hauser, J. Karlsson, and M. Magi, Munich: TUEV-Edition, 1982.

Mahanian, S., and Piziali, R.L., "Finite Element Evaluation of the AIA Shear Specimen for Bone, " *Journal of Biomechanics*, Vol. 21, No. 5, pp. 347-356, 1988.

Kim, K.S., and Piziali, R.L., "Continuum Models of Materials with Beam-Microstructure," *International Journal of Solids and Structures*, Vol. 23, No.11, pp.1563-1578, 1985.

Swenson, L.W., Schurman, D.J., and Piziali, R.L., "Finite Element Temperature Analysis of a Total Hip Replacement and Measurement of PMMA Curing Temperatures," *Journal of Biomedical Materials Research*, Vol. 15, pp. 83-96, 1981.

Kim, K.S., and Piziali, R.L., "Harmonic Wave Propagation in Materials with Periodic Beam-Structure," *Journal of Sound and Vibration*, Vol. 107, No. 1, pp. 59-70, 1986.

Stawitcke, F.A., Ream, A.K., and Piziali, R.L., "Pressure Control to Accommodate Patient Breathing Efforts During Volume Ventilation," *Journal of Clinical Monitoring*, Vol. 3, No. 2, Apr 1987.

Piziali, R.L., Paver, J.G., Khatua, T.P., Whitestone, J., Kaleps, I., and Taylor, C., "The Prediction of Hybrid III Manikin Head-Neck Kinematics and Dynamics," *SAE 1990 Transactions, Journal of Passenger Cars,* Section 6, Vol. 99, pp. 669-676, 1990.

Piziali, R.L., Phillips, E.S., Khatua, T.P., and Kost, G., "Vision and Visibility in Vehicular Accident Reconstruction," *SAE 1990 Transactions, Journal of Passenger Cars*, Section 6, Vol. 99, pp. 547-561, 1990.

Merala, R., and Piziali, R.L., "Water Ski Binding Release Loads: Test Method and Results," *Skiing Trauma and Safety: Tenth Volume,* ASTM STP 1266, C.D. Mote, Jr., Robert L. Johnson, Wolfhart Hauser, and Peter S. Schaff, Editors, American Society for Testing and Materials, Philadelphia, pp. 361-379, 1996.

Ebi, K.L., Piziali, R.L., Rosenberg, M., Wachob, H.F., "Evidence Against Tailstrings Increasing the Rate of Pelvic Inflammatory Disease Among IUD Users," *Contraception*, Vol. 53, No. 1, pp. 25-32, Jan 1996.

## ARTICLES IN PROCEEDINGS

Piziali, R.L., "The Dynamic Torsional Response of the Human Leg Relative to Skiing Injuries," *ASME, Proceedings of the Symposium "Mechanics and Sports,"* pp. 305-315, Nov 1973.

Nagel, D.A., Perkash, I., Piziali, R.L., and Hayes, W.C., "Mechanics of Dorsal Lumbar Spine Injury: A Preliminary Report," *Proceedings of 19th Conference of the American Association for Automotive Medicine*, 1975.

Kienholz, D., and Piziali, R.L., "A Finite Element Analysis of Torsion in Axisymmetric Solids," *ASME Paper No., 76-WA/Aut-9*.

Mote, C.D., Jr., Hull, M.L., Piziali, R.L., and Nagel, D.A., "Experimental Measurements of Forces and Moments During Downhill Skiing," *Proceedings of the 2nd International Forum on Skiing and Safety II*, Davos, Sep 1976.

Piziali, R.L., Mote, C.D., Jr., Nagel, D.A., Hight, T.K., and Rastegar, J.C., "The Biomechanics of Lower Limb Response and Injury," *Proceedings of the 2nd International Forum on Skiing and Safety II*, Davos, Sep 1976.

Kienholz, D.A. and Piziali, R.L., "Analysis of Torsional Vibration in a High Bandwidth Angular Position Servo," *Proceedings of American Society of Mechanical Engineers*, Dec 1976.

Schurman, D.J., Swenson, L.W., Jr., and Piziali, R.L., "Bone Cement With and Without Antibiotics: A Study of Mechanical Properties," *The Hip, Proceedings of the 67th Open Scientific Meeting of the Hip Society*, 1978.

Piziali, R.L., "Cervical Spine Injuries in Sports, " *Winter Annual Meeting, American Society of Mechanical Engineers,* Editors: Rekow, E.D., Thacker, J.G., and Erdman, A.G., Boston, MA, Dec 1987.

Piziali, R.L., Cheng, L.Y., and Khatua, T.P., "ATB Simulation of Hybrid III Dummy in Sled Tests," *Society of Automotive Engineers International Congress and Exposition, Paper No. 880646*, Detroit, MI, Feb 29-Mar 4, 1988.

Piziali, R.L., and Khatua, T.P., "Emergency Management Technology: Technology for Predicting the Past-Emergency Reconstruction," *1989 Society of Computer Science Western Multiconference*, San Diego, CA, Jan 5, 1989.

McCarthy, R.L., Kost, G., Piziali, R.L., Khatua, T., Werner, S., and Phillips, E., "Technical Aspects of Complex Accident Reconstruction," *1989 Practicing Law Symposium*, Oct 1989.

Cheng, L., Rifai, S., Khatua, T., and Piziali, R.L., "Finite Element Analysis of Diffuse Axonal Injury, " *Vehicle Crashworthiness and Occupant Protection in Frontal Collisions, Society of Automotive Engineers*, pp. 141-154, Feb 1990.

Piziali, R.L., Khatua, T.P., and Merala, R., "The Application of Biomechanics to the Analysis of Automotive and Skiing Accident Injuries," *Proceedings of the 4th International Conference on Structural Failure, Product Liability and Technical Insurance*, Vienna, AUS, Jul 6-9, 1992.

Piziali, R.L., Ayres, T.J., Paver, J.G., Fowler, G., and McCarthy, R.L., "Investigation of the Net Safety Impact of an Occupant Protection System From All-Terrain Vehicles," *Society of Automotive Engineers International Congress and Exposition, Paper No. 930208*, Detroit, MI, Mar 1-5, 1993.

Piziali, R.L., Khatua, T.P., Cheng, L.Y., Girvan, D.S., and Fijan, R.S., "Use of Computer Simulations in Support of Litigation," *5th International MADYMO Users' Meeting*, Fort Lauderdale, FL, Nov 3-4, 1994.

Piziali, R.L., Hopper, R.H., Girvand, D., and Merala, R., "Injury Causation in Rollover Accidents and the Biofidelity of Hybrid III Data in Rollover Tests," Paper No. 980362, *Society of Automotive Engineers International Congress and Exposition,* Detroit, Michigan, Feb 23-26, 1998.

## PROCEEDINGS, ABSTRACTS AND PRESENTATIONS

Dekker, D.L., Piziali, R.L., and Dong, E., Jr., "An Analysis of Ultrasound Characteristics Related to Computerized Echo Cardiology," *Proceedings of the Annual Conference on Engineering in Medicine and Biology*, 1972.

