## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## —BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

APR 0 1 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| JORGE ENRIQUE PINEDA MORALES | § | |
| ET AL., | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-03-061 |
| | § | |
| FORD MOTOR CO., | § | |
|     Defendant. | § | |

### MEMORANDUM OPINION

The Defendant removed this suit from the 107th Judicial District Court, Cameron County, Texas, to this court on March 21, 2003. Docket No. 1. Subsequently, the Defendant filed a "Motion to Dismiss on Forum Non Conveniens Grounds." Docket No. 13. The parties have presented arguments concerning the said motion over an extended period of time in multiple filings. See Docket Nos. 19, 21, 34, 42. For the reasons elaborated below, the court **GRANTS** the Defendant's motion and **DISMISSES** this case subject to the conditions enumerated in the conclusion of this memorandum opinion.

## I.  FORUM NON CONVENIENS DOCTRINE

"[F]ederal courts have discretion to dismiss . . . actions, in certain narrow circumstances, under the common-law doctrine of forum non conveniens." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("The doctrine leaves much to the discretion of the court to which the plaintiff resorts . . ."). Provided that the applicable circumstances exist, federal courts may dismiss any given case even though "jurisdiction and proper venue are established," but only when there is an alternative forum abroad. Am. Dredging Co. v. Miller, 510 U.S. 443, 448-49 & n.2 (1994). In general, "the central focus of the forum non conveniens inquiry is convenience" and "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981). More particularly, federal courts consider forum

1

non conveniens motions under the analytical framework established in Gulf Oil Corp. and its progeny.[1]

The Fifth Circuit Court of Appeals has essentially distilled the Gulf Oil Corp. standard into a tripartite test. Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 835 (5th Cir. 1993), cert. denied, 508 U.S. 973 (1993). In order to obtain dismissal on the ground of forum non conveniens, a defendant must first demonstrate "the existence of an available and adequate alternative forum." Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 671 (5th Cir. 2003). If the existence of such a forum has been demonstrated, the court must then proceed to examine a host of "private interest factors." Gonzalez v. Chrysler Corp., 301 F.3d 377, 380 (5th Cir. 2002), cert. denied, 123 S. Ct. 1928 (2003). These private factors include, but are not limited to, the following:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained.

Baumgart, 981 F.2d at 835-36 (citing Gulf Oil Corp., 330 U.S. at 508). If these factors counsel dismissal, then the court need not proceed further. Id. at 837; see also Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 376 (5th Cir. 1992) ("Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors."). However, if the private interest factors do not weigh in favor of dismissal, then the court proceeds to examine a series of "public interest factors." Gonzalez, 301 F.3d at 380. These public interest factors include, but are not limited to, the following:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in the forum that is familiar with the law that must govern the

---

[1] Even in a diversity action, a federal court applies the federal law of forum non conveniens rather than any state-law counterpart. De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993); see also Am. Dredging Co., 510 U.S. at 453 (stating of forum non conveniens that "the doctrine is one of procedure rather than substance"); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (holding that federal courts sitting in diversity are to apply state substantive law but federal procedural law).

action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Baumgart, 981 F.2d at 837 n.14 (citing Gulf Oil Corp., 330 U.S. at 508). These lists of private and public interest factors are "by no means exhaustive, and some factors may not be relevant in the context of a particular case." Van Cauwenberghe v. Biard, 486 U.S. 517, 528-29 (1988). Considered in conjunction with one another, these factors provide for a flexible inquiry; accordingly, no one factor is dispositive. Piper Aircraft Co., 454 U.S. at 249-50.

## II.    AVAILABILITY AND ADEQUACY OF THE ALTERNATIVE FORUM

The first step in the forum non conveniens inquiry entails two distinct determinations. See Vasquez, 325 F.3d at 671 ("Forum availability and adequacy are separate inquiries."); In re Air Crash Disaster Near New Orleans, Louisiana On July 9, 1982, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc) ("The district court must first decide whether an available and adequate foreign forum exists. This is a two-part inquiry:  availability and adequacy."), vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032 (1989), reinstated on remand save as to damages, 883 F.2d 17 (5th Cir. 1989) (en banc) (per curiam).  A forum is "available" if it has the ability to assert jurisdiction over "the entire case and all parties." Vasquez, 325 F.3d at 671. "An alternative forum is adequate if 'the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" Id. (quoting Gonzalez, 301 F.2d at 379-80).

Notwithstanding some confusion over terminology, the parties do not dispute the adequacy of Venezuelan courts to hear this matter.[2] Instead, the issue is availability.  Based on the opinion of

---

[2] Although the parties are in dispute as to the applicable law and are also in disagreement concerning the nature of Venezuelan substantive law on several points, see Docket Nos. 14, 18, 22, 35, the Defendant has argued that the Venezuelan body of law that it believes is applicable is "adequate" as that term is defined for purposes of federal forum non conveniens law. Docket No. 13 at 7-9. The Plaintiffs do not contest this issue in their filings with this court. Although one subheading of "Plaintiffs' Response to Defendant's Motion to Dismiss For Forum Non Conveniens" is entitled "Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Venezuelan law," Docket No. 19 at 7, this section of the Plaintiffs' argument solely addresses and disputes the availability of a Venezuelan forum rather than its adequacy. See id. at 7-10. Nowhere else do the Plaintiffs assert that Venezuela constitutes an inadequate forum. Indeed, the Plaintiffs elsewhere maintain that "there is no real difference between the laws of

3

one of Plaintiffs' experts, Plaintiffs assert that a Venezuelan court would not exercise jurisdiction over this matter. Docket No. 19 at 7-10. Although another United States District Court has accepted the analysis advanced by the Plaintiffs and their expert, see In re Bridgestone/Firestone, Inc., Tire Products Liability Litigation, 190 F. Supp. 2d 1125, 1130-32 (S.D. Ind. 2002), this court cannot agree with the aforesaid analysis. Boiled down to its essence, the Plaintiffs maintain that, because the Plaintiffs are unwilling to submit their case to the Venezuelan judiciary, it is "unavailable" as that term is understood in the law of forum non conveniens. The Plaintiffs write:

> Article 40(4) of the [Venezuelan] Statute of Private International Law provides that "Venezuelan Courts shall have jurisdiction to hear trials resulting from the filing of actions in property when the parties should expressly or tacitly submit to their jurisdiction." EXHIBIT B (emphasis added). Dr. deMaekelt states that, a plain reading of Article 40(4) in conjunction with the provision of Article 44 which provides that express submission shall be evidenced in writing, means that a Venezuelan court would not exercise jurisdiction over the actions at issue here unless Plaintiffs and the Defendant submit a writing executed by both parties that expressly submits to the jurisdiction of a Venezuelan court. deMaekelt Aff. II ¶¶ 9-10. For purposes of forum non conveniens analysis, a Venezuelan court will not be available as an alternative forum unless both parties submit to their jurisdiction. deMaekelt Aff. II ¶¶ 9-10. In the case at bar, because Plaintiffs brought their case in the United States, they are not expressly submitting to the jurisdiction of Venezuelan courts.

