# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 4 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JORGE ENRIQUE PINEDA MORALES<br>AND MAYTHEM GIORGINA PINEDA<br>MORALES, INDIVIDUALLY AND AS<br>ADMINISTRATOR/IX OF THE ESTATE<br>OF JORGE ENRIQUE PINEDA CARVAJAL,<br>DECEASED; BEATRIZ DEL VALLE PINEDA,<br>INDIVIDUALLY; THEMMAY GIORGIA<br>PINEDA MORALES; EDWARD ENRIQUE<br>PINEDA MORALES, INDIVIDUALLY;<br>DOLORES CHACON PINEDA,<br>INDIVIDUALLY AND AS NEXT FRIEND OF<br>JORGE LUIS PINEDA CHACON<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-061 |

---

## FORD MOTOR COMPANY'S REPLY TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S GRANTING DEFENDANT'S MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS

---

Defendant Ford Motor Company ("Ford") files this Response to Plaintiffs'
Motion to Reconsider this Court's Granting of Ford's Motion to Dismiss on *Forum Non
Conveniens* Grounds.

## I.      Summary.

Plaintiffs' Motion to Reconsider should be denied. Stripped of its hyperbole, the
motion offers no new grounds for reconsidering or altering the Court's ruling. The
motion simply rehashes arguments that Ford has already addressed. As such, the Motion
fails to satisfy the grounds necessary for reconsideration and should be denied.

**II.     Plaintiffs' Motion to Reconsider  Should Be Denied.**

**A.     Plaintiffs' Motion Fails to Satisfy Reconsideration Standards.**

Plaintiffs' motion to reconsider should be denied.  Because the Federal Rules of Civil Procedure do not provide for "motions to reconsider," such requests are typically construed as motions under Rule 59(e).  *See Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000).  Generally, there are only three grounds for granting a motion for reconsideration under Rule 59(e):  (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.  *See* Fed. R. Civ. P. 59(e).  But in any event, a motion under Rule 59 may not be used to relitigate old matters or raise new arguments. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 427 (5th Cir. 2001).

Yet that is precisely what Plaintiffs are seeking to do in their motion to reconsider.  For example, they rehash the same jurisdictional arguments already considered by the Court.  (Mot. at ¶ 7.)  They also re-urge arguments concerning the location of events or acts they believe warrant against dismissal.  (Mot. at ¶ 8.)  These, too, were considered and rejected by the Court.   The same is true with respect to Plaintiffs' argument (mot. at ¶'s 9 and 10) regarding discovery.

Plaintiffs' argument (mot. at ¶ 11) that the facts, when viewed in totality, favor maintaining the lawsuit in the United States goes to the heart of the entire dispute.  This argument presents nothing new and certainly nothing in line with the Rule 59(e) grounds. In paragraphs 12 and 13 of the motion, Plaintiffs flatly ask the Court to reconsider with unnecessary hyperbole as the exclamation point.  None of these points fit within the

narrow grounds set forth in Rule 59(e). For these reasons, Plaintiffs' Motion should be denied.

**B.    Recent Court Decisions Have Also Dismissed Cases Like This One.**

Since, or near the same time as, this Court's ruling, two other federal courts have dismissed, on grounds of *forum non conveniens*, product liability lawsuits that arose from Venezuelan accidents involving Ford Explorers. *See Rivas et al v. Ford Motor Company*, Action No. 8:02 CV-676-T-17 EAJ (M.D. Fla. (Tampa Division) April 19, 2004) (attached hereto as Exhibit 1) and *Briceno v. Ford Motor Company*, Action No. L-03-CV-146 (S.D Tex. (Laredo Division) March 25, 2004) (attached hereto as Exhibit 2).[1] These opinions are persuasive, and further warrant against granting Plaintiffs' motion to reconsider.

**III.    Conclusion.**

For the reasons stated herein, Ford Motor Company respectfully requests that this Court deny Plaintiffs' Motion for Reconsideration and dismiss this case pursuant to the *forum non conveniens* doctrine.

---

[1]   The Opinion in *Briceno* is in the form of a Report and Recommendation issued by United States Magistrate Judge Arce-Flores. Ford understands that Plaintiffs in that case have filed objections to the Magistrate's Report and Recommendation, and Ford has responded to those objections. The Report and Recommendation is currently before the District Court.

Respectfully submitted,

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 Fax


By: _____
      Ronald D. Wamsted
      Attorney-In-Charge
      State Bar No. 20832000
      Southern District Admissions No. 17108
      John W. Chambless, II
      Southern District Admissions No. 20674
      State Bar No. 00796334

      Jaime A. Saenz
      RODRIGUEZ COLVIN CHANEY
      & SAENZ, L.L.P.
      1201 East Van Buren
      P.O. Box 2155
      Brownsville, Texas 78522
      (956) 542-7441
      (956) 541-2170 Fax

      Federal I.D. No. 7630
      State Bar No. 17514859

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via Certified Mail Return Receipt Requested on this _3rd_ day of _May_, 2004, to:

Mark A. Cantu
Juan Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th, Suite 400
McAllen, Texas 78501



John W. Chambless, II



FILED

04 APR 19 PM 2: 19

: .   : · !.:T COURT
f....:..  .  . CF FLORIDA
TAMPA. FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEE RIVAS, as Personal Representative of the
ESTATE of JOSE ANTONIO GUTIERREZ,
deceased, NOHELIA MARQUEZ GUTIERREZ,
as Personal Representative of the estate of
JOSE ANTONIO GUTIERREZ and as mother of
MARIA JOSE GUTIERREZ, a minor,
JOSE ANTONIO GUTIERREZ and
ELBIA JOSEFINA RAMOS, as parents of
JOSE ANTONIO GUTIERREZ,

     Plaintiffs,

vs.                                    CASE NO: 8:02 CV-676-T-17 EAJ

FORD MOTOR COMPANY,

     Defendant,
_____/

### ORDER ON DEFENDANT'S MOTION TO DISMISS BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*

This cause is before the Court on Defendant, Ford Motor Company's (FORD), Motion to Dismiss Based on the Doctrine of *Forum Non Conveniens* (Docket No. 31) filed October 18, 2002 in the above-captioned matter. The Plaintiffs' Memorandum in Response to Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on September 16, 2003 (Docket No. 75). Defendant, Ford Motor Company's Reply to Plaintiffs' Memorandum in Response was filed on September 19, 2003 (Docket No. 74). On September 25, 2003, the Plaintiffs Rivas filed a Statement of Facts in Response to Defendant's Motion to Dismiss (Docket No. 76). There has not been a hearing on the matter. After due consideration of the arguments and submissions of the parties, the Court concludes that the Defendant's Motion should be GRANTED and the case DISMISSED under the doctrine of *Forum Non Conveniens.*

94

EXHIBIT 1

**CASE NO: 8:02 CV-676-T-17 EAJ**

## I. Factual Background and Procedural History

On April 18, 2002, Plaintiffs (hereafter RIVAS) filed their complaint with this Court for wrongful death, strict liability, and negligence against the Ford Motor Company (FORD). The case arose out of an accident that occurred on May 12, 2001 in Venezuela. On that day, JOSE ANTONIO GUTIERREZ was driving his employer's 2000 Ford Explorer when he lost control of the vehicle. As a result of the ensuing accident, roll over and complete burning, Mr. GUTIERREZ lost his life. The deceased was employed by Ford Venezuela (FORD VZ). Mr. Gutierrez's estate representative, LEE RIVAS, wife, Plaintiff NOHELIA MARQUEZ GUTIERREZ, and parents, Plaintiffs JOSE ANTONIO GUTIERREZ AND ELBIA JOSEFINA RAMOS, brought suit on his behalf.