Piziali, R.L. and Nagel, D.A., "Dynamic Model of the Human Leg Applied to Ski Injuries," *Proceedings of the Annual Conference on Engineering in Medicine and Biology*.

Dekker, D., Dong, E., Jr., and Piziali, R.L., "A System for Ultrasonically Producing Time-Varying Cross Sections of the Human Heart," *Proceedings of the 26th Annual Conference on Engineering in Medicine and Biology*, Sep-Oct 1973.

Piziali, R.L., Sher, R., Moffat, R.J., and Whitcher, C.E., "Distribution of Inhalation Anesthetics in the Operating Room Atmosphere," *American Society of Anesthesiologists Annual Meeting*, Washington, D.C., Oct 1974.

Piziali, R.L. and Nagel, D.A., "Structural Properties for a Mathematical Model of Lower Extremity Dynamic Response," *The Orthopaedic Research Society Meeting,* San Francisco, CA, Feb 1975.

Piziali, R.L. and Mancini, L.J., "Optimal Design of Helical Springs by Geometric Programming," *Mathematical Optimization and Engineering Design Symposium sponsored by the Operations Research Society of America and the Institute of Management Sciences, with support from the Office of Naval Research*, Chicago, IL, Apr-May 1975.

Piziali, R.L., Hight, T.K., and Nagel, D.A., "A Detailed Structural Analysis of the Human Tibia," *ASME Symposium on Biomechanics - Summer Applied Mechanics Conference at Rensselaer Polytechnic Institute*, Troy, NY, Jun 1975.

Rastegar, J.C., Piziali, R.L., Seering, W.P., and Nagel, D.A., "Coupled Stiffness Coefficients of the Human Knee," *28th Annual Conference on Engineering in Medicine and Biology*, New Orleans, LA, Sep 1975.

Piziali, R.L., Hight, T.K., and Nagel, D.A.," Finite Element Analysis of Stresses in the Tibia Arising from Dynamic Loading," *28th Annual Conference on Engineering in Medicine and Biology*, New Orleans, LA, Sep 1975.

Piziali, R.L., Seering, W.P., Rastegar, J.C., and Nagel, D.A., "The Function of Passive Knee Structures in Anterior-Posterior Tibial Displacement," *28th Annual Conference on Engineering in Medicine and Biology*, New Orleans, LA, Sep 1975.

Piziali, R.L., Hight, T.K., and Nagel, D.A., "Dynamic Structural Analysis of the Human Tibia," *Proceedings of the Orthopaedic Research Society*, New Orleans, LA, Jan 1976.

Piziali, R.L., Schurman, D.J., and McDonald, A., "The Effects of Gentamicin on the Material Properties of PMMA," *Proceedings of the Orthopaedic Research Society*, New Orleans, LA, Jan 1976.

Rastegar, J.C., Piziali, R.L., and Nagel, D.A., "Varus-Valgus Stiffness of the In Vitro Human Knee," *ASME Winter Annual Meeting, Advances in Bioengineering*, p. 5, 1976.

Koogle, T.A., Piziali, R.L., Nagel, D.A., and Perkash, I., "A Motion Transducer for Use in the Intact In Vitro Human Lumbar Spine," *Proceedings of the 97th Winter Annual Meeting of the ASME*, New York, NY, Dec 1976.

Koogle, T.A., Piziali, R.L., Nagel, D.A., and Perkash, I., "A Motion Transducer for Use in the Intact In Vitro Human Lumbar Spine," *1976 Advances in Bioengineering, ASME Press*, New York, NY, 1976.

Hight, T.K., Piziali, R.L., and Nagel, D.A., "The Effect of Modeling Techniques on Natural Frequencies of a Human Tibia," *Transactions of the 23rd Annual Meeting of the Orthopaedic Research Society*, Vol. 2, Las Vegas, NV, Feb 1-3, 1977.

Koogle, T.A., Piziali, R.L., Nagel, D.A., and Perkash, I., "A Six Degree of Freedom Motion Transducer for Use in the Intact In Vitro Human Lumbar Spine," *Transactions of the 23rd Annual Meeting of the Orthopaedic Research Society*, Las Vegas, NV, Feb 1977.

Koogle, T.A., Piziali, R.L., Nagel, D.A., and Perkash, I., "A Motion Transducer for Use in the Intact In Vitro Human Lumbar Spine," *Proceedings of the 1977 Joint Applied Mechanical Fluids Engineering and Bioengineering Conference*, Yale University, New Haven, CT, Jun 1977. (Printed in "*1977 Biomechanics*

9

*Symposium*," Richard Skalak and Albert B. Schultz, Editors, ASME Press, New York, NY, pp. 103-105, 1977.)

Rastegar, J.C., Piziali, R.L., and Nagel, D.A., "Torsional Load-Displacement Characteristics of the In Vitro Human Knee," *Proceedings of the 30th Annual Conference on Engineering in Medicine and Biology*, p. 235, Nov 5-9, 1977.

Nagel, D.A., Koogle, T.A., Perkash, I., and Piziali, R.L., "External and Internal Stabilization of the Disrupted Lumbodorsal Spine," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 18, Dallas, TX, Feb 21-23, 1978.

Swenson, L.W., Jr., Schurman, D.J., and Piziali, R.L., "A Mattice Theory for a Continuum Representation of Cancellous Bone," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 96, Dallas, TX, Feb 21-23, 1978.

Swenson, L.W., Jr., Piziali, R.L., and Schurman, D.J., "Fundamental Mechanics of Articular Cartilage Revisited," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 203, Dallas, TX, Feb 21-23, 1978.

Seering, W.P., Hirshman, P., Piziali, R.L., and Nagel, D.A., "A Method for Preserving the Mechanical Properties of Ligaments During Testing," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 237, Dallas, TX, Feb 21-23, 1978.

Rastegar, J.C., Piziali, R.L., and Nagel, D.A., "The Contribution of the Cruciate Ligaments and Condular Interference to Medial-Lateral and Anterior-Posterior Stiffness of the In Vitro Human Knee Joint," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 238, Dallas, TX, Feb 21-23, 1978.

Piziali, R.L., Rastegar, J.C., and Nagel, D.A., "The Axis of Varus-Valgus Rotation of the In Vitro Human Knee Joint," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 239, Dallas, TX, Feb 21-23, 1978.

Hight, T.K., Piziali, R.L., and Nagel, D.A., "Dynamic Non-Linear Large Displacement Model of Human Leg," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 240, Dallas, TX, Feb 21-23, 1978.

Seering, W.P., Piziali, R.L., and Nagel, D.A., "The Effect of Strain Rate on the Mechanical Properties of Human Ligaments," *Transactions of the 24th Annual Meeting of the Orthopaedic Research Society*, Vol. 3, p. 241, Dallas, TX, Feb 21-23, 1978.