Docket No. 19 at 9-10 (emphasis in original).

The Plaintiffs, however, have confused their willingness to avail themselves of the Venezuelan forum for its availability. Only the latter concern is relevant to the forum non conveniens inquiry. Supreme Court and the Fifth Circuit case law makes it clear that a foreign forum is available to plaintiffs hailing from the forum's country if the defendant submits itself to the foreign jurisdiction. See Piper Aircraft Co., 454 U.S. at 254 n.22 ("At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."); Gonzalez, 301 F.3d at 380 ("It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts."); Veba-

---

Venezuela and Texas," Docket No. 35 at 1, which, of course, precludes any contention that Venezuelan courts are an inadequate forum for this litigation.

Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1245 (5th Cir. 1983) ("We hold instead that defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of forum non conveniens analysis."); Vaz Borralho v. Keydrill Co., 696 F.2d 379, 393 (5th Cir. 1983) (stating that "an agreement by a defendant to submit to the jurisdiction of the foreign forum will satisfy the doctrine's requirement of two forums in which the defendant is amenable to process"), abrogated on other grounds, In re Air Crash, 821 F.2d at 1163 n.25.  The Defendant has made it clear that it will submit itself to the jurisdiction of the Venezuelan courts.  Docket No. 13 at 7 ("Here, Ford makes itself available to the courts of Venezuela.  Further, should this case be dismissed to Venezuela, Ford agrees to abide by any judgment entered into by a Venezuelan court."); Docket No. 21 at 5 (reiterating willingness to submit to the jurisdiction of the Venezuelan courts).

        The Plaintiffs attempt to sidestep the foregoing case law and Defendant's submission by asserting that, "[u]nlike the alternate jurisdictions in those [other] cases, Venezuelan jurisdictional provisions require submission of both parties to that jurisdiction and the mere unilateral submission of the Defendant herein to Venezuelan jurisdiction is insufficient to create jurisdiction."  Docket No. 19 at 10; see also Docket No. 34 at 10-12 (advancing the same notion).  As previously noted, Plaintiffs' argument elides the distinction between their willingness to avail themselves of the Venezuelan forum and its availability.  Indeed, the Plaintiffs' argument turns the forum non conveniens inquiry on its head.  The forum non conveniens doctrine exists to provide federal courts an opportunity to reconsider a foreign Plaintiff's choice of forum in light of convenience.  As conceptualized by the Plaintiffs, no such reconsideration may take place.  Under the construction proposed by Plaintiffs, a Venezuelan plaintiff's choice of forum may never be reconsidered by the courts of this country, because Venezuelan plaintiffs have the option of rendering their home courts unavailable simply by bringing suits such as this one outside of their own country.  Plaintiffs vociferously protest the Defendant's "unilateral submission to Venezuelan jurisdiction" as illegitimate, but evince no awareness that their own proposed construction of the forum non conveniens doctrine would empower themselves with unilateral authority regarding choice of forum. Nor do Plaintiffs indicate awareness that their own brand of unilateralism amounts to an utter abrogation of the forum non conveniens doctrine in cases of this nature where Venezuelan plaintiffs are concerned.  This court rejects the Plaintiffs availability-related arguments and finds that the Venezuelan courts are an available and adequate alternative forum.  Cf. Gonzalez, 301 F.3d at 382-

5

83 & n.8 (rejecting notion that plaintiffs' unwillingness to bring suit in foreign forum due to its economic non-viability therein had any bearing on whether an alternative forum existed); but cf. Canales Martinez v. Dow Chemical Co., 219 F. Supp. 2d 719, 727-28 (E.D. La. 2002) (arriving at the opposite conclusion reached by this court in the context of somewhat different Costa Rican jurisdictional provisions).[3]

---

[3]  The district court in Canales Martinez effectively did hold that the doctrine of forum non conveniens is nonexistent with reference to Costa Rican plaintiffs involved in lawsuits such as the instant one in the absence of the plaintiffs' consent to the foreign forum. See Canales Martinez, 219 F. Supp. 2d at 728 ("Were this court to dismiss this action conditioned on plaintiffs' refiling it is Costa Rica and having the Costa Rican court accept the case . . . the [c]ourt would be forcing the plaintiffs to try to file the lawsuit in Costa Rica in violation of articles 122 and 477."). This court has some doubts concerning the correctness of the Canales Martinez decision on this point. First, the applicability of articles 122 and 477, each of which merely specify that parties cannot be forced to bring lawsuits, is not self-evident from the face of Canales Martinez opinion. The plaintiffs in that case, like the plaintiffs herein, have, in fact, already voluntarily brought suit. The relevant question raised by the forum non conveniens inquiry is not whether plaintiffs may be forced to sue, but rather in what forum the litigation that they have initiated should proceed. Second, the Canales Martinez court arrived at the foregoing conclusion only after it had already accepted the Costa Rican plaintiffs' jurisdictional contention that "the action originates from acts undertaken, and decisions made, by the defendant companies at their highest levels in their corporate headquarters in the United States." Canales Martinez, 219 F. Supp. 2d at 726. The Fifth Circuit has since rejected this very argument. Vasquez, 325 F.3d at 673-74. Therefore, to whatever extent Canales Martinez was good law, it, perhaps, has little or no continuing vitality.

Setting aside the foregoing doubts, the case at hand is also distinguishable from the decision in Canales Martinez in a couple of critical respects. First, in arriving at its decision, the Canales Martinez court relied on a specific Costa Rican case that construed its country's jurisdictional provisions and found jurisdiction wanting after a United States court had dismissed it on the basis of the forum non conveniens doctrine. Canales Martinez, 219 F. Supp. 2d at 726-27, 729. No such equivalent Venezuelan case law has been proffered to this court. In the absence of such case law, this court's inclusion of a return jurisdiction clause is sufficient to safeguard against a subsequent determination by the Venezuelan courts that they lack the jurisdiction to hear this case. See Delgado v. Shell Oil Co., 890 F. Supp. 1324, 1356-57 (S.D. Tex. 1995) (rejecting argument that defendants' consent was insufficient to render foreign forums available in a case that involved some Costa Rican plaintiffs on account of the court's inclusion of a return jurisdiction clause in its forum non conveniens dismissal), aff'd, 231 F.3d 165 (5th Cir. 2000), cert. denied sub nom. Rodriguez-Delgado v. Shell Oil Co., 537 U.S. 1229 (2003); see also Canales Martinez, 219 F. Supp. 2d at 729 (discussing the procedural history of the Delgado case after the forum non conveniens dismissal). Second, the Venezuelan jurisdictional provisions at issue in this case are distinguishable from the Costa Rican provisions discussed in Canales Martinez. Plaintiffs in this case do not raise the precise arguments addressed by the Canales Martinez court; nor have the parties brought to this court's attention any Venezuelan legal provisions equivalent to Costa Rican articles 122 and 477. Similarly, the parties in this case have not brought to this court's attention any provisions akin to article 31 of the Costa Rican Code of Civil Procedure, upon which the Canales Martinez court heavily relies. See Canales Martinez, 219 F. Supp. 2d at 728.