Decedent and all of the Plaintiffs are Venezuelan residents. The vehicle is currently physically located in Venezuela and not the United States (Docket No. 19). The subject vehicle was assembled and maintained by FORD VZ. The standard operating procedure for building Explorers bound for Venezuela involves collecting the component parts into "knockdown kits" in Jacksonville, FL. The kits are then sent to FORD VZ for final assembly, without any change in design. In Plaintiffs' Second Amended Complaint (Docket No. 63), Plaintiffs allege as the causes of the death: negligent design of the Explorer suspension system, a defective "spindle" or "knuckle" mechanism, negligent manufacture or design of the fuel systems in Venezuelan Explorers, and inadequate roof and support structure to provide collapse resistance during roll overs. Plaintiffs in no way implicate tire tread separation as a cause for the accident or death.

The unverified accident report has been translated to English. It gives a general description of the accident based on eye witness information, accident site inspection, and vehicle inspection. The vehicle apparently lost all or part of one its tires while driving at an excessive speed, went off-road, hit a fence and then a large concrete bridge remnant causing it to roll over and catch fire. The gas tank did not show signs of explosion. The tire that caused the

2

CASE NO: 8:02 CV-676-T-17 EAJ

accident was missing.[1]

## II. Standard of Review

The doctrine of *forum non conveniens* is a flexible one, where the Court must weigh multiple factors relating to fairness and convenience based on the particular facts of the case. To obtain a dismissal under the doctrine of *forum non conveniens*, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Courts should adopt a strict standard for dismissal, rather than a "simple convenience" approach. 17 *Moore's Federal Practice* § 111.74[3][a] at111-226.1 (3d ed. 2003). Defendant must provide enough information to enable the Court to balance the parties' interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981). This Court is satisfied that there is sufficient evidence before it to balance the parties' interests and rule on FORD's Motion to Dismiss Based on the Doctrine of *Forum Non Conveniens (f.n.c.)*.

Availability and adequacy warrant separate consideration. *Id.* An alternative forum is "available" to the plaintiff when the foreign court <u>can</u> assert jurisdiction over the litigation sought to be transferred. *Id.* "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *See Piper*, 454 U.S. at 255. An alternative forum is "presumed 'adequate,' unless the plaintiff makes some showing to the contrary." *See Leon*, 251 F.3d at 1312. An adequate forum need not be a perfect forum. *Id.* at 1311 quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001)

Once the court has decided that the proposed alternative forum is available and adequate, it must "proceed to balance public and private interests to determine whether the convenience of

---

[1]See Docket No. 87, Exhibit C: *"Corps of Vigilance of Terrestrial Transit Accident Report," "Definitive Report."* Miguel Guevara, May 12, 2001. Officer's summary of vehicle condition and the hypothesized cause of the accident/death: partial loss of one tire at high speed, followed by collision with concrete bridge remnant causing roll over. Tires and wheels in question unavailable for proper inspection.

3

CASE NO: 8:02 CV-676-T-17 EAJ

the parties and the ends of justice would best be served by dismissing the action." 17 *Moore's Federal Practice* § 111.74[3][b] at111-226.1. Though the private factors are generally considered more important, the Eleventh Court of Appeals (11th Circuit) looked to *Moore's* recommendation that courts consider both factors in all cases. *See Leon*, 251 F.3d at 1311. "The factors pertaining to the private interests of the litigants included the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *See Piper*, 454 U.S. at 241 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public factors bearing on the question included the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

### III. Discussion

To date, neither the Middle District of Florida, nor the 11th Circuit have considered the viability of transferring a products liability case to Venezuela. As such, the Court looks for guidance from recent Federal *f.n.c.* decisions concerning Venezuela and American products liability. In particular, this Court finds persuasive (though not binding) the Multi-District Litigation proceedings, *In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.*, 190 F. Supp.2d 1125 (S.D.Ind. 2002), and multiple decisions coming out of the Fifth Circuit Court of Appeals (5th Circuit). *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003) and *also Gonzalez v. Ford Motor Co.*, Case No. P-02-CA-137 (W.D.Tex. Sept. 22, 2003)(recently interpreting *Piper*, and dismissing American vehicle / tire products liability actions to Venezuela and Mexico on the grounds of *forum non conveniens*). The moving party first bears the burden of persuasion showing that "an adequate alternative forum is available." *Bridgestone I*, 190 F.Supp. 2d at 1130. Second, the moving party must show that "the public and

4

CASE NO: 8:02 CV-676-T-17 EAJ

private factors favor dismissal, and that the plaintiff can reinstate his suit in the alternative forum
..." *Leon*, 251 F.3d at 1310.

### A. Availability of Alternative Forum

After carefully considering the positions taken on this key issue, the Court is persuaded
that Venezuela provides an available alternative forum. This threshold determination is made in
light of the specific facts of this case, and U.S. Supreme Court, 11th Circuit, and 5th Circuit
precedent.

#### 1. Amenability to Process

Ordinarily, the requirement of availability will be satisfied when the defendant is
"amenable to process" in the other country's jurisdiction. *Piper*, 454 U.S. at 254, n.22 (citations
omitted). An alternative forum is available to the plaintiff when the foreign court can assert
jurisdiction over the case. *Leon*, 251 F.3d at 1311 (emphasis added). *See Vasquez*, 325 F.3d at
671 (emphasis added); *See also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th
Cir. 2001)(Finding that where a defendant was amenable to suit in the foreign forum, lower
courts choice between competing affidavits contesting jurisdiction was not an abuse of
discretion); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996)
(defendants agreed to submit to the jurisdiction of an alternative forum (in France), rendering that
forum available); *Vasquez*, 325 F.3d at 671 (5th Cir. 2003) (Mexican forum available where all
parties *can* come within Mexican courts jurisdiction); *Gonzalez v. Ford Motor Co.*, Case No. P-
02-CA-137 (W.D.Tex. Sept. 22, 2003) (Venezuelan forum available on the same grounds, no
consideration of MDL witness testimony). Here FORD has agreed to submit to the jurisdiction
of the foreign tribunals and thus is "amenable to process" in the alternative forum. All of the
Plaintiffs are citizens of Venezuela and *can*, if they wish, file suit in Venezuela where the
accident took place.

#### 2. *In re Bridgestone/Firestone* Multi-District Litigation

Plaintiffs contend, however, that the initial requirement of availability is not so easily
satisfied. Because Plaintiffs have chosen *not* to file suit in Venezuela, nuances of the
Venezuelan Private International Law Statute allegedly deprive Venezuelan courts of jurisdiction

5

CASE NO: 8:02 CV-676-T-17 EAJ

over this case. Plaintiffs cite *Bridgestone I,*190 F. Supp.2d 1125 (S.D.Ind. 2002), a pre-trial

Multidistrict Litigation (MDL) proceeding where the judicial panel refused to dismiss 116

Venezuelan products liability cases against FORD and/or Firestone specifically for accidents

involving Explorers. Of those, 111 originated in the Southern District of Florida. *Id.* at 1155.

*See also In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.,* 212 F.Supp. 2d 903

(S.D.Ind. 2002)(*Bridgestone II*)(Certification for interlocutory appeal on this issue denied); *and*

*In re: Ford Motor Company,* 344 F.3d 648 (7th Cir. 2002)(*Bridgestone III*)(Original action

seeking writ of mandamus to enforce certification of interlocutory order for immediate appeal

denied, District Court refusing to address whether the foreign forum where plaintiffs reside and

the accident occurred could be held unavailable solely because of plaintiffs' refusal to file suit in

that forum). In *Bridgestone I,* the Indiana District Court based its finding of unavailability on

competing Venezuelan law expert affidavits and testimony. This Court is now asked to make the

same determination based on the same testimony from the MDL. However, plaintiffs do not

acknowledge FORD's new expert affidavits submitted specifically in this case. Plaintiffs have

had ample time to depose FORD's new witnesses (18 months). Defendant's burden to show

availability is not a heavy one and under the circumstances of *this* case, the Court is not

persuaded by the MDL panel's interlocutory decision.[2]  Nevertheless, the relevant Venezuelan

law bears some analysis.