Nagel, D.A., Koogle, T.A., Piziali, R.L., and Perkash, I., :"Contribution of the Posterior Ligaments, Annulus Fibrosis, and Facet Joints to the Stability of the Dorsal-Lumbar Spine and Evaluation of Various External and Internal Means of Restoring Stability," *Proceedings of the International Research Society for Orthopaedics and Traumatology*, Tokyo, JPN, Oct 1978.

Schurman, D.J., Swenson, L.W., Jr., and Piziali, R.L., "Bone Cement With and Without Antibiotics: A Study of Mechanical Properties," *The Hip, Proceedings of the Sixth Open Scientific Meeting of the Hip Society*, 1978.

Seering, W.P., Piziali, R.L., Nagel, D.A., and Schurman, D.J., "Measuring the Primary and Coupled Loads Transmitted by the Various Ligaments of the Human Knee," *1978 Advances in Bioengineering*, ASME Press, New York, NY, 1978.

Eibeck, P.A., Swenson, L.W., Schurman, D.J., and Piziali, R.L., "Finite Element Stress Analysis of Hinged Tibial Component Total Replacements," *Transactions of the 25th Annual Meeting of the Orthopaedic Research Society*, Vol. 4, San Francisco, CA, Feb 1979.

Seering, W.P., Nagel, D.A., Piziali, R.L., and Schurman, D.J., "Measuring the Principal and Coupled Loads Transmitted by Each of the Ligaments of the Knee," *Transactions of the 25th Annual Meeting of the Orthopaedic Research Society*, Vol. 4, San Francisco, CA, Feb, 1979.

Seering, W.P., Piziali, R.L., Nagel, D.A., and Schurman, D.J., "Load Transmissions Characteristics of Knee Ligaments During Axial Tibial Rotations," *1979 Advances in Bioengineering*, ASME Press, New York, NY, 1979.

Swenson, L.W., Jr., Piziali, R.L., and Schurman, D.J., "An Electromechanical Model for Human Cartilage," *1979 Advances in Bioengineering*, ASME Press, New York, NY, 1979.

Koogle, T.A., Swenson, L.W., and Piziali, R.L., "Dynamic Three Dimensional Modeling of the Human Lumbar Spine," *1979 Advances in Bioengineering*, ASME Presentation, New York, NY, 1979.

Schurman, D.J., Piziali, R.L., Swenson, L.W., Jr., Rinsky, L., and Kajiyama, G., "Shortwave Diathermy and Fracture Healing in Rabbit Fibula Model - Preliminary Report," *Transactions of the 26th Annual Meeting of the Orthopaedic Research Society*, Vol. 5, p. 160, Atlanta, GA, Feb 1980.

Koogle, T.A., Swenson, L.W., Jr., and Piziali, R.L., "A Large Displacement Dynamic Model of the Lumbar Spine with Experimentally Determined Material Properties," *Transactions of the 26th Annual Meeting of the Orthopaedic Research Society*, Vol. 5, p. 276, Atlanta, GA, Feb 1980.

Swenson, L.W., Piziali, R.L., and Schurman, D.J., "An Electromechanical Model for Human Articular Cartilage," *Transactions of the 26th Annual Meeting of the Orthopaedic Research Society*, Vol. 5, p. 277, Atlanta, GA, Feb 1980.

Piziali, R.L., Koogle, T.A., Swenson, L.W., Jr., Kim, K.S., and Nagel, D.A., "On the Flexibility of Vertebrae," *ASME Advances in Bioengineering*, 1980.

Piziali, R.L., "Investigation of Racquetball Eye Injury Re: Stephen Herskovitz v. Richcraft," *Failure Analysis Associates Report No. FaAA-PA-R-86-09-12.*

Martin, K.F., Banister, J.A., and Piziali, R.L., "Engineering Visualization of Vehicle Accidents: Data Sources and Methods of Production," *International Congress and Exposition*, Detroit, MI, Feb 25-Mar 1, 1991.

Piziali, R.L., Paver, J.G., Merala, R., Ayres, T.J., Fowler, G., and McCarthy, R.L., "Evaluation of an Occupant Protection System for All-Terrain Vehicles," *ASME Presentation*, Anaheim, CA, Nov 8-13, 1992.

Piziali, R.L., Fowler, G.F., Merala, R., Grewal, D.S., and McCarthy, R.L., "Evaluation of a Proposed ATV Design Modification, " *International Congress and Exposition*, Detroit, MI, Feb 28-Mar 3, 1994.

Piziali, R.L., Merala, R., Hopper, R.H., and Girvan, D., "The Effects of Helmets and Padding on Head Injuries and Falls from Lifts, " *Association of Ski Defense Attorneys Winter Conference*, Taos, NM, Mar 1-4, 1997.

Piziali, R.L., Merala, R., Hopper, R.H., "The Biomechanics of Head and Neck Injuries in Skiing," *Twelfth Symposium on Ski Trauma and Safety*, Whistler, British Coumbia, CAN, May 4-10, 1997.

Piziali, R.L., Girvan, D., Hopper, R.H., "Errors in Using MADYMO and Other Computer Models, " *Emerging Issues in Motor Vehicle Product Liability Litigation, American Bar Association*, Phoenix, AZ, May 20-21, 1997.

| 1/4/95 | Bristol v Ford | Deposition | |
|--------|----------------|------------|--|
| 1/6/95 | Cruz v Mark IV Charter Lines | Deposition | Superior Court of the State of California |
| | | | for the Co. of Los Angeles |
| 1/12/95 | Ladner v Dow Corning Corp. | Trial | |
| 1/12/95 | Laas v Dow Corning Corp. | Trial | |
| 1/14/95 | LaCour v Union Pacific Railroad Company | Deposition | Circuit Court of the City of St. Louis, |
| | | | State of Missouri |
| 1/20/95 | A. Stevens v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | MacKenzie v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | Dintino v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | Pearce v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | Hudson v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | Ballard v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | F. Stevens v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| " | Cope v Dow Corning Corp. | Deposition | District Court of Dallas Co., Texas |
| 1/24/95 | John Doe v Becton Dickinson | Deposition | Circuit Court of Cook Co., Illinois |
| 2/10/95 | Stevens v Dow Corning Corp. | Trial | District Court of Dallas Co., Texas |
| " | MacKenzie v Dow Corning Corp. | Trial | District Court of Dallas Co., Texas |
| " | Hudson v Dow Corning Corp. | Trial | District Court of Dallas Co., Texas |
| 2/17/95 | Cruz v Mark IV Charter | Trial | State of California |
| 3/3/95 | Peitzmeier v Hennessy Industries | Deposition | United States District Court, District of Nebraska |
| 3/8/95 | Frawley v REI | Deposition | Sacramento County Superior Court, California |
| 3/10/95 | Hoffman v Becton Dickinson | Deposition | Superior Court of the State of California, D278 |
| | | | County of San Diego |
| 3/27/95 | Carter v Dow Corning Corp. | Deposition | State of Michigan |
| 3/28/95 | Ferguson v United Charter Service, et al. | Deposition | State of California, Alameda Superior Court |
| 3/30/95 | Perkins v Mitsubishi | Deposition | United States District Court, Northern District |
| | | | of Mississippi, Greenville Division |
| 4/1/95 | Berger v Dow Corning Corp. | Deposition | State Court, Johnson Co., Texas |
| " | Schultz-Brown v Dow Corning Corp. | " | " " " " " |
| " | Caddell v Dow Corning Corp. | " | " " " " " |
| " | Conway v Dow Corning Corp. | " | " " " " " |
| " | Cook v Dow Corning Corp. | " | " " " " " |
| " | Henslee v Dow Corning Corp. | " | " " " " " |
| " | Homan v Dow Corning Corp. | " | " " " " " |
| " | Jefferson v Dow Corning Corp. | " | " " " " " |
| " | Johnson v Dow Corning Corp. | " | " " " " " |
| " | Mahanay v Dow Corning Corp. | " | " " " " " |
| " | Nejtek v Dow Corning Corp. | " | " " " " " |
| " | Norrell v Dow Corning Corp. | " | " " " " " |
| " | Sliver v Dow Corning Corp. | " | " " " " " |
| " | Timmons v Dow Corning Corp. | " | " " " " " |
| " | Vardaman v Dow Corning Corp. | " | " " " " " |
| " | Wisniski v Dow Corning Corp. | " | " " " " " |
| 4/17/95 | Linda Ford v Dow Corning Corp. | Deposition | Superior Court of California, Co. of Shasta |
| 5/5/95 | Bristol v Ford | Trial | Superior Court of California, Co. of Sacramento |
| 5/10/95 | Blacker v General Motors | Trial | U.S. District Court, |
| | | | Eastern District of Pennsylvania |