## III.    PRIVATE INTEREST FACTORS

The Defendant argues that "[t]his case has absolutely no connection to Texas, pointing out that the "single-vehicle accident [at issue] . . . occurred in Venezuela," the vehicle's "sole occupant" and owner "was a Venezuelan citizen and resident who received medical treatment only in Venezuela," the vehicle itself was manufactured and sold in Venezuela, and the accident was investigated by Venezuelan authorities. Docket No. 13 at 3. Similarly, the Defendant notes that all of the Plaintiffs are Venezuelan citizens and residents. Id. Accordingly, the Defendant argues that the private interest factors "[a]ll . . . weigh heavily in favor of dismissal." Id. at 9. More specifically, the Defendant argues that (1) "all of the case-specific evidence will originate in Venezuela," (2) "this Court will not be able to compel the attendance of key [Venezuelan] witnesses," (3) Ford will be unable "to join any non-parties since they would not be subject to personal jurisdiction in Texas," and (4) the accident site will be inaccessible should this matter be tried outside of Venezuela. Id. at 9-13.

The Plaintiffs, of course, disagree with the Defendant's assessment. Regarding the case-specific evidence, the Plaintiffs argue that, as a design-oriented products liability suit, the voluminous documentary evidence (i.e., "documents related to the development, design, testing summaries, evaluation, failure rates, fatal vehicle rates, inspections, NHTSA reports, Critical Concerns Review Group Reports") is located within the United States. Docket No. 19 at 12. Moreover, the Plaintiffs note that the "millions" of relevant documents "will need to be translated into Spanish" in order for this action to proceed in Venezuela. Id. at 13. Contrariwise, Plaintiffs argue that there are "a mere handful" of relevant Venezuelan documents, which will be translated into English and provided to the Defendant at the Plaintiffs' expense. Id. In addition, Plaintiffs maintain that "witness testimony" that has been obtained in this suit thus far would not be admissible in Venezuelan proceedings. Id. at 13-14. Regarding the accident site and joinder of non-parties, the Plaintiffs argue that the accident site is largely irrelevant to the disputed issues and that the Defendant has not adduced any evidence that any potential third parties exist. Id. at 14-15. Finally, the Plaintiffs maintain that the political and judicial situation in Venezuela is such that "Venezuelan courts are less convenient for this trial." Id. at 15-16.

Notwithstanding the Plaintiffs' counter-arguments, case law decisively resolves the private

7

interest factors against the Plaintiffs' choice of forum in this case. The Plaintiffs' most plausible and compelling argument in favor of this forum is the one regarding the nature, extent, and location of documents relevant to their products liability cause of action. Unfortunately, this very argument has already been rejected by the Fifth Circuit. Of similar claims, the court of appeals has recently written:

> Plaintiffs point out that documents relating to the design and manufacture of the vehicle's tires are located in the United States and must be translated into Spanish. . . .
>
> * * *
>
> Assuming arguendo that all information relating to the design and manufacture of the tires and vehicle is located in the United States, we still find the [district] court's analysis correct. The tires and vehicle were manufactured and sold in Mexico; the vehicle's servicing records—both vital to plaintiffs' alternative theories of liability—are also located there. . . .
>
> * * *
>
> The linchpin of plaintiffs' argument—that the alleged wrongful act was the original design of the vehicle and tires—reaches back too far in the accident's causal chain. Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and alleged failure of the product, which all occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims. . . .

Vasquez, 325 F.3d at 673-74. The vehicle at issue in this case was similarly manufactured and sold in Venezuela. Docket No. 13 at 3 (citing affidavit of Roger Chen, which notes that the vehicle was "primarily designed in [the] USA and assembled in Venzuela" and sold by the Defendant to "an independent authorized [Venezuelan] dealer"); id. at Exhibit 3 (Plaintiffs' Original Petition at ¶ 4) (noting purchase of vehicle "by Jorge Enrique Pineda Carvajal at Auto Torovega, C.A., Carrera 8, Edif. Torovega, La Concordia, Apdo. 358, San Cristobal, Estado Tachira, Venezuela"). Like the plaintiffs in Vasquez, the instant Plaintiffs' rationale for selecting this forum simply "reaches back too far in the accident's causal chain." See Docket No. 19 at 12 ("Fundamentally this case involves a determination of the circumstances surrounding the design of the Ford Explorer, the reasons for

the failure of the vehicle, and the damages associated therewith and all of the evidence originates in the United States.").

This court finds Plaintiffs' contention regarding the purported inability of the parties to employ witness testimony procured in this proceeding in any future Venezuelan lawsuit to be similarly unpersuasive as a counter-argument to the Defendant's motion to dismiss. Initially, it is important to note the limited nature of Plaintiffs' argument. They do not contend that all discovery obtained thus far will be unusable in Venezuelan proceedings. Plaintiffs, relying on expert testimony propounded in another case, see In re Bridgestone/Firestone, 190 F. Supp. 2d at 1149-50, argue only that Venezuelan law provides that "'witness testimony obtained abroad shall have no value whatsoever if it was not taken under order issued by the Venezuelan judge hearing the case.'" Docket No. 19 at 14. The Defendant disputes this contention altogether. Docket No. 21 at 9.

However, the court finds it unnecessary to resolve this disagreement, as the sole discovery that has been conducted in this case to date has revolved around the forum non conveniens inquiry and a dispute concerning the applicable law in the event that this court declined to dismiss the suit.[4] The Plaintiffs themselves filed an unopposed motion to extend the time for discovery on the merits pending this court's ruling on the forum non conveniens issue. See Docket No. 37 ("To date, neither party has named any experts nor conducted written discovery as to the merits of the case because Defendant's motion to dismiss on grounds of forum non conveniens remains pending before the Court. As a practical matter, neither party wishes to expend time and resources on experts or written discovery until Defendant's motion is ripe for hearing and the Court issues its ruling."). The court granted this motion. Docket No. 38. The witness testimony procured thus far has been obtained

---

[4] The parties have filed multiple documents concerning the choice of law issue. See Docket Nos. 14, 18, 22, 35. In summary, the Defendant argued that Venezuelan law should be applied in the event that this court decided to retain this case. The Plaintiffs contended that Texas law should apply in this diversity action. As the court has decided to dismiss the lawsuit on the basis of the forum non conveniens doctrine, the issue is superfluous and the court hereby denies all motions relating thereto as being moot. The court has given the choice of law issue little consideration in arriving at its decision on Defendant's motion to dismiss on the basis of forum non conveniens. See Piper Aircraft Co., 454 U.S. at 251 ("If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of forum non conveniens would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions."). The Supreme Court went on to note with reference to the public interest factors that, "[t]he doctrine of forum non conveniens . . . is designed in part to help courts avoid conducting complex exercises in comparative law." Id.

over the Defendant's objection for the primary purpose of aiding the Plaintiffs' ability to respond to the Defendant's motion to dismiss this case. See Docket Nos. 20, 25-26, 31, 33, 36. It would be perverse to say the least to allow the Plaintiffs to now convert discovery allowed for their benefit over Defendant's objection on the issue of forum non conveniens into a basis for rejecting the very forum non conveniens motion that prompted the discovery. Cf. Empresa Lineas Maritimas Arentinas, S.A., 955 F.2d at 372-73 (rejecting argument that completion of "substantial discovery" precluded forum non conveniens dismissal in case that had been pending before district court for eight years prior to filing of motion to dismiss).