### 3. Venezuelan International Private Law Statute (VIPLS)

VIPLS provides that the first forum for bringing suit against a non-domiciliary defendant

is the country where the defendant is domiciled. *Bridgestone I,* 190 F.Supp.2d at 1129.

However, two exceptions to this provision are addressed by both Plaintiffs' and Defendant's

experts. Professor Tatiana B. deMaekelt, head of the private international law department at

Universidad Central de Venezuela and Universidad Catolica Andres Bello, provided an affidavit

---

[2]This court is cognizant of the very real risk that this case may never see the light of day again
if dismissed. *See Robertson, Forum non Conveniens in America and England: "A Rather Fantastic
Fiction, "* 103 U. Tex. Quarterly L. Rev. 398, 419-20 (July 1987)(3 of 85 dismissed cases later tried
in foreign forum).

6

CASE NO: 8:02 CV-676-T-17 EAJ

in the MDL proceeding on behalf of the plaintiffs in that case.[3] Here, Defendant's expert Victor Hugo Guerra Hernandez provides a contradictory affidavit which Plaintiffs have failed to address or even acknowledge.

The two applicable exceptions which allow a Venezuelan court to exercise its jurisdiction over this case are: (a) when the facts of the case are "verified" in Venezuela (VIPLS, art. 40(2)), and (b) when the parties would submit to the jurisdiction (VIPLS, art. 40(4)). Defendant also proposes a third avenue to jurisdiction. Venezuelan courts have exclusive jurisdiction over matters of public policy (VIPLS, art. 47). Since Venezuela's constitution addresses consumer protection, it is quite likely that such protection will be considered a "matter of public importance." (Guerra aff. ¶ 14). If either of the first two exceptions apply, the motion to dismiss should be granted. Whether the Supreme Tribunal has taken a stand on prosecuting consumer protection cases against U.S. manufacturers is unknown to this Court.

### a. Facts Verified in Venezuela

In the MDL, Prof. deMaekelt loosely interpreted "when the facts of the case are 'verified' in Venezuela" to mean which jurisdiction had the "most significant contacts" with the underlying tortious conduct." (deMaekelt Aff., App. 2, ¶13); *Bridgestone I*, 190 F. Supp. 2d at 1129. She then surmised, without much explanation, that Venezuelan courts would not have jurisdiction over the cases on that basis. *Id.* In fact, the issue turned more on the experts' reputations and less on the "significant contacts." If RIVAS' lengthy Statement of Facts (also borrowed from the MDL) represents the relevant contacts this Court should consider, the majority of the information addressing tire tread separation must be ignored.

Rather than decide based on 116 Venezuelan cases at once, this Court has the duty to balance all of the factors and experts in *this* case. *See Bridgestone I*, 190 F.Supp. 2d at 1155. Defendant's expert, Mr. Guerra concludes that VIPLS art. 40(2) should be interpreted as granting jurisdiction either when the "illicit act or its effects occurred." (Emphasis added). (Guerra Aff., ¶

---

[3]Plaintiffs here adopt Professor deMaekelt as their own expert here. Plaintiffs apparently cut and paste the entire MDL memorandum in response to the *f.n.c.* Motion into their pleadings here.

CASE NO: 8:02 CV-676-T-17 EAJ

11). This is in line with prior determinations made by Venezuelan courts regarding ship collisions, civil aviation accidents, and environmental accidents. *Id.*

Certainly everything but the design information and liability evidence related thereto must be verified in Venezuela. This Court finds Mr. Guerra's position credible. Defendant's expert Mr. Guerra is currently in charge of drafting the comments supplementing the Private International Law rules dealing with torts, and legal domicile. Determining the most significant contacts will come when this Court must determine choice-of-law and balance the private interests involved. It should not, however, be used to find the Venezuelan forum unavailable all together. FORD has met its burden in demonstrating availability with Mr. Guerra's affidavit.

### b. Submission to Venezuelan Jurisdiction

Finding that facts were sufficiently "verified" in Venezuela, this Court need not explore the other avenues to Venezuelan court jurisdiction. Nevertheless, since the MDL decision turned on expert interpretation of Venezuelan law, we will explore deMaekelt's position on this issue as well. Prof. deMaekelt contends that "Venezuelan law affords the Plaintiffs the unqualified *right* to select the forum in which they choose to proceed"(sic.). If *both* parties do not acquiesce to the Venezuelan court's authority, deMaekelt <u>strictly</u> interprets VIPLS art. 40(4) to negate the tribunals' subject matter jurisdiction. Prof. deMaekelt's inconsistently loose and then strict interpretation of VIPLS, combined with a unique fact set, undermine the strength of her position in this case. If Venezuelan law makers intended to stand out from the rest of the nations actively doing business with U.S. manufacturers and eliminate the viability of U.S. *forum non conveniens* doctrine, they would have clearly said so. To accept the notion that Venezuelan plaintiffs' forum choices are always conclusive would be, as Defendant argues, illogical.

In a recent FORD Explorer accident *f.n.c.* case involving Venezuelan plaintiffs, the Western District of Texas ignored the MDL vacillation on this point entirely. *See Gonzalez v. Ford Motor Co.,* Case No. P-02-CA-137 (W.D.Tex. Sept. 22, 2003). The simple analysis therein is instructive. FORD submits to the jurisdiction of, and agrees to be bound by, the Venezuelan courts. FORD is therefore "amenable to process" in Venezuela. This is in accord with *Piper,* 454 U.S. at 258; *Leon,* 251 F.3d at 1311; *Satz,* 244 F.3d at 1282, *Vasquez,* 325 F.3d at 674, and

8

CASE NO: 8:02 CV-676-T-17 EAJ

the facts of this case. While no one can force plaintiffs to file suit in their home forum, the courts *can* assert jurisdiction over the case based on the facts, parties, and subject matter. Therefore, this Court finds the Venezuelan forum available, under the condition that, if the Venezuelan tribunals decline jurisdiction, this District Court will reassert jurisdiction. *See Satz.* 244 F.3d at 1313.

### c. Exclusive Jurisdiction Over Matters of Public Policy

FORD's expert also notes that the Venezuelan Constitution protects consumers' right to enjoy products with quality and to obtain compensations when those products cause damages. (Guerra Aff., ¶ 14, citing the Venezuelan Constitution, Art. 117 (1999)). Further, the "Bustamante Code" provides that constitutional rules represent public policy. *Id.* Finally, VIPLS art. 47 provides that Venezuelan courts actually have exclusive jurisdiction in matters related to public policy. *Id.* Plaintiffs have not contradicted this position and were this Court not already convinced, this provision would also be persuasive. Interpreting the Venezuelan Constitution should be left to the readily available Venezuelan courts.

### B. Adequacy of Alternative Forum

A defendant also bears the burden of proving adequacy of the alternative forum. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001). An adequate forum need not be a perfect forum, but, where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, dismissal will be denied. *Leon,* 251 F.3d at 1311. Extreme amounts of partiality or inefficiency may render the alternative forum inadequate. *Id.* at 1312. The 11th Circuit has consistently placed the initial burden on the plaintiff to show that the alternative forum is impartial and efficient. *See Id.; See also e.g., Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393-94 (5th Cir. 1983) ("the district court may presume that the foreign law is adequate, unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum otherwise made known to the court, plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein"), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir. 1987).

CASE NO: 8:02 CV-676-T-17 EAJ

Where plaintiffs produce significant evidence documenting the partiality or delay (in years), and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the District Court that the facts are otherwise." *Leon,* 251 F.3d at 1312. To meet their burden, Plaintiffs state in Response to Defendant's Motion that "recent political turmoil in Venezuela, including work stoppages and strikes on all levels, has thrown the entire government into unrest ... there exists defacto anarchy in Venezuela." However, American courts have on many occasions found Venezuelan courts adequate and capable to try multi-national cases. *See Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974, 982 (2d Cir. 1993)(political unrest in Venezuela does not automatically make the forum inadequate); *Banco Latino v. Gomez Lopez,* 17 F.Supp.2d 1327, 1332 (S.D.Fla.1998). Specifically addressing the Venezuelan courts, the Southern District of Florida recently held: "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Banco Latino,* 17 F.Supp.2d at 1332.