ROBERT PIZIALI TESTIMONY

| Date | Case | Type | Court |
|---|---|---|---|
| 7/15/95 | Ferguson v United Charter Service, et al. | Trial | Superior Court of the State of California, Co. of Alameda |
| 5/16/95 | Easley v Ford Motor Company | Deposition | U.S. District Court, Eastern District of Oklahoma |
| 5/31/95 | English v Suzuki | Deposition | U.S. District Court, District of Utah, Central Division |
| 7/27/95 | Zarour v ANR Freight Systems, Inc. et al. | Deposition | Superior Court of the State of California for the County of Los Angeles |
| 7/29/95 | Fralick v New Coleman Holdings, Inc. | Deposition | Superior Court of the State of California for the County of Placer |
| 8/4/95 | McGowan v UPRR | Deposition | Superior Court of the State of Washington for the County of Spokane |
| 8/10/95 | Easley v Ford Motor Company | Trial | United States District Court for the Eastern District of Oklahoma |
| 8/18/95 | Dushane v Sun Valley Company, et al. | Trial | District Court of the Fifth Judicial District of the State of Idaho, in and for the Co. of Blaine |
| 8/21/95 | Dillman v Delta Int'l Machinery Corp., et al. | Deposition | Superior Court of the State of California Co. of Stanislaus |
| 8/28/95 | Gaumont v Ford Motor Company, et al. | Deposition | Commonwealth of Massachusetts Superior Court |
| 8/30/95 | Parnell v Ford Motor Company | Deposition | United States District Court of the Northern District of Texas Fort Worth Division |
| 8/31/95 | Westlye v Look Sports, Inc., et al. | Trial | Superior Court of the State of California in and for the County of Placer |
| 9/1/95 | Gray v Merchant's Home Delivery Serv., et al. | Deposition | Superior Court of the State of California in and for the County of Alameda |
| 9/12/95 | Dinesen v Nissan | Deposition | Superior Court of the State of California in and for the County of Los Angeles |
| 9/25/95 | Gray v Merchants Home Delivery Serv. | Trial | Superior Court of the State of California in and for the County of Alameda |
| 9/27/95 | Dillman v Delta | Trial | Superior Court of the State of California in and for the County of Stanislaus |
| 9/27/95 | Fralick v New Coleman Holdings, et al. | Deposition | Superior Court of the State of California in and for the County of Placer |
| 9/28/95 | Fralick v New Coleman Holdings, et al. | Trial | Superior Court of the State of California in and for the County of Placer |
| 10/3/95 | Camp v Price-Costco | Trial | Superior Court of the State of California in and for the County of Stanislaus |
| 10/5/95 | Gullo v Lee | Deposition | Superior Court of the State of California for the County of Monterey |
| 10/24/95 | Haworth v Steelcase | Trial | United States District Court for the Western District of Michigan, Southern Division |
| 10/26/95 | Lunsford v Geze | Trial | Superior Court of the State of California County of San Luis Obispo |
| 10/27/95 | Dushane v Sun Valley, et al. | Trial | District Court of the Fifth Judicial District of the State of Idaho in and for the County of Blaine |
| 11/21/95 | Hoar v Great Eastern Resort Corp., et al. | Deposition | Circuit Court of the State of Virginia Albemarle Co. |
| 11/22/95 | Bayer v Crested Butte | Deposition | United States District Court for the District of Colorado |
| 28/95 | Dow Corning v Granit State Insurance | Trial | Circuit Court of the State of Michigan |

ROBERT PIZIALI TESTIMONY

| Date | Case | Type | Court |
|---|---|---|---|
| | | | Wayne Co. |
| 11/30/95 | LaFrenier v Yamaha | Deposition | Superior Court of the State of California |
| | | | for the County of Kern |
| 12/15/95 | Furness v General Motors, et al. | Trial | United States District Court for the |
| | | | District of Colorado |
| 1/4/96 | Johnson v Safelite, et al. | Deposition | Superior Court of the State of California for the |
| | | | County of Contra Costa |
| 1/10/96 | Anguiano v Buser, et al. | Deposition | Superior Court of the State of California for the |
| | | | County of Orange |
| 2/7/96 | Poll v Snow King, et al. | Deposition | United States District Court for the |
| | | | District of Wyoming |
| 2/13/96 | May v Becton Dickinson, et al. | Deposition | Circuit Court of the City of St. Louis |
| | | | State of Missouri |
| 4/8/96 | Haworth v Regents of the University of California, et al. | Deposition | Superior Court of the State of California in and for the County of Alameda |
| 4/10/96 | Garber v Arnel Management Co., et al | Trial | Superior Court for the State of California |
| | | | for the County of Los Angeles |
| 4/20/96 | Cortez v Yamaha | Deposition | Superior court of the State of California |
| | | | for the County of Los Angeles |
| 4/30/96 | Ayers v Missouri Pacific Railroad | Deposition | Circuit Court of the City of St. Louis |
| | | | State of Missouri |
| 5/7/96 | Bedford v Ford Motor Company | Deposition | Probate Court #1 of Harris County, Texas |
| 5/31/96 | Nixon v Ford Motor Company | Deposition | Montana Nineteenth Judicial District Court |
| ˊ/31/96 | | | Lincoln County |
| ɔ/31/96 | Denzin v The NutraSweet Co., & 5 Ors. | Trial | The Supreme Court of New South Wales |
| | | | Common Law Division, Australia |
| " | Lane v The NutraSweet Co., & 6 Ors. | " | "    "    "    "    " |
| " | Orders  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Southren  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Moylan  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Robertson  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Tabbah  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Gentle  v The NutraSweet Co., & 5 Ors. | " | "    "    "    "    " |
| " | Lee v The NutraSweet Co., & 3 Ors. | " | "    "    "    "    " |
| 7/9/96 | Coen v The City & County of San Francisco | Deposition | Superior Court of the State of California |
| | | | in and for the City and County of San Francisco |
| 7/12/96 | Neveu v Ford Motor Company | Deposition | United States District Court |
| | | | for the Western District, Austin Division, Texas |
| 7/15/96 | Monroe v Missouri Pacific Railroad | Deposition | Circuit Court of the City of St. Louis |
| | | | State of Missouri |
| 7/19/96 | Neveu v Ford Motor Company | Trial | United States District Court |
| | | | for the Western District, Austin Division, Texas |
| 8/2/96 | McNew v Mori-Seiki | Deposition | Circuit Court of Wayne County |
| | | | State of Michigan |
| 8/28/96 | Roder v Hennessy, et al. | Deposition | United States District Court |
| | | | for the Northern District of Iowa, Western Division |
| 9/10/96 | LaFrenier v Yamaha Motor Co., Ltd., et al. | Trial | Superior Court of the State of California |
| | | | for the County of Kern |