While the court is not unsympathetic to the Plaintiffs' premises-related counter-argument (i.e., that "it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident"), Docket No. 19 at 14, the court's sympathies are somewhat constrained by contrary case law. "Possibility of view of premises, if view would be appropriate to the action" is one of the private interest factors explicitly enumerated by the Supreme Court. See Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gulf Oil Co., 330 U.S. at 508). An accident such as the one at issue is, of course, of the sort that potentially renders a view of the accident scene appropriate. Potential defenses may include, for example, driver error or highway conditions, both of which necessitate a clear understanding of the scene. As another district court has observed:

> Viewing the location of the [single car] accident could be appropriate, if unlikely, to a determination of this action. Although courts and juries in these type[s] of cases are usually informed of the circumstances of vehicular accidents by photographs, modules and animations, physical viewing of the locale of the accident does occur. If it were necessary in this case, such a viewing would be virtually impossible due to the time and cost it would take to transport all court personnel and the jury to the location . . . .

Urena-Taylor v. Daimler Chrysler Corp., 196 F. Supp. 2d 428, 433 (E.D. Tex. 2001); cf. Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd., 933 F. Supp. 1301, 1312-13 (S.D. Tex. 1996) (finding that potential to view "the condition of the highway" in a case not involving personal injuries weighed in favor of dismissal).

In addition, although such a viewing of the scene may be relatively rare as a rule, the rule may be less pertinent in the context of trials involving foreign accidents. The need for local juries to personally view accident scenes located abroad may be higher due to Texas juries' unfamiliarity with

10

road conditions abroad. That is, the reason accident scenes are infrequently viewed may have something to do with jurors' presumed familiarity with conditions in the locale in which they sit in judgment. Cf. Piper Aircraft Co., 454 U.S. at 242 (noting district court's finding that trial concerning airplane crash "would be aided by familiarity with Scottish topography"). If this court retained the instant case, local jurors would, of course, lack such familiarity with the location of the accident. Accordingly, while the court considers this factor to be of limited import, particularly given the existence of modern technologies that would assist the parties in presenting a distant scene to otherwise unfamiliar jurors, it nonetheless also points toward dismissal of this case in favor of trial in Venezuela, if only slightly so.

The court also finds the Plaintiffs' counter-argument pertaining to potential third-parties unpersuasive. The Plaintiffs argue that the Defendant's purported concerns regarding the potential necessity of impleading third-parties who would be beyond the jurisdictional reach of this court are belied by its failure to identify any such parties. Docket No. 19 at 14-15. Plaintiffs further contend that, having "allowed the parties to conduct discovery as to . . . forum non conveniens," the Defendant's failure to identify any such necessary third-parties constitutes a waiver of the issue. Id. The Defendant strenuously objects to the Plaintiffs' line of argument on the basis that, "[i]f Ford had to provide a detailed catalog of potentially liable third-parties, it would have to conduct a full investigation and discovery in a foreign country under the Hague Convention." Docket No. 21 at 10.

Case law supports the Defendant's position. Regarding witnesses beyond the reach of a United States court's subpoena power, the Supreme Court has specifically rejected the contention that "defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." Piper Aircraft Co., 454 U.S. at 258. Such witnesses would be difficult to identify and interview precisely because they are located "beyond the reach of compulsory process." Id. Indeed, "[r]equiring extensive investigation would defeat the purpose of" the forum non conveniens inquiry. Id.; see also In re Air Crash, 821 F.2d at 1165 n.28 ("As one court has stated, however, 'a motion to dismiss for forum non conveniens does not call for a detailed development of the entire case.'"). The Court's observations in Piper Aircraft Co. concerning individual witnesses are likewise applicable to potential third-parties. Hence, this court feels it inappropriate to construe

11

the Defendant's failure to identify potential third-parties with specificity as a waiver of the issue.

Nonetheless, defendants are at least required to suggest in general terms who such third-parties might be. See Piper Aircraft Co., 454 U.S. at 258 (holding that defendants must "provide enough information to enable the District Court to balance the parties' interests"). The Defendant has stated that, "[a]t a minimum," it may need to join those "entities or individuals responsible for maintaining the subject vehicle." Docket No. 13 at 11. This is sufficient to meet the Defendant's burden on this motion. See id. at 259 n.27 (defendants submitted affidavits identifying witnesses in general terms who were beyond the reach of compulsory process, including "the persons responsible for servicing and maintaining the aircraft"). Given the nature of the case, this representation is credible. In addition, it is bolstered by the fact that, even if such potential third-parties never materialize, there are undeniably witnesses who are beyond this court's jurisdiction (e.g., the officer who investigated the scene in the immediate aftermath of the accident).[5] See Docket No. 13 at Exhibit 4 ("Translated Accident Report" of Venezuelan officer who investigated the accident scene). "Such difficulties in obtaining testimony and evidence located in foreign jurisdictions is a strong factor favoring forum non conveniens dismissal." Torreblanca de Aguilar v. Boeing Co., 806 F. Supp. 139, 144 (E.D. Tex. 1992), aff'd, 11 F.3d 55 (5th Cir. 1993).

Finally, the Plaintiffs maintain that the political situation in Venezuela is such that trial would be more convenient in this country. Docket No. 19 at 15-16. The Defendant has failed to address this matter. Nevertheless, this court is nonetheless unpersuaded by the Plaintiffs' contention. No actual evidence appears to have been submitted in support of this contention. Instead, the Plaintiffs

---

[5] The Plaintiffs attempt to counteract this fact by noting that both "Sgt. Elias Pena, the officer who investigated the accident, and Dr. Torres Macho, the attending physician of Clinica San Jose" have declared "under penalty of perjury . . . their willingness to present themselves and provide testimony regarding this case in either Venezuela or Aruba." Docket No. 19 at 13; see also Docket No.27 (English translation of the declarations in question). Plaintiffs feel that "[t]hese declarations should allay the Defendant's concern with regard to compelling key witnesses to testify at trial." Docket No. 19 at 13. However, the declarations do not actually commit the persons in question to appear at trial. Moreover, even were they to do so, the declarations are not binding in the Southern District of Texas. These persons are beyond the reach of this court, and this court is powerless to compel these individuals to live up to their declarations. In addition, it is telling that the Plaintiffs do not in any fashion obligate themselves to ensure that the persons in question will be available for trial in the United States. Rather, these declarations bind only Pena and Macho—who are each located far from this court's jurisdiction. This is not the only district court in Texas that is skeptical of such assurances. See Urena-Taylor, 196 F. Supp. 2d at 433 ("The plaintiffs have asserted that they, the plaintiffs, will be available and present in a U.S. court. However, they cannot guarantee the availability of any of the necessary witnesses who might be unwilling to appear and this court cannot summon them.").