On the other hand, Plaintiffs persuasively quote the President of the Venezuelan Supreme Court who said that as recently as May 31, 2001 a "judicial crisis" persisted in Venezuela. Plaintiffs also quote the Caracas District Bar Association who published an actual "Funeral Notice"for "Lady Justice" the following month. Defendant's expert Mr. Guerra does not contradict this recent pronouncement, but rather points to steps taken in 1999 and 2000 as a part of a "Judicial Power Reorganization." (Guerra Aff., ¶20) Under the terms of the Venezuelan Constitution (1999), judges' activities were curtailed to avoid corruption and improve efficiency. It is now, however, 2004 and the maxim still stands that the "alternative forum is adequate if the parties will not be deprived of *all* remedies or treated unfairly. *Vasquez,* 325 F.3d at 671. Plaintiffs do not attempt to estimate the delay (in years) said anarchy might cause in the trying of this solitary case. Nor do they counter Defendants' other expert, Enrique Lagrange's, testimony that Plaintiffs have access to compensatory damages under Venezuela's tort liability rules. (Lagrange Aff., ¶12) Without producing significant evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, plaintiffs have not met the initial burden of showing the alternative forum is "so clearly inadequate" that it is no remedy at

10

CASE NO: 8:02 CV-676-T-17 EAJ

all.  *See Piper*, 454 U.S. at 254.

### C. Private Factors

Once the court has decided that the proposed alternative forum is available and adequate, it must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action.  17 *Moore's Federal Practice* § 111.74[3][b] at111-226.1 (3d ed. 2003).  Regarding convenience and justice, the Supreme Court has said that "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Piper*, 454 U.S. at. 241.

### 1. Weight Attributed to Forum Choice

A primary concern is the weight this court must give Plaintiffs forum choice compared to a domestic plaintiff's.  "There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *See Piper Aircraft Co.*, 454 U.S. at 255.  However, in measuring convenience, decisions made by foreign plaintiffs living outside the U.S. to file suit in the U.S. are given less deference than domestic plaintiffs. *Id.* at 256.  In light of this, Defendant's burden is lighter, but not gone.

Plaintiffs claim that the Supreme Court's ruling on this issue is trumped by Venezuela's Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466, 472.  This Peace Treaty allegedly prevents discounting a foreign plaintiff's forum choice solely because they are foreign nationals.  The exact language, however, provides Venezuelans access to U.S. courts "on the same terms which are usual and customary with the natives or citizens of the country in which they may be." (sic.) *Id.*

The language appears to give Venezuelan citizens who are physically in the U.S. the same right to justice as U.S. citizens.  It does not appear to address what rights foreign plaintiffs have if they are suing outside of their convenient local forum.  FORD argues that, as in *Piper*, such a

11

CASE NO: 8:02 CV-676-T-17 EAJ

forum choice deserves little or no deference. This Court agrees with FORD in part, but is persuaded by the opinion put forth in *Bridgestone II*, 212 F.Supp. 2d at 910-911 (S.D.Ind. 2002). That court held that FORD need not establish that the private interest factors "clearly pointed" to trial in Venezuela, but they still had to show the factors did more than "merely point" there. FORD should bear a similar burden here. The Peace Treaty fails to give Plaintiffs the equal standing they seek. For the reasons that follow, this Court finds that the initial choice by RIVAS to file suit in the U.S. and the balance of the *Piper / Gilbert* private and public factors do not outweigh the presence of an adequate and available Venezuelan forum.

"The factors pertaining to the private interests of the litigants included the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Piper,* 454 U.S. at 241 (*quoting Gilbert*, 330 U.S. at 508).

### 2. Access to Relevant Sources of Proof

Relevant sources of proof in this case depend will depend on which issues are of primary importance. 17 *Moore's Federal Practice* § 111.74[3][c][ii] at 111-228.2. The court must have a basis upon which to "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are crucial, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528 (1988). In this case, the relevant sources of proof may be divided into three categories: evidence of core liability, case-specific liability, and damages. *In re Bridgestone/Firestone, Inc. Tires Liability Action (Bridgestone IV),* Master File No. IP 00-9374-C-B/S. (S.D. Ind. 2004). Core liability evidence relates to the design and manufacture of the allegedly defective products and the timing of Defendant's awareness of the problems. *Id.* Plaintiffs contend that the injury was caused by defectively designed components and systems on the 2000 Explorer and that information collected in the MDL proves that FORD knew about the defects and failed to address them in time. The MDL is now in its final stages, and the discovery

12

CASE NO: 8:02 CV-676-T-17 EAJ

on these core liability issues was completed in early 2002. *Id.* FORD has offered to make any and all of the MDL discovery available to plaintiffs. This evidence is available at minimal cost for presentation in other courts. *Id.* The Supreme Court allows dismissal subject to the condition that defendant corporations agree to provide records relevant to the plaintiffs' claims." *Piper,* 454 U.S. at 258 n.25. This Court makes it a condition, as *Piper* suggests, that FORD make all such relevant design records available, even if the components in question were not included in the MDL proceeding.

Plaintiffs contend that much of the MDL core liability deposition testimony will be inadmissible in a Venezuelan court. Plaintiffs' expert, Anibal Rueda, former Chief Justice of the Venezuelan Supreme Court of Justice, states that "Testimony obtained abroad shall have no value whatsoever if it was not taken following an order issued by the Venezuelan judge hearing the case." Rueda Aff., App. 9, ¶5). Defendant's expert counters that while it may not be admissible as live testimony, it can still be admitted as written evidence. (Guerra Aff., ¶ 19). Any FORD employee witness who plaintiffs wish to testify before the Venezuelan tribunal will be subject to the company's power to compel their attendance.

FORD contends essentially that it would be oppressive and vexing to have to raise a defense in the U.S. when the rest of the accident-specific and damages evidence and witnesses are still in Venezuela. In this case, they include the vehicle itself, accident site documentation, maintenance and service documentation, the owner of the vehicle (FORD VZ), everyone who operated, maintained and repaired the vehicle, witnesses to the accident, decedents driving records, roadway repair and maintenance records, etc. Evidence of damages, which may consist of medical, employment, and tax records, as well as evidence relating to Plaintiffs' pain and suffering, loss of consortium, and the like, will be located in Venezuela. Much of Defendants plight is exaggerated. The vehicle in question was approximately one year old. Granted, all of the particular vehicle's maintenance history and those who worked with it are in Venezuela. However, this information and these people are currently in the possession of or working for FORD VZ. Plaintiffs, on the other hand, also seek multiple non-English speaking Venezuelans' depositions. They also seek multiple files and reports located in Venezuela and prepared in

13

CASE NO: 8:02 CV-676-T-17 EAJ

Spanish. The burden will be on plaintiffs to prove damages and causation, the evidence for which is solely in Venezuela.

As in *Piper,* the private interests point in both directions. 454 U.S. at. 257. Design is not, as plaintiffs contend, the de facto center of controversy in this case. This Court finds that overall, there is more access to relevant sources of proof in Venezuela.

### 3. Availability of Compulsory Process for Unwilling Witnesses

"Of all the private interest factors, the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, because the presentation of live testimony is 'essential to a fair trial." 17 *Moore's Federal Practice* § 111.74[3][c] at 111-228.2. "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance [of witness] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.,* 330 U.S. at 511. Here, both parties are seeking witness testimony from multiple non-parties in Venezuela. FORD has the power to ensure live witness testimony regarding core design evidence. FORD contends that it cannot compel any witnesses to the accident, any of the medical or police personnel involved in the investigation, or any of the people who operated, maintained, and repaired the vehicle. FORD has not named any third-party defendants in this case.