| 9/19/96 | Reed v Hussain | Deposition | Superior Court of the State of California |
| | | | in and for The County of Alameda |
| 10/10/96 | Smith v Ford Motor Company | Deposition | Commonwealth of Virginia |
| | | | in the Circuit Court of the County of James City |
| 11/15/96 | Simcoff v Hirshner | Deposition | Superior Court of the State of California |
| | | | in and for the County of Marin |
| 11/20/96 | Seabaugh v Chrysler, et al. | Deposition | United States District Court for the Eastern |
| | | | District of Missouri Eastern Division |
| 12/11/96 | Capshaw v Danny Herman Trucking, et al. | Deposition | District Court of El Paso County |
| | | | Texas 168th Judicial District |
| 12/12/96 | Simonis v Union Pacific Railroad | Deposition | United States District Court in and for |
| | | | the District of Oregon |
| 1/6/97 | Zelman v Castro, et al. | Deposition | Superior Court of the State of California |
| | | | for the County of Los Angeles |
| 1/9/97 | Burton v Holdman | Deposition | Superior Court of the State of California |
| | | | County of Sonoma |
| 1/27/97 | Durr v Redwood Comm. Action Assoc., et al. | Deposition | Superior Court of the State of California |
| | | | in and for the County of Humboldt |
| 2/13/97 | Trombley v Ford Motor Company | Deposition | United States District Court |
| | | | for the District of Connecticut |
| 2/19/97 | Antounian v Megrikyan, et al. | Deposition | Superior Court of the State of California |
| | | | for the County of Los Angeles, Northeast District |
| 2/21/97 | Castillo v Espinoza | Trial | Superior Court of the State of California |
| | | | in and for the County of San Francisco |
| /15/97 | Trujillo v The Atchison, Topeka and | Deposition | State of New Mexico, in and for |
| | Santa Fe Railroad Company | | the County of San Miguel; 4th Judicial District |
| 3/19/97 | Claveron v Lake Don Pedro Golf and | Deposition | Superior Court of the State of California |
| | Country Club, et al. | | County of Stanislaus |
| 3/26/97 | Phillips v Hammons | Deposition | Superior Court of the State of California |
| | | | for the County of Fresno |
| 3/31/97 | Spitzfaden v Dow Corning Corp., et al. | Deposition | Civil District Court; Parish of Orleans |
| | | | State of Louisiana |
| 4/2/97 | Nelson v College of Marin, et al. | Trial | Superior Court of the State of California |
| | | | in and for the County of Marin |
| 4/3/97 | Santy v AT&T, et al. | Deposition | Superior Court of the State of California |
| | | | in and for the City and County of San Francisco |
| 4/11/97 | Simcoff v Hirschner, et al. | Trial | Superior Court of the State of California |
| | | | in and for the County of Marin |
| 4/12/97 | Diaz v Ford Motor Company, et al. | Deposition | Superior Court of the State of California |
| | | | for the County of Los Angeles |
| 4/16/97 | Ingram v Case | Trial | Circuit Court of the State of Oregon |
| | | | for the County of Multnomah |
| 4/21/97 | Crosbie v Waste Management | Deposition | Superior Court of the State of California |
| | of California, Inc., et al. | | in and for the County of Santa Clara |
| 4/23/97 | Trombley v Ford Motor Company | Trial | United States District Court |
| | | | District of Connecticut |
| 5/2/97 | Hurt/Kanoholani v Ford Motor Company | Deposition | Circuit Court of the Second Circuit State of Hawaii |
| 5/12/97 | Van Hese v Suzuki | Deposition | Circuit Court, Fourth Judicial Circuit |

| Date | Case | Type | Court |
|---|---|---|---|
| | | | in and for Clay County, Florida |
| 3/20/97 | Byrd v Teledyne Pines, et al., etc. | Deposition | United States District Court |
| | | | Southern District of New York |
| 5/21/97 | Ornelas, etc., et al., v Chrysler,etc.,et al. | Deposition | Superior Court of the State of California |
| | | | County of Los Angeles |
| 5/22/97 | Velazco v Ford Motor Company, et al. | Trial | Superior Court of the State of California |
| | | | County of Los Angeles |
| 5/28/97 | Andes v Ford Motor Company | Trial | United States District Court |
| | | | for the Eastern District of Texas, Lufkin Division |
| 6/6/97 | Chandler v Chiron, et al. | Deposition | Federal District Court for the Northern District |
| | | | of California |
| 6/17/97 | Lorenzo v Becton Dickinson, et al. | Deposition | Circuit Court of Cook County |
| | | | Illinois County Department, Law Division |
| 7/7/97 | Hernandez v Nissan | Deposition | Superior Court of the State of California |
| | | | for the County of San Diego - South Bay District |
| 7/16/97 | Hightower v Ford Motor Company, et al. | Deposition | District Court of Harris County, Texas |
| | | | 113th Judicial District |
| 7/17/97 | Cook v Colbert, et al. | Trial | Superior Court of the State of California |
| | | | in and for the County of San Francisco |
| 7/31/97 | Ouimette v Ford Motor Company | Deposition | Superior Court of the State of California |
| | | | in and for the County of Contra Costa |
| 8/26/97 | Hah v Chrysler | Deposition | Superior Court of the State of California |
| | | | County of Los Angeles |
| 9/2/97 | Simoni v Kiewit Construction Company, et al. | Deposition | Superior Court of the State of California |
| | | | County of San Francisco |
| 9/23/97 | Simoni v Kiewit construction Company, et al. | Trial | Superior Court of the State of California |
| | | | County of San Francisco |
| 9/23/97 | Orosco v The Atchison Topeka Santa Fe | Deposition | Superior Court of the State of California |
| | Railway, et al. | | in and for the County of Contra Costa |
| 10/6/97 | Capps v San Jose Unified | Deposition | Superior Court of California |
| | School District, et al. | | County of Santa Clara |
| 10/7/97 | Fries v The City of Kirkland, et al. | Deposition | Superior Court of the State of Washington |
| | | | in and for the County of King |
| 10/10/97 | Hajek v Montana Rail Link, et al. | Deposition | United States District Court |
| | | | District of Montana, Billings Division |
| 10/14/97 | Bell v McWhorter, et al. | Deposition | Superior Court of California |
| | | | County of Contra Costa |
| 10/28/97 | Bell v McWhorter, et al. | Trial | Superior Court of California |
| | | | County of Contra Costa |
| 11/4/97 | Capps v San Jose Unified | Trial | Superior Court of California |
| | School District, et al. | | County of Santa Clara |
| 11/6/97 | Baker v Ford Motor Company, et al. | Deposition | In the Probate Court Number Four (4) |
| | | | Harris County, Texas |
| 12/26/97 | Leidelmeyer v Avila, et al. | Deposition | Superior Court of the State of California |
| | | | in and for the County of Sacramento |
| 1/20/98 | Pucci-Stevenson v Randall's Mesa | Deposition | Superior Court of the State of Arizona |
| | B235 AMC/Jeep/Renault, et al. | | in and for the County of Maricopa |
| 2/6/98 | Hatcher v Snorkel Economy, et al. | Deposition | Superior Court of the State of California |