appear to be relying principally on the testimony of an expert witness in another case in another federal forum. See In re Bridgestone/Firestone, 190 F. Supp. 2d at 1153 (citing expert's written evaluation of Venezuelan judiciary and citing other documents not provided to this court). The Plaintiffs have provided this court with at least one other expert report from the In re Bridestone/Firestone litigation in the Southern District of Indiana. See Docket No. 18 at Exhibit B ("Foreign Law Affidavit of James Otis Rodner"). However, the Plaintiffs have failed to provide this court with a copy of the relevant written report of the expert who opined in that case on the state of the Venezuelan judiciary, which renders it impossible for the court to independently assess the expert's opinion and its relevance to this case.

Moreover, this court notes that, even if it is taken at face value, much of the information relied on by the Plaintiffs concerning the political and judicial situation in Venezuela is somewhat dated. For example, Plaintiffs rely on events that occurred or information that dates from 1997, 1999, and 2001. Docket No. 19 at 15-16. None of these say anything about the state of the nation, its government, or its judicial branch at present. Cf. Delgado, 890 F. Supp. at 1357 (noting that political conditions bearing on the judiciary in Nicaragua had since changed for the better "since plaintiffs briefed the issue"). The most recent information alluded to by the Plaintiffs—the court uses the phrase "alluded to" because Plaintiffs have not actually provided the court with any of the documents that it references in this portion of their briefing—is a press release from the Venezuelan embassy that purportedly relates that "confidence in the Venezuelan judicial system is 59%, amid accusations by the private media that the court follows government orders." Id. at 16.

Frankly, this court is at a loss as to how to meaningfully evaluate such generalizations, particularly in light of the overall lack of specific evidence on this point. Although the Fifth Circuit has indicated that it might consider political unrest and delays resulting therefrom in assessing the private interest factors, see Vasquez, 325 F.3d at 673 (distinguishing In re Bridgestone/Firestone on the basis that the district court therein "believed that political unrest could make trial . . . difficult"), this court has been unable to locate a single opinion from this circuit that has done so. The sole court from within this circuit to address a like argument rejected it on the evidence submitted. See Delgado, 890 F. Supp at 1357 (addressing and rejecting the more ambitious argument that "the courts of Nicaragua are unavailable because they are not functioning"). Given the paucity of evidence and information submitted to this court on the issue, this court likewise rejects the instant

13

Plaintiffs' similar contentions.

Finally, as pertains to this subject, it is worth noting that even in <u>In re Bridgestone/Firestone</u>, in which the court accepted the plaintiffs' political unrest argument concerning Venezuela, it "accord[ed] this factor only slight weight in favor of retaining jurisdiction" due to a dearth of evidence. <u>In re Bridgestone/Firestone</u>, 190 F. Supp. 2d at 1153. The district court in that case went on to note that a (convincing) argument against <u>forum non conveniens</u> dismissal premised on delay due to political unrest and the like should involve "exact evidence for the length of the delay and a delay of many years." <u>Id.</u> (citing <u>Bhatnagar v. Surrendra Overeas Ltd.</u>, 52 F.3d 1220, 1227-29 (3d Cir. 1995), in which credible expert testimony established that litigation in India could take up to twenty-five years to complete).[6] Such evidence is lacking in this case, and the Plaintiffs may not simply rely on materials discussed in an opinion from another jurisdiction in a case that also involved Venezuelan plaintiffs.[7] <u>Bhatnager</u>, 52 F.3d at 1230.

The preceding presentation of this court's consideration of private interest factors might give the (mistaken) impression that the court placed the burden of persuasion on the Plaintiffs. Nothing could be further from the truth. The court has focused principally on the Plaintiffs' counter-

---

[6] It should be noted that the <u>Bhatnager</u> court did not consider the delay at issue in that case in weighing the private interest factors. As in <u>Delgado</u>, the <u>Bhatnager</u> court considered the state of the foreign judiciary as it related to the Indian courts' availability as an alternate forum. The Third Circuit held "that delay of the magnitude described in the Bhatnagers' experts' affidavits can render an alternative forum inadequate as a matter of law." <u>Bhatnager</u>, 52 F.3d at 1228. Having failed to demonstrate that Venezuela's judicial situation should be taken into account in weighing the private interest factors, Plaintiffs have likewise failed to make the more demanding showing that Venezuela is an inadequate forum as a matter of law on this basis.

[7] The Third Circuit's opinion in <u>Bhatnager</u> is worth quoting at length on this point:

We should not be read to conclude that the courts of India are always inadequate fora, making <u>forum non conveniens</u> dismissal inappropriate whenever an Indian national sues in the United States. That is neither the thrust nor the end point of our analysis. In reaching its conclusion that India was an inadequate alternative forum in this case, the district court was essentially concluding that Surrendra had not met its burden of proof on that threshold issue. We agree. It may well be that the next defendant to face the same issue faced by Surrendra would reach a different result because it would marshal more—or better—proof. Furthermore, another district court presented with the same raw evidence might reach different factual conclusions, and we might be constrained under our lenient standards of review to affirm in that case, as well.

52 F.3d at 1230.

arguments regarding the private interest factors due to the fact that the Defendant has demonstrated that the factors otherwise uniformly point toward dismissal. As the Defendant states in the opening paragraph of the introduction of its forum non conveniens motion:

> This case has absolutely no connection to Texas. This suit arose out of a single-vehicle accident that occurred in Venezuela. All of the Plaintiffs are citizens of Venezuela. The sole occupant of the vehicle was a Venezuelan citizen and resident who received medical treatment only in Venezuela. The vehicle at issue was manufactured in Venezuela. It was originally sold in Venezuela. It was owned by a Venezuelan resident and citizen. The accident was investigated by Venezuelan authorities.