First, FORD and FORD VZ personally investigated the accident scene. FORD VZ had their own accident reconstructionist go to the accident site almost immediately after the accident as a part of standard operating procedure.[4] This information will surely supplement, or in some way contradict, the Venezuelan law enforcement's investigation materials, which include a summary of eye witness testimony. Since they are employees of FORD VZ, FORD probably can compel the attendance of its reconstructionist and any and all service personnel who maintained and used the vehicle prior to the accident. It is not likely that FORD VZ would have paid to have a new Explorer repaired anywhere but in-house. In the MDL, Venezuela's Department of

---

[4]Plaintiffs' multiple motions to compel discovery on this issue failed to comply with this Court's rules of Civil Procedure and were denied.

CASE NO: 8:02 CV-676-T-17 EAJ

Technical Transportation Surveillance was willing to place the officers who investigated the accidents at the disposal of the appropriate U.S. individuals for deposition or trial testimony. *Bridgestone I,* 190 F. Supp. 2d at 1154. While this case is not a part of the MDL, it is likely the Venezuelan department will be cooperative in assisting with testimony. Therefore, the majority of relevant witnesses are not as far beyond FORD's reach as FORD contends.

Plaintiffs also point out that FORD may present Venezuelan witness testimony through video depositions and letters rogatory. This might be an effective solution given the extra time available for translation, especially for any eye witness accounts of the accident. However, as the Venezuelan courts' discovery practices confirm, live testimony is always more satisfactory for the purposes of cross examination. Though FORD has agreed to make any FORD U.S. managers or engineers available for testimony in Venezuela, it does not appear that FORD would have to try its case without the majority of its relevant witness if case were held in the U.S. This factor weighs in favor of the U.S.

The cost of obtaining willing witnesses weighs in favor of Venezuela. FORD is in a much stronger financial position to make the U.S. witnesses available in Venezuela. Plaintiffs noticed depositions of five witnesses to date, and four of them spoke primarily Spanish and lived in Venezuela. Plaintiffs contend that they are willing to bear the burden of presenting these witnesses in the Middle District of Florida. The cost of this would be prohibitive and would be less at issue if trial were held in Venezuela. Plaintiffs refer again to depositions, video, and letters rogatory. This option is less than satisfactory.

### 4. View of Premises Appropriate

The accident occurred in Venezuela. However, Plaintiffs offer for consideration the fact that FORD's own accident reconstructionist had access to the scene while the vehicle was still there. Plaintiffs contend that by the time they were able to visit the accident scene, it had grown over and that the reconstruction photographs and reports were the best available discovery on the matter. Contrary to Plaintiffs' statement that the vehicle and the tires were in the US, the vehicle is still in Venezuela. The investigator's report shows that all or some of the tires are missing. This issue may be better addressed in Venezuela. The condition of the road way, the objects the

15

CASE NO: 8:02 CV-676-T-17 EAJ

vehicle collided with off, and the general conditions of Venezuelan topography may be integral to understanding the entire cause of the accident. Direct inspection of the crash scene at this time would likely not be necessary to properly defend the action. *Massaquoi v. Virgin Atlantic Airways,* 954 F. Supp. 58, 62 (S.D.N.Y. 1996). However, much of Plaintiffs' Statement of Facts addressed how the rugged conditions of Venezuelan roadways and high temperatures appeared to contribute to accidents. Again, as in *Piper,* trial would be aided by familiarity with Venezuelan topography, and by easy access to the wreckage. 454 U.S. 242. The reconstruction work done by FORD VZ will facilitate trial in either forum. Overall, this factor weighs in favor of dismissal.

### 5. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive
#### a. Translation

Plaintiffs contend, and Defendant adequately rebuts, the alleged magnitude of documents which will require translation into Spanish if this case were tried in Venezuela. While much of the witness testimony and information regarding the accident, vehicle maintenance, etc. will be in Spanish, Plaintiffs contend that millions of documents from the MDL design evidence pool will require translation. This is an exaggeration. The MDL court flagged approximately 2000 relevant deposition documents, and many of those were regarding tire tread separation. Plaintiffs do not allege a tire defect in this suit. Plaintiffs core-liability evidence requiring translation into Spanish may be manageable. English translations of eyewitness and maintenance testimony will be manageable. However, since Plaintiffs claim multiple defects, the causation and design testimony will require much more translation into Spanish if the trial is held in Venezuela than defendants' evidence if it were held in the U.S. Therefore, the issue of translation still points towards trial in the U.S.

#### b. Contingency Fees

Whether contingency fees are available in the alternative forum is a legitimate concern regarding the Plaintiffs' financial hardship and convenience. Plaintiffs' counsel contends that Plaintiffs will have to start from scratch with new Venezuelan counsel. However, plaintiffs do not allege that they will be financially unable to pursue the action in Venezuela. Since most other nations do not have contingency fee systems, this factor should not be dispositive. *See Magnin v.*

16

CASE NO: 8:02 CV-676-T-17 EAJ

*Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir. 1996). "As cherished as trial by jury is in our law, and as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, [plaintiff] has not cited us to any Supreme Court or court of appeals decision giving lack of [contingency fees] substantial weight in *forum non conveniens* analysis. *Id.*; *See also* 17 *Moore's Federal Practice* § 111.74[3][c][vii] at111-228.6.

### c. Procedural Delay

Plaintiffs also contend that the limited and cumbersome discovery system in Venezuela weighs heavily in the balance of inconvenience. By not allowing pre-trial discovery, Venezuelan tribunals will not admit any of the MDL depositions as witness testimony. However, as Defendant's expert Mr. Guerra noted in his affidavit, the depositions would still be admissible as written evidence before the presiding judge. This Court has previously found that the concerns about the scope of pretrial discovery are unavailing because it is not necessary that the alternative forum have comparable procedural safeguards. *Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.,* 896 F.Supp. 1197, 1200 (M.D.Fla.1995) (dismissal despite lack of extensive pretrial discovery). See also *Banco Latino v. Gomez Lopez,* 17 F.Supp.2d 1327, 1332 (S.D.Fla.1998).

In sum, the private interests involved point toward the Venezuelan forum. In order to mount its defense in the Middle District of Florida, FORD's evidence would have to come almost entirely from Venezuela. Plaintiffs on the other, hope to focus all of the Courts attention on design data already amassed, albeit in English, in the MDL. FORD will have difficulty defending the case in the U.S., but not as much as it would if the vehicle were not company-owned or there were third-party defendants involved. Logic dictates that it would be less convenient for Plaintiffs' to litigate in the U.S. Much of the U.S. evidence they seek can easily be made available in Venezuela. Plaintiffs' choice of forum receives some deference and defendant must show that the private factors do more than just point to trial in Venezuela. At this point, the private factors merely point to trial in Venezuela. However, they still bear almost no connection to this forum. The only connection this case has to the Middle District of Florida is the shipping port Ford Explorer "knockdown kits" leave from and the residence of Plaintiffs' counsel.

17

CASE NO: 8:02 CV-676-T-17 EAJ

### D. Public Factors

The public factors bearing on the question include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper,* 454 U.S. at 241. This court, may exercise its sound discretion in dismissing this case if the Middle District of Florida is "inappropriate because of considerations affecting the court's own administrative and legal problems." *Id.*

### 1. Court Congestion

Administrative difficulty follows when litigation is piled up on congested centers instead of being handled at its origin. *Gulf Oil Co.,* 330 U.S. 501, 508 (1947). The Middle District of Florida is renowned as one of the most congested Federal Court dockets in the nation. There will be significant delay associated with the translations and coordination of foreign plaintiffs, foreign witnesses, and foreign law experts. This trial will be enormously costly and time consuming and counsels in favor of another forum. However, in comparison to the 116 cases transferred by the MDL to the Southern District of Florida, this single case carries less weight. In 2001, the evidence before the MDL reflected significant congestion in the Venezuelan courts. Plaintiffs in this case have failed to provide a description of the Venezuelan court system today, so this court has insufficient information to make an informed comparison. Suffice it say that this Court's congestion issues would be severely exacerbated by trial of this case.