| | | | County of Los Angeles |
|---|---|---|---|
| 3/4/98 | Tabasa v Brown, et al. | Deposition | Superior Court of the State of California |
| | | | in and for the County of Contra Costa |
| 3/9/98 | Durr v Redwood Community | Trial | Superior Court of the State of California |
| | Action Association, et al. | | in and for the County of Humboldt |
| 3/10/98 | Petersteiner v Southern Pacific | Deposition | Superior Court of the State of California |
| | Transportation Company, et al. | | in and for the County of Sacramento |
| 3/16/98 | Yaeger v USAA Property and | Deposition | Circuit Court of Waukesha County |
| | Casualty Insurance, et al. | | State of Wisconsin |
| 4/10/98 | Garcia v AA Cater Truck Mfg.Co.,Inc.,et al. | Deposition | Superior Court of the State of California |
| | | | for the County of Los Angeles |
| 4/20/98 | Grossman v Kaiser, et al. | Deposition | Superior Court of the State of California |
| | | | for the County of San Francisco |
| 4/22/98 | Janicki v Ford Motor Company | Deposition | Superior Court of the State of California |
| | | | for the County of Orange |
| 4/29/98 | Doering, et al. v Copper Mountain, et al. | Deposition | United States District Court |
| | | | The District of Colorado |
| 5/14/98 | Cartrette v Isuzu Motors, Ltd., et al. | Deposition | General Court of Justice, Superior Court Div. |
| | | | Wake County, North Carolina |
| 6/5/98 | Cabot Tours & Charters v McKay, et al. | Deposition | District Court, Clark County, Nevada |
| 6/8/98 | Pucci-Stevenson | Deposition | Superior Court for the State of Arizona |
| | v Randall's Mesa AMC, et al. | | in and for the County of Maricopa |
| 6/12/98 | Penning v UPRR | Deposition | Circuit Court of the City of St. Louis |
| | | | State of Missouri |
| 22/98 | Grossman et al., v Eastman | Trial | Superior Court of the State of California |
| | | | in and for the County of San Francisco |
| 6/23/98 | Foos v Southern Pacific Transport | Deposition | Superior Court of the State of California |
| | | | for the County of San Bernardino |
| 7/1/98 | Carter v Thomas | Trial | Circuit Court of the State of Oregon |
| | | | in and for the County of Washington |
| 7/6/98 | Lease v City of Redding | Deposition | Superior Court of the State of California |
| | | | in and for the County of Shasta |
| 7/7/98 | Cabot Tours v Jake's Crane | Trial | District Court, Clark County, Nevada |
| 7/27/98 | Cartrette v Isuzu | Trial | State of North Carolina, Wake County |
| | | | In the General Court of Justice, Superior Court Division |
| 7/29/98 | Irick v Ford Motor Company | Deposition | District Court of Harris County, Texas |
| | | | 295th Judicial District |
| 9/9/98 | Stoner v v National Railroad Passenger | Deposition | Circuit Court of the City of St. Louis |
| | a/k/a/ Amtrack | | State of Missouri |
| 9/21/98 | Pena v Ford Motor Company | Deposition | Commonwealth of Massachusetts |
| | | | Worchester, SS Superior Court |
| 9/29/98 | Robison v Franciscan Friars | Deposition | Superior Court of the State of California |
| | | | for the County of Tulare |
| 9/30/98 | Lovett v UPRR and Chrysler | Deposition | U.S. District Court for the Western District of |
| | | | Arkansas, Fort Smith Division |
| 10/13/98 | Whalen v Lockheed Missiles | Deposition | Superior Court of the State of California |
| | | | for the County of Santa Clara |
| '15/98 | Raphael Hines v Ford Motor Company | Deposition | Circuit Court of Jackson County |

ROBERT PIZIALI TESTIMONY

| | | | Missouri at Kansas City |
|---|---|---|---|
| 0/19/98 | Tingley v Nyberg | Deposition | Humboldt County Superior Court |
| 10/20/98 | Chavez v Dhillon | Deposition | Superior Court of the State of California |
| | | | in and for the County of Stanislaus |
| 10/30/98 | Penning v UPRR | Trial | Circuit Court of the City of St. Louis |
| | | | State of Missouri |
| 11/6/98 | Hanington v Einwaller | Trial | Circuit Court of the State of Oregon |
| | | | County of Washington |
| 11/9/98 | Stone v St. Louis Southwestern Railway Co. | Deposition | Circuit Court for the City of St. Louis |
| | | | State of Missouri |
| 11/10/98 | Olney v Les Schwab, et al. | Deposition | Superior Court of the State of Washington |
| | | | in and for the County of King |
| 11/17/98 | Murtaugh v GMC, et al. | Trial | Court of Common Pleas, Philadephia County |
| 11/24/98 | Munoz, et al. v Covenant Transport, et al. | Deposition | Superior Court of the State of California |
| | | | County of San Benito |
| 12/1/98 | Flores v Union Pacific Railway Co. | Deposition | U.S. District Court, Western District of Washington |
| 12/7/98 | Borgia v Chrysler, et al. | Deposition | Superior Court for the State of California |
| | | | in the County of Los Angeles |
| 12/21/98 | Taylor v Southern Pacific Transportation Co. | Deposition | Superior Court of the State of California |
| | | | in and for the County of Alameda |
| 12/21/98 | Greenlee v Union Pacific Railroad, et al. | Deposition | Superior Court of the State of California |
| | | | in and for the County of Sacramento |
| 1/20/99 | Munoz | Trial | Superior Court of the State of California |
| | | | County of San Benito |
| /29/99 | Clark v Montana Rail Link | Deposition | Montana Fourth Judicial District Court |
| | | | Missoula County |
| 2/1/99 | Gering v Ford Motor Company | Deposition | Superior Court, State of Washington |
| | | | County of Spokane |
| 2/9/99 | Southern Nevada Surgical Center v | Deposition | District Court, Clark County, Nevada |
| | North American Drager, et al. | | |