Docket No. 13 at 3. The evidence supports these contentions. See id. (citing Plaintiffs' Original Petition, Translated Accident Report, and Affidavit of Roger Chen). The Plaintiffs do not dispute these facts. Indeed, the Plaintiffs have tacitly acknowledged their accuracy. See Docket No. 34 (attaching as "Exhibit C" the Defendant's responses to forum non conveniens-related interrogatories and requests for admissions); see also Docket No. 42 (attaching as "Exhibit B" Defendant's responses to supplemental interrogatories and requests for admissions).[8] Plaintiffs merely maintain instead that the foregoing facts are irrelevant. See, e.g., Docket No. 34 at 13 ("That the vehicle was 'finally assembled' and purchased in Venezuela is of no import . . . ."). Fifth Circuit case law and case law from within the circuit contradicts the Plaintiffs' position. See Gonzalez, 301 F.3d at 379 ("Texas, however, has a tenuous connection to the underlying dispute. Neither the car nor the airbag

---

[8] The interrogatories state that the vehicle in question "was not assembled in the United States." Docket No. 34 at Exhibit C (Interrogatory Nos. 7-8). It appears to have been "finally assembled in Venezuela." Id. (Interrogatory Nos. 11-12). Ford played some part in the vehicle's assembly, but did so outside of the United States. Id. (Request for Admission No. 9). Ford admits that the vehicle was "designed, in part, . . . in the United States." Id. (Request for Admission Nos. 3, 7). It also admits that the vehicle was "tested, in part, . . . in the United States" as well. Id. (Request for Admission Nos. 4, 7). Supplemental discovery responses provide more detail, but they do not alter the complexion of the case. See, e.g., Docket No. 42 at Exhibit B (Interrogatory Nos. 7-8) ("The subject 2001 Ford Explorer was not finally assembled in the United States—it was finally assembled at Ford of Venezuela's Valencia plant. It is Ford's reasonable belief that seventy-two [72] percent of the parts installed in the 2001 Explorer assembled in Venezuela were supplied by a U.S. manufacturer, although some of those parts may have in fact been manufactured or assembled at facilities outside of the United States."). At most, the interrogatories and requests for admissions at issue establish a connection to the United States that has been held to be insufficient to defeat a motion to dismiss based on the forum non conveniens doctrine. Vasquez, 325 F.3d at 673-74. They do not gainsay the Defendant's otherwise uncontradicted contentions that this case's circumstances are overwhelmingly connected with Venezuela.

module was designed or manufactured in Texas. The accident took place in Mexico, involved Mexican citizens, and only Mexican citizens witnessed the accident. Moreover, Gonzalez purchased the Chrysler HLS in Mexico . . . ."); Urena-Taylor, 196 F. Supp. 2d at 433 ("The decedent was a Mexican citizen; the plaintiffs are all Mexican citizens . . .; the accident occurred in Mexico in a vehicle that was maintained in Mexico. All medical and law enforcement personnel and physical evidence are in Mexico. . . . Under these circumstances, Mexico is the most appropriate forum available."); see also Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 804 (7th Cir. 1997) ("Here, we do not even have an American plaintiff. Instead, we have a foreign plaintiff who was injured in a foreign land filing suit against an American defendant with extensive foreign dealings. The district court thus made a permissible inference that Indiana residents have a mere passing interest in this case.").[9]

---

[9]  The Gonzalez court went on to reiterate and underscore the foregoing observations in its conclusion. The court of appeals wrote that:

> The district court found that almost all of the private and public interest factors pointed away from Texas and toward Mexico as the appropriate forum. It is clear to us that this finding does not represent an abuse of discretion. After all, the tort victim was a Mexican citizen, the driver of the Chrysler HLS (Gonzalez's wife) is a Mexican citizen, and the plaintiff is a Mexican citizen. The accident took place in Mexico. Gonzalez purchased the car in Mexico. Neither the car nor the air bag was designed or manufactured in Texas. In short, there are no public or private interest factors that would suggest that Texas is the appropriate forum for the trial of this case.

301 F.3d at 383-84. Given the circuit's subsequent determination that design within the United States is an insufficient basis for controverting an otherwise valid forum non conveniens motion, Vasquez, 325 F.3d at 673-74, the fact that some design took place in this country is also irrelevant.

Moreover, even if the location of the product's design was relevant, it is worth noting that the Plaintiffs have not even suggested let alone demonstrated that the vehicle at issue was designed in Texas. Apart from the location of Plaintiffs' lawyers, there does not appear to be any documented connection to this forum. In making their design-oriented forum non conveniens argument, Plaintiffs routinely refer to generic connections with the United States. See, e.g., Docket No. 34 at 13-14 (noting that documents and potential witnesses are located in the United States); Docket No. 42 at 3-6 (arguing that the relevant documents and experts are located in the United States). There is literally no indication whatever in the record that explains why this Defendant, a Delaware corporation with its principal place of business located in Dearborn, Michigan, Docket No. 1 at ¶ 7, is being sued in this particular forum. The Plaintiffs have "pointed to no specific interests favoring retention of jurisdiction. None of the parties, witnesses or sources of proof reside in the [Southern District of Texas]." Veba-Chemie, A.G., 711 F.2d at 1249; see also Urena-Taylor, 196 F. Supp. 2d at 434 ("[C]ertain evidence that may prove germane to the instant action is located in the United States. None of this evidence, as far as the court is aware, is stored in Texas and accordingly some

16

## IV.   PUBLIC INTEREST FACTORS

The parties have likewise devoted considerable efforts contending that the public interest factors support their respective forum preferences.  See Docket No. 13 at 13-18 (Defendant's arguments); Docket No. 19 at 16-20 (Plaintiffs' arguments); Docket No. 34 at 16-18 (same); Docket No. 42 at 7-9 (same).  As the private interest factors strongly and uniformly point toward trial in a Venezuelan forum, see supra Part III, this court need not, and does not, discuss these arguments in detail. Baumgart, 981 F.2d at 835-36; Empresa Lineas Maritimas Argentinas, S.A., 955 F.2d at 376. However, given the time expended on these factors by counsel, the court feels obligated to comment that the public interest factors mostly appear to favor trial abroad as well.

With the exception of the first factor concerning docket congestion—this court's current civil docket is quite manageable and thus poses no obstacle to the instant suit—the factors all indicate that trial in Venezuela would be more appropriate and convenient.  Contrary to the Plaintiffs' assertion of a public safety policy interest in this suit on the part of the United States, Docket No. 42 at 8-9, the locality of interest in this case is Venezuela.  See Vasquez, 325 F.3d at 673 (stating that "Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there").  The Supreme Court has already indicated that domestic public policy concerns regarding consumer safety are insufficient to establish a local interest on the part of American courts sufficient to tip the second public interest factor in favor of retaining jurisdiction.  See Piper Aircraft Co., 454 U.S. at 260-61 (rejecting argument that trial in the United States would serve "an interest in ensuring that American manufacturers are deterred from producing defective products").  Although the court finds it unnecessary to definitively resolve the issue, a recent Fifth Circuit case with a substantially similar fact pattern suggests that Venezuelan law would apply to this suit if it remained in this court.  See Vasquez, 325 F.3d at 674 ("Even if the design of the tires and vehicles is characterized as the conduct causing injury, the aggregate of other specific contacts favors application of Mexican law.").  Accordingly, the third public interest factor counseling trial in a forum familiar with the governing law likely points abroad.  The parties voluminous and contentious wrangling concerning the contours of Venezuelan law, see Docket Nos. 14, 18, 22, 35, reinforces

---

inconvenience will necessarily be involved in transporting it for trial in this court."); Torreblanca de Aguilar, 806 F. Supp. at 144 ("The fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum.").

this impression. As previously noted, see supra note 4, the desirability of avoiding the complexity of choice of law inquiries in general and an unfamiliarity with Venezuelan law that necessarily adds to such complexity weighs in favor of trial abroad as well under the fourth public interest factor. Finally, the fifth public interest factor—the unfairness of burdening citizens in an unrelated forum with jury duty—heavily weighs in favor of dismissal in this instance. See Urena Taylor, 196 F. Supp. 2d at 434 ("Given the limited contacts this case has with Texas, it would be an injustice to impose the burden of jury duty upon the people of this state having no relation to this litigation.").