### 2. The Local Interest In Having Localized Controversies Decided at Home

Many Venezuelan plaintiffs suing FORD are having their cases heard in the U.S. Cases addressing the subject matter are also being tried in Venezuela. The U.S., and Michigan in particular, is the site of the Ford Explorer design, manufacture, development, and testing. Indeed this gives the U.S. a significant interest in the outcome of all of the Explorer roll over / tire tread separation cases. *See Chan Tse Ming v. Cordis corp.,* 704 F. Supp. 217, 220 (S.D.Fla. 1989). However, those interests are already being addressed in the U.S. and the incremental difference

18

CASE NO: 8:02 CV-676-T-17 EAJ

(in deterring the alleged conduct) of adding one more suit against FORD would be negligible. *See Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.*, 896 F.Supp. 1197, 1203 (M.D.Fla.1995).

The strategic advantages associated with suit in the U.S. do not negate the multiple Venezuelan organizations taking an active role in protecting Venezuelan consumers and investigating the multitude of Ford Explorer accidents therein. This accident occurred in Venezuela, the vehicle was owned and maintained by an American Subsidiary in Venezuela, and the decedent and all of the plaintiffs are domiciled in Venezuela. The Venezuelan Constitution allows for the recovery of damages when a product is of inferior quality and causes injury. Though testimony in the MDL expressed that Venezuela was willing to cede some of its interests in the cases in favor of trial in the U.S., this case is not a part of the MDL. Therefore, Venezuelan courts clearly have a significant local interest in holding FORD and other manufacturers accountable for damages their products cause in that forum. *See Proyectos Orchimex*, 896 F.Supp. at 1203.

### 3. At Home with the Law that Must Govern and the Avoidance of Unnecessary Problems in Conflict of Laws

This court must conduct a preliminary choice-of-law determination. The conflict of laws rules to be applied by the federal court in Florida must conform to those prevailing in Florida's state courts. *Klaxon Co. V. Stentor Elec. Mfg. Col*, 313 U.S. 487, 496 (1941). Florida has adopted the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws §§ 145-146 (1971). *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

Significant contacts to be taken into account with respect to an issue in tort include: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Id.* We will address the first, third, and fourth elements first. The injury occurred in Venezuela. Defendants are incorporated in Michigan and have a place of a major place of business in Venezuela (FORD VZ). Plaintiffs reside in Venezuela and are all Venezuelan. The relationship between the parties arose

19

CASE NO: 8:02 CV-676-T-17 EAJ

from the decedent's accidental death while driving his employer FORD VZ's, 2000 Ford
Explorer.

The issue of relevant injury causing conduct is paramount to this case. It determines
Florida choice-of-law, affects Venezuelan jurisdiction, and finally forum convenience. Plaintiffs
contend that the relevant injury causing conduct was in the design of the 2000 Ford Explorer and
that it occurred in the United States. The arguments Plaintiffs cite for the proposition that U.S.
law should apply and that the place of wrongdoing is more determinative than the place of injury
are inapplicable to Florida's conflict-of-laws analysis. *See Richards v. United States*, 369 U.S. 1,
10 (1962)(Suit against the U.S. Government under the Federal Tort Claims Act and under the
Oklahoma Wrongful Death Act, for death of passengers who lost their lives in an aircraft
accident). Plaintiffs will bear the burden of establishing a causal connection to the accident itself.
Ford, on the other hand, is entitled to mount a defense based on non-design, site specific, operator
specific, or maintenance specific factors all of which are primarily discoverable in Venezuela.

The 5th Circuit's consideration of this point is persuasive. "The linchpin of plaintiffs'
argument--that the alleged wrongful act was the original design of the vehicle and tires--reaches
too far back in the accident's causal chain ... Plaintiffs' argument would curtail the rights of
foreign governments to regulate their internal economies and threaten to engulf American courts
with foreign claims." *Vasquez*, 325 F.3d at 674 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,
508 (1947). The most significant relationship and contacts exist in Venezuela, therefore
Venezuelan law likely be applied to this case.

This Court will surely struggle with the application of Venezuelan law. This Court's
experience with products liability case law will be moot. It will also be forced to rely on foreign
law experts to guide the use of the Venezuelan Code and Constitution. If the Middle District of
Florida is forced to continually untangle problems in conflict of laws and in law foreign to itself,
the Court may, in the exercise of its sound discretion, dismiss the case. *See Piper*, 454 U.S. at
241-251.

### 4. Unfairness of Burdening Citizens in an Unrelated Forum With Jury Duty

This Court has previously held that where the citizens of the Middle District of Florida are

20

CASE NO: 8:02 CV-676-T-17 EAJ

asked to take on the tremendous burden of deciding cases with no connection to the forum, the court's decision weighs heavily in favor of dismissal. *Proyectos Orchimex*, 896 F.Supp. at 1203. However, almost every American has some connection with FORD or runs the risk of injury from negligently designed FORD products. The Seventh Court of Appeals logically found that where a foreign plaintiff files suit against an American defendant with extensive foreign dealings, the claim could be reasonably inferred to be of "mere passing interest" to local jurors. *Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799, 804-805 (7th Cir. 1997). The promise of a long trial with complex translations, foreign law specialist testimony, and unavailable key witnesses would unfairly burden the local citizenry.

In sum, the public factors favor dismissal in favor of the Venezuelan forum. Combined with the private factors that at least point to trial in Venezuela, this Court finds that plaintiffs' choice of forum is outweighed.

## VIII. Conclusion

For the reasons given above, this Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly, it is

**ORDERED** that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *forum non conveniens* (Docket No. 31) is hereby **GRANTED** the Clerk of Court be directed to close this case, and, further:

It is **ORDERED** that Defendant Ford Motor Company must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of Venezuela. This Court will not designate which court is proper because the question is for the courts of the country of Venezuela to decide.

It is **FURTHER ORDERED** that the Defendant must agree to be bound by any judgment rendered against it when required by the appropriate court in Venezuela.

It is **FURTHER ORDERED** that Defendant must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendant has obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this

21

**CASE NO: 8:02 CV-676-T-17 EAJ**

Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendant shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in the related Multi-District Litigation proceedings, if any, shall be made available and shall be as admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is **FURTHER ORDERED** that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendant, the parties may return to this jurisdiction for further proceedings.

It is **FURTHER ORDERED** that the Defendant is precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar though dilatory tactics.

**DONE and ORDERED** this in Chambers, in Tampa, Florida, this _19th_ day of April, 2004.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.

22

United States District Court
Southern District of Texas
FILED

MAR 2 4 2004

Michael N. Milby, Clerk
Laredo Division

United States District Court
Southern District of Texas
ENTERED

MAR 2 5 2004

Michael N. Milby, Clerk
Laredo Division

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | |
|---|---|
| JOSE DE JESUS BRICENO and §<br>ESTILITA MOYANO, Individually and as §<br>Representatives of the ESTATE OF JOSE §<br>GREGORIO MOYANO BRICENO, §<br>Deceased; and GERMANIA ODREMAN, §<br>Individually, §<br> §<br>    Plaintiffs, §<br> §<br>vs. §<br> §<br>FORD MOTOR COMPANY, §<br> §<br>    Defendant. § | Civil Action No. L-03-CV-146 |

## REPORT AND RECOMMENDATION
## AND ORDER

Pending before the Court are Defendant's motion to dismiss for *forum non conveniens* [Doc. No. 4], Defendant's motion to apply the law of Venezuela [Doc. No. 5], and Plaintiffs' motion to reconsider and to enlarge time to file Plaintiffs' response [Doc. No. 13]. Plaintiffs' motion is hereby **DENIED** for reasons discussed below. Having reviewed the parties' filings and the applicable law, this Court is of the opinion that Defendant's motion to dismiss for *forum non conveniens* should be **GRANTED**, and that Defendant's motion to apply the law of Venezuela should be **DENIED** as moot.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their original petition in 341ˢᵗ Judicial District of Webb County, Texas, on August 21, 2003. Defendant removed the case to this Court on September 26, 2003, asserting the

EXHIBIT 2

Court's diversity jurisdiction under 28 U.S.C. §1332. Plaintiffs are citizens of Venezuela; Defendant is a Delaware corporation with its principle place of business in Michigan. Although Plaintiffs do not specify a numerical value for the damages they claim, the types of damages claimed make it clear that the amount in controversy exceeds $75,000.