RAGAN RESEARCH CORPORATION

# Larry F. Ragan

## Specialized Professional Competence

Automotive engineering and mechanical/structural design. Failure and safety analysis of mechanical systems and subsystems, including automotive components for light/heavy trucks, multi-purpose and passenger vehicles. Design analysis and experimental evaluation of the performance, reliability and failure of mechanical components, systems and subsystems. Accident reconstruction and analysis. Human factors in design and operation of automotive and mechanical system. Vehicle crash performance evaluation and testing. Design, development, manufacturing and testing of frame and chassis components, fuel systems, engine systems and components, body systems and components, transmissions, brake systems, exhaust systems, steering systems and restraint systems. Quality control procedures and testing for manufacturing and regulatory compliance. Automotive aftermarket design and manufacturing analysis and procedures. Governmental regulatory process, standards and history. Automotive corrosion protection design.

## Education

Bachelor of Aerospace Engineering, Auburn University, 1969

Additional Education:
Accident Reconstruction, Fires and Explosions, Experimental Statistics, Human Factors, Failure Analysis, Management

## Professional Experience

Principal Engineer,
    Ragan Research Corporation
Principal Engineer,
    Exponent-Failure Analysis Associates, Inc.
Design Analysis Engineer, Light Truck Design Analysis,
    Ford Motor Company
Principal Design Engineer, Light Truck Body Systems and Corrosion Protection,
    Ford Motor Company
Product Design Engineer, Light Truck Body Sealing and Painting,
    Ford Motor Company
Product Design Engineer, Light Truck Engine System,
    Ford Motor Company
Product Design Engineer, Light Truck Fuel Systems Design,
    Ford Motor Company
Product Design Engineer, Light Truck Frame Design,
    Ford Motor Company
Associate Engineer, F-4 & F-15 Aircraft Structural Design,
    McDonnell Douglas Corporation
Field Engineer, West Point Dam Project and Freeport Levee Project,
    Farrell Construction Company

Member, Society of Automotive Engineers
Member, National Fire Protection Association

# Larry F. Ragan Testimony

| | | |
|---|---|---|
| Robinson vs Ford Motor Co | 7/15/1998 | Trial |
| Combs vs Ford Motor Co | 7/21/1998 | Deposition |
| Baker vs General Motors | 7/28/1998 | Deposition |
| Kehm vs Ford Motor Co | 8/21/1998 | Deposition |
| Meyers vs Ford Motor Co | 10/21/1998 | Deposition |
| Meyers vs Ford Motor Co | 11/10/1998 | Trial |
| Siler vs Ford Motor Co | 12/10/1998 | Deposition |
| Romo vs Ford Motor Co | 12/30/1998 | Deposition |
| Romo vs Ford Motor Co | 2/4/1999 | Deposition |
| Baker vs General Motors | 2/19/1999 | Deposition |
| Siler vs Ford Motor Co | 2/25/1999 | Trial |
| Moseley vs General Motors | 4/6/1999 | Deposition |
| Romo vs Ford Motor Co | 4/9/1999 | Deposition |
| BeefAmerica vs Ford Motor Co | 4/13/1999 | Deposition |
| Van Etten vs Ford Motor Co | 4/16/1999 | Deposition |
| Bertram vs General Motors | 4/20/1999 | Deposition |
| Romo vs Ford Motor Co | 6/4/1999 | Trial |
| Bertram vs General Motors | 6/11/1999 | Trial |
| Kingsolver vs Ford Motor Co | 6/15/1999 | Depostion |
| Burrow vs Mazda Motors | 6/18/1999 | Depostion |
| Arguello v Ford Motor Co | 6/21/1999 | Deposition |
| Parker vs Ford Motor Co | 7/1/1999 | Deposition |
| Ware vs Ford Motor Co | 7/7/1999 | Deposition |
| Mason vs Ford Motor Co | 7/20/1999 | Deposition |
| Steckbauer vs General Motors | 9/16/1999 | Deposition |
| Moore vs General Motors | 11/10/1999 | Deposition |
| Taylor vs General Motors | 12/15/1999 | Deposition |
| Powell vs General Motors | 1/28/2000 | Deposition |
| Phipps vs Ford Motor co | 2/29/2000 | Depostion |
| Phipps vs Ford Motor co | | Trial |
| Cannon vs Ford Motor Co | 3/23/2000 | Deposition |
| Hall vs Ford Motor Co | 3/30/2000 | Deposition |
| Mason vs Ford Motor Co | 3/3/2000 | Deposition |
| Valero vs Ford Motor Co | 4/7/2000 | Deposition |
| Taylor vs General Motors | 6/8/2000 | Trial |
| Turner vs Ford Motor Co | 6/13/2000 | Deposition |
| Collard vs Ford Motor Co | 6/16/2000 | Deposition |
| Ford vs Ford Motor Co | 7/11/2000 | Deposition |
| Arguello vs Ford Motor Co | 7/18/2000 | Trial |
| Martin vs Ford Motor Co | 7/21/2000 | Deposition |
| Mason vs Ford Motor Co | 7/24/2000 | Deposition |

# Larry F. Ragan Testimony

| | | |
|---|---|---|
| Martin vs Ford Motor Co | 8/28/2000 | Trial |
| Mason vs Ford Motor Co | 8/30/2000 | Trial |
| Chandler vs Westward Industries | 9/27/2000 | Deposition |
| Garcia vs Ford Motor Co | 9/29/2000 | Deposition |
| Gilbert vs Progressive | 11/16/2000 | Deposition |
| Bailey vs Ford Motor Co | 1/4/2001 | Deposition |
| Curry vs Mazda | 1/19/2001 | Deposition |
| Gilbert vs Progressive | 2/2/2001 | Deposition |
| Thornton vs Ford Motor Co | 2/6/2001 | Deposition |
| Garza vs Ford Motor Co | 3/22/2001 | Deposition |
| Rivera vs General Motors | 3/29/2001 | Deposition |
| Eavy vs General Motors | 4/17/2001 | Deposition |
| Green vs Ford Motor Co | 5/10/2001 | Deposition |
| Perrelli vs Ford Motor Co | 5/24/2001 | Deposition |
| Thornton vs Ford Motor Co | 5/29/2001 | Deposition |
| Hamilton vs Mitsubishi | 6/12/2001 | Deposition |
| Perrelli vs Ford Motor Co | 6/25/2001 | Trial |
| Green vs Ford Motor Co | 7/30/2001 | Deposition |
| Blackmon vs Ford Motor Co | 10/2/2001 | Deposition |
| Eavy vs General Motors | 10/16/2001 | Trial |
| Lajeunesse vs Ford Motor Co | 10/19/2001 | Deposition |
| Evans vs Ford Motor Co | 1/4/2002 | Deposition |
| Roland vs Ford Motor Co | 2/15/2002 | Deposition |
| Madrid vs General Motors | 2/20/2002 | Deposition |
| Ramczyk vs Ford Motor Co | 4/2/2002 | Deposition |
| Sturdevant vs Ford Motor Co | 4/11/2002 | Deposition |
| Madrid vs General Motors | 4/25/2002 | Deposition |
| Ross vs Ford Motor Co | 5/10/2002 | Deposition |
| Boley vs General Motors | 5/18/2002 | Deposition |
| Frye vs Ford Motor Co | 5/31/2001 | Depostion |
| Boley vs General Motors | 6/17/2002 | Trial |