## V.   BURDEN OF PERSUASION

The Plaintiffs in this case seek to alter the court's foregoing analysis of the balance of private interest factors by arguing that the Defendant is saddled with a heavier burden of persuasion than that which normally obtains in a forum non conveniens motion involving foreign plaintiffs. In general, a defendant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum" and its "burden of persuasion runs to all the elements of the forum non conveniens analysis." In re Air Crash, 821 F.2d at 1164. The particular weight of this burden varies somewhat, however, depending on the circumstances of the case.

In Gulf Oil Co., the Supreme Court indicated that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Co., 330 U.S. at 508. However, the parties in Gulf Oil Co. were both citizens of the United States litigating a dispute that stemmed from an accident that took place in the United States. Id. at 502-03; see also id. at 512 (Black, J., dissenting). Where, as here, a case involves foreign plaintiffs attempting to litigate an accident that occurred on foreign soil in United States courts, plaintiffs' "choice deserves less deference." Piper Aircraft Co., 454 U.S. at 256; see also Baumgart, 981 F.2d at 836 n.12 (citing Piper Aircraft Co. for the foregoing proposition); Great Prize, S.A. v. Mariner Shipping Pty., Ltd., 967 F.2d 157, 160 (5th Cir. 1992) ("The strong presumption in favor of the plaintiff's choice of forum applies with less force when the plaintiff is a foreign national."). Indeed, in Piper Aircraft Co., the Court indicated that, when a "plaintiff is unable to offer any specific reasons of convenience supporting his choice" of forum and said choice imposes "a heavy burden" on a defendant, "dismissal will ordinarily be appropriate," which suggests, perhaps, that foreign plaintiffs bear some persuasive obligations as well once the forum non conveniens issue has been credibly raised by a

18

defendant.  Piper Aircraft Co., 454 U.S. at 249; see also Empresa Lineas Maritimas Argentinas, S.A.,, 955 F.2d at 373 ("When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice.").

The Plaintiffs in this case seek to avoid the aforementioned judicial skepticism concerning suits by foreigners brought in United States federal courts by effectively disclaiming their status as foreigners.  Specifically, Plaintiffs argue that they are entitled by rights conferred in a treaty between the United States and Venezuela to be treated as if they were United States citizens in this lawsuit. Docket No. 19 at 10-11 (citing and discussing the Treaty of Peace, Friendship, Navigation, and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466, available at 1836 WL 3643).  On the basis of this treaty, the Plaintiffs argue that they should be accorded the same treatment that would be afforded to American citizens in the court's forum non conveniens analysis, and they likewise contend that "the existence of this Treaty makes it reasonable to assume that the forum choice of the Plaintiffs herein is convenient in spite of the fact that they are foreigners." Id. at 11.

At least one federal appellate court has adopted the very position advocated by the Plaintiffs. See Blanco v. Banco Industrial de Venezuela, S.A., 997 F.2d 974, 981 (2d Cir. 1993) ("Because such a treaty exists between the United States and Venezuela . . . no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because Proyecfin is a foreign corporation.").  The Second Circuit Court of Appeals decision was premised on the notion "that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts." Id.  However, it is not altogether clear that the Second Circuit has properly construed the relevant treaty provision.  The provision in question provides that:

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein, leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens of the country in which they may be; for which they may employ in defence [sic] of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals, in all cases which may concern them; and likewise at the taking of all

19

examinations and evidence which may be exhibited on the said trials.

Treaty of Peace, Friendship, Navigation, and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466, available at 1836 WL 3643 (emphasis added). By its express terms, this treaty provision requires that the signatories' courts be open to foreign nationals who happen to be located within the territory of the other. In other words, this treaty applies to Venezuelans present in the United States and citizens of the United States present in Venezuela. Nothing within this provision suggests that Venezuelan plaintiffs not located in the territory of the United States may bring suit within the latter's courts for events that took place abroad on equal footing with citizens of the United States or vice versa.

Furthermore, the Second Circuit nonetheless engaged in the traditional forum non conveniens analysis even after having interpreted the treaty in the manner proposed by the instant Plaintiffs. Blanco, 997 F.2d at 980-84. In fact, the Blanco court went on to find that Venezuela provided an adequate and available forum and that the public and private interest factors favored dismissal. Id. Indeed, the court of appeals affirmed the district court's dismissal, notwithstanding the fact that the parties had a contractual provision establishing mutual consent to trial in New York. Id. at 979-80.

The Fifth Circuit has elsewhere acknowledged the Plaintiffs' argument, but it has not decided whether to accept the position embraced by the Second Circuit. See James v. Gulf Int'l Marine Corp., 777 F.2d 193, 194 & n.2 (5th Cir. 1985) (addressing a somewhat similar provision in a treaty between the United States and Honduras but failing to decide the issue because it was not raised in the trial court). The Fifth Circuit Court of Appeals has indicated that, at a minimum, it will not construe general jurisdictional language in treaty provisions as casting aside the forum non conveniens doctrine. See In re Air Crash, 821 F.2d at 1160-62 (rejecting assertion that signing of Warsaw Convention suspended "a federal court's power to apply the doctrine of forum non conveniens in a case governed by the Convention"). However, it is one thing to hold that treaty provisions will not be construed as abrogating a longstanding legal doctrine in the absence of a more explicit statement to that effect and quite another to hold that a treaty provision will have no impact whatever on a federal court's forum non conveniens analysis.

At least one lower court within this circuit has reviewed a motion to dismiss on the basis of the forum non conveniens doctrine "under the higher standard that requires defendants to overcome

20

the presumption accorded the plaintiffs' chosen forum by proving that the balance of interests points clearly toward trial in the alternative forum." Delgado, 890 F. Supp. at 1366 (citing and relying on Blanco, 997 F.2d at 981). However, the Delgado opinion is distinguishable on at least two grounds (viz. some of the plaintiffs resided in the United States, and a jurisdictional provision of the Texas Civil Practice and Remedies Code was also at issue that has not been raised in this proceeding), and the court specifically noted that it found no Fifth Circuit authority akin to Blanco. Moreover, the Delgado court's decision about the appropriate standard was not outcome determinative, as the court found that the higher standard was easily satisfied. Delgado, 890 F. Supp. at 1369. More recently, other district courts within this circuit have rejected arguments that general treaty provisions guaranteeing equality "before the courts" compel deference to a foreign plaintiff's choice of forum in the forum non conveniens context. See Dominguez-Cota v. Cooper Tire & Rubber Co., 284 F. Supp. 2d 444, 450 (N.D. Miss. 2003) ("By giving a foreign plaintiff's choice of an American forum less deference than an American plaintiff's choice of a domestic forum, a court is not violating treaty obligations, but rather performing the forum non conveniens balancing test approved by the Supreme Court."); Zermeno v. McDonnell Douglas Corp., 246 F. Supp. 2d 646, 661-62 (S.D. Tex. 2003) (same).