Plaintiffs' claims arise from an automobile accident that occurred in Venezuela on August 21, 2001. Roberto Antonio Blanco Silva was driving a 1998 Ford Explorer Sport Wagon, VIN AJU3WP-33721, ("Explorer") owned by Germania Odreman, on Via Tumeremo in Estado de Bolivar, Venezuela. Jose Gregorio Moyano Briceno was a passenger in the vehicle. At approximately 11:50 a.m., the Explorer was involved in a single-vehicle rollover crash that resulted in Briceno's death. Plaintiffs allege causes of action for negligence and strict liability based on the design, manufacture, testing, and marketing of the Explorer.

Defendant filed motions to transfer venue and to dismiss for *forum non conveniens* with its original answer in state court on September 19, 2003. Defendant filed a brief in support of its motion to dismiss for *forum non conveniens* in this Court on November 26, 2003. Defendant also filed a motion to apply the law of Venezuela on November 26, 2003. Plaintiffs filed an untimely and cursory "Preliminary Opposition" to these motions on December 31, 2003, and requested time for discovery on the *forum non conveniens* and conflict of law issues in the case. At a hearing on January 8, 2004, the parties argued Plaintiffs' motion for discovery on these issues. This Court denied Plaintiffs' motion for a discovery schedule on January 22, 2004.

On February 11, 2004, Plaintiffs filed the present motion to reconsider and to enlarge time to file responses to Defendant's motions. On the same date, Plaintiffs filed a response to

2

Defendant's motion to dismiss and a response to Defendant's motion to apply Venezuelan law, without requesting leave of Court to file these responses.

## II.   PLAINTIFFS' MOTION TO RECONSIDER AND TO ENLARGE TIME

Plaintiffs filed their motion to reconsider and to enlarge time to file Plaintiffs' response on February 11, 1004.  In the motion, Plaintiffs ask the Court to reconsider its earlier rulings that Plaintiffs were late in filing responses to Defendant's motions and that *forum non conveniens* discovery is not necessary.

### A. Motion to Reconsider

On January 22, 2004, the Court denied Plaintiffs' motion for discovery on the issues of *forum non conveniens* and conflict of law issues.  The Court stated at that time that it had an adequate factual basis to decide *forum non conveniens* questions.  The Court still believes this is the case.  The Court would only add that the facts pertinent to the *forum non conveniens* analysis are uncontested and clear from the parties' filings.  The record reflects facts about the availability and adequacy of the alternative forum, the location of witnesses and other sources of evidence, the site of the alleged injury, the parties' residence, the location where the parties' relationship is centered, and other relevant facts.  Upon reconsideration, the Court confirms its earlier ruling that discovery on *forum non conveniens* and conflict of laws is not necessary.

### B. Motion to Enlarge Time to Respond

Plaintiffs failed to respond to Defendant's motion to dismiss or to Defendant's motion to apply the law of Venezuela by December 16, 2003, i.e. within 20 days from filing.  *See* S.D. Tex.

3

Rules 7.3, 7.4A.[1]  Under Local Rule 7.4, this failure to respond is "taken as a representation of no opposition." S.D. Tex. Rule 7.4.  Plaintiffs did not request an enlargement of time to respond until February 11, 2004, nearly two months after the response period had expired.  If the original response period has expired, the Court may extend the time for responding, upon motion, when "the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b).  The burden of establishing excusable neglect falls on the party requesting enlargement. *Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990).  "Inadvertence or mistake of counsel or ignorance of the rules usually will not constitute excusable neglect." *In re Dahlgren Intern., Inc.*, 147 B.R. 393, 406 (N.D. Tex. 1992) (discussing excusable neglect under Rule 6(b)).

Plaintiffs argue that the reason for their delay in responding was Plaintiffs' interpretation of Local Rule 16[2] in conjunction with Local Rule 7.  Plaintiffs' belief that the response period in Local Rule 7 would not come into effect until after the Rule 16 scheduling conference is incorrect.  Plaintiffs' assertion that a lawsuit is "made active by virtue of the entering of a scheduling order"

---

[1]Local Rule 7.3  Submission.  "Opposed motions will be submitted to the judge *twenty days from filing* without notice from the clerk and without appearance of counsel." (emphasis added).
Local Rule 7.4  Responses.  "Failure to respond will be taken as a representation of no opposition.  Responses to motions
A.  *Must be filed by the submission day*;
B.  Must be written;
C.  Must include or be accompanied by authority; and
D.  Must be accompanied by a separate form order denying the relief sought."
(emphasis added).

[2]Plaintiff cites Local Rule 16.1, which discusses the initial pretrial conference and scheduling order.  The rule states, in part:
"A scheduling order setting cut-off dates for new parties, motions, expert witnesses and discovery, setting a trial date, and establishing a time framework for disposition of motions will be entered at the conference."

4

is likewise erroneous.[3] In fact, Local Rule 16 states that a scheduling order entered by the Court may establish a time for the *disposition* of motions, not a deadline for responding to motions. Plaintiffs' arguments on this point are wholly unpersuasive. Plaintiffs' explanations for their untimeliness in responding do not constitute excusable neglect. Plaintiffs' motion is therefore DENIED.

Plaintiffs protest that Defendant's motion to transfer venue and motion to dismiss for *forum non conveniens*, as brought in conjunction with Defendant's original answer, do not contain the certificate of conference required by Local Rule 7.1D. However, as Defendant points out, a certificate of conference is not required in state court, where these motions were filed. In addition, Defendant's filing in this Court on November 26, 2003 is a brief in support of its motion to dismiss. Rule 7.1 does not require briefs to be accompanied by a certificate of conference. Moreover, Plaintiffs have waived such procedural objections due to their tardiness in raising them.

## III.    DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

As discussed above, Plaintiffs did not timely respond to Defendant's motion to dismiss for *forum non conveniens*. "Although failure to respond to a motion will be considered a statement of no opposition, the court is not required to grant every unopposed motion." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993); *see generally* S.D. Tex. Rule 7.4. Defendant bears the burden of persuasion on all elements when considering dismissal under the doctrine of *forum non conveniens*. *In re Air Crash Disaster near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987), *vacated on other grounds sub nom., Pan American World*

---

[3]Plaintiffs' Motion and Memorandum in Support to Reconsider and to Enlarge Time to File Plaintiffs' Response to Defendant's Motion to Dismiss for *Forum non conveniens* and to Apply Venezuelan Law at ¶ 9(e).

*Airways Inc. v. Lopez*, 490 U.S. 1032, *reinstated save as to damages under original nom.*, 833 F.2d 17 (5th Cir. 1989).

Federal courts sitting in diversity rely on federal law to decide *forum non conveniens* motions when the alternative forum is a foreign court. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). To obtain dismissal under the *forum non conveniens* doctrine, Defendant must show (1) the existence of an available and adequate alternative forum and (2) that the relevant private and public interest factors favor dismissal. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). The underlying consideration is "where the trial will best serve the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

### A. Availability and Adequacy of Alternative Forum

#### 1. Availability of Alternative Forum

A forum is considered "available" for *forum non conveniens* considerations if the entire case and all parties can come within its jurisdiction. *Vasquez*, 325 F.3d at 671. In the case at hand, Venezuelan courts are an available alternative forum. Plaintiffs are Venezuelan citizens and may avail themselves of Venezuelan courts for resolution of claims arising from an accident occurring in Venezuela. Defendant has stated that it will submit to jurisdiction in Venezuelan courts as well.[4] *Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("[D]efendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis").