Mr. Ragan's fee rate is $250.00 per hour.

# CARR ENGINEERING, INC.

12500 CASTLEBRIDGE DRIVE    HOUSTON, TEXAS  77065-4532
TELEPHONE:  281/894-8955
FAX:  281/894-5455

## LEE C. CARR

### Specialized Professional Competence

- ° Failure analysis and accident reconstruction.

- ° Risk analysis of mechanical designs including identification of failure modes, assessment of consequences of failure, quantification of actual risk for use of existing systems, and projections of risks for systems under consideration.

- ° Design, design verification, manufacturing, reliability and quality control techniques for mass produced products.

- ° Design and evaluation of automotive crash protection systems and crashworthiness analysis of motor vehicles.

- ° Application of Federal Motor Vehicle Safety Standards and other requirements to automobiles, trucks, and buses.

- ° Bachelor of Science (Mechanical Engineering), Northwestern University, 1968

- ° Master of Science (Mechanical Engineering), University of Florida, 1969

- ° Principal Engineer,
    Carr Engineering, Inc. - 1984 to present

- ° Managing Engineer,
    Failure Analysis Associates - 1981-1984

- ° Safety Engineering Associate,
    Ford Motor Company - 1978-1981
    (Product Safety Engineering and Government Liaison on Safety Issues)

- ° Supervisor, Chassis Engineering,
    Ford Motor Company - 1977-1978
    (Design and Testing of Motor Vehicles)

- ° Design and Project Engineer,
    Ford Motor Company - 1965-1977
    (Design, Testing and Manufacture of Motor Vehicles)

- ° Public Health Service Fellow, University of Florida

- ° Member, Society of Automotive Engineers

- ° Registered Professional Engineer, State of Texas

**CARR ENGINEERING, INC.**
12500 Castlebridge Drive   Houston, Texas 77065-4532
Telephone: 281/894-8955
Fax: 281/894-5455

**KARL E. STOPSCHINSKI**

**Specialized Professional Competence**

- Crash Investigation, Analysis, and Reconstruction – Forensic investigation of crashes including three-dimensional mapping of vehicle and scene data.  Analysis of crash related data using a variety of methods including three-dimensional photogrammetry.  Analysis using computer aided crash reconstruction and crash simulation software, vehicle crush damage, vehicle rollover damage and related evidence at the crash scene.  Determination of crash forces and their effect on vehicle and occupant dynamics.  Demonstrative exhibits via computer animation, CAD drawings, physical models, etc.

- Vehicle Dynamic Analysis – Analysis of driver, vehicle and environment on vehicle performance.  Computer simulation of vehicle dynamics using a variety of software.  Evaluation of computer simulation results.  Evaluation of testing methods and test results relating to vehicle dynamics.

- Electrical and Electronic Systems Analysis – Analysis of electrical and electronic components and systems.  Testing of components and systems.  Automotive electronic system analysis including engine control, vehicle speed control, ABS, and Crash Data Retrieval systems.

- Testing and Instrumentation – Design and implementation of testing programs for components and systems including motor vehicles and aircraft.  Data acquisition, video acquisition and sensor system design, development, customization, and utilization.  Implementation of high speed digital imaging and data systems.  Data analysis and interpretation of results.

**Professional Qualifications**

- Bachelor of Science (Electrical Engineering), Baylor University, 1988

- Graduate Engineer, Carr Engineering, Inc. – 1988 to Present

- Member, National Society of Professional Engineers

- Member, Society of Automotive Engineers

# E$^x$ponent

*Failure Analysis Associates*

## Eddie R. Cooper
**Principal Engineer and Director, TEC and Vehicle Engineering**

### Professional Profile

Mr. Eddie Cooper is a Principal Engineer, Director of Exponent's Test and Engineering Center, located in Phoenix, Arizona, and Director of Exponent's Vehicle Engineering practice. He specializes in the failure analysis of vehicles, vehicle components, and vehicle systems, including passenger cars and trucks. His research includes work in the areas of vehicle crash testing, occupant restraint system testing, instrumentation design, installation, calibration, and data acquisition system development. Mr. Cooper also develops instrumentation systems for vehicle testing, gas turbine rigs, and commercial and military gas turbine engines.

Prior to joining Exponent, Mr. Cooper was an Instrumentation Engineer for the Garrett Turbine Engine Company and also held several research positions at Arizona State University.

### Credentials and Professional Honors

B.S., Mechanical Engineering, Arizona State University (*cum laude*) 1982
M.S., Mechanical Engineering, Arizona State University, 1985

SPIE—The International Society for Optical Engineering (member); Society of Automotive Engineers (member)

Tau Beta Pi; Engineering Achievement Award, ATEGG I Instrumentation, 1984, Garrett Turbine Engine Company

01/02

## Publications

"Repeatable Dynamic Rollover Test Procedure with Controlled Roof Impact," SAE Technical Paper Series SP-1596, 2001 (with E.A. Moffatt, A.M. Curzon, B.J. Smyth, and K.F. Orlowski).

"Safety Belt Buckle Inertial Responses in Laboratory and Crash Tests," *Advances in Occupant Protection Technologies for the Mid-Nineties*, SAE SP-1077, 1995 (with E.A. Moffatt and T.M. Thomas).

"Experiments on the Onset of Instability in Unsteady Circular Couette Flow," *Journal of Fluid Mechanics*, November 1985 (with D.F. Jankowski, G.P. Neitzel, and T.H. Squire).

"The Design of an Experiment for the Study of the Instability of Unsteady Circular Couette Flow," Master's Thesis, Arizona State University, 1985.

## Presentations

"Head Excursion of Seat Belted Cadaver, Volunteers and Hybrid III ATD in a Dynamic/Static Rollover Fixture," 41st Stapp Car Crash Conference, 1997 (with E.A. Moffatt, J.J. Croteau, and C. Parenteau).