Given the text of the treaty provision at issue and case law concerning not altogether dissimilar treaty provisions,[10] this court is dubious about the contention being advanced by the Plaintiffs. In addition, this court is somewhat skeptical that the treaty argument being plied by the Plaintiffs might have much bearing on a discretionary decisions concerning forum non conveniens even if accepted. See Empresa Lineas Maritimas Argentinas, S.A., 955 F.2d at 373 (holding that district courts in this circuit need not state the degree of deference "accorded a plaintiff's forum choice" and refusing to find an abuse of discretion in an instance in which a court failed to do so). However, the court ultimately finds that it need not decide this issue, as the private interest factors, see supra Part III, clearly point towards trial in Venezuela. See Vasquez, 325 F.3d at 672 (holding

---

[10] Both of the lower court decisions cited construed article 14(1) of the International Covenant on Civil and Political Rights, which provides that "[a]ll persons shall be equal before the courts and tribunals" of the signatories. Dominguez-Cota, 284 F. Supp. 2d at 450 & n.2; Zermeno, 246 F. Supp. 2d at 661 & n.7. In dicta, a panel of the Fifth Circuit has indicated that it did not view the aforementioned treaty provision as being similar enough to the instant treaty provision to be instructive in terms of how to construe the former with reference to the forum non conveniens doctrine. Vasquez, 325 F.3d at 672 n.5.

21

that the appellate court need not decide same type of argument that is advanced in this case, albeit on the basis of different treaty, "because the private and public factors 'clearly point towards' trial" abroad); see also James, 777 F.2d at 194 n.2 (noting that, even when courts have accepted arguments akin to those being advanced by the instant Plaintiffs, these "courts have dismissed the suits where the balance weighs in favor of another forum").  The decision in Blanco, on which the Plaintiffs heavily rely, reflects the accuracy of the James court's observation.  See Blanco, 997 F.2d at 981 (holding that "that the presence of an adequate Venezuelan forum, and the strong adverse balance of Gilbert private and public factors, outweigh the initial choice of [the foreign plaintiff] of a New York forum").

## VI.    CONCLUSION

For the foregoing reasons, this court hereby finds that Venezuela provides an adequate and available alternative forum for this litigation.  In addition, this court finds that the private interest factors uniformly favor dismissal of this case on the ground of forum non conveniens.  The private interest factors point toward trial in Venezuela with sufficient force to obviate any need to consider the public interest factors.  Baumgart, 981 F.2d at 835-36; Empresa Lineas Maritimas Argentinas, S.A., 955 F.2d at 376.  The foregoing determinations also render the parties' choice-of-law motions moot and the court hereby DENIES them on this ground.  Accordingly, this court conditionally GRANTS Ford Motor Company's Motion to Dismiss on Forum Non Conveniens Grounds and conditionally DISMISSES this case.  In keeping with the law of the circuit, this court conditions its dismissal as follows:

First, the court grants this dismissal subject to a return jurisdiction clause.  See Vasquez, 325 F.3d at 675 (reversing and remanding because district court failed to include a clause "permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum"); see also In re Air Crash, 821 F.2d at 1166 (requiring district courts to "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum").  Should legal proceedings in Venezuela prove impossible for any reason other than the Plaintiffs' unwillingness to fulfill the procedural niceties necessary for a Venezuelan court to assert jurisdiction with the consent of the parties, this court will reassert its jurisdiction over the

22

matter. Similarly, failure to comply with any of the conditions elaborated below constitutes grounds for reassertion of jurisdiction by this court. See Seguros Comercial Americas S.A. de C.V., 933 F. Supp. at 1315 (providing for resumption "of jurisdiction over this case if Defendant fails to meet any of the above conditions").

Second, the court conditions dismissal on the Defendant's agreement to appear and submit itself to the jurisdiction of the Venezuelan courts, waiving any jurisdictional defenses it might otherwise possess. See Great Prize, S.A., 967 F.2d at 159 (district court below so conditioned dismissal); Urena-Taylor, 196 F. Supp. 2d at 434 (district court so conditioned dismissal).

Third, dismissal is similarly conditioned on Defendant's waiver of statute of limitations or laches-related defenses that it did not possess at the time the Plaintiffs' Original Petition was filed in state court. See Great Prize, S.A., 967 F.2d at 159 (district court below so conditioned dismissal); Urena-Taylor, 196 F. Supp. 2d at 434-35 (district court so conditioned dismissal).

Fourth, the court's order of dismissal is conditioned on the Defendant's agreement to submit to discovery in the Venezuelan forum per its procedural rules. Urena-Taylor, 196 F. Supp. 2d at 435 (requiring defendants to "produce in Nuevo Leon, Mexico all reasonable discovery requests by the plaintiffs").

Fifth, the court's order of dismissal is conditioned on the Defendant's agreement to make its witnesses and evidence available in the Venezuelan proceedings. See Seguros Comercial Americas S.A. de C.V., 933 F. Supp. at 1315 (conditioning dismissal on defendant's obligation to "make available in the Mexican proceedings all relevant documents and witnesses within its control").

Sixth, the court's dismissal is conditioned on the Defendant's agreement to bear any translation-related expenses concerning the testimony of English-speaking witnesses at trial.

Seventh, the court's dismissal is conditioned on the Defendant's agreement to allow the use of all discovery obtained thus far in proceedings in the United States in the subsequent Venezuelan suit. See Seguros Comercial Americas S.A. de C.V., 933 F. Supp. at 1315 (conditioning dismissal on defendant's obligation to "make available any discovery taken in this action in the Mexican proceeding").

Eighth, the court's dismissal is conditioned on the Defendant's agreement to satisfy any Venezuelan judgment, subject only to whatever appellate rights it may enjoy in that forum. The court's dismissal is further conditioned on the Defendant's agreement to the reassertion of

23

jurisdiction by this court in the event that it fails to satisfy any final judgment. See Baumgart, 981 F. 2d at 836 n.13 (noting that district court had imposed such a satisfaction condition and required an agreement that the defendant would "submit to the district court's retention of jurisdiction over the matter in the event that any judgments were not satisfied"); Great Prize, S.A., 967 F.2d at 159 (same).

In keeping with the conditional nature of this order of dismissal, dismissal of the case from this court's docket shall become effective once the Defendant has tendered a written statement assenting to be bound by the foregoing conditions. Should the Defendant fail to do so within ten (10) business days of the entry of this order, its forum non conveniens motion will be considered waived, and this case will proceed to trial in this court.

Signed in Brownsville, Texas, this 31st day of March, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

24