---

[4]*See* Def.'s Brief to Support Mot. to Dismiss for *forum non conveniens* at ¶ 9.

## 2. *Adequacy of Alternative Forum*

An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-80 (5th Cir. 2002) (citation and internal quotation marks omitted). In *Gonzalez*, the Fifth Circuit held that Mexican courts were an adequate alternative forum even though the jurisdiction did not allow strict liability claims and limited damages to the point that bringing the claims was not economically viable. *Id.* The fact that a jurisdiction allows plaintiff's cause of action at all, even with severe damages caps, renders it an adequate forum. *Vasquez*, 325 F.3d at 672 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

Defendant has shown that Venezuelan courts provide a remedy for Plaintiffs' causes of action. Even if that remedy is more limited than that allowed under Texas law, Venezuelan courts are an adequate forum for Plaintiffs' claims. Disadvantageous law in the alternative forum is only given substantial weight by the Court if "the remedy provided by the alternative forum [is] so clearly inadequate or unsatisfactory such that it is no remedy at all." *In re Air Crash Disaster*, 821 F.2d at 1164. Even if under Venezuelan law Plaintiffs' claims are not economically viable, the forum is considered adequate. *See Vasquez*, 325 F.3d at 671. Plaintiffs have a remedy available through Venezuelan courts, and the jurisdiction is thus an adequate alternative forum.

### B. Private and Public Interest Factors

Since Defendant has shown that there exists an available and adequate alternative forum, the Court next turns to the policy considerations of the *forum non conveniens* analysis. There is ordinarily a presumption in favor of plaintiff's choice of forum, which is outweighed only by private

7

and public interest factors that clearly point to the alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, when plaintiffs are citizens of a foreign country, their choice of forum is given less deference. *Id.*; *Vasquez*, 325 F.3d at 672.

### 1. Private Interest Factors

Private interest factors relevant to the *forum non conveniens* inquiry include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the premises, if appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper Aircraft*, 454 U.S. at 241 (citation omitted); *Vasquez*, 325 F.3d at 672.

In this case, the private interest factors clearly point to the alternative forum of Venezuela. First, witnesses with knowledge of the accident and the accident investigation reside in Venezuela. Second, all reports and documents from the accident investigation are in Spanish; translating these and other relevant documents would be expensive. Third, the accident site is in Venezuela, making access to the site much more convenient to a Venezuelan court. Fourth, this Court could not compel the attendance of the many witnesses located outside the Court's jurisdiction. Fifth, it would be costly to obtain the attendance of willing witnesses in this Court. Sixth, a Venezuelan court would have the possibility of viewing the premises of the accident, while this Court does not. These and all other practical problems that make trial of a case easy, expeditious, and inexpensive clearly favor Venezuelan courts as the appropriate forum.

8

### 2. Public Interest Factors

The relevant public interest factors also clearly point to the alternative forum of Venezuela. These factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241; *Vasquez*, 325 F.3d at 673.

First, the administrative difficulties in handling the case in this Court are substantial. This Court has an immense criminal case load, and trying the case in this forum would be burdensome. Second, the case has very little, if any, connection to the Laredo Division. There is no local interest in having this controversy decided in this forum. Even the alleged negligent design of the Explorer does not give this forum a local interest because identifying the design as the wrongful conduct "reaches back too far in the accident's causal chain." *Vasquez*, 325 F.3d at 674 ("Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and alleged failure of the product, which all occurred in [the alternative forum]") (discussing the "local interest" factor of the *forum non conveniens* analysis). However, Venezuela has a significant interest in local resolution of claims brought by Venezuelan citizens, about products purchased and used in Venezuela, and which caused injury in Venezuela.

Third, the law of Venezuela would govern this case and this Court is not at home with Venezuelan law. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Vasquez*, 325 F.3d at 674 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

496 (1941)).  Texas courts use the "most significant relationship" test to determine conflict of laws questions.  *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979).  The most significant relationship test examines four factors: (1) the place where the injury occurred; (2) the place where the injury causing conduct occurred; (3) the parties' residence; and (4) the place where the relationship, if any, between the parties is centered.  *Vasquez*, 325 F.3d at 674.  In this case, the injury occurred in Venezuela, the parties reside in Venezuela, and the relationship between the parties is centered in Venezuela.  Since the wrongful act is not the design of the vehicle as Plaintiffs allege,[5] it is unclear where the conduct causing the injuries occurred.  However, even if the conduct causing the injury could somehow be connected to this forum, the balance of the factors weigh heavily towards the application of Venezuelan law.

The most significant relationship test then evaluates these factors in conjunction with several policy considerations.  These include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in determination and application of the law to be applied.  *Vasquez*, 325 F.3d at 674.  These policies, especially the fourth, sixth, and seventh considerations, strongly favor the application of Venezuelan law.

The fourth public interest factor in the *forum non conveniens* analysis, particularly the interest in avoiding the application of foreign law, points to trial in Venezuela.  Finally, trial in this Court

---

[5]*See Vasquez*, 325 F.3d at 674 ("The linchpin of plaintiff's argument–that the alleged wrongful act was the original design of the vehicle and tires–reaches back too far in the accident's causal chain").

10

would unfairly impose jury duty on the citizens of this jurisdiction, who have very little local interest in having this controversy decided here. The public interest factors clearly favor Venezuela as the appropriate forum for Plaintiffs' claims.

### C. Conclusion

Venezuela is considered an available forum because the entire case and all parties can come within its jurisdiction. It is also an adequate forum, as Venezuelan law provides a remedy for Plaintiffs' causes of action. The applicable private interest factors clearly point to Venezuela as the proper forum. The Court's conflict-of-laws analysis under Texas law, including the most significant relationship test, indicates that Venezuelan law should apply to Plaintiffs' claims. Therefore the public interest factors all clearly indicate that Venezuela is the correct forum. The entire *forum non conveniens* analysis shows that the convenience of the parties and the ends of justice are better served by dismissal of the case in this Court for *forum non conveniens* and trial in Venezuela.

## IV.  DEFENDANT'S MOTION TO APPLY THE LAW OF VENEZUELA

Because the Magistrate Court recommends that the case be dismissed on grounds of *forum non conveniens*, the Court also recommends that Defendant's motion to apply the law of Venezuela be DENIED as moot. However, should the District Court allow the case to remain in this Court, the Magistrate Court is of the opinion that Defendant's motion to apply the law of Venezuela should be granted, based on the application of Texas conflict-of-laws principles as discussed above.

11

## V.    RECOMMENDATIONS

Based on the above information, the Magistrate Court recommends that the District Court **GRANT** Defendant's motion to dismiss for *forum non conveniens* and dismiss all claims with prejudice. The Magistrate Court also recommends that the District Court: (1) order Defendant to submit to the jurisdiction of Venezuelan courts and to service of process in Venezuela, as Defendant has offered to do; (2) order Defendant to pay any judgment rendered against it by the appropriate Venezuelan court; (3) order Defendant to make witnesses and evidence available to Plaintiffs in the appropriate Venezuelan court; (4) preclude Defendant from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela; and (5) allow the parties to return to this jurisdiction for further proceedings if the courts of Venezuela refuse to grant access to either Plaintiffs or Defendant. Finally, the Magistrate Court recommends that the District Court **DENY** as moot Defendant's motion to apply the law of Venezuela.

## VI.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual

12

findings and legal conclusions accepted by the District Court to which no objections were filed. *See*,

28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglas v. United States'*

*Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. *en banc* 1996).

 The clerk is directed to send a copy of this Report and Recommendation to all parties.

 DONE at Laredo, Texas, this 24th day of March, 2004.


ADRIANA ARCE-FLORES
United States Magistrate Judge